

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

**In re** Brican America Litigation                    **MDL –**

### MOTION OF PLAINTIFFS FOR TRANFER OF ACTIONS TO THE
### SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1407
### FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs, STEVEN WIGDOR O.D., P.A., a Florida corporation ("Wigdor,

O.D., P.A."); STEVEN WIGDOR ("Dr. Wigdor"); RADZWILL OPTOMETRIC

ASSOCIATES, CHARTERED, a Florida corporation ("Radzwill Optometric");

ERIC M. RADZWILL ("Dr. Radzwill"); CORAL SPRINGS EYE CENTER,

CHARTERED ("Eye Center"); STEVEN R. KOGANOVSKY ("Dr.

Koganovsky"); BEVILLE DENTAL CARE ("Beville Dental"); ADRIANA

PORTER ("Dr. Porter"); EYE HEALTH & VISION CENTER, P.A., a Florida

corporation ("Eye Health"); DAVID RUBIN ("Dr. Rubin"); IVAN ROSENTHAL

("Dr. Rosenthal"); ROBERT M. EASTON, JR., O.D., P.A., a Florida corporation

("Easton, O.D., P.A."); ROBERT EASTON ("Dr. Easton"); VISION ARTS

**OFFICIAL FILE COPY**  IMAGED JUN 1 4 2010

EYECARE CENTER ("Vision Arts"); EDWARD WALKER ("Dr. Walker"); ALL EYES OPTICAL, INC., a Florida corporation ("All Eyes"); VITO GUARIO ("Dr. Guario"); MARCIANO FAMILY OPTOMETRIC, P.A., a Florida corporation ("Marciano Optometric"); BRANDEE MARCIANO ("Dr. Marciano"); KAUFMAN EYECARE CENTER ("Kaufman Eyecare"); SANDFORD KAUFMAN ("Dr. Kaufman"); THE HOUR GLASS, INC., a Florida corporation ("Hour Glass"); JAMES STEPHENS ("Dr. Stephens"); MITCHELL A. JOSEPHS, D.D.S., P.A., a Florida corporation ("Josephs, D.D.S., P.A."); MITCHELL JOSEPHS ("Dr. Josephs"); SANDRA BARKER ("Dr. Barker"); NEW VIEW OPTOMETRIC CENTER ("New View"); MELVIN KASANOFF ("Dr. Kasanoff"); JAY GELMAN ("Dr. Gelman"); PALM BEACH EYES OF BOYNTON BEACH ("Palm Beach Eyes"); GREG PIENTKA ("Dr. Pientka"); BETHANY BRENNER ("Dr. Brenner"); PALM VISION CENTER, INC., a Florida corporation ("Palm Vision"); STEVEN ANHALT ("Dr. Anhalt"); BARRERA OPTICAL, INC., a Texas corporation ("Barrera Optical"); MARIO BARRERA ("Dr. Barrera"); LORI J. BENDE, O.D., PROFESSIONAL OPTOMETRIC CORP., a California corporation ("Bende Professional Corp."); LORI BENDE ("Dr. Bende") DANIEL DEL CASTILLO, D.M.D., P.A., a Florida corporation (Del Castillo, P.A.); DANIEL DEL CASTILLO (Dr. Del Castillo); KENNETH GALLINGER ("Dr. Gallinger"); OAKWOOD DENTAL ARTS, LLC,

a New York limited liability company ("Oakwood Dental"); EMANUEL GRAZIANO ("Dr. Graziano"); ALAN GROSSMAN ("Dr. Grossman"); TAD KOSANOVICH ("Dr. Kosanovich"); RAGSDALE & MARTIN OPTICAL, INC., a Texas corporation ("Ragsdale & Martin"); MICHAEL MARTIN ("Dr. Martin"); FAMILY VISION CENTER, P.A., a Florida corporation ("Family Vision"); LORI MAZZA ("Dr. Mazza"); ADVANCED DENTAL CENTER OF SUMMERVILLE, PA, a South Carolina corporation ("Advanced Dental Center"); JAMES MUSCOTT ("Dr. Muscott"); PETER SCERBO DMD, P.A., a Florida corporation ("Scerbo DMD, P.A."); PETER SCERBO ("Dr. Scerbo"); RAYMOND E. SCHWARTZ, P.A., a Florida corporation ("Schwartz, P.A."); RAYMOND E. SCHWARTZ ("Dr. Schwartz"); E. WAYNE SIMMONS, D.M.D. PROSTHODONTIST, P.C., a Texas corporation ("Simmons D.M.D., P.C."); E. WAYNE SIMMONS ("Dr. Simmons"); BARRY SIMON (Dr. Simon"); DR. RONALD N. SMITH, OPTOMETRIST, INC., a Texas corporation ("Ronald Smith, Inc."); RONALD SMITH ("Dr. Smith"); TERRY VAN DER HEYDEN ("Dr. Van Der Heyden"); ADVANTAGE FAMILY VISION CENTER ("Advantage Vision"); CHARLES PORCH ("Dr. Porch"); FRED BUETTNER ("Dr. Buettner"); MICHAEL L. GRACE, O.D., P.A., a Texas corporation ("Grace, O.D., P.A."); 20/20 VISION CLINIC, LLP, a Texas limited liability partnership ("20/20 Vision"); MICHAEL GRACE ("Dr. Grace"); BLAISDELL DENTAL

CENTER, P.A., an Idaho corporation ("Blaisdell Dental"); JOHN BLAISDELL ("Dr. Blaisdell"); JAMES L. CARAZOLA, D.M.D., P.A., a Florida corporation ("Carazola, D.M.D., P.A.); JAMES CARAZOLA ("Dr. Carazola"); CHRISTOPHER S. CARROLL, D.D.S., P.C., a Wisconsin corporation ("Carroll, D.D.S., P.C.); CHRISTOPHER CARROLL ("Dr. Carroll"); TRYPHOSE CHARLES, D.M.D. ("Dr. Charles"); M. COWAN & ASSOCIATES, D.D.S., P.A. ("M. Cowan & Associates"); MICHAEL J. FERNANDEZ, D.M.D., P.A., a Florida corporation ("Fernandez, D.M.D., P.A.); MICHAEL FERNANDEZ ("Dr. Fernandez"); CEDARHURST DENTAL OFFICE ("Cedarhurst Dental"); HOWARD GOLDSCHEIN ("Dr. Goldschein"); GRAYHILLS, MOHIP DENTAL & ASSOCIATES OF WELLINGTON ("Grayhills Mohip Dental"); LAURENCE GRAYHILLS ("Dr. Grayhills"); SPEX IN THE CITY, LLC, a Washington limited liability company ("Spex in the City"); MARK HAMILTON ("Dr. Hamilton"); ALAN R. HEAP, D.M.D., P.A., a Florida corporation ("Heap, D.M.D., P.A.); ALAN HEAP ("Dr. Heap"); EMERALD WEST FAMILY DENTISTRY, PLLC, an Idaho limited liability company ("Emerald West"); CHAD HESS ("Dr. Hess"); RICHARD M. KERNAGIS, D.M.D, P.A., a Florida corporation ("Kernagis, D.M.D., P.A."); RICHARD KERNAGIS ("Dr. Kernagis"); EAST LYME FAMILY & COSMETIC DENTISTRY ("East Lyme Family"); JOSEPH PALUMBO ("Dr. Palumbo"); LAKESIDE FAMILY DENTISTRY, P.L., a Florida

limited liability company ("Lakeside Family Dentistry"); CHRISTOPHER SEPPI ("Dr. Seppi"); JOEL E. VACCAREZZA, DDS, P.A., a Florida corporation ("Vaccarezza, DDS, P.A."); JOEL VACCAREZZA ("Dr. Vaccarezza"); EYAD SHEHADEH, D.D.S., P.A., a Florida corporation ("Shehadeh, D.D.S., P.A."); EYAD SHEHADEH ("Dr. Shehadeh"); FREEDMAN & HAAS, P.A., a Florida corporation ("Freedman & Haas"); SHARON HAAS ("Dr,. Haas"); EDWARD B. BUSCH, D.M.D., P.A., a Florida corporation ("Busch, D.M.D., P.A."); EDWARD BUSCH ('Dr. Busch"); KEITH A. COLWELL, D.D.S., P.C., an Iowa corporation ("Colwell, D.D.S., P.C."); KEITH COLWELL ("Dr. Colwell"); JAY GELMAN ("Dr. Gelman"); BEAUTIFUL SMILES DENTAL CARE ("Beautiful Smiles"); ANTHONY GULDE ("Dr. Gulde"); PHILIP K. HAIMAN & ASSOCIATES, P.A. n/k/a SUNRISE EYE CARE, INC., a Florida corporation ("Sunrise Eye Care"); PHILIP HAIMAN ("Dr. Haiman"); ROLAND PARK VISION SERVICES ("Roland Park Vision Services"); BRUCE HYATT ("Dr. Hyatt"); NEELOFAR KHAN ("Dr. Khan"); OBROCHTA CENTER FOR DENTAL HEALTH STEPHEN P. OBROCHTA D.D.S. P.A., a Florida corporation ("Obrochta Center"); STEPHEN OBROCHTA ("Dr. Obrochta"); WESLEY B. SMITH, D.D.S., P.A., a North Carolina corporation ("Smith, D.D.S., P.A."); WESLEY SMITH ("Dr. Smith"); JEFFREY TWEEDY ("Dr. Tweedy"); ANTONIO BARCIAS ("Dr. Barcia"); EYES ON THE BAY, P.A., a Florida corporation

("Eyes on the Bay"); NEIL ELLIOT ("Dr. Elliot"); RODRICK KEENER ("Dr. Keener"); PREMIER DENTAL ("Premier Dental"); ALIGN ORTHODONTICS ("Align Orthodontics"); SANJEEV SHARMA ("Dr. Sharma"); ELLIOTT STUPP ("Dr. Stupp"); FAMILY DENTAL CARE ("Family Dental Care"); CHANBO SIM ("Dr. Sim"); WADE G. WINKER, D.D.S., P.A., a Florida corporation ("Winker, D.D.S., P.A."); WADE WINKER ("Dr. Winker"); COUNTRYSIDE DENTAL ASSOCIATES, INC., a Florida corporation ("Countryside Dental"); MICHAEL ANCONA ("Dr. Ancona"); DR. MATOS'S GROWING SMILES, P.A., a New Jersey corporation ("Growing Smiles"); MANUEL GONZALEZ ("Dr. Gonzalez"); THOMAS JACKA ("Dr. Jacka"); ALFRED JOHNSON ("Dr. Johnson"); KENNETH A. MOGELL, D.M.D., P.A., a Florida corporation ("Mogell, D.M.D., P.A."); KENNETH MOGELL ("Dr. Mogell"); JOHN D. SHERER, D.M.D., P.A., a Florida corporation ("Sherer, D.M.D., P.A."); JOHN SHERER ("Dr. Sherer"); KATY PERIODONTICS MANAGEMENT, INC., a Texas corporation ("Katy Periodontics"); TIMOTHY HALE ("Dr. Hale"); STEPHEN ALLISON ("Dr. Allison"); FALLS COSMETIC DENTAL CENTER ("Falls Dental"); SAMUEL CHANDY ("Dr. Chandy"); BEHDAD  OMRANI ("Dr. Omrani")(collectively referred to as "Movants"), plaintiffs in an action currently pending in the S.D. Florida, respectfully move this Panel, pursuant to 28 U.S.C. § 1407 ("Multidistrict litigation"), for coordination and consolidation of

pretrial proceedings for litigation against Brican America, Inc., a Florida corporation ("BAI"), Brican America, LLC, a Florida limited liability company ("BAL"), Brican Financial Services, L.L.C., a Florida limited liability company ("BFS") NCMIC Finance Corporation, an Iowa corporation, d/b/a Professional Solutions Financial Services ("NCMIC"); PSFS 3 Corporation, an Iowa Corporation ("PSFS 3"), and others, and in support thereof state as follows:

1.     On March 3, 2010, Movants hereinabove commenced a putative class action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against the Defendants named above, with the exception of PSFS 3 (the "Initial Florida Litigation").

2.     On or about April 29, 2010 Movants filed their Amended Complaint and on May 13, 2010 filed a Supplemented Amended Complaint.[1]

3.     On May 18, 2010, PSFS 3 removed the Initial Florida Litigation to the United States District Court for the Southern District of Florida. A copy of the Supplemented Amended Complaint and the Docket Sheet in the Initial Florida Litigation is included in the Appendix filed with this Motion.

4.     On March 4, 2010, Frank Derienzo commenced a putative class action in the United States District Court for the District of New Jersey (Newark) against

---

[1] The Amended Complaint streamlined the causes of action asserted against the Defendants and added PSFS 3 as a Defendant. The Supplemented Amended Complaint added a Plaintiff who was inadvertently omitted from the Amended Complaint.

Brican LLC and NCMIC (the "New Jersey Litigation"). A copy of the Complaint and the Docket Sheet in the New Jersey Litigation is included in the Appendix filed with this Motion.

5.       On March 16, 2010, Peter M. Blauzvern commenced a putative class action in the United States District Court for the Southern District of Florida against BAI, BAL, BFS, NCMIC and others (the "Second Florida Litigation"). An Amended Complaint was filed in that action on March 19, 2010. A copy of the Amended Complaint and the Docket Sheet in the Second Florida Litigation is included in the Appendix filed with this Motion.

6.       On April 12, 2010, Vijay Patel commenced a putative class action in the United States District Court for the Central District of California (Southern Division – Santa Ana) against BAI, BAL, NCMIC, and others (the "California Litigation"). A copy of the Complaint and the Docket Sheet in the California Litigation is included in the Appendix filed with this Motion.

7.       The Initial and Second Florida Litigation are putative class actions seeking certification of nationwide classes. Service has been completed in these actions. Motions directed towards each complaint have been filed with the respective judges hearing those cases.

8.       The California putative class action has recently had a motion directed against the complaint filed and is scheduled for hearing in July.

In re Brican America Litigation                                    MDL -

9.      The New Jersey class action is still in the stages of service of process.

10.     None of the cases on the attached Schedule of Actions are at issue. Further, the docket sheets for each case indicate that no discovery has been propounded.

11.     The competing putative class actions contain similar and dissimilar causes of action.

12.     All of the actions are based upon based upon common issues of fact, i.e., that the Plaintiffs entered into written agreements to purchase equipment (albeit described as "leases" by the Defendants) for the purpose of displaying medical information and advertising in their offices for the benefit of their patients. Simultaneously, the Plaintiffs entered into written agreements to sell advertising time on the equipment. The agreements were part of a single, unified transaction. The revenue provided by the sale of advertising time was equivalent to the cost of the equipment, thereby requiring no cash outlay by the Plaintiffs. The advertising agreements contemplated remedies to the Plaintiffs in the event of a cessation of advertising payments, including but not limited to cancellation of all agreements, repurchase or transfer of the agreements to purchase the equipment, or assignment of the purchase agreement to the company defaulting in the advertising payments.

13.     Ultimately, advertising payments ceased and each Plaintiff sought their respective remedy of cancellation, repurchase, buy-back or assignment.  The

In re Brican America Litigation                                          MDL -

holders of the installment agreements for purchase of the equipment claim no

knowledge of the advertising agreements and the remedies available to the Plaintiff

contained therein.      These Defendants have sought to enforce the purchase

agreements by filing over seven hundred (700) individual lawsuits in the State of

Iowa, all commenced within the last six (6) months.

     14.      As developed in the accompanying Brief, the Movants assert that the

Initial Florida Litigation, Second Florida Litigation, New Jersey Litigation, and

California Litigation are suitable for consolidation and coordination of pretrial

proceedings through centralization in a single district court.

     15.      The Southern District of Florida is the most suitable district court for

consolidation in that it is the venue of two separate putative nationwide class

actions; the significantly larger number of defendants are citizens of that district;

the other actions are actions pending in district courts that have no relationship

with any defendant; and the actions in the Southern District have progressed

further than the actions in California and New Jersey.

     WHEREFORE, Movants request that this Honorable Court grant this

Motion and transfer the California and New Jersey actions to the Southern District

of Florida for consolidation with the Initial and Second Florida Litigation and

coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407, together with such

other and further directions this Court deems proper.

**In re Brican America Litigation**                                    **MDL -**

Dated this _____ day of June, 2010.

 

 

David H. Charlip
Charlip Law Group, LC
Florida Bar No. 329932
Charlip Law Group, LLC
Attorneys for Movants
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
dcharlip@charliplawgroup.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Brican America Litigation                         **MDL –**

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF
### ACTIONS PURSUANT TO 28 U.S.C. § 1407

Plaintiffs, STEVEN WIGDOR O.D., P.A., a Florida corporation ("Wigdor, O.D., P.A."); STEVEN WIGDOR ("Dr. Wigdor"); RADZWILL OPTOMETRIC ASSOCIATES, CHARTERED, a Florida corporation ("Radzwill Optometric"); ERIC M. RADZWILL ("Dr. Radzwill"); CORAL SPRINGS EYE CENTER, CHARTERED ("Eye Center"); STEVEN R. KOGANOVSKY ("Dr. Koganovsky"); BEVILLE DENTAL CARE ("Beville Dental"); ADRIANA PORTER ("Dr. Porter"); EYE HEALTH & VISION CENTER, P.A., a Florida corporation ("Eye Health"); DAVID RUBIN ("Dr. Rubin"); IVAN ROSENTHAL ("Dr. Rosenthal"); ROBERT M. EASTON, JR., O.D., P.A., a Florida corporation ("Easton, O.D., P.A."); ROBERT EASTON ("Dr. Easton"); VISION ARTS EYECARE CENTER ("Vision Arts"); EDWARD WALKER ("Dr. Walker"); ALL

EYES OPTICAL, INC., a Florida corporation ("All Eyes"); VITO GUARIO ("Dr. Guario"); MARCIANO FAMILY OPTOMETRIC, P.A., a Florida corporation ("Marciano Optometric"); BRANDEE MARCIANO ("Dr. Marciano"); KAUFMAN EYECARE CENTER ("Kaufman Eyecare"); SANDFORD KAUFMAN ("Dr. Kaufman"); THE HOUR GLASS, INC., a Florida corporation ("Hour Glass"); JAMES STEPHENS ("Dr. Stephens"); MITCHELL A. JOSEPHS, D.D.S., P.A., a Florida corporation ("Josephs, D.D.S., P.A."); MITCHELL JOSEPHS ("Dr. Josephs"); SANDRA BARKER ("Dr. Barker"); NEW VIEW OPTOMETRIC CENTER ("New View"); MELVIN KASANOFF ("Dr. Kasanoff"); JAY GELMAN ("Dr. Gelman"); PALM BEACH EYES OF BOYNTON BEACH ("Palm Beach Eyes"); GREG PIENTKA ("Dr. Pientka"); BETHANY BRENNER ("Dr. Brenner"); PALM VISION CENTER, INC., a Florida corporation ("Palm Vision"); STEVEN ANHALT ("Dr. Anhalt"); BARRERA OPTICAL, INC., a Texas corporation ("Barrera Optical"); MARIO BARRERA ("Dr. Barrera"); LORI J. BENDE, O.D., PROFESSIONAL OPTOMETRIC CORP., a California corporation ("Bende Professional Corp."); LORI BENDE ("Dr. Bende") DANIEL DEL CASTILLO, D.M.D., P.A., a Florida corporation (Del Castillo, P.A.); DANIEL DEL CASTILLO (Dr. Del Castillo); KENNETH GALLINGER ("Dr. Gallinger"); OAKWOOD DENTAL ARTS, LLC, a New York limited liability company ("Oakwood Dental"); EMANUEL

GRAZIANO ("Dr. Graziano"); ALAN GROSSMAN ("Dr. Grossman"); TAD

KOSANOVICH ("Dr. Kosanovich"); RAGSDALE & MARTIN OPTICAL, INC.,

a Texas corporation ("Ragsdale & Martin"); MICHAEL MARTIN ("Dr. Martin");

FAMILY VISION CENTER, P.A., a Florida corporation ("Family Vision"); LORI

MAZZA ("Dr. Mazza"); ADVANCED DENTAL CENTER OF SUMMERVILLE,

PA, a South Carolina corporation ("Advanced Dental Center"); JAMES

MUSCOTT ("Dr. Muscott"); PETER SCERBO DMD, P.A., a Florida corporation

("Scerbo DMD, P.A."); PETER SCERBO ("Dr. Scerbo"); RAYMOND E.

SCHWARTZ, P.A., a Florida corporation ("Schwartz, P.A."); RAYMOND E.

SCHWARTZ ("Dr. Schwartz"); E. WAYNE SIMMONS, D.M.D.

PROSTHODONTIST, P.C., a Texas corporation ("Simmons D.M.D., P.C."); E.

WAYNE SIMMONS ("Dr. Simmons"); BARRY SIMON (Dr. Simon"); DR.

RONALD N. SMITH, OPTOMETRIST, INC., a Texas corporation ("Ronald

Smith, Inc."); RONALD SMITH ("Dr. Smith"); TERRY VAN DER HEYDEN

("Dr. Van Der Heyden"); ADVANTAGE FAMILY VISION CENTER

("Advantage Vision"); CHARLES PORCH ("Dr. Porch"); FRED BUETTNER

("Dr. Buettner"); MICHAEL L. GRACE, O.D., P.A., a Texas corporation ("Grace,

O.D., P.A."); 20/20 VISION CLINIC, LLP, a Texas limited liability partnership

("20/20 Vision"); MICHAEL GRACE ("Dr. Grace"); BLAISDELL DENTAL

CENTER, P.A., an Idaho corporation ("Blaisdell Dental"); JOHN BLAISDELL

("Dr. Blaisdell"); JAMES L. CARAZOLA, D.M.D., P.A., a Florida corporation ("Carazola, D.M.D., P.A.); JAMES CARAZOLA ("Dr. Carazola"); CHRISTOPHER S. CARROLL, D.D.S., P.C., a Wisconsin corporation ("Carroll, D.D.S., P.C.); CHRISTOPHER CARROLL ("Dr. Carroll"); TRYPHOSE CHARLES, D.M.D. ("Dr. Charles"); M. COWAN & ASSOCIATES, D.D.S., P.A. ("M. Cowan & Associates"); MICHAEL J. FERNANDEZ, D.M.D., P.A., a Florida corporation ("Fernandez, D.M.D., P.A.); MICHAEL FERNANDEZ ("Dr. Fernandez"); CEDARHURST DENTAL OFFICE ("Cedarhurst Dental"); HOWARD GOLDSCHEIN ("Dr. Goldschein"); GRAYHILLS, MOHIP DENTAL & ASSOCIATES OF WELLINGTON ("Grayhills Mohip Dental"); LAURENCE GRAYHILLS ("Dr. Grayhills"); SPEX IN THE CITY, LLC, a Washington limited liability company ("Spex in the City"); MARK HAMILTON ("Dr. Hamilton"); ALAN R. HEAP, D.M.D., P.A., a Florida corporation ("Heap, D.M.D., P.A.); ALAN HEAP ("Dr. Heap"); EMERALD WEST FAMILY DENTISTRY, PLLC, an Idaho limited liability company ("Emerald West"); CHAD HESS ("Dr. Hess"); RICHARD M. KERNAGIS, D.M.D, P.A., a Florida corporation ("Kernagis, D.M.D., P.A."); RICHARD KERNAGIS ("Dr. Kernagis"); EAST LYME FAMILY & COSMETIC DENTISTRY ("East Lyme Family"); JOSEPH PALUMBO ("Dr. Palumbo"); LAKESIDE FAMILY DENTISTRY, P.L., a Florida limited liability company ("Lakeside Family Dentistry"); CHRISTOPHER SEPPI

("Dr. Seppi"); JOEL E. VACCAREZZA, DDS, P.A., a Florida corporation ("Vaccarezza, DDS, P.A."); JOEL VACCAREZZA ("Dr. Vaccarezza"); EYAD SHEHADEH, D.D.S., P.A., a Florida corporation ("Shehadeh, D.D.S., P.A."); EYAD SHEHADEH ("Dr. Shehadeh"); FREEDMAN & HAAS, P.A., a Florida corporation ("Freedman & Haas"); SHARON HAAS ("Dr,. Haas"); EDWARD B. BUSCH, D.M.D., P.A., a Florida corporation ("Busch, D.M.D., P.A."); EDWARD BUSCH ('Dr. Busch"); KEITH A. COLWELL, D.D.S., P.C., an Iowa corporation ("Colwell, D.D.S., P.C."); KEITH COLWELL ("Dr. Colwell"); JAY GELMAN ("Dr. Gelman"); BEAUTIFUL SMILES DENTAL CARE ("Beautiful Smiles"); ANTHONY GULDE ("Dr. Gulde"); PHILIP K. HAIMAN & ASSOCIATES, P.A. n/k/a SUNRISE EYE CARE, INC., a Florida corporation ("Sunrise Eye Care"); PHILIP HAIMAN ("Dr. Haiman"); ROLAND PARK VISION SERVICES ("Roland Park Vision Services"); BRUCE HYATT ("Dr. Hyatt"); NEELOFAR KHAN ("Dr. Khan"); OBROCHTA CENTER FOR DENTAL HEALTH STEPHEN P. OBROCHTA D.D.S. P.A., a Florida corporation ("Obrochta Center"); STEPHEN OBROCHTA ("Dr. Obrochta"); WESLEY B. SMITH, D.D.S., P.A., a North Carolina corporation ("Smith, D.D.S., P.A."); WESLEY SMITH ("Dr. Smith"); JEFFREY TWEEDY ("Dr. Tweedy"); ANTONIO BARCIAS ("Dr. Barcia"); EYES ON THE BAY, P.A., a Florida corporation ("Eyes on the Bay"); NEIL ELLIOT ("Dr. Elliot"); RODRICK KEENER ("Dr.

Keener"); PREMIER DENTAL ("Premier Dental"); ALIGN ORTHODONTICS ("Align Orthodontics"); SANJEEV SHARMA ("Dr. Sharma"); ELLIOTT STUPP ("Dr. Stupp"); FAMILY DENTAL CARE ("Family Dental Care"); CHANBO SIM ("Dr. Sim"); WADE G. WINKER, D.D.S., P.A., a Florida corporation ("Winker, D.D.S., P.A."); WADE WINKER ("Dr. Winker"); COUNTRYSIDE DENTAL ASSOCIATES, INC., a Florida corporation ("Countryside Dental"); MICHAEL ANCONA ("Dr. Ancona"); DR. MATOS'S GROWING SMILES, P.A., a New Jersey corporation ("Growing Smiles"); MANUEL GONZALEZ ("Dr. Gonzalez"); THOMAS JACKA ("Dr. Jacka"); ALFRED JOHNSON ("Dr. Johnson"); KENNETH A. MOGELL, D.M.D., P.A., a Florida corporation ("Mogell, D.M.D., P.A."); KENNETH MOGELL ("Dr. Mogell"); JOHN D. SHERER, D.M.D., P.A., a Florida corporation ("Sherer, D.M.D., P.A."); JOHN SHERER ("Dr. Sherer"); KATY PERIODONTICS MANAGEMENT, INC., a Texas corporation ("Katy Periodontics"); TIMOTHY HALE ("Dr. Hale"); STEPHEN ALLISON ("Dr. Allison"); FALLS COSMETIC DENTAL CENTER ("Falls Dental"); SAMUEL CHANDY ("Dr. Chandy"); BEHDAD OMRANI ("Dr. Omrani")(collectively referred to as "Plaintiffs" and/or "Putative Class Representatives") in one of the actions currently pending in the S.D. Florida, file their Brief in Support of Motion to Transfer as set forth herein below.

In re Brican America Litigation                                              MDL -

## Background

On March 3, 2010, Movants hereinabove commenced a putative class action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against the Defendants named above, with the exception of PSFS 3 (the "Initial Florida Litigation").  On or about April 29, 2010 Movants filed their Amended Complaint and on May 13, 2010 filed a Supplemented Amended Complaint.[1]  On May 18, 2010, Defendant PSFS 3 removed the Initial Florida Litigation to the United States District Court for the Southern District of Florida. A copy of the Supplemented Amended Complaint and the Docket Sheet in the Initial Florida Litigation is included in the Appendix filed with this Motion.  On March 4, 2010, Frank Derienzo commenced a putative class action in the United States District Court for the District of New Jersey (Newark) against Brican LLC and NCMIC (the "New Jersey Litigation").  A copy of the Complaint and the Docket Sheet in the New Jersey Litigation is included in the Appendix filed with this Motion.  On March 16, 2010, Peter M. Blauzvern commenced a putative class action in the United States District Court for the Southern District of Florida against BAI, BAL, BFS, NCMIC and others (the "Second Florida Litigation").  An Amended Complaint was filed in that action on March 19, 2010.  A copy of the

---

[1] The Amended Complaint streamlined the causes of action asserted against the Defendants and added PSFS 3 as a Defendant.  The Supplemented Amended Complaint added a Plaintiff who was inadvertently omitted from the Amended Complaint.

Amended Complaint and the Docket Sheet in the Second Florida Litigation is included in the Appendix filed with this Motion.  On April 12, 2010, Vijay Patel commenced a putative class action in the United States District Court for the Central District of California (Southern Division – Santa Ana) against BAI, BAL, NCMIC, and others (the "California Litigation").  A copy of the Complaint and the Docket Sheet in the California Litigation is included in the Appendix filed with this Motion.  All of the actions are putative class actions seeking certification of nationwide classes.  Service has been completed in these actions.  Motions directed towards each complaint have been filed with the district courts in Florida and California.  The New Jersey class action is still in the stages of service of process. None of the cases on the attached Schedule of Actions are at issue.  Further, the docket sheets for each case do not indicate that any discovery has been propounded.

## 28 U.S.C. § 1407

Section 28 U.S.C. § 1407 provides in part that "[W]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."    Transfer is appropriate when this Panel makes a "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such

actions." This Court exercises large and unfettered discretion in determining each application. *In re Wilson*, 451 F.3d 161, 173 (3d Cir. 2006).

Centralization of these actions will avoid duplication of discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their respective counsel and the judiciary. *See In re KFC Corp. Fair Labor Standards Act Litigation*, 530 F.Supp.2d 1356, 1357 (J.P.M.L. 2008).

## ARGUMENTS

### Common Issues Of Fact Exist In All Four Actions

Transfer of these actions to the Southern District of Florida is appropriate because all of the actions are based upon based upon the same basic core of operative fact, i.e., that the Plaintiffs entered into written agreements to purchase equipment (albeit described as "leases" by the Defendants) for the purpose of exhibiting medical information and advertising in their offices for the benefit of their patients. At first, the agreements bore the Brican logo, but the actual party identified in the agreement was NCMIC. At all material times, Brican was working under a general vendor's agreement with NCMIC. Simultaneously with the execution and delivery of the purchase agreements, the Plaintiffs entered into written agreements with Brican to sell advertising time on the equipment. The revenue provided by Brican's purchase of advertising time was substantially equivalent to the cost of the equipment, thereby requiring no significant cash

outlay by the Plaintiffs, so long as Brican performed under the advertising agreements.   For the protection of the Plaintiffs, the advertising agreements contained a range of remedies in the event of Brican's failure to perform, including but not limited to cancellation of all "related" agreements, repurchase or buy-back of the purchase agreements, and transfer or assignment of the purchase agreement to Brican.

Ultimately, Brican's advertising payments ceased and each Plaintiff sought to exercise their respective remedy.   NCMIC claimed no knowledge of the advertising agreements and rejected the assertion that any of the remedies were available to the Plaintiffs and the Plaintiffs were obligated to continue paying NCMIC under the purchase agreements.   Subsequent to the commencement of these actions, NCMIC assigned the purchase agreements to PSFS 3 (its related company) for the sole purpose of attempting to artificially create venue in the State of Iowa, where NCMIC and PSFS 3 maintain their principal offices.[2]   NCMIC and PSFS 3 have used this artificial implementation to initiate more than seven hundred separate actions against the Plaintiffs in the State of Iowa, however those

---

[2] The purchase agreements had a permissive floating forum selection provision that would place venue in Iowa only if the agreements were assigned to an Iowa corporation.   PSFS 3 was not even organized until March 30, 2010 and did not become the current holder of the purchase agreements until March 31, 2010, almost a month subsequent to the commencement of these actions.   The Plaintiffs in the Florida Litigation are actively resisting NCMIC's attempts to move the cases to Iowa based upon this venue gambit.

Plaintiffs are also actively challenging this tactic in the Iowa state courts.  Transfer

and consolidation would obviate this problem.  "Transfers under Section 1407 are

simply not encumbered by considerations of in personam jurisdiction and venue."

*In re FMC Corp. Patent Litigation*, 422 F.Supp. 1163, 1165 (J.P.M.L. 1976).

The common questions of fact set forth herein above are detailed, to varying

degrees, in the complaints currently pending in each action.    *See Wigdor*

Supplemented Amended Complaint (Appendix Exhibit "E", ¶¶ 158 through 233);

*Blauzvern* Amended Complaint (Appendix Exhibit "C", ¶¶ 491 through 565);

*Patel* Complaint (Appendix Exhibit "A", ¶¶ 22 through 60); and the *DeRienzo*

Complaint (Appendix Exhibit "G", ¶¶ 1 and 17 through 19).   Any similarity or

variance in the causes of action asserted in the four pending complaints is not

something that is to be considered under § 1407.  *In re Multidistrict Civil Antitrust*

*Actions Involving Antibiotic Drugs*, 309 F.Supp. 155, 156 (J.P.M.L. 1970) (If

requisite common issues of fact exist, the applicability of different legal principles

will not prevent transfer of an action).  Here, all actions share common questions

of fact and are therefore appropriate candidates for consolidation and coordination

of pretrial proceedings under 28 U.S.C. § 1407.

As noted above, the early stages in which each of the actions is currently

postured supports centralization.  *Cf. In re Allianz Life Insurance Company of*

*North America Deferred Annuity Marketing & Sales Practices Litigation*, 517

F.Supp.2d 1364, 1365 (J.P.M.L. 2007)(Centralization denied where four of the five constituent actions were more significantly advanced). Further, the fact that all of the actions sought to be consolidated are seeking class treatment is consequential. District courts have concluded that centralization by the Panel offers many of the same benefits as class certification. *See In re Zyprexa Products Liability Litigation*, 467 F.Supp.2d 256, 269-70 (E.D.N.Y. 2006); *In re Copley Pharm. Inc.*, 158 F.R.D. 485, 492 (D.Wyo. 1994).

Common issues of fact are shared by all of the actions, thereby supporting transfer and consolidation under 28 U.S.C. § 1407.

## The Southern District of Florida is the Most Suitable Transferee Court

The Movants assert that the actions are suitable for consolidation and coordination of pretrial proceedings through centralization in a single district court and that district is the Southern District of Florida for a litany of reasons. First, the Southern District of Florida is already the situs of two separate putative nationwide class actions, particularly the first-filed *Wigdor* Class Action and the ensuing *Blauzvern* Class Action. Consolidation of all of the putative class actions in the Southern District permits that court to determine the suitability of class treatment in one proceeding, thereby potentially bringing all properly cognizable class claims before one court. Even if class certification is denied, the mass of plaintiffs named in the *Wigdor* and *Blauzvern* cases can easily absorb *Patel* (the single California

12

plaintiff) and *Derienzo* (the single New Jersey plaintiff) for pretrial proceedings and possible resolution prior to returning the cases to the transferor courts for trial. Additionally, a significantly larger number of defendants are citizens of the Southern District than anywhere else. Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC are all citizens of Florida maintaining their principal offices in Miami-Dade County, Florida.    These entities were the vendors/originators of the purchase agreements at issue in all of these actions.[3] The documentation relating to the creation of virtually every transaction with every Plaintiff will or should be in the Brican entities' offices located in the Southern District of Florida.[4]   Only records of payments would be maintained by the Defendants, NCMIC and PSFS 3, in Iowa. It is likely that those payment records are maintained in an electronic format making their production in South Florida both simple and efficient.   The district courts, where the *Patel* and *Derienzo* actions are pending, have no contact or citizenship relationship with any defendant. Use of the Southern District of Florida as the "transferee" court is compelling. It is

---

[3] Conversely, the Iowa corporate Defendant, NCMIC Finance Corporation, was simply named in documents that it permitted Brican to use for NCMIC's economic benefit.    The Defendant PSFS 3 is an Iowa corporate entity that was created subsequent to the commencement of the Wigdor Class Action, as an assignor of NCMIC's agreements, specifically to artificially "trip the switch" on a forum selection clause designating Iowa as venue for disputes.

[4] The location of witnesses and documents plays a significant role in the selection of the transferee court. *See e.g., Avandia Marketing Sales Practices & Product Liability Litigation*, 528 F.Supp.2d 1339, 1341 (J.P.M.L. 2007).

In re Brican America Litigation                                    MDL -

positioned best and no other court stands out as a appropriate candidate.

## Conclusion

Applying the language of 28 U.S.C. § 1407, it is apodictic that "common questions of fact" are pending in different districts and that the District Court for the Southern District of Florida is the overwhelmingly appropriate selection as the transferee court.  Movants request that this Court grant their Motion and enter an order of centralization of the actions set forth in the Schedule of Actions, with such other and further direction and relief as it deems appropriate.

Dated this ____ day of June, 2010.

David H. Charlip
Florida Bar No.: 329932
Charlip Law Group, LLC
Attorneys for Movants
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
dcharlip@charliplawgroup.com

14

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION
## MDL-_____ - In re Brican America Litigation

## SCHEDULE OF ACTIONS[1]

| | | | |
|---|---|---|---|
| **Plaintiff:**<br><br>VIJAY PATEL<br><br>**Defendants:**<br><br>NCMIC FINANCE CORPORATION, an Iowa corporation, d/b/a PROFESSIONAL SOLUTIONS FINANCIAL SERVICES; NCMIC FINANCE CORPORATION OF CALIFORNIA, a California corporation; BRICAN AMERICA, INC., a Florida corporation; BRICAN AMERICA, LLC, a Florida corporation; JEAN FRANCOIS VINCENS, JACK LEMACON, and VISO LASIK MEDSPAS LLC, a Florida limited liability company. | C.D. California | 8:10-00453<br>Class Action | Andrew     J. Guilford |
| **Plaintiff:**<br><br>Peter M. Blauzvern DDS PC, a New York professional corporation, Jeff E. Donnelly, a citizen of Massachusetts, John M. Highsmith, DDS, PA, a North Carolina professional association, Steven B. Oken, a citizen of New York, Justin Chang, PC, a Georgia professional corporation, David Alemar DMD, PC, a Georgia | S.D. Florida | 1:10-20782<br>Class Action | Patricia     A. Seitz |

---

[1] Copies of the most recent complaints filed in each action and the docket sheets are contained in a separate Appendix filed with the motion.

professional corporation, Jeffrey S. Thaller, a citizen of New Jersey, Michael S. Burstein, a citizen of New York, Charles H. Estelle, a citizen of Pennsylvania, Kenneth A. Korpan DDS, PC, an Illinois professional corporation, Stuart A. Curry, a citizen of Alabama, Gary Lederman, a citizen of the State of New York, Brian A. McMurtry, DDS, PA, a North Carolina professional association, Dr. Chandra R. Williams DMD, LLC, a Georgia limited liability company, Geoffrey S. Wozar, DMD, PC, a Pennsylvania professional corporation, Jennifer Goldman, a citizen of California, Amy Thu Tran, a citizen of California, Mountain Lakes Dental Associates, PA, a New Jersey professional association, Peter K. Eng, a citizen of New Jersey, Eye-Deal Family Eye Care, Inc., a Florida corporation, David Archibald, a citizen of Florida, Paul Taylor DMD, Inc., a California corporation, Arthur B. Silver DDS PC, a Georgia professional corporation, John C. Sieweke DDS PC, a Georgia professional corporation, John C. Sieweke, a citizen of Georgia, Amarilis Jacobo, a citizen of New York, Stephen R. Kepley, a Florida citizen, Mark Margolies, a citizen of Pennsylvania, George C. Weeks DDS PA, a Florida professional association, George C. Weeks, a Florida citizen, Alan M. Rapoport, a citizen of Massachusetts, Raymond Goodman, OD, PA, an Idaho professional association, Raymond Goodman, a citizen of Idaho, Cary Family Eye Care, OD, PA, a North Carolina professional association, Dwight W. Barnes, a citizen of North Carolina, Steven J. Luccarelli, a citizen of New York, Stanley D. Halpern, DDS, PC, a Georgia professional corporation, Stanley D. Halpern, a citizen of Georgia, Webster Cosmetic Dental Ltd., an Illinois limited company, d/b/a Webster Cosmetic Dental, Barbara Webster, a citizen of Illinois, Eric Smith, a citizen of Utah, David S. Lee, DDS, Inc., a California corporation, David S. Lee, a citizen of California, Stone Creek Dental, PC, an Idaho professional corporation, Casey S. Butterfield, a citizen of Idaho, Carolina Family Vision, OD, PA, a North Carolina professional association,

In re Brican America Litigation                                    MDL -

| Adam B. Bryan, a citizen of North Carolina, Kristy L. Tart-Bryan, a citizen of North Carolina, Peter Epstein DMD PA, a Florida professional association, Peter Epstein, a Florida citizen, Christopher Young DMD PA, a Florida professional association, Christopher Young, a Florida citizen, Chadds Ford Dental Associates, Inc., a Pennsylvania corporation, Andrew Pratt, a citizen of Pennsylvania, J.M. Arrue DMD LLC, a Georgia limited liability company, J.M. Arrue, a Georgia citizen, Troy R. Lindh DMD PA, a Florida professional association, Troy R. Lindh, a Florida citizen, Brian G. DePetris, a New Jersey citizen, Gordon Bell, a citizen of Pennsylvania, Benjamin Gamm, a citizen of Massachusetts, Eyexam Associates, PA, a New Jersey professional association, Elizabeth Lewis, a Georgia citizen, Kelly L. Kalmar, a New York citizen, Kalmar Family Dentistry, LLP, a New York limited liability partnership, Henderson Mill Dental Care, PC, a Georgia professional corporation, John H. Mason, a citizen of Florida, David AlemarVincentry, a Georgia citizen, ATL Smiles, LLC, a Georgia limited liability company, Joseph F. Alvarez, a Georgia citizen, Dentistry at Vinings, PC, a Georgia professional corporation, Margaret Ames, a New York citizen, Luc E. Kanicky, a Florida citizen, Wanda Arden, a New York citizen, Visual Perceptions Eyecare, LLC, a Connecticut limited liability company, Catherine M. Ferentin, a Connecticut citizen, Visual Perceptions – Vernon, LLC, a Connecticut limited liability company, Robert Aube, a Connecticut citizen, Brodedale Dental, PA, an Idaho professional association, Eric Barney, an Idaho citizen, Travis B. Bartschi, an Idaho citizen, Cedar Bluff Family & Cosmetic Dentistry, PA, a South Carolina professional association, Jeremy R. Bayer, a South Carolina citizen, BW Vision Care, PA, a Florida professional association, doing business as Bright Eyes Family Vision Care, Nathan J. Bonilla-Warford, a Florida citizen, Texarkan Vision Group, PLLC, a Texas company, R. Marc Carozza, an | | | |
| --- | --- | --- | --- |

In re Brican America Litigation                                           MDL -

Arkansas citizen, J. Randall Glass, an Arkansas citizen, Michael J. Barbieri, a New York citizen, Premier Dentistry, Inc., a Pennsylvania corporation, Daniel Casel, a Pennsylvania citizen, Barry I. Cohen, a Pennsylvania citizen, Michael E. and Maria Domingoes, PA, a Florida professional association, doing business as Anastasia Dental Associates, Michael W. Domingoes, a Florida citizen, Benjamin W. Dreksler, a New York citizen, Todd J. Feddock, a Pennsylvania citizen, Gregg Fink DMD, Inc., a Delaware corporation, Gregg Fink, a Delaware citizen, Steven A. Firshein DMD, Inc., a California corporation, Steven A. Firshein, a California citizen, Debra Glassman, a New Jersey citizen, Steven Glassman, a New Jersey citizen, David Goldberg, a New York citizen, Raymond C. Goodman, OD, PA, an Idaho professional association, Raymond C. Goodman, an Idaho citizen, Handschumacher Enterprises, OD, PA, a North Carolina professional association, Jeffrey Handschumacher, a North Carolina citizen, Samir K. Hanna & Associates, PA, a Florida professional association, Samir K. Hanna, a Florida citizen, Unique Dental Center, PC, a Massachusetts professional corporation, doing business as Unique Dental Care, Kevin Wendell, a Rhode Island citizen, Han Hong, a New York citizen, Lisa P. Howard, DDS, PC, a Maine professional corporation, Lisa P. Howard, DDS, LLC, a Maine limited liability company, Lisa P. Howard, a Maine citizen, John T. Kalange, an Idaho citizen, Gregory W. Kalmar, a New York citizen, Joseph R. Kenneally, DMD, PA, a Maine professional association, Joseph R. Kenneally, a Maine citizen, Ira D. Koeppel, PC, a New York professional corporation, Ira D. Koeppel, a New York citizen, David R. Lach, D.D.S., M.S., P.A, a Florida professional association, David R. Lach, a Florida citizen, Anthony LaTempa DMD LLC, a New Jersey limited liability company, Anthony LaTempa, a New Jersey citizen, Raymond Lawrence, a Connecticut citizen, Lucy S. Lee OD, PLLC, a Virginia

In re Brican America Litigation                                    MDL -

professional limited liability company, Lucy S.
Lee, a Virginia citizen, Treva Diane Lee, a
California citizen, Lewis Family Dentistry, LLC, a
Georgia limited liability company, Gregory S. Liss, a
New Jersey citizen, Robert Lustbader, a New
York citizen, Z. Maali Dental, Inc., a Florida
corporation, Ziyad Maali, a Florida citizen,
Peter D. Maro, Jr., DMD MS, PC, a New York
professional corporation, Peter D. Maro, a New
York citizen, Raymond K. Martin DDS MAGD,
PC, a Massachusetts professional corporation,
Raymond K. Martin, a Massachusetts
citizen, Lumberton Optometric Associates,
PLLC, a North Carolina professional limited
liability company, Mirkin's Vision Care, PC, a
New York professional corporation, Daniel
Mirkin, a New York citizen, Larry J. Moray DDS
MS PA, a New York professional association,
Larry J. Moray, a New York citizen, Henderson
Mill Dental Care, PC, a Georgia professional
corporation, doing business as Henderson Mill
Dental Care, John T. Uetsuki, a Georgia
citizen, Asheville Vision Associates OD PA, a
North Carolina professional association, Sid
Morse, a North Carolina citizen, Nelson Eye
Associates, PC, a New Jersey professional
corporation, Marc B. Nelson, a New Jersey
citizen, Christine Nguyen, D.D.S., P.A., a
Florida professional association, Christine
Nguyen, a Florida citizen, Atul M. Patel, BDS,
Inc., a California corporation, Atul M. Patel, a
California citizen, Signature Smiles, PC, a
Georgia professional corporation, George
Prattas, a Georgia citizen, Adnan Qayyum DDS
LLC, a Pennsylvania limited liability company, Adnan
Qayyum, a Pennsylvania citizen, Rodeffer,
Garner & Minor Orthodontics, LC, a Florida
limited liability company, Tod Garner, a Florida
citizen, Charles E. Scholler, a California citizen,
Fred R. Shanks OD, LLC, a Tennessee limited
liability company, Fred R. Shanks, a Tennessee
citizen, Sajini Shetty DMD Dental Offices, PC, a New
Hampshire professional company, Sajini Shetty,
a New Hampshire citizen, Eric S. Smith, DDS,
PC, a Utah professional company, Eric S.
Smith, a Utah citizen, Gray and Smith Family

In re Brican America Litigation                                MDL -

| Dental, PC, an Idaho professional corporation, Delmar Gray, an Idaho citizen, Randall B. Smith, an Idaho citizen, Beth Snyder, a Pennsylvania citizen, Ian Sobler, a New York citizen, Richard E. Sorkin OD, PA, a Florida professional association, Richard E. Sorkin, a Florida citizen, Jerry Strauss, a Florida citizen, Leonard F. Tau, a Pennsylvania citizen, All About Smiles, Inc., a California corporation, Serena Tham, a California citizen, Deogsoo Roh, a California citizen, Robert R. Thousand, III, PA, a Florida professional association, Robert R. Thousand, a Florida citizen, Nathan W. Tilman DDS, PC, a Rhode Island professional corporation, Nathan W. Tilman, a Rhode Island citizen, Value Vision of Tampa Bay, Inc., a Florida corporation, Laura Reilly n/k/a Laura Vizzari, a Florida citizen, David C. Suh DDS, Inc., a California corporation, David Suh, a California citizen, J. Philip Wiygul, a Tennessee citizen, Farid Hanachi DDS PA, a North Carolina corporation, Farid Hanachi, a North Carolina citizen, Ben Schultz, a Connecticut citizen, Stephen M. Montaquila, a Rhode Island citizen, Richard Pyun, a New York citizen, Paul M. Hertz DMD LLC, a New York limited liability company, Paul M. Hertz, a New York citizen, Richard Bruce, PC, a Pennsylvania professional corporation, Richard Bruce, a Pennsylvania citizen, Michael Putt, individually and doing business as Wayland Family Dental Center, a Massachusetts citizen, Charles Fitzpatrick, a New Jersey citizen, The Corbin Family Dental Arts, LLP, a New York limited liability partnership, Bruce Corbin, a New York citizen, North Shore Dental Arts, LLP, a New York limited liability partnership, Richard Corbin, a New York citizen, Kevin P. Ryan DDS, PC, an Illinois professional corporation, Kevin P. Ryan, an Illinois citizen, Jason Lewis, DDS, PA, a Florida corporation, Jason D. Lewis, a Florida citizen, Coley & Coley Family Eyecare, Inc., a Tennessee corporation, Ginger Coley, a Tennessee citizen, Geoffrey A. Banga, a Florida citizen. | | | |
|---|---|---|---|

In re Brican America Litigation                                    MDL -

| **Defendants:** | | | |
|---|---|---|---|
| Brican America, Inc., a Florida corporation, Brican America, LLC, a Florida limited liability company, Brican Financial Services, LLC, a Florida limited liability company, Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC, a Florida limited liability company, Lifestyle of Vision, Inc., a Florida corporation, Viso Lasik Medspas, LLC, a Florida limited liability company, Viso Lasik Medspas of Charlotte, LLC, a North Carolina limited liability company, Viso Lasik Medspas of San Antonio, LLC, a Texas limited liability company, and NCMIC Finance Corporation, doing business as Professional Solutions Financial Services, an Iowa corporation authorized to do business in Florida. | | | |
| STEVEN WIGDOR M.D., P.A.; STEVEN WIGDOR; RADZWILL OPTOMETRIC ASSOCIATES, CHARTERED, a Florida corporation; ERIC M. RADZWILL; CORAL SPRINGS EYE CENTER, CHARTERED; STEVEN R. KOGANOVSKY; BEVILLE DENTAL CARE; ADRIANA PORTER; EYE HEALTH & VISION CENTER, P.A., a Florida corporation; DAVID RUBIN; IVAN ROSENTHAL ; ROBERT M. EASTON, JR., O.D., P.A., a Florida corporation; ROBERT EASTON; VISION ARTS EYECARE CENTER; EDWARD WALKER; ALL EYES OPTICAL, INC., a Florida corporation; VITO GUARIO; MARCIANO FAMILY OPTOMETRIC, P.A., a Florida corporation; BRANDEE MARCIANO; KAUFMAN EYECARE CENTER; SANDFORD KAUFMAN; THE HOUR GLASS, INC., a Florida corporation; JAMES STEPHENS; MITCHELL A. JOSEPHS, D.D.S., P.A., a Florida corporation; MITCHELL JOSEPHS; SANDRA BARKER; NEW VIEW OPTOMETRIC CENTER; MELVIN KASANOFF; JAY GELMAN; PALM | S.D. Florida | 1:10-21608 Class Action | Ursula Ungaro |

In re Brican America Litigation                    MDL -

BEACH EYES OF BOYNTON BEACH;
GREG PIENTKA; BETHANY BRENNER;
PALM VISION CENTER, INC., a Florida
corporation;        STEVEN        ANHALT;
BARRERA   OPTICAL,   INC.,   a   Texas
corporation; MARIO BARRERA; LORI J.
BENDE,      O.D.,     PROFESSIONAL
OPTOMETRIC   CORP.,   a   California
corporation; LORI BENDE; DANIEL DEL
CASTILLO,   D.M.D.,   P.A.,   a   Florida
corporation;  DANIEL  DEL  CASTILLO;
KENNETH   GALLINGER;   OAKWOOD
DENTAL ARTS, LLC, a New York limited
liability      company;      EMANUEL
GRAZIANO; ALAN GROSSMAN; TAD
KOSANOVICH; RAGSDALE & MARTIN
OPTICAL,  INC.,  a  Texas  corporation;
MICHAEL MARTIN; FAMILY VISION
CENTER, P.A., a Florida corporation; LORI
MAZZA;     ADVANCED     DENTAL
CENTER  OF  SUMMERVILLE,  PA,  a
South   Carolina   corporation;   JAMES
MUSCOTT; PETER SCERBO DMD, P.A.,
a Florida corporation; PETER SCERBO;
RAYMOND  E.  SCHWARTZ,  P.A.,  a
Florida    corporation;    RAYMOND    E.
SCHWARTZ;  E.  WAYNE  SIMMONS,
D.M.D. PROSTHODONTIST, P.C., a Texas
corporation;   E.   WAYNE   SIMMONS;
BARRY   SIMON;   DR.   RONALD   N.
SMITH, OPTOMETRIST, INC., a Texas
corporation; RONALD SMITH; TERRY
VAN  DER  HEYDEN;  ADVANTAGE
FAMILY  VISION  CENTER;  CHARLES
PORCH; FRED BUETTNER; MICHAEL
L. GRACE, O.D., P.A., a Texas corporation
; 20/20 VISION CLINIC, LLP, a Texas
limited  liability  partnership;  MICHAEL
GRACE; BLAISDELL DENTAL CENTER,
P.A.,   an   Idaho   corporation;   JOHN
BLAISDELL; JAMES L. CARAZOLA,
D.M.D., P.A., a Florida corporation; JAMES
CARAZOLA;        CHRISTOPHER        S.
CARROLL,  D.D.S.,  P.C.,  a  Wisconsin
corporation; CHRISTOPHER CARROLL;
TRYPHOSE   CHARLES,   D.M.D.;   M.

In re Brican America Litigation                    **MDL -**

COWAN & ASSOCIATES, D.D.S., P.A.;
MICHAEL J. FERNANDEZ, D.M.D., P.A.,
a Florida corporation; MICHAEL
FERNANDEZ; CEDARHURST DENTAL
OFFICE; HOWARD GOLDSCHEIN;
GRAYHILLS, MOHIP DENTAL &
ASSOCIATES OF WELLINGTON;
LAURENCE GRAYHILLS; SPEX IN THE
CITY, LLC, a Washington limited liability
company; MARK HAMILTON; ALAN R.
HEAP, D.M.D., P.A., a Florida corporation;
ALAN HEAP; EMERALD WEST
FAMILY DENTISTRY, PLLC, an Idaho
limited liability company; CHAD HESS;
RICHARD M. KERNAGIS, D.M.D, P.A., a
Florida corporation; RICHARD
KERNAGIS; EAST LYME FAMILY &
COSMETIC DENTISTRY; JOSEPH
PALUMBO; LAKESIDE FAMILY
DENTISTRY, P.L., a Florida limited
liability company; CHRISTOPHER SEPPI;
JOEL E. VACCAREZZA, DDS, P.A., a
Florida corporation; JOEL VACCAREZZA;
EYAD SHEHADEH, D.D.S., P.A., a
Florida corporation; EYAD SHEHADEH;
FREEDMAN & HAAS, P.A., a Florida
corporation; SHARON HAAS; EDWARD
B. BUSCH, D.M.D., P.A., a Florida
corporation; EDWARD BUSCH; KEITH A.
COLWELL, D.D.S., P.C., an Iowa
corporation; KEITH COLWELL; JAY
GELMAN; BEAUTIFUL SMILES
DENTAL CARE; ANTHONY GULDE;
PHILIP K. HAIMAN & ASSOCIATES,
P.A. n/k/a SUNRISE EYE CARE, INC., a
Florida corporation; PHILIP HAIMAN;
ROLAND PARK VISION SERVICES;
BRUCE HYATT; NEELOFAR KHAN;
OBROCHTA CENTER FOR DENTAL
HEALTH STEPHEN P. OBROCHTA
D.D.S. P.A., a Florida corporation;
STEPHEN OBROCHTA; WESLEY B.
SMITH, D.D.S., P.A., a North Carolina
corporation; WESLEY SMITH; JEFFREY
TWEEDY; ANTONIO BARCIAS; EYES
ON THE BAY, P.A., a Florida corporation;

**In re Brican America Litigation**                                    **MDL -**

| | | | |
|---|---|---|---|
| NEIL ELLIOT; RODRICK KEENER; PREMIER DENTAL; ALIGN ORTHODONTICS; SANJEEV SHARMA; ELLIOTT STUPP; FAMILY DENTAL CARE; CHANBO SIM; WADE G. WINKER, D.D.S., P.A., a Florida corporation; WADE WINKER; COUNTRYSIDE DENTAL ASSOCIATES, INC., a Florida corporation; MICHAEL ANCONA; DR. MATOS'S GROWING SMILES, P.A., a New Jersey corporation; MANUEL GONZALEZ; THOMAS JACKA; ALFRED JOHNSON; KENNETH A. MOGELL, D.M.D., P.A., a Florida corporation; KENNETH MOGELL; JOHN D. SHERER, D.M.D., P.A., a Florida corporation; JOHN SHERER; KATY PERIODONTICS MANAGEMENT, INC., a Texas corporation; TIMOTHY HALE; STEPHEN ALLISON; FALLS COSMETIC DENTAL CENTER; SAMUEL CHANDY; and BEHDAD OMRANI.<br><br>**Defendants:**<br><br>NCMIC FINANCE CORPORATION, an Iowa corporation, d/b/a PROFESSIONAL SOLUTIONS FINANCIAL SERVICES; PSFS 3 CORPORATION, an Iowa Corporation; BRICAN AMERICA, INC., a Florida corporation; BRICAN AMERICA, LLC, a Florida corporation; and BRICAN FINANCIAL SERVICES, L.L.C., a Florida limited liability company. | | | |
| **Plaintiff:**<br><br>DR. FRANK DERIENZO<br><br>**Defendants:**<br><br>NCMIC FINANCE CORPORATION, an Iowa corporation, d/b/a PROFESSIONAL SOLUTIONS FINANCIAL SERVICES; PSFS 3 CORPORATION, an Iowa Corporation; and BRICAN AMERICA, LLC, a Florida limited liability company. | N.J. (Newark) | 2:10-01173<br>Class Action | Madeline C. Arleo |

**In re Brican America Litigation** MDL -

Dated this ⟨⟩ day of June, 2010.

David H. Charlip
Florida Bar No.: 329932
Charlip Law Group, LLC
Attorneys for Movants
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
dcharlip@charliplawgroup.com

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

**In re** Brican America Litigation                          **MDL –**

## Revised Proof of Service

I hereby certify that a copy of the foregoing Motion, Brief, Schedule of Actions and this Revised Certificate of Service was served by United States First Class Mail on the 10th day of June, 2010, to the following:

## Court Clerks

Clerk, Central District of California
411 West Fourth Street
Room 1053
Santa Ana, California 92701-4516

Clerk, Southern District of Florida
400 North Miami Avenue
8th Floor
Miami, Florida 33128

Clerk, District of New Jersey
50 Walnut Street
Newark, New Jersey 07101



In re Brican America Litigation                                    MDL -

## California Litigation

Kenneth Joseph Catanzarite
kcatanzarite@catanzarite.com
Nicole M. Catanzarite
ncatanzarite@catanzarite.com
Catanzarite Law Offices
2331 West Lincoln Avenue
Anaheim, California 92801
**Counsel for Plaintiff Patel**
**Central District of California**
**Case No. 8:10-00453**

Sara Karubian
skarubian@gmail.com
Ryan J. Larsen
Ryan.larsen@kattenlaw.com
Katten Muchin LLP
2029 Century Park East
Suite 2600
Los Angeles, California 90067
**Counsel for Defendants NCMIC Finance and NCMIC Finance of California**
**Central District of California**
**Case No. 8:10-00453**

Brican America, Inc.
Jeff Vincens – Registered Agent
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33126
**Central District of California**
**Case No. 8:10-00453**

Brican America, LLC
Yvette J. Harell – Registered Agent
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33126
**Central District of California**
**Case No. 8:10-00453**

2

In re Brican America Litigation                    **MDL -**

Jean Francois Vincens
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33126
**Central District of California**
**Case No. 8:10-00453**

Jack Lemacon
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33126
**Central District of California**
**Case No. 8:10-00453**

Visio Lasik Medspas LLC
Yvette J. Harell – Registered Agent
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33126
**Central District of California**
**Case No. 8:10-00453**


### Florida Litigation

Ronald Pendl Gossett
Gossett & Gossett
Building I
4700 Sheridan Street
Hollywood, Florida 33021
rongossett@gossettlaw.com
**Counsel for Blauzvern Plaintiffs**
**Southern District of Florida**
**Case No. 1:10-20782**

In re Brican America Litigation                                    **MDL -**

David H. Charlip
Florida Bar No.: 329932
Charlip Law Group, LLC
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
dcharlip@charliplawgroup.com
**Counsel for Movants**
**Counsel for Wigdor Plaintiffs**
**Southern District of Florida**
**Case No. 1:10-21608**

Alan Samuel Fine
Alan S. Fine, P.A.
255 Alhambra Circle
Suite 850
Coral Gables, Florida 33134
affine@fine-law.com
**Counsel for Defendants Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, Jean Francois Vincens, Jacques Lemacon, JJR Investments, LLC, Viso Lasik Medspas, LLC, Viso Lasik Medspas of Charlotte, LLC, and Viso Lasik Medspas of San Antonio, LLC**
**Southern District of Florida**
**Case Nos. 1:10-20782 and 1:10-21608**

Jeff Tomberg
Jeff Tomberg, J.D., P.A.
626 SE 4th Street
PO Box 1426
Boynton Beach, Florida 33425
piatty@yahoo.com
**Counsel for Defendants Salvatore M. DeCanio, Jr., and Lifestyle of Vision, Inc.**
**Southern District of Florida**
**Case No. 1:10-20782**

4

**In re Brican America Litigation**                                    **MDL -**

Catherine Magdalena Rodriguez
Levey Filler Rodriguez Kelso & De Bianchi LLP
1688 Meridian Avenue
Suite 902
Miami Beach, Florida 33139
cmrodriguez@leveyfiller.com
**Counsel for Defendants NCMIC Finance Corporation and PSFS 3
Corporation**
**Southern District of Florida**
**Case Nos. 1:10-20782 and 1:10-21608**

## New Jersey Litigation

Keith A. McKenna
McKenna McIlwain, LLP
96 Park Street
Montclair, New Jersey 07042
kam@kmckennalaw.com
**Counsel for Plaintiff Derienzo**
**District of New Jersey**
**Case No. 2:10-01173**

Brican America, LLC
c/o Teresa Mogollon – Office Manager
5301 Blue Lagoon Drive
Suite 520
Miami, Florida 33142
**District of New Jersey**
**Case No. 2:10-01173**

Professional Solutions Financial Services
c/o Greg Cole, President
14001 University Avenue
Clive, Iowa 50325
**District of New Jersey**
**Case No. 2:10-01173**

**In re Brican America Litigation**                           **MDL -**

Dated this 10th day of June, 2010.

David H. Charlip
Florida Bar No.: 329932
Charlip Law Group, LLC
Attorneys for Movants
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
dcharlip@charliplawgroup.com



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

**In re** Brican America Litigation                                    **MDL** –


## APPENDIX

| **Exhibit** | **Document** |
| --- | --- |
| A | Patel Complaint |
| B | Patel Docket Sheet |
| C | Blauzvern Amended Complaint |
| D | Blauzvern Docket Sheet |
| E | Wigdor Supplemented Amended Complaint |
| F | Wigdor Docket Sheet |
| G | DiRienzo Complaint |
| H | DiRienzo Docket Sheet |

**In re Brican America Litigation**                                    **MDL -**

Dated this ___4th___ day of June, 2010.

_____

David H. Charlip
Florida Bar No.: 329932
Charlip Law Group, LLC
Attorneys for Movants
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
dcharlip@charliplawgroup.com

RECEIVED
CLERK'S OFFICE
2010 JUN - 7  A 9: 51
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUN 1 4 2010

FILED
CLERK'S OFFICE

# EXHIBIT "A"

COPY

Kenneth J. Catanzarite (SBN 113750)
Email: kcatanzarite@catanzarite.com
Nicole Catanzarite-Woodward (SBN 205746)
Email: ncatanzarite@catanzarite.com
CATANZARITE LAW CORPORATION
2331 West Lincoln Avenue
Anaheim, California 92801
Telephone: (714) 520-5544
Facsimile: (714) 520-0680

Attorneys for Plaintiffs

FILED

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

2010 APR 12  PM 1: 51

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

**SACV10-00453   AG MLGx**

VIJAY PATEL, an individual, on
behalf of himself, and all others
similarly situated,

       Plaintiffs,

v.

NCMIC FINANCE CORPORATION,
doing business as Professional
Solutions Financial Services an Iowa
corporation; NCMIC FINANCE
CORPORATION OF CALIFORNIA, a
California corporation; BRICAN
AMERICA INC., a Florida corporation;
BRICAN AMERICA, LLC, a Florida
limited liability company; JEAN
FRANCOIS VINCENS, an individual;
JACK LEMACON, an individual; and
VISO LASIK MEDSPAS, LLC, a
Florida limited liability company.

Case No.: _____

**CLASS ACTION COMPLAINT
FOR THE FOLLOWING
COUNTS:**

1. **Breach of Contract**
2. **Breach of the Duty of Good
   Faith and Fair Dealing**
3. **Fraud**
4. **Negligent Misrepresentation**
5. **Unjust Enrichment**
6. **Untrue or Misleading
   Statements Violation of the
   California False Advertising
   Law Cal. Bus. & Prof. Code §
   17500, et seq.**
7. **Fraudulent, Unfair, and
   Deceptive Business Practices
   Violation of the California
   Unfair Competition Law Cal.
   Bus. & Prof. Code § 17200, et
   seq.**

//

//

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]

2795.301A.01

# TABLE OF CONTENTS

Page No.

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1.

II.    JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2.

III.   THE PARTIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2.

IV.    ALTER EGO ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5.

V.     BACKGROUND FACTS; THE "*SHARE YOUR SCREEN MAKE SOME GREEN*" PROMOTION AND THE 1990s RECOMM SCHEME  . . . . . .  6.

VI.    THE FAILURE TO MARKET ADVERTISING OTHER THAN VISO DISCLOSES THE FRAUDULENT SCHEME; THE VISO MEDSPAS BUSINESS PLAN AND FUNDING  . . . . . . . . . . . . . . . . . . . . . . . . . .  10.

VII.   THE UNIFORM MARKETING AND PROMOTION OF THE EXHIBEO SYSTEM VIA THE GREEN PROMOTION, THE LEASES AND THE MARKETING AGREEMENT(S)  . . . . . . . . . . . . . . . . . . . . .  13.

VIII.  THE PROCESS OF FUNDING; THE MISREPRESENTATIONS AND THE "POT" & "PARTNERSHIP" OF BRICAN INC, BRICAN LLC, VISO, VINCENS AND LEMACON PLAINTIFF'S NOTICE OF CANCELLATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15.

IX.    CLASS ACTION ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20.

       COUNT I
       Breach of Contract (Plaintiff on behalf of the Nationwide Class
       [Including the California Subclass] v. Defendants) . . . . . . . . . . . . . . . .  22.

       COUNT II
       Breach of the Duty of Good Faith and Fair Dealing
       (Plaintiffs on behalf of the Nationwide Class
        [Including the California Subclass] v. Defendants)  . . . . . . . . . . . . . . .  24.

       COUNT III
       Fraud
       (Plaintiff on behalf of the Nationwide Class
        [Including the California Subclass] v. Defendants)  . . . . . . . . . . . . . . .  25.

       COUNT IV
       Negligent Misrepresentation
       (Plaintiffs on behalf of the Nationwide Class
        [Including the California Subclass] v. Defendants)  . . . . . . . . . . . . . . .  27.

       COUNT V
       Unjust Enrichment
       (Plaintiff and the Nationwide Class
       [Including the California Subclass] v. Defendant) . . . . . . . . . . . . . . . . .  28.

//

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]

2795.301A.01

COUNT VI
Untrue or Misleading Statements Violation of the California False
Advertising Law Cal. Bus. & Prof. Code § 17500, et seq.
(Plaintiff on behalf of the California Subclass v. Defendants) ........ 29.

COUNT VII
Fraudulent, Unfair, and Deceptive Business Practices Violation
of the California Unfair Competition Law Cal. Bus. & Prof.
Code § 17200, et seq.
(Plaintiff on behalf of the California Subclass v. Defendants) ........ 31.

PRAYER FOR RELIEF ............................................. 32.

JURY TRIAL DEMAND ........................................... 33.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

**CLASS ACTION COMPLAINT**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1    Plaintiff, VIJAY PATEL, on behalf of himself, and all others similarly

2    situated (collectively referred to sometimes herein as "Plaintiff"), brings this

3    action against defendants NCMIC FINANCE CORPORATION, doing business as

4    Professional Solutions Financial Services ("PSFS") an Iowa corporation, NCMIC

5    FINANCE CORPORATION OF CALIFORNIA ("PSFS-CA") a California

6    corporation, BRICAN AMERICA INC. ("BRICAN INC") a Florida corporation,

7    BRICAN AMERICA, LLC ("BRICAN LLC"), a Florida limited liability

8    company, JEAN FRANCOIS (JACK) VINCENS ("VINCENS"), a Canadian and

9    French citizen and resident of Florida, JACK LEMACON ("LEMACON"), a

10   resident of Florida, VISO LASIK MEDSPAS, LLC ("VISO"), a Florida limited

11   liability company (collectively referred to sometimes herein as "Defendants") for

12   breach of contract (Count One); breach of the duty of good faith and fair dealing

13   (Count Two); fraud (Count Three); negligent misrepresentation (Count Four);

14   unjust enrichment (Count Five), under the California False Advertising Law, Cal.

15   Bus. & Prof. Code § 17500, *et seq.* (Count Six), under the California Unfair

16   Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.* (Count Seven), and

17   allege:

## I.

### PRELIMINARY STATEMENT

20       1.    By this action, Plaintiff, on behalf of the class (herein the "Lessees'

21   seeks damages and challenges BRICAN, PSFS and PSFS-CAs' in excess of 1,

22   equipment lease agreements (the "Leases"), dating from May 2006, with thos

23   persons who purchased equipment, the "Exhibeo System", from salesperson

24   BRICAN INC and BRICAN LLC each of which was coupled with a "Mark

25   Agreement", an example of which is attached to this complaint as Exhibit

26   incorporated by reference, which provided payments that would pay the

27   obligation under the Leases. Plaintiff alleges that PSFS and PSFS-CA v

28   aware that each of the Leases they were financing for BRICAN INC ar

---

1

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]

1   LLC were being promoted and sold on the basis that the members of the plaintiff
2   class, the Lessees, would not have any out of pocket expense for the Leases
3   because the Lessees would in turn receive an equal payment amount  pursuant to
4   the Marketing Agreement. Further, the Marketing Agreement provided that if
5   payments ceased thereunder then BRICAN would repurchase the Exhibeo System,
6   relieving the Lessees from any obligation under the Leases.

7       2.      In January 2010, BRICAN INC and BRICAN LLC announced they
8   would no longer make the Marketing Agreement payments directly or indirectly
9   for their affiliate VISO, and PSFS and PSFS-CA have notified the Lessees that,
10  notwithstanding its knowledge of the buy back agreement, it nevertheless demands
11  full and timely payment on the Leases.

12      3.      Further, Plaintiff alleges that PSFS and PSFS-CA knew, or in the
13  exercise of reasonable diligence would have known, that VINCENS, who
14  controlled BRICAN INC,  BRICAN LLC and VISO, had entered into a similar
15  scheme in the mid 1990s which ended in a Chapter 11 bankruptcy and litigation
16  when the advertising and marketing payments that had been agreed upon with
17  lessees also stopped and the lessees suffered a similar fate.

18      4.      Plaintiffs allege, upon information and belief, that the conduct of the
19  defendants was such that the entire Exhibeo System lease sales process was
20  nothing more than a fraudulent scheme wherein the payments provided by PSFS
21  and PSFC-CA to BRICAN LLC, for equipment leased by the new lessees was
22  funding millions in compensation to VINCENS and LEMACON, capitalization of
23  VISO and its various medspas and payments on the Marketing Agreement to
24  earlier lessees.

25      5.      PSFS and PSFS-CA paid BRICAN INC and BRICAN LLC
26  approximately $24,000, to acquire the Exhibeo System, when the actual equipment
27  was worth no more than one-tenth or $2,400, with the Marketing Agreement when
28  in the year of their relationship prior to introduction of the Marketing Agreement

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

2

**CLASS ACTION COMPLAINT**

1   to the sales process the very same Exhibeo System sold for $13,000.

2       6.      In the end, approximately $38 million was paid by PSFS and PSFS-

3   CA to BRICAN LLC and BRICAN INC pursuant to the fraudulent scheme and the

4   Lessees, without the relief requested herein, would be obligated on Leases totaling

5   in excess of $50 million.

6                                    II.

7                       JURISDICTION AND VENUE

8       7.      Plaintiff invokes the Class Action Fairness Act ("CAFA"), 28 U.S.C.

9   §§ 1332(d) and 1453 in which this court has original jurisdiction over a class

10  action with at least 100 plaintiffs, which involves an amount in controversy over

11  $5,000,000 and in which minimal diversity exists between the defendants and any

12  member of the plaintiff class. Plaintiff alleges that none of the local and home-

13  state discretionary and mandatory controversy exceptions of 28 U.S.C. §

14  1332(d)(3), § 1332(d)(4)(A) and §1332(d)(4)(B) apply.

15      8.      This Court has supplemental jurisdiction over the California State

16  Law claims pursuant to 28 U.S.C. § 1367.

17                                   III.

18                              THE PARTIES

19      9.      Plaintiff, VIJAY PATEL ("PATEL"), is currently residing in the

20  County of Los Angeles in the State of California.

21      10.     Defendant, BRICAN AMERICA INC. ("BRICAN INC"), is a Florida

22  corporation which at one time held California Certificate of Qualification as Entity

23  Number: C2795688, filed on July 22, 2005, since surrendered, with its business

24  offices located at 5301 Blue Lagoon Drive, Suite 520, Miami, Florida 33126.

25      11.     Defendant, BRICAN AMERICA, LLC ("BRICAN LLC"), is a

26  Florida limited liability company which holds California Certificate of

27  Qualification Entity Number: 200915510001, filed on June 2, 2009, with its

28  business offices located at 5301 Blue Lagoon Drive, Suite 520, Miami, Florida

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

                                     3
                         CLASS ACTION COMPLAINT

1    33126.

2        12.    Unless otherwise indicated references to BRICAN herein shall mean

3    BRICAN INC and BRICAN LLC, jointly and severally, because each entity is the

4    alter ego of the other as described further below.

5        13.    Defendant, VISO LASIK MEDSPAS, LLC ("VISO") is a Florida

6    limited liability company, organized November 26, 2007, with its business offices

7    also located at 5301 Blue Lagoon Drive, Suite 520, Miami, Florida 33126.

8        14.    Defendant, JEAN FRANCOIS (JACK) VINCENS ("VINCENS"), is

9    a Canadian and French citizen and resident of Florida. VINCENS controls 50% of

10   the ownership of BRICAN INC and BRICAN LLC and with LEMACON 2/3rds

11   of the ownership of VISO.

12       15.    Defendant, JACK LEMACON ("LEMACON"), is a resident of

13   Florida. LEMACON controls 50% of the ownership of BRICAN INC and

14   BRICAN LLC and with LEMACON 2/3rds of the ownership of VISO.

15       16.    Defendant, NCMIC FINANCE CORPORATION is an Iowa

16   corporation, doing business as Professional Solutions Financial Services ("PSFS")

17   holding California Certificate of Qualification Entity Number: C2333249, filed

18   February 14, 2001, with its business offices located at 14001 University Avenue,

19   Clive, Iowa 50325, the Agent for Service of Process of which is National

20   Registered Agents, Inc. located at 2875 Michelle Drive, Suite 100, Irvine,

21   California 92606.

22       17.    Defendant, NCMIC FINANCE CORPORATION OF CALIFORNIA

23   is a California corporation, also doing business as Professional Solutions Financial

24   Services ("PSFS-CA") Entity Number: C2723090, incorporated on February 18,

25   2005, with its business offices located at 14001 University Avenue, Clive, Iowa

26   50325, the Agent for Service of Process of which is National Registered Agents,

27   Inc. located at 2875 Michelle Drive, Suite 100, Irvine, California 92606.

28       18.    Unless otherwise indicated herein, references to PSFS with respect to

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

4

**CLASS ACTION COMPLAINT**

1    the California subclass shall refer to PSFS and PSFS-CA jointly and severally.

2                                        **IV.**

3                        **ALTER EGO ALLEGATIONS**

4         19.    Plaintiff alleges that VINCENS and LEMACON are in control of and

5    so dominate the affairs of BRICAN INC, BRICAN LLC and VISO such that all

6    such entities are his/their alter egos and any separateness is a fiction and to

7    sanction separateness would operate as a fraud. The foregoing defendants are

8    controlled out of the same offices at  5301 Blue Lagoon Drive, Suite 520, Miami,

9    Florida 33126, share the same controlling persons in Defendants  VINCENS and

10   LEMACON, the same support personnel and files, the same computer and

11   electronic systems and move money between entities without any formalities as if

12   one combined "pot" and "partnership", to fund the opening of Lasik Medspas in

13   the states of California, Florida, Texas, North Carolina and others, as was

14   described in the sworn deposition testimony of VINCENS on October 8, 2009 in

15   litigation between PSFS and BRICAN INC, then pending in the District Court for

16   the Southern District of Florida, Case No. 09-21192, since terminated with a final

17   order of dismissal is entered on February 23, 2010 (such deposition testimony

18   referred to herein as the "Deposition").

19        20.    At all times relevant to this Complaint, Plaintiff is  informed,

20   believes, and thereon alleges that there exists and existed a unity of interest,

21   ownership and control between VINCENS and LEMACON and BRICAN INC,

22   BRICAN LLC and VISO such that any individuality and separateness between

23   them has ceased, and BRICAN INC, BRICAN LLC and VISO were and are, at all

24   times relevant to this Complaint, the alter egos of VINCENS and LEMACON and

25   one another, in that, without limitation, BRICAN INC, BRICAN LLC and VISO

26   at all times relevant to this Complaint, used and continue to use assets of one

27   another for VINCENS and LEMACON's personal use and benefit and one

28   another, and VINCENS and LEMACON so completely controlled, dominated,

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

---
                                         5
                          **CLASS ACTION COMPLAINT**

1   managed and operated BRICAN INC, BRICAN LLC and VISO, that any

2   separateness between VINCENS and LEMACON and BRICAN INC, BRICAN

3   LLC and VISO has ceased to exist.  Adherence to the fiction of separate existence

4   of BRICAN INC, BRICAN LLC and VISO as business entities distinct from one

5   another and VINCENS and LEMACON would permit an abuse of the corporate

6   and or limited liability company privilege and would instead promote injustice.

7       21.   Plaintiff is informed, believes, and thereon alleges that, at all times

8   relevant to this Complaint, BRICAN INC, BRICAN LLC and VISO were the alter

9   egos of one another and VINCENS and LEMACON as the agent, servant,

10  employee, joint venturer, authorized representative, or partner of each other, and

11  in doing the things hereinafter mentioned were acting within the course and scope

12  of said relationship, and with the knowledge, permission, consent or ratification of

13  each other.

14                              V.

15  **BACKGROUND FACTS; THE "*SHARE YOUR SCREEN MAKE SOME***

16  ***GREEN*" PROMOTION AND THE 1990s RECOMM SCHEME**

17      22.   Upon information and belief, PSFS is in the business of, inter alia,

18  providing financing, often through leases, such as the Leases here involved, to

19  creditworthy entities, such as the Lessees here involved, to allow those entities to

20  obtain goods and services.

21      23.   Upon information and belief, BRICAN is in the business of leasing to

22  medical, dental, optometry and chiropractic providers, a combined

23  television/computer system, described under the marketing and system name,

24  Exhibeo System, which displays health care information to patients visiting the

25  Lessees' offices.

26      24.   Upon information and belief, on or about July 15, 2005, PSFS and

27  BRICAN INC entered into a "Vendor Agreement", pursuant to which, PSFS

28  agreed to accept assignment of leases and thereby to purchase certain equipment

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

6

**CLASS ACTION COMPLAINT**

1    and software from BRICAN INC for the purpose of leasing or financing the same

2    for customers of BRICAN INC and BRICAN LLC.

3        25.    From July of 2005 until May of 2006, the cost of the Exhibeo System

4    was marketed without the Marketing Agreement and the equipment loaded with

5    the software, cost approximately $13,000. Sales were very low because the

6    purchase had to stand on its own economically for each lessee.

7        26.    Commencing in May of 2006 VINCENS launched the *"Share Your*

8    *Screen Earn Some Green"* promotion which coupled the Lease with a Marketing

9    Agreement which, in a uniform manner, represented that the payments under the

10   Marketing Agreement would pay the Lease (the "Green Promotion").

11       27.    At the time of the Green Promotion the cost of the very same Exhibeo

12   System was increased by $11,000 to $24,000 because, as VINCENS would

13   explain he "wanted to make more money".

14       28.    Since PSFS funded all leases, both before and after May of 2006, it

15   was fully aware of not only the increased Exhibeo System price to $24,000 but

16   also the Marketing Agreement.

17       29.    Plaintiff alleges upon information and belief that VINCENS told Fred

18   Scott and Todd Cook, agents of PSFS, about the Green Promotion and gave a copy

19   of the Marketing Agreement to Todd Cook and PSFS encouraged the scheme

20   because it envisioned and realized substantial sales and placement of new leases.

21       30.    Plaintiff alleges upon information and belief that PSFS became a

22   willing participant in the fraudulent scheme when it embraced the plan because at

23   that time it knew or in the exercise of reasonable diligence, should have known

24   about VINCENS past with respect to his involvement in the early 1990s litigation

25   concerning Optical Technologies, Inc., and a group of affiliated companies,

26   Recomm International Display Corp., Recomm Operations, Inc, and Recomm

27   Enterprises, Inc. (hereafter referred to collectively "Recomm"). After the failure of

28   Recomm in 1993, VINCENS left the United States for Canada and Europe and did

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

7

**CLASS ACTION COMPLAINT**

1   not return until 2004.

2       31.   The Recomm case involved a scheme virtually identical to that
3   involved here, indeed BRICAN can be substituted for Recomm for most elements
4   and compared as follows:

5           a.     Recomm used electronic billboards and kiosks (collectively
6       "kiosks") for advertising with a series of advertisers it lined up to pay fees
7       from which Recomm would take a percentage for management and pass the
8       remainder to the lessees. *In comparison:* BRICAN uses the Exhibeo System
9       to display the advertising materials of its alter ego VISO which was
10      purported to make payments for the advertising obligation.

11          b.     Recomm, convinced several advertising agencies of the merits
12      of advertising via the kiosks. These advertisers were to pay various fees
13      from which Recomm would take its management percentage and pass the
14      remainder to the lessees.  *In comparison:* BRICAN inserted its own affiliate
15      and alter ego VISO, with a minimum payment sufficient to cover the annual
16      lease obligation, with the knowledge that VISO was first only an idea and
17      later a start up and had no revenue to pay for advertising let alone millions
18      in advertising fees as occurred here.

19          c.     Recomm convinced pharmacists, veterinarians, optometrists,
20      and others of the profits they would earn by locating the kiosks at their
21      places of business if they became lessees. *In comparison:* BRICAN targeted
22      the very same market and added dentists to the mix with the Exhibeo
23      System in place of kiosks.

24          d.     Recomm acquired the necessary kiosks, leased them to the
25      pharmacists and others, the lessees. Recomm assigned the leases to finance
26      companies who paid Recomm up front and became the lessors. Recomm
27      also entered into advertising contracts with the Lessees that provided that
28      the lessees would receive a stated percentage of the advertising fees. *In*

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

8

**CLASS ACTION COMPLAINT**

1    *comparison:* BRICAN LLC acquired the Exhibeo System and ostensibly

2    sold the same to BRICAN INC which entered into a series of leases, the

3    Leases, with the Lessees, which BRICAN INC assigned to PSFS, and in

4    California PSFS-CA, who became lessor. Lessees entered into the

5    Marketing Agreement with BRICAN LLC and VISO which provided that

6    the Lessees would receive a minimum annual fee and a potential for more.

7         e.      Recomm received payments from the advertising agencies,

8    from which it took a percentage and passed on the remainder to the lessees.

9    Recomm represented to the lessees, and the lessors, that the lessees' share of

10   the advertising fees would provide an amount that would, more than cover,

11   the lessees' lease payments. *In comparison:* BRICAN went further in the

12   Exhibeo System scheme and provided, by the Marketing Agreement, that

13   the minimum annual advertising fee to be paid by its affiliate and alter ego

14   VISO would be $5,800 and in the event the payments ceased it would buy

15   back the equipment thus relieving the Lessees of the obligation under the

16   Leases. The minimum Marketing Agreement payment, compared to the

17   annual lease payments of $6,096 ($508 per month for 12 months),was a

18   shortfall of only $296 per year or $24.66 per month. By all representations

19   the combination of the Leases with the Marketing Agreement meant the

20   Lessees would be minimally out of pocket on a guaranteed basis.

21        f.      Recomm's projections of adverting revenue was far short of its

22   forecast and the lessees share of advertising fees from the kiosks was far

23   short of the amount necessary to make the lease payments. The lessees were

24   unable to make the lease payments because of the advertising revenue

25   shortfall and, as a consequence, defaulted on the lease payments. The

26   lessors commenced collection efforts. *In comparison:* BRICAN has

27   announced that it will not make any further payments on the Marketing

28   Agreement and the Lessees are under financial pressure and defaults are

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

9

**CLASS ACTION COMPLAINT**

1  rising among the plaintiff Lessee class and PSFS is threatening collection

2  action on the Leases and is refusing to honor the buy back term of the

3  Marketing Agreement.

## VI.

## THE FAILURE TO MARKET ADVERTISING OTHER THAN VISO
## DISCLOSES THE FRAUDULENT SCHEME; THE VISO MEDSPAS
## BUSINESS PLAN AND FUNDING

8      32.    VINCENS knew and at that time, PSFS either knew or in the exercise

9  of reasonable diligence, should have known, that the increased cost from $13,000

10  to $24,000 for the very same Exhibeo System was funding the Marketing

11  Agreement payments, the start up of VISO and millions to VINCENS and

12  LEMACON because when the Green Promotion started in May of 2006, VISO

13  was nothing more than a concept and at best a business plan in search of funding.

14      33.    VINCENS  in his Deposition testified that at the time of the launch of

15  the Green Promotion in May of 2006 VISO had no operating business location

16  only an idea and that the first such VISO Lasik Medspa opened in south Florida in

17  April of 2007, called Wellington, one year later.

18      34.    Plaintiff alleges, upon information and belief, that VISO opened only

19  three medspas in the states of Florida, North Carolina and Texas and while in

20  negotiation to open one in Northern California which because of PSFS cutting off

21  funding in April of 2009 was not opened.

22      35.    As each of the Leases were signed the Lessees were each obligating

23  themselves for payments of $508 per month with a present value of $27,542, using

24  a 5% discount rate. Comparatively, as VISO and BRICAN signed each Marketing

25  Agreement with the $5,800 minimum payments, payable quarterly, the present

26  value of the obligation was $26,235, over the same term as the Leases, using a 5%

27  discount rate. The present value difference was only $1,307 for each lease signed.

28  //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

---

10

**CLASS ACTION COMPLAINT**

36.     PSFS while funding each 100 leases was paying BRICAN LLC $2,400,000 and would know that BRICAN LLC and VISO were obligating themselves simultaneously for $2,623,500 in minimum advertising fee payments and a buy back for the equipment in the event those payments stopped.

37.     Had PSFS conducted any due diligence on BRICAN LLC and VISO it would have learned, if it did not already know, that the payments it was making was funding marketing fee payments to earlier lessees, millions to VINCENS and LEMACON and a start up idea of medspas to give the scheme a cover story.

38.     PSFS either knew or in the exercise of reasonable diligence would have known, that VISO, the business entity appearing jointly as obligor with BRICAN LLC on the Marketing Agreement had not been formally organized and would not be organized until November 2007 and that as the Green Promotion commenced there was not a single VISO medspa in existence that could demonstrate successful operation.

39.     Moreover, VINCENS, in his Deposition testified that:

a.     BRICAN LLC and VISO agreed to pay the minimum fee of $5,800 in order to get the money from PSFS.

b.     VINCENS recognized that VISO paying a marketing fee for advertising in a Los Angeles dental office bore no possibility of generating a visitor to the VISO medspas in Florida, Texas and North Carolina.

c.     The money BRICAN LLC received from the sales to PSFS created "a pot in order to open a Lasik center in Florida, Texas and North Carolina" and the advertising fee generated money to lend to VISO to open the centers.

d.     As of the time of the Deposition $7 million had been loaned to VISO directly from the funds BRICAN LLC received from PSFS.

e.     As of the time of the Deposition VISO had not paid any amount towards the $5,800 minimum advertising fee on any of the Leases.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

11

**CLASS ACTION COMPLAINT**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1    f.    BRICAN LLC made no efforts until commencing in October of

2    2009 to find advertisers other than VISO to advertise on the Exhibeo

3    System.

4    g.    As of the time of his Deposition no advertisers other than VISO

5    had been placed under contract to pay a fee for advertising on the Exhibeo

6    System.

7    40.    PSFS in the exercise of reasonable diligence would have read the

8    Marketing Agreement and questioned easily determined that the ability to pay a

9    continued $5,800 per year under the marketing agreement and to viably back up

10   the guarantee to repurchase the Exhibeo System if BRICAN LLC and VISO were

11   unable to pay the advertising fee, was entirely dependent upon the financial

12   strength of VISO, BRICAN INC and BRICAN LLC.

13   41.    Plaintiff alleges that PSFS and PSFS-CA turned a blind eye to any

14   investigation of the Marketing Agreement and financial viability of the

15   representations contained therein and failed to obtain and evaluate the financial

16   statements of BRICAN INC, BRICAN LLC and/or VISO to make such a

17   determination. Any such investigation would have disclosed the obvious, that the

18   Green Promotion was nothing more than a fraudulent scheme by VINCENS and

19   LEMACON to syphon millions of dollars from the Lessees.

20   42.    The Green Promotion was very successful and in the period from

21   May 2006 through late 2008, BRICAN became the largest source by both volume

22   of leases and dollar commitments for PSFS.

23   43.    As a result of the Green Promotion, PSFS funded in excess of 1,600

24   leases, the Leases, with customers of BRICAN INC and BRICAN LLC, the

25   "Lessees", each members of the Nationwide Class and or the California subclass.

26   //

27   //

28   //

12

**CLASS ACTION COMPLAINT**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

# VII.

## THE UNIFORM MARKETING AND PROMOTION OF THE EXHIBEO SYSTEM VIA THE GREEN PROMOTION, THE LEASES AND THE MARKETING AGREEMENT(S)

44.    The Green Promotion was a nationwide effort that involved a sales force including representatives in each state where the marketing effort was under way including California.

45.    BRICAN trained all of its representatives at its Florida offices and used a uniform approach to what would be delivered by each of them verbally and in terms of documentation with respect to the Exhibeo System, including advertising and promotional materials in print and on the web.

46.    BRICAN in conjunction with VISO, and with the knowledge of PSFS, in a uniform and systematic manner, marketed the Exhibeo System as a 'no cost' system on a "Share Your Screen. Earn Some Green" (the "Green Promotion") promotion as follows:



13

**CLASS ACTION COMPLAINT**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

1    47.    Further, BRICAN, in print and on the web, marketed the Exhibeo

2    System with the following representation:

3    > Good business plans rely in part, on good relationships. *Such
4    > as the one VISO LASIK MEDSPAS is offering to handpicked
     > physicians like you.*

5    > *VISO LASIK MEDSPAS would like to purchase a **small**
     > **percentage** of your on-screen message time* to promote its
6    > LASIK facilities through Brican America LLC. Knowing that
     > VISO LASIK MEDSPAS is the pinnacle of LASIK centers
7    > places your office in good company. It is recognition by
     > association.

8
     > Of course, the same Brican-quality and style of messages that
9    > promote your practice will be used for the promotion of VISO
     > LASIK MEDSPAS, as well. So you never have to concern
10   > yourself with the quality of our presentation.

11   > But most of all, there is more in this for you than simple
     > recognition. *VISO LASIK MEDSPAS is offering to **sponsor you**
12   > in return for our shared use of your screen. It's as if **VISO**
     > **LASIK MEDSPAS, in association with Brican America LLC,**
13   > **were practically underwriting your own EXHIBEO System**.

14   > Just *for the use of a small 10 percent of your screen time **It's**
     > **like having a partner in your financing***.
15
     > Your Brican America LLC representative will he more than
16   > happy to explain in greater detail how **our Share Your Screen**
     > **program** works. And how it can positively affect your bottom
17   > line.

18   > It's a marketing proposal that benefits you, your patients and
     > VISO LASIK MEDSPAS.
19
     > But *because we are making offer only to a select few
20   > physicians' offices in each VISO LASIK MEDSPAS market area
     > we **urge you to make your decision rapidly**. Think of **it as**
21   > **money in the bank**. It's a relationship you can t afford to let
     > slip away.
22   > Emphasis added.*

23    48.    Each of the Lessees entered into two separate agreements, an

24   Equipment Lease Application and Agreement for the Exhibeo System, by and

25   between BRICAN INC and the lessee, and a Marketing Agreement, by and

26   between, BRICAN LLC and VISO on the one hand and "Client" the Plaintiff and

27   class on the other.

28   //

14
**CLASS ACTION COMPLAINT**

1    49.    The Equipment Lease Application and Agreement, based upon

2    information and belief, was a form provided by PSFS to BRICAN, to use as its

3    'private label' for its use in signing leases with each of the Lessees. No where on

4    the form is there any express reference to PSFS. Each of Leases provided:

5              a.    The "Lessor" was described as BRICAN INC.

6              b.    The "Equipment Description" was the Exhibeo System.

7              c.    Payment terms were 3 months at $0 and then 60 months at

8    $508 per month with a $1.00 buyout at end of term.

9    50.    The Exhibeo System was comprised of various items, including a

10   monitor, computer, video camera and specialized informational videos loaded onto

11   the system regarding health issues and medical care.

12   51.    PSFS knew that BRICAN operated a website to maintain the software

13   of video libraries and provided ongoing support for the Exhibeo System at the

14   time it made the payments to BRICAN LLC on the Leases.

## VIII.

## THE PROCESS OF FUNDING; THE MISREPRESENTATIONS AND THE

## "POT" & "PARTNERSHIP"

## OF BRICAN INC, BRICAN LLC, VISO, VINCENS AND LEMACON

## PLAINTIFF'S NOTICE OF CANCELLATION

20   52.    PSFS and not BRICAN INC, the lessor on the lease, reviewed the

21   credit of each of the potential lessees.

22   53.    Once approved by PSFS, BRICAN would arrange the delivery of the

23   Exhibeo System and once proof of delivery was confirmed, BRICAN LLC would

24   fax an invoice to PSFS for the $24,000 would then be paid BRICAN LLC. Indeed

25   BRICAN maintained no inventory of the Exhibeo System and each unit was

26   shipped directly from the provider.

27   //

28   //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

15

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                    2795.301A.01

54.     The Marketing Agreement, sold as a part of the Green Promotion for the Exhibeo System, and in the hands of PSFS since May of 2006, conveyed to each of the Lessees that if VISO did not pay the payments due under the Marketing Agreement that "BRICAN will repurchase [Lessees'] lease agreement in regard to the Exhibeo [System]." wherein it was provided:

...

D)     **Purchase of Advertising**: Brican America LLC (Brican), **on behalf of VISO LASIK MEDSPAS LLC.** Shall purchase advertising space from the Client in accordance with the terms of this Agreement for each year that this Agreement remains in effect. The purchase of the advertising space hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)     **Advertising Space**: The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by the Client and will consist of 15 seconds animations after each sequence of 4 client's animations.

...

G)     **Advertising Fees**: Brican agrees to pay Client a minimum of $ _5,800_ per year for advertising space, **for each year this Agreement remains in effect**. Within thirty (90) days following the end of each year of the term of this Agreement, Brican will review the value of the advertising space provided by Client, taking into account potential customer volume at Client's facility and actual business generated from LASIK patients from such advertisements except for those receiving co-management fees from VISO LASIK MEDSPAS, Brican will adjust the annual advertising payment, on an annual basis, retroactive to the beginning of the then current year of the term, based upon Brican's determination of the fair market value

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

16.

**CLASS ACTION COMPLAINT**

1  of advertising space at Client's facility but the annual value will never be

2  less than the minimum amount specified above.

3  H)     **Timing of Payments**: Client will become <u>eligible</u> for the payment

4  schedule described below 90 days after delivery of the Exhibeo Concept.

5  **This does not mean the quarterly payments begin after 90 days**. All

6  applicable payments issued by Brican to the Client, in accordance with

7  Paragraph D, will be paid on a quarterly basis according to the following

8  schedule: January 1st / April 1st / July 1st / October 1st The first and last

9  payments will be prorated.

10  I)     **Term**: This Agreement *shall be effective for a period of two years*

11  *following delivery of the Exhibeo Concept, and shall automatically be*

12  *renewed for three (3) additional, consecutive one year terms, unless*

13  *terminated by the Client upon written notice to Brican*. Brican may

14  terminate this Agreement upon written notice to the Client if the Client is in

15  default with respect to lease payments to the institution which is financing

16  the Exhibeo Concept for the Client.

17  J)     **Cancellation**: *If VISO LASIK MEDSPAS fails to honor its*

18  *commitment relating to the advertising fees and if the Client requests it,*

19  *Brican will repurchase the Clients lease agreement in regard to the Exhibeo*

20  *Concept*.

21  *Emphasis added.*

22      55.     Based upon information and belief, VISO never paid any of the fees

23  due under the Marketing Agreement, all such fees were paid out of new Lessees'

24  money funded from PSFS from new leases assigned to it by BRICAN INC

25  pursuant to which payments were made to BRICAN LLC.

26      56.     BRICAN INC, BRICAN LLC and VISO announced in January of

27  2010 that they would be unable to continue to pay any of the minimum advertising

28  fees under the Marketing Agreement for any of the Lessees.

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

17

**CLASS ACTION COMPLAINT**

1    57.    Once the Marketing Agreement payments stopped, Plaintiff, in

2    accordance with paragraph J. thereof, demanded that BRICAN repurchase his

3    Exhibeo System such that he would no longer be obligated to pay the lease and

4    BRICAN has refused claiming it is unable to do so.

5    58.    On February 23, 2010, Plaintiff wrote to PSFS which, Plaintiff

6    alleges is responsible, given its knowledge of the Green Promotion for the

7    representations under the Marketing Agreement and paragraph J. thereof:

8    ... I regret to inform you that I am not willing to continue the lease that I

9    have with you and *as per our contract* am requesting the buyout of

10   Bricam(sic). Please consider this as my final 30 day notice and arrange for

11   pick up of your equipment...

12   *Emphasis added.*

13   59.    PSFS has refused to pick up the Exhibeo System claiming that it has

14   nothing to do with the Marketing Agreement's promise of a buy back.

15   60.    Plaintiff, based upon information and belief alleges that PSFS and

16   PSFS- CA knew or in the exercise of reasonable diligence would know that:

17   a.    BRICAN's sales staff was instructed to offer the Marketing

18   Agreement to every potential Lessee of the Exhibeo System, regardless of

19   where the Lessee was located in the United States.

20   b.    Pursuant to the Marketing Agreement, BRICAN LLC and

21   VISO promised the Lessees advertising fees in exchange for advertising

22   Viso Medspas 10% of the time on their Exhibeo System and that these fees

23   were virtually identical to the Lessees' payments due to PSFS on the Leases.

24   c.    BRICAN's sales staff promoted the Marketing Agreement as

25   making the Lessees' obligation on the Leases virtually free.

26   d.    BRICAN's sales staff promoted the Marketing Agreement as a

27   promise to buy back the Exhibeo System, thus canceling the remaining

28   obligations of the Lessees' on the Leases in the event that BRICAN LLC

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

18

**CLASS ACTION COMPLAINT**

1    and VISO discontinued the payments of the advertising fees thus providing

2    a guarantee that the Exhibeo System was virtually free.

3          e.      VISO was not a viable business capable of paying the

4    minimum advertising fees pursuant to the Marketing Agreement and that no

5    other business contracted for or even being solicited to offset the obligations

6    of VISO on each of such agreements.

7          f.      PSFS knew that the Marketing Agreement was being executed

8    by virtually all of the Lessees on the Leases, regardless of where the lessee

9    was located.

10         g.      Based on the terms of the Marketing Agreement, for each sale

11   that BRICAN made it and VISO were incurring an obligation to each of the

12   Lessees in an amount greater than what PSFS funded on behalf of each of

13   the Leases when it acquired an Exhibeo System from BRICAN LLC.

14         h.      In short, BRICAN could only stay in business by continuing to

15   originate new sales, and receiving the up-front payment from PSFS, to pay

16   for its existing Marketing Agreement obligation to each of the Lessees.

17         i.      BRICAN had a continuing obligation to support the Exhibeo

18   System software and to update the on line library.

19         j.      That VINCENS involvement with Recomm posed virtually a

20   certain risk that the Green Promotion was simply a recycled and updated

21   version of the earlier fraudulent scheme.

22         k.      The Leases and the Marketing Agreement(s) operated as "one"

23   agreement and given PSFS knowledge and involvement in the scheme,

24   PSFS is responsible for the buy back guarantee, and each and every one of

25   the Leases must be canceled.

26         l.      The representation that if BRICAN LLC and VISO stopped

27   making payments pursuant to the Marketing Agreement that the Lessees

28   could discontinue their payments to PSFS on the Leases was a known risk

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

19.

**CLASS ACTION COMPLAINT**

1    and guarantee assumed by PSFS by virtue of its involvement in and

2    knowledge of the Green Promotion which utilized the same.

3                                         IX.

4                      **CLASS ACTION ALLEGATIONS**

5        61.    Pursuant to Rule 23 (a) and (b)(2), and (b)(3) of the Federal Rules of

6    Civil Procedure, Plaintiff brings this action on behalf of himself and a Nationwide

7    Class of similarly situated persons defined as:

8        **All persons who leased the Exhibeo System equipment coupled with a**

9        **Marketing Agreement from BRICAN INC and or BRICAN LLC and**

10       **whose lease is assigned to PSFS or retained by BRICAN INC or**

11       **BRICAN LLC from May 2006 and continuing to present (the "Class**

12       **Period").**

13       62.    Plaintiff also brings certain of the claims, as identified hereafter, on

14   behalf of the following California Subclass:

15       **All persons in the State of California who leased the Exhibeo System**

16       **equipment coupled with a Marketing Agreement from BRICAN INC**

17       **and or BRICAN LLC and whose lease is assigned to PSFS and or**

18       **PSFS-CA or retained by BRICAN INC or BRICAN LLC during the**

19       **Class Period.**

20       63.    Excluded from the Nationwide Class and California Subclass are the

21   officers, directors, and employees of Defendants, and its/his/their legal

22   representatives, heirs, successors, and assigns.

23       64.    Plaintiff does not know the exact number of class members. As

24   alleged herein commencing on or about May, 2006, BRICAN INC and BRICAN

25   LLC joined by VISO commenced a the Green Promotion scheme of coupling the

26   Marketing Agreement with the Lease and made the uniform representations

27   related thereto as described above to all the Lessees with respect to each of the

28   Leases. Plaintiff believes that the class members number in excess of 1,600

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

20

**CLASS ACTION COMPLAINT**

1   Lessees and as such are sufficiently numerous and geographically dispersed

2   throughout the United States that joinder of all class members is impracticable.

3       65.   There are questions of law or fact common to the Nationwide Class

4   and the California Subclass, including, but not limited to, the following:

5          a.   Whether the Lease coupled with the Marketing Agreement is

6   enforceable where the uniform representation was made that the Marketing

7   Agreement payments would offset the Lease obligation and that in the event

8   the payments thereunder stopped the Leases could be canceled including as

9   against PSFS and PSFS-CA;

10          b.   Whether PSFS and PSFS-CA had actual or constructive

11   knowledge of the uniform representations described at paragraphs 40-41,

12   50-51 and 60 above or are otherwise chargeable with such knowledge;

13          c.   Whether defendants are in violation of Cal. Bus. & Prof Code §

14   17500, et seq.;

15          d.   Whether defendants are in violation of Cal. Bus. & Prof. Code

16   § 17200, et seq.;

17          e.   Whether Plaintiffs and members of the class are entitled to

18   damages and/or restitution and the appropriate measure of damages; and

19          f.   Whether Plaintiffs and members of the class are entitled to

20   injunctive and other equitable relief.

21       66.   Plaintiff is a member of the Nationwide Class and a member of the

22   California Subclass. Plaintiff's claims are typical of the claims of other class and

23   subclass members.

24       67.   Plaintiff will fairly and adequately protect the interests of the

25   Nationwide Class and California Subclass. There is no conflict of interest between

26   Plaintiff and other members of the Nationwide Class and/or California Subclass.

27   Plaintiff is represented by counsel experienced in class actions and consumer law.

28   //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

21

**CLASS ACTION COMPLAINT**

1    68.    Defendants have acted in an unlawful manner on grounds generally

2 applicable to all members of the Nationwide Class and California Subclass.

3    69.    The questions of law or of fact, common to the claims of the

4 Nationwide Class and California Subclass, predominate over any questions

5 affecting only individual class members, so that the certification of this case as a

6 class action is superior to other available methods for the fair and efficient

7 adjudication of the controversy

8    70.    For these reasons, the proposed Nationwide Class and California

9 Subclass may be certified under Rule 23 of the Federal Rules of Civil Procedure.

10                                      **COUNT I**

11    **Breach of Contract (Plaintiff on behalf of the Nationwide Class**

12          **[Including the California Subclass] v. Defendants)**

13    71.    Plaintiff repeats and incorporates herein by reference the allegations

14 in the preceding paragraphs of this Complaint, as if set forth fully herein. Plaintiff

15 brings this cause of action on behalf of himself and the Nationwide Class,

16 including the California Subclass.

17    72.    As alleged herein, each of the Leases of the Lessees was procured by

18 the uniform Green Promotion representations and coupled with the Marketing

19 Agreement such that each of the Leases and each related Marketing Agreement

20 operated as "one" agreement.

21    73.    The Marketing Agreement provides at paragraph J. thereof as

22 follows:

23    J)    **Cancellation:** *If VISO LASIK MEDSPAS fails to honor its*

24    *commitment relating to the advertising fees and if the Client requests it,*

25    *Brican will repurchase the Clients lease agreement in regard to the Exhibeo*

26    *Concept.*

27    *Emphasis added.*

28    //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

22

**CLASS ACTION COMPLAINT**

1   74.   Plaintiff alleges that PSFS and PSFS-CA was fully aware of and

2   consented to the foregoing provisions of the Marketing Agreement and knew or in

3   the exercise of reasonable diligence would have known that VINCENS through

4   BRICAN INC, BRICAN LLC and VISO was involved in a fraudulent scheme that

5   would end with a default on the Marketing Agreement and the insolvency of

6   VINCENS, LEMACON, BRICAN INC, BRICAN LLC and VISO and a breach of

7   the Marketing Agreement.

8   75.   Plaintiff alleges that since PSFS and PSFS-CA took the lease

9   assignment with knowledge of the scheme, it is bound to cancel each of the Leases

10  of each of the Lessees.

11  76.   PSFS and PSFS-CA have refused to cancel each of the Leases of the

12  Lessees and has refused to acknowledge Plaintiff's express cancellation of his

13  lease as above described at paragraph 58.

14  77.   Plaintiffs and members of the Nationwide Class and California

15  Subclass have suffered harm as a result of the breach of the Marketing Agreement

16  and the refusal of BRICAN LLC and VISO to abide by the Marketing Agreement

17  right to cancel the Leases as above described.

18  78.   The threat by PSFS and PSFS-CA to pronounce a default on each of

19  the Leases as to each of the Lessees in the event they exercise their rights under

20  the Marketing Agreement and opt to cancel the Leases, operates as a threat to

21  damage the credit reporting status of each of the class members, which will have a

22  negative impact upon the credit standing of the class members.

23  79.   Plaintiffs and members of the Nationwide Class and California

24  Subclass seek a determination that each of the Leases as to each of the respective

25  Lessees is subject to cancellation as a result of breach of the Marketing

26  Agreement; preliminary and permanent injunctive, declaratory, and equitable relief

27  as may be appropriate; actual damages, and disgorgement of any profits made by

28  defendants as a result of this scheme involving the Leases and the Green

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

23

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                                2795.301A.01

1 | Promotion; and reasonable attorney's fees and other litigation costs.

## COUNT II

### Breach of the Duty of Good Faith and Fair Dealing

### (Plaintiffs on behalf of the Nationwide Class

### [Including the California Subclass] v. Defendants)

6   80.   Plaintiff repeats and incorporates herein by reference the allegations

7 in the preceding paragraphs of this Complaint, as if set forth fully herein. Plaintiff

8 brings this cause of action on behalf of himself and the Nationwide Class,

9 including the California Subclass.

10   81.   Implied in each and every contract including the Leases here involved

11 and the related Marketing Agreement, each as above described.

12   82.   The refusal of the Defendants to acknowledge the right of Plaintiff

13 and the Lessees to cancel each of the Leases based upon the breach of the

14 Marketing Agreement is a breach of not only the "one" agreement here involved

15 but a breach of the covenant of good faith and fair dealing related thereto.

16   83.   The threat by PSFS and PSFS-CA to pronounce a default on each of

17 the Leases as to each of the Lessees in the event they exercise their rights under

18 the Marketing Agreement and opt to cancel the Leases, operates as a threat to

19 damage the credit reporting status of each of the class members, which will have a

20 negative impact upon the credit standing of the class members.

21   84.   Plaintiffs and members of the Nationwide Class and California

22 Subclass seek a determination that each of the Leases as to each of the respective

23 Lessees is subject to cancellation as a result of breach of the Marketing

24 Agreement; preliminary and permanent injunctive, declaratory, and equitable relief

25 as may be appropriate; actual damages, and disgorgement of any profits made by

26 defendants as a result of this scheme involving the Leases and the Green

27 Promotion; and reasonable attorney's fees and other litigation costs.

28 | //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

24

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                    2795.301A.01

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

# COUNT III

## Fraud

## (Plaintiff on behalf of the Nationwide Class

## [Including the California Subclass] v. Defendants)

85.    Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein. Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, including the California Subclass.

86.    At the time BRICAN representatives made the aforementioned representations Defendants, VINCENS, LEMACON, BRICAN INC, BRICAN LLC and VISO knew and PSFS and PSFS-CA either knew or recklessly disregarded "red flags" that would have so informed it/them of the truth, that the Green Promotion was a fraudulent scheme to sell the Exhibeo System in a manner solely to raise money for VINCENS and LEMACON and to earn profits on the Leases payable from the Lessees to PSFS and PSFS-CA, and that the Defendants had no legitimate expectation or reasonable basis to conclude that VISO could afford to pay the advertising fee from its non-existent and later unprofitable operations.

87.    Plaintiff alleges that PSFS and PSFS-CA, if it/they did not already know the truth, ignored the following "red flags" that would have disclosed the truth:

   a.    VINCENS comparative involvement with the Recomm business failure which would have shown up in any reasonable background investigation;

   b.    The price increase of $11,000 to $24,000 for the very same Exhibeo System when coupled with the Marketing Agreement commencing in May of 2006;

//

25

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                                    2795.301A.01

c.    VISO's lack of existence and lack of any business activity, let alone profitable business activity;

d.    VISO's lack of any reasonably based business plan with adequate capitalization therefore independent of the scheme of selling the Exhibeo System to Lessees pursuant to the Leases;

e.    That VISO never paid any advertising fees pursuant to the Marketing Agreement and that the payments were being paid by BRICAN LLC which only source of cash were the sale of Exhibeo Systems to PSFS and PSFS-CA;

f.    That VISO was purportedly 'advertising' nationwide when it in early 2009 had medspas in only three limited geographic areas and that logically patients of the Lessees who would view the advertising would not travel great distances to have treatment done when the equal Lasik treatment was available in their locality;

g.    The present value of each Marketing Agreement obligation by BRICAN LLC and VISO to pay advertising fees was $26,235 when the amount paid to BRICAN LLC for the Exhibeo System was $24,000; and

h.    The Exhibeo System was not inventoried by BRICAN INC or BRICAN LLC and had an actual cost of only $2,400, an amount that was so disproportionate to the payment of $24,000, as to signal a fraudulent scheme when contrasted to the pre-Green Promotion Marketing Agreement coupling with the Leases, where the same equipment was sold for only $13,000.

88.    Plaintiff and the class reasonably relied upon the representations of the Green Promotion and would have had no way of reasonably learning the truth.

89.    Defendants made the foregoing promises and representations, or stood silent knowing the truth or recklessly disregarding the "red flags" that would have led to the truth, knowing that Plaintiff and the class would reasonably rely on the same and with the intended purpose of inducing Plaintiff and the class of

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

26

**CLASS ACTION COMPLAINT**

1    Lessees to sign the Leases and obligate themselves thereon.

2          90.    PSFS and PSFS-CA motive for hiding its knowledge of the truth and

3    ignoring the "red flags" was to garner substantial profits from the Leases while

4    it/they believed they could later plausibly deny such knowledge.

5          91.    But for Defendants promises and representations, Plaintiff and the

6    class would not have signed the Leases, had the truth been known.

7          92.    PSFS and PSFS-CA either learned the truth, or recklessly disregarded

8    the above "red flags" which would have disclosed the same, but joined in and

9    assisted in the scheme to make profits on the Leases for itself/themselves.

10         93.    As a direct and proximate result of such conduct by Defendants, and

11   each of them, Plaintiff and the class, have been damaged, the precise amount of

12   which damages will be determined according to proof at trial.

13         94.    In acting in the manner described above, Defendants, and each of

14   them, acted with oppression, fraud and malice generally as well as within the

15   meaning of California Civil Code section 3294.  As such, Plaintiff and the class is

16   additionally entitled to an award of punitive or exemplary damages in a sum

17   sufficient to punish or set an example of their truly despicable conduct.

18         95.    Plaintiff and the class request all other and appropriate relief.

19                            **COUNT IV**

20                     **Negligent Misrepresentation**

21              **(Plaintiffs on behalf of the Nationwide Class**

22            **[Including the California Subclass] v. Defendants)**

23         96.    Plaintiff repeats and incorporates herein by reference the allegations

24   in the preceding paragraphs of this Complaint, as if set forth fully herein. Plaintiff

25   brings this cause of action on behalf of himself and the Nationwide Class,

26   including the California Subclass.

27         97.    This Count IV is an alternative to Count III.

28   //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

27

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                          2795.301A.01

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

98.     At the time BRICAN representatives made the aforementioned representations Defendants, VINCENS, LEMACON, BRICAN INC, BRICAN LLC, VISO, PSFS and PSFS-CA either knew or negligently disregarded "red flags" that would have so informed it/them of the truth, that the Green Promotion was not based upon reasonable forecasts and projections such that the representations that VISO would be able to pay the advertising fees pursuant to the Marketing Agreement was erroneous.

99.     Plaintiff, did not know the truth about the representations being made nor that the Defendants lacked a reasonable basis therefore.

100.   As a direct and proximate result of such negligent representation by Defendants, and each of them, Plaintiff and the class, have been damaged, the precise amount of which damages will be determined according to proof at trial.

101.   Plaintiff and the class request all other and appropriate relief.

## COUNT V

### Unjust Enrichment

### (Plaintiff and the Nationwide Class

### [Including the California Subclass] v. Defendant)

102.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs 1 through 95 above of this Complaint, as if set forth fully herein. Plaintiff brings this cause of action on behalf of himself and the Nationwide Class, including the California Subclass.

103.   Defendants benefitted from his/its/their unlawful acts through the receipt of lease payments on the Leases by Lessees for the Exhibeo System from Plaintiff and other members of the Nationwide Class and the California Subclass. It would be inequitable for Defendants to be permitted to retain the benefit of these lease payments and to continue to demand the payment on the Leases by Lessees.

//

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                                2795.301A.01

1     104.   Defendants continue to benefit from his/its/their unlawful acts

2  through the receipt of lease payments on the Leases from the Lessees. It would be

3  inequitable for Defendant to be permitted to retain the benefit of these monies.

4     105.   Plaintiff and the class are entitled to the establishment of a

5  constructive trust consisting of the benefit to Defendants of such lease payments

6  from which Plaintiff and members of the Nationwide Class may make claims for

7  restitution and disgorgement.

8

9     106.   Plaintiff and the class request all other and appropriate relief.

10               **COUNT VI**

11  **Untrue or Misleading Statements Violation of the California False**

12               **Advertising Law**

13           **Cal. Bus. & Prof. Code § 17500, et seq.**

14  **(Plaintiff on behalf of the California Subclass v. Defendants)**

15     107.   Plaintiff repeats and incorporates herein all allegations set forth at

16  paragraphs 1 through 95 and 102 through 106 above, as if set forth fully herein.

17  This Count is brought on behalf of all class members who reside in the State of

18  California.

19     108.   The acts, omissions, and practices of Defendants alleged herein

20  include untrue or misleading statements made in connection with the provision of

21  goods and services which were known, or which by the exercise of reasonable care

22  should have been known, to be untrue or misleading, in violation of Cal. Bus. &

23  Prof Code § 17500, et seq.  These untrue or misleading statements include, but are

24  in no way limited to, the following:

25        a.     Representing that there was a reasonable basis for BRICAN

26         and VISO to enter into the Marketing Agreement when there was no

27         reasonable expectation that VISO would ever be able to make any such

28         payments;

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

29

**CLASS ACTION COMPLAINT**

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

b.    Representing that the Leases would be paid for by the advertising fees payable pursuant to the Marketing Agreement;

c.    Representing that the Marketing Agreement obligation, upon to default, that BRICAN LLC would buy back the Exhibeo System was reasonably based;

d.    Representing through marketing, in a uniform and systematic manner, that the Leases could be canceled if BRICAN LLC and VISO discontinued payments on the Marketing Agreement;

e.    Representing that the Exhibeo System had a valuation of not less than $27,000, based upon the present value of the lease payments, when it was being purchased for only $2,400;

f.    Representing that the Exhibeo System had a present value of not less than $27,000 when as late as April of 2006 the same system had been sold at only $13,000;

g.    Representing that the on line library of the Exhibeo System would be maintained when the scheme would run out of funds when new leases placed were less than the obligations on the old leases for Marketing Agreement payments;

h.    Representing that "Share Your Screen Earn Some Green" was reasonably based when the same was a scheme to generate lease placements; and

i.    Other untrue or misleading statements as alleged above.

109.  Plaintiff and the California Subclass have suffered harm and lost money or property as a result of Defendants' violations of California Business and Professions Code § 17500, et seq., including paying monthly payments on the Leases and other fees and charges to Defendants.

110.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and the California Subclass seek restitution, disgorgement, injunctive relief and all other

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                             2795.301A.01

1  relief from Defendants allowed under Cal. Bus. & Prof Code § 17500, et seq.

2  Plaintiff and the California Subclass also seek attorney's fees pursuant to Cal.

3  Code Civ. Proc. § 1021.5, as well as such other and further relief as the Court

4  deems just and proper.

5                                    **COUNT VII**

6  **Fraudulent, Unfair, and Deceptive Business Practices Violation of the**

7  **California Unfair Competition Law Cal. Bus. & Prof. Code § 17200, et seq.**

8        **(Plaintiff on behalf of the California Subclass v. Defendants)**

9        111.   Plaintiff repeats and incorporates herein all allegations set forth at

10  paragraphs 1 through 95 and 102 through 110 above, as if set forth fully herein.

11  This Count is brought on behalf of all class members who reside in the State of

12  California.

13       112.   By engaging in the acts and practices described herein, Defendants

14  have committed one or more unfair business practices within the meaning of Cal.

15  Bus. & Prof. Code §§ 17200, et seq.

16       113.   The acts, omissions, and practices alleged in the Complaint constitute

17  a continuous course of unfair, unlawful, and/or fraudulent business practices

18  within the meaning of Cal. Bus. & Prof Code § 17200, et seq. including, but in no

19  way limited to, the following:

20             a.      The violation of Cal. Bus. & Prof. Code § 17500 set forth

21        above;

22             b.      Other unfair, unconscionable, misleading or fraudulent conduct

23        as alleged above.

24       114.   Plaintiff and the California Subclass have suffered harm and loss of

25  money or property as a result of such unfair and unlawful business practices,

26  including payments on the Leases and other fees and charges by Defendants.

27  //

28  //

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

31

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                          2795.301A.01

115.   On information and belief, Defendants are continuing to collect payments from Lessees on the Leases and to threaten collection action and adverse credit reporting if any of the Lessees discontinue the payments on the Leases, and there is no indication that Defendants will stop this conduct in the future. Defendants' unlawful and unfair business practices will continue to cause members of the California Subclass harm.

116.   Pursuant to Cal. Bus. & Prof Code § 17204, Plaintiff and the California Subclass seek restitution, disgorgement, injunctive relief and all other relief from Defendants allowed under Cal. Bus. & Prof. Code § 17200, et seq. Plaintiff and the California Subclass also seek attorney's fees pursuant to Cal. Code Civ. Proc. §1021.5, as well as such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in his/their favor as follows:

1.   Declaring that this action is a proper class action both nationwide and in California and certifying Plaintiff as the representative of the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.   Declaring that Defendants have breached each of the Leases and the coupled Marketing Agreement by refusing to cancel the same.

3.   Declaring that Defendants have breached the covenant of good faith and fair dealing in each of the Leases and the coupled Marketing Agreement by refusing to cancel the same;

4.   Declaring that Defendants hold all payments on the Leases in constructive trust for the benefit of payment to plaintiffs;

5.   Declaring that AOL has violated and is in violation of Cal. Bus. & Prof. Code § 17500, et seq.;

//

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

32

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                    2795.301A.01

6.     Declaring that AOL has violated and is in violation of Cal. Bus. & Prof. Code § 17200, et seq.;

7.     Declaring that Defendants have violated and are in violation of the common law;

8.     Awarding Plaintiff and the Classes injunctive relief including but not limited to enjoining Defendants from any efforts to collect on the Leases and to enjoin the adverse credit reporting associated with such non-payment.

9.     Ordering Defendants to disgorge revenues and profits wrongfully obtained and awarding restitution to Plaintiff and members of the Classes;

10.     Awarding Plaintiff and members of the Classes punitive and exemplary damages;

11.     Awarding Plaintiff and members of the Class costs, interest, expenses and attorneys' fees for bringing and prosecuting this action; and

12.     Whatever other and further relief the Court deems just and proper.

### JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully demands a trial by jury for all causes of action so triable.

DATED: April 12, 2010.

Kenneth J. Catanzarite,
*for* Catanzarite Law Corporation
Attorneys for VIJAY PATEL, on behalf of himself and all others similarly situated

CATANZARITE LAW CORPORATION
2331 WEST LINCOLN AVENUE
ANAHEIM, CALIFORNIA 92801
TEL: (714) 520-5544 • FAX: (714) 520-0680

33

**CLASS ACTION COMPLAINT**

[WP/100412 FedComplaint (Final).wpd]                                           2795.301A.01

1

2

## APPENDIX I

## Defined Terms and Acronyms

| Terms/ Acronym | Full Description | Page(s) Defined |
|---|---|---|
| BRICAN | BRICAN INC and BRICAN LLC, jointly and severally. | 4 |
| BRICAN INC | BRICAN AMERICA INC., a Florida corporation. | 3 |
| BRICAN LLC | BRICAN AMERICA, LLC, a Florida limited liability company. | 3 |
| CAFA | The Class Action Fairness Act. | 3 |
| Class Period | May 2006 to Present. | 20 |
| Client | Person(s) whom as Lessees entered into two separate agreements, an Equipment Lease Application and Agreement for the "Exhibeo System", by and between BRICAN INC and the lessee, and a Marketing Agreement, by and between, BRICAN LLC and VISO on the one hand and the Plaintiff and class, on the other. | 14 |
| Defendants | Collectively NCMIC Finance Corporation, doing business as Professional Solutions Financial Services, NCMIC Finance Corporation of California, Brican America Inc., Brican America, LLC, Jean Francois (Jack) Vincens, Jack Lemacon, Viso Lasik Medspas, LLC. | 1 |
| Deposition | The deposition testimony of VINCENS on October 8, 2009 in litigation between PSFS and BRICAN INC, in the U.S. District Court for the Southern District of Florida, Case No. 09-21192. | 5 |
| Equipment Description | The Exhibeo System as named in the Equipment Lease Application and Agreement. | 15 |
| Exhibeo System | Equipment consisting of a combined television/computer system, described under the marketing and system name, Exhibeo System, which displays health care information to patients visiting the Lessees' offices and sold by salespersons of BRICAN INC and BRICAN LLC. | 1, 6 |
| Green Promotion | The "Share Your Screen Earn Some Green" promotion launched by VINCENS in May of 2006. BRICAN in conjunction with VISO, and with the knowledge of PSFS, in a uniform and systematic manner, marketed the Exhibeo System as a 'no cost' system on a "Share Your Screen. Earn Some Green" promotion. | 7, 13 |
| kiosks | Electronic billboards and kiosks used by Recomm | 8 |

| Terms/ Acronym | Full Description | Page(s) Defined |
|---|---|---|
| LEMACON | JACK LEMACON | 4 |
| Lessees | Plaintiff, Vijay Patel, and all others similarly situated | 1 |
| Leases | The Equipment Lease Application and Agreement, dating from May 2006, with those persons who purchased equipment, the Exhibeo System, from salespersons of BRICAN INC and BRICAN LLC each of which was coupled with a Marketing Agreement. | 1 |
| Lessor | BRICAN INC as named in the Equipment Lease Application and Agreement. | 15 |
| Marketing Agreement | Marketing Agreement between Lessees and salespersons of BRICAN INC and BRICAN LLC each of which was coupled with the Exhibeo System. | 1 |
| PATEL | Vijay Patel | 3 |
| Plaintiff | Plaintiff Vijay Patel, on behalf of himself, and all others similarly situated | 1 |
| PSFS | NCMIC Finance Corporation, doing business as Professional Solutions Financial Services, an Iowa corporation | 4 |
| PSFS-CA | NCMIC Finance Corporation of California, a California corporation | 4 |
| Recomm | Optical Technologies, Inc., and a group of affiliated companies, Recomm International Display Corp., Recomm Operations, Inc, and Recomm Enterprises, Inc. | 7 |
| VINCENS | Jean Francois (Jack) Vincens | 4 |
| VISO | Viso Lasik Medspas, LLC, a Florida limited liability company | 4 |

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order #_____

A) Complimentary Cards: VISO LASIK MEDSPAS will provide the Client, on demand, with unlimited "Complimentary MedSpa" gift cards ($55 value), allowing the client to reward patients for their faithfulness.

B) Network: The Client will automatically belong to the Viso network and will be listed as such on the local VISO LASIK MEDSPAS website. Every patient coming to the VISO LASIK MEDSPAS will be directed to a member of the network if he/she has the need for a specialist in the area.

C) Preferred rates: As part of this agreement, the Client and any employees of the Client will be eligible for a 50% discount on LASIK surgery. The Client, employees and relatives are also eligible for the Passport program. They will receive a 50% discount on all Medspa treatments up to the time they recoup the cost of LASIK procedure.

D) Purchase of Advertising: Brican America LLC (Brican), on behalf of VISO LASIK MEDSPAS LLC, shall purchase advertising space from the Client in accordance with the terms of this Agreement while it remains in effect. The purchase of the advertising space hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E) Advertising Space: The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by the Client and will consist of 15 seconds animations after each sequence of 4 client's animations.

F) Content of Advertising: (Mark one option)

❑ Brican reserves the exclusive right, even if the local LASIK center is not open yet, to run any advertisements or placing of posters and printed materials regarding Laser Vision Correction, Refractive Surgery and LASIK Centers practicing these procedures.

❑ Brican reserves the exclusive right to advertise products sold within the Client's practice. Any income derived from advertising sold by Brican will be retained by Brican.

G) Advertising Fees: Brican agrees to pay Client a minimum of $ 5,862 per year for advertising space, for each year this Agreement remains in effect. Within thirty (30) days following the end of each year of the term of this Agreement, Brican will review the value of the advertising space provided by Client, taking into account potential customer volume at Client's facility and actual business generated from LASIK patients from such advertisements except for those receiving co-management fees from VISO LASIK MEDSPAS. Brican will adjust the annual advertising payment, on an annual basis, retroactive to the beginning of the then current year of the term, based upon Brican's determination of the fair market value of advertising space at Client's facility but the annual value will never be less than the minimum amount specified above.

H) Timing of Payments: Client will become eligible for the payment schedule described below 90 days after delivery of the Exhibeo Concept. This does not mean the quarterly payments begin after 90 days. All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid on a quarterly basis according to the following schedule: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

I) Term: This Agreement shall be effective for a period of two years following delivery of the Exhibeo Concept, and shall automatically be renewed for three (3) additional, consecutive one year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client.

J) Cancellation: If VISO LASIK MEDSPAS fails to honor its commitment relating to the advertising fees and if the Client requests it, Brican will repurchase the Client's lease agreement in regard to the Exhibeo Concept.





Client

_Salvatore M. DeLaurs_ /s/

WHITE: To Company                                                        YELLOW: To Client

Exhibit A
Page 1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 453 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| VIJAY PATEL, on behalf of himself and all those similarly situated | NCMIC Finance Corporation, doing business as Professional Solutions an Iowa corporation; NCMIC Finance Corporation of California; Brican America Inc. Brican America, LLC; Jean Francois Vincens; Jack Lemacon; Viso Lasik Medspas, LLC |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Kenneth J. Catanzarite<br>CATANZARITE LAW CORPORATION<br>2331 West Lincoln Avenue, Anaheim, CA 92801; Tel: (714) 520-5544 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No      ☒ **MONEY DEMANDED IN COMPLAINT: $** 30 MILLION

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Contract, Breach of Fiduciary Duty of Good Faith and Fair Dealing, Fraud, Negligent Misrepresentation, Unjust Enrichment, Violation of CA False Advertising Law Cal Bus & Prof Cod § 17500, et seq; Violation of CA Unfair Competition Law Cal Bus. & Prof Cod § 17200, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| | ☒ 190 Other Contract | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

SACV10-00453

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☑ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Vijay Patel - County of Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| NCMIC Finance Corporation, doing business as Professional Solutions Financial Services - Orange County, CA; NCMIC Finance Corporation of California-Orange County, | Please See Attachment. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California - All Claims | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): Kenneth J. Catanzarite   Date April 12, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## Attachment to United States District Court, Central District of California
## CIVIL CASE COVER SHEET

IX. Venue:

(b) List the Count in this District; California County outside of this District; State if other than California; or Foreighn County, in which EACH named defendant resides.

California County outside of this District; State, if other than California; or Foreign County:

NCMIC Finance Corporation - Polk County, Iowa
Brican America Inc. - Dade County, Florida
Brican America, LLC - Dade County Florida
Jean Francois Vincens - Unknown County, State of Florida
Jack Lemacon - Unknown County, State of Florida
Viso Lasik Medspas, LLC - Dade County, Florida

# EXHIBIT "B"

(MLGx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:10-cv-00453-AG-MLG

Vijay Patel v. NCMIC Finance Corporation et al
Assigned to: Judge Andrew J. Guilford
Referred to: Magistrate Judge Marc L. Goldman
Cause: 28:1331 Fed. Question

Date Filed: 04/12/2010
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Federal Question

### Plaintiff

**Vijay Patel**
*an individual, on behalf of himself and
all others similarly situated*

represented by **Kenneth Joseph Catanzarite**
Catanzarite Law Offices
2331 West Lincoln Avenue
Anaheim, CA 92801
714-520-5544
Fax: 714 529 0680
Email: kcatanzarite@catanzarite.com
*ATTORNEY TO BE NOTICED*

**Nicole M Catanzarite**
Catanzarite Law Offices
2331 W Lincoln Avenue
Anaheim, CA 92801
714-520-5544
Email: ncatanzarite@catanzarite.com
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**NCMIC Finance Corporation**
*doing business as Professional Solutions
Financial Services, an Iowa corporation*

represented by **Sara Karubian**
Katten Muchin LLP
2029 Century Park East Suite 2600
Los Angeles, CA 90067
Email: skarubian@gmail.com
*ATTORNEY TO BE NOTICED*

**Ryan J Larsen**
Katten Muchin Rosenman LLP
2029 Century Park East Suite 2600
Los Angeles, CA 90067-3012
310-788-4400
Fax: 310-788-4471

Email: ryan.larsen@kattenlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**NCMIC Finance Corporation of**            represented by   **Sara Karubian**
**California**                                               (See above for address)
*a California corporation*                                   *ATTORNEY TO BE NOTICED*

**Ryan J Larsen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brican America Inc**
*a Florida corporation*

**Defendant**

**Brican America LLC**
*a Florida limited liability company*

**Defendant**

**Jean Francois Vincens**
*an individual*

**Defendant**

**Jack Lemacon**
*an individual*

**Defendant**

**Viso Lasik Medspas LLC**
*a Florida limited liability company*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2010 | 1 | COMPLAINT against Defendants Brican America Inc, Brican America LLC, Jack Lemacon, NCMIC Finance Corporation, NCMIC Finance Corporation of California, Jean Francois Vincens and Viso Lasik Medspas LLC. Case assigned to Judge Andrew J. Guilford for all further proceedings. Discovery referred to Magistrate Judge Marc L. Goldman.(Filing fee $ 350 Paid) Jury Demanded. Filed by Plaintiff Vijay Patel.(lwag) (Additional attachment(s) added on 4/14/2010: # 1 Summons Issued) (lwag). (Entered: 04/14/2010) |
| 04/12/2010 | 2 | CERTIFICATE of Interested Parties filed by Plaintiff Vijay Patel. (lwag) (Entered: 04/14/2010) |
| 04/13/2010 |   | 21 DAY Summons Issued re Complaint - (Discovery), Complaint - (Discovery) 1 as to Defendants Brican America Inc, Brican America LLC, Jack Lemacon, NCMIC Finance Corporation, NCMIC Finance Corporation of California, Jean Francois Vincens and Viso Lasik Medspas LLC. (lwag) (Entered: 04/14/2010) |

| 05/05/2010 | 3 | FIRST STIPULATION Extending Time to Answer the complaint as to NCMIC Finance Corporation answer now due 5/28/2010; NCMIC Finance Corporation of California answer now due 5/28/2010, filed by defendants NCMIC Finance Corporation; NCMIC Finance Corporation of California.(Larsen, Ryan) (Entered: 05/05/2010) |
| --- | --- | --- |
| 05/06/2010 | 4 | NOTICE of Change of Attorney Information for attorney Ryan J Larsen counsel for Defendant NCMIC Finance Corporation. Adding Sara Karubian as attorney as counsel of record for NCMIC Finance Corporation, d/b/a Professional Solutions Financial Services and NCMIC Finance Corporation of California for the reason indicated in the G-06 Notice. Filed by Defendants NCMIC Finance Corporation (Larsen, Ryan) (Entered: 05/06/2010) |
| 05/06/2010 | 5 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant Brican America LLC served on 4/16/2010, answer due 5/7/2010. Service of the Summons and Complaint were executed upon Yvette J. Harell, registered agent in compliance with California Code of Civil Procedure by method of service not specified. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/06/2010 | 6 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant Jack Lemacon served on 4/16/2010, answer due 5/7/2010. Service of the Summons and Complaint were executed upon Jack Lemacon, defendant in compliance with California Code of Civil Procedure by method of service not specified. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/06/2010 | 7 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant Jean Francois Vincens served on 4/16/2010, answer due 5/7/2010. Service of the Summons and Complaint were executed upon Jean Francois Vincens, defendant in compliance with California Code of Civil Procedure by method of service not specified. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/06/2010 | 8 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant Viso Lasik Medspas LLC served on 4/16/2010, answer due 5/7/2010. Service of the Summons and Complaint were executed upon Yvette J. Harell, registered agent in compliance with California Code of Civil Procedure by method of service not specified. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/06/2010 | 9 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant Brican America Inc served on 4/16/2010, answer due 5/7/2010. Service of the Summons and Complaint were executed upon Jeff Vincens, registered agent in compliance with California Code of Civil Procedure by method of service not specified. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/06/2010 | 10 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant NCMIC Finance Corporation of California served on 4/14/2010, answer due 5/28/2010. Service of the Summons and Complaint were executed upon Megan at National Registered Agents, registered agent in compliance with California Code of Civil Procedure by personal service. Original Summons returned. (Catanzarite, Kenneth) |

| | | (Entered: 05/06/2010) |
|---|---|---|
| 05/06/2010 | 11 | PROOF OF SERVICE Executed by Plaintiff Vijay Patel, upon Defendant NCMIC Finance Corporation served on 4/14/2010, answer due 5/28/2010. Service of the Summons and Complaint were executed upon Megan at National Registered Agents, registered agent in compliance with California Code of Civil Procedure by personal service. Original Summons returned. (Catanzarite, Kenneth) (Entered: 05/06/2010) |
| 05/28/2010 | 12 | NOTICE OF MOTION AND MOTION to Dismiss Complaint filed by defendants NCMIC Finance Corporation, NCMIC Finance Corporation of California. Motion set for hearing on 7/19/2010 at 10:00 AM before Judge Andrew J. Guilford. (Attachments: # 1 Declaration of Ryan J. Larsen in Support of Defendants NCMIC Finance Corporation and NCMIC Finance Corporation of California's Motion to Dismiss Complaint, # 2 Declaration of Gregory M. Cole in Support of Defendants NCMIC Finance Corporation and NCMIC Finance Corporation of California's Motion to Dismiss Complaint)(Larsen, Ryan) (Entered: 05/28/2010) |
| 06/01/2010 | 13 | ORDER re: Early Meeting of Parties and Scheduling Conference by Judge Andrew J. Guilford. Scheduling Conference set for 8/2/2010 09:00 AM before Judge Andrew J. Guilford. (jba) (Entered: 06/01/2010) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/03/2010 08:06:40 | | | |
| PACER Login: | no0675 | Client Code: | Wigdor |
| Description: | Docket Report | Search Criteria: | 8:10-cv-00453-AG-MLG End date: 6/3/2010 |
| Billable Pages: | 3 | Cost: | 0.24 |

# EXHIBIT "C"

# United States District Court
# Southern District of Florida

Miami-Dade Division

Case No: 10-cv-20782-PAS

Putative Class Action

Peter M. Blauzvern DDS PC, a New York professional corporation, Jeff E. Donnelly, a citizen of Massachusetts, John M. Highsmith, DDS, PA, a North Carolina professional association, Steven B. Oken, a citizen of New York, Justin Chang, PC, a Georgia professional corporation, David Alemar DMD, PC, a Georgia professional corporation, Jeffrey S. Thaller, a citizen of New Jersey, Michael S. Burstein, a citizen of New York, Charles H. Estelle, a citizen of Pennsylvania, Kenneth A. Korpan DDS, PC, an Illinois professional corporation, Stuart A. Curry, a citizen of Alabama, Gary Lederman, a citizen of the State of New York, Brian A. McMurtry, DDS, PA, a North Carolina professional association, Dr. Chandra R. Williams DMD, LLC, a Georgia limited liability company, Geoffrey S. Wozar, DMD, PC, a Pennsylvania professional corporation, Jennifer Goldman, a citizen of California, Amy Thu Tran, a citizen of California, Mountain Lakes Dental Associates, PA, a New Jersey professional association, Peter K. Eng, a citizen of New Jersey, Eye-Deal Family Eye Care, Inc., a Florida corporation, David Archibald, a citizen of Florida, Paul Taylor DMD, Inc., a California corporation, Arthur B. Silver DDS PC, a Georgia professional corporation, John C. Sieweke DDS PC, a Georgia professional corporation, John C. Sieweke, a citizen of Georgia, Amarilis Jacobo, a citizen of New York, Stephen R. Kepley, a Florida citizen, Mark Margolies, a citizen of Pennsylvania, George C. Weeks DDS PA, a Florida professional association, George C. Weeks, a Florida citizen, Alan M. Rapoport, a citizen of Massachusetts, Raymond Goodman, OD, PA, an Idaho professional association, Raymond Goodman, a citizen of Idaho, Cary Family Eye Care, OD, PA, a North Carolina professional association, Dwight W. Barnes, a citizen of North Carolina, Steven J. Luccarelli, a citizen of New York, Stanley D. Halpern, DDS, PC, a Georgia professional corporation, Stanley D. Halpern, a citizen of Georgia, Webster Cosmetic Dental Ltd., an Illinois limited company, d/b/a Webster Cosmetic Dental, Barbara Webster, a citizen of Illinois, Eric Smith, a citizen of Utah, David S. Lee, DDS, Inc., a California corporation, David S. Lee, a citizen of California, Stone Creek Dental, PC, an Idaho professional corporation, Casey S. Butterfield, a citizen of Idaho, Carolina Family Vision, OD, PA, a North Carolina professional association, Adam B. Bryan, a citizen of North Carolina, Kristy L. Tart-Bryan, a citizen of North Carolina, Peter Epstein DMD PA, a Florida professional association, Peter Epstein, a Florida citizen, Christopher Young DMD PA, a Florida professional association, Christopher Young, a Florida citizen,

**Chadds Ford Dental Associates, Inc.,** a Pennsylvania corporation, **Andrew Pratt,** a citizen of Pennsylvania, **J.M. Arrue DMD LLC,** a Georgia limited liability company, **J.M. Arrue,** a Georgia citizen, **Troy R. Lindh DMD PA,** a Florida professional association, **Troy R. Lindh,** a Florida citizen, **Brian G. DePetris,** a New Jersey citizen, **Gordon Bell,** a citizen of Pennsylvania, **Benjamin Gamm,** a citizen of Massachusetts, **Eyexam Associates, PA,** a New Jersey professional association, **Elizabeth Lewis,** a Georgia citizen, **Kelly L. Kalmar,** a New York citizen, **Kalmar Family Dentistry, LLP,** a New York limited liability partnership, **Henderson Mill Dental Care, PC,** a Georgia professional corporation, **John H. Mason,** a citizen of Florida, **David Alemar-Vincentry,** a Georgia citizen, **ATL Smiles, LLC,** a Georgia limited liability company, **Joseph F. Alvarez,** a Georgia citizen, **Dentistry at Vinings, PC,** a Georgia professional corporation, **Margaret Ames,** a New York citizen, **Luc E. Kanicky,** a Florida citizen, **Wanda Arden,** a New York citizen, **Visual Perceptions Eyecare, LLC,** a Connecticut limited liability company, **Catherine M. Ferentin,** a Connecticut citizen, **Visual Perceptions – Vernon, LLC,** a Connecticut limited liability company, **Robert Aube,** a Connecticut citizen, **Brodedale Dental, PA,** an Idaho professional association, **Eric Barney,** an Idaho citizen, **Travis B. Bartschi,** an Idaho citizen, **Cedar Bluff Family & Cosmetic Dentistry, PA,** a South Carolina professional association, **Jeremy R. Bayer,** a South Carolina citizen, **BW Vision Care, PA,** a Florida professional association, doing business as Bright Eyes Family Vision Care, **Nathan J. Bonilla-Warford,**

a Florida citizen, **Texarkan Vision Group, PLLC,** a Texas company, **R. Marc Carozza,** an Arkansas citizen, **J. Randall Glass,** an Arkansas citizen, **Michael J. Barbieri,** a New York citizen, **Premier Dentistry, Inc.,** a Pennsylvania corporation, **Daniel Casel,** a Pennsylvania citizen, **Barry I. Cohen,** a Pennsylvania citizen, **Michael E. and Maria Domingoes, PA,** a Florida professional association, doing business as Anastasia Dental Associates, **Michael W. Domingoes,** a Florida citizen, **Benjamin W. Dreksler,** a New York citizen, **Todd J. Feddock,** a Pennsylvania citizen, **Gregg Fink DMD, Inc.,** a Delaware corporation, **Gregg Fink,** a Delaware citizen, **Steven A. Firshein DMD, Inc.,** a California corporation, **Steven A. Firshein,** a California citizen, **Debra Glassman,** a New Jersey citizen, **Steven Glassman,** a New Jersey citizen, **David Goldberg,** a New York citizen, **Raymond C. Goodman, OD, PA,** an Idaho professional association, **Raymond C. Goodman,** an Idaho citizen, **Handschumacher Enterprises, OD, PA,** a North Carolina professional association, **Jeffrey Handschumacher,** a North Carolina citizen, **Samir K. Hanna & Associates, PA,** a Florida professional association, **Samir K. Hanna,** a Florida citizen, **Unique Dental Center, PC,** a Massachusetts professional corporation, doing business as Unique Dental Care, **Kevin Wendell,** a Rhode Island citizen, **Han Hong,** a New York citizen, **Lisa P. Howard, DDS, PC,** a Maine professional corporation, **Lisa P. Howard, DDS, LLC,** a Maine limited liability company, **Lisa P. Howard,** a Maine citizen, **John T. Kalange,** an Idaho citizen, **Gregory W. Kalmar,** a New York citizen, **Joseph R. Kenneally, DMD, PA,** a Maine

2

professional association, **Joseph R. Kenneally**, a Maine citizen, **Ira D. Koeppel, PC**, a New York professional corporation, **Ira D. Koeppel**, a New York citizen, **David R. Lach, D.D.S., M.S., P.A**, a Florida professional association, **David R. Lach**, a Florida citizen, **Anthony LaTempa DMD LLC**, a New Jersey limited liability company, **Anthony LaTempa**, a New Jersey citizen, **Raymond Lawrence**, a Connecticut citizen, **Lucy S. Lee OD, PLLC**, a Virginia professional limited liability company, **Lucy S. Lee**, a Virginia citizen, **Treva Diane Lee**, a California citizen, **Lewis Family Dentistry, LLC**, a Georgia limited liability company, **Gregory S. Liss**, a New Jersey citizen, **Robert Lustbader**, a New York citizen, **Z. Maali Dental, Inc.**, a Florida corporation, **Ziyad Maali**, a Florida citizen, **Peter D. Maro, Jr., DMD MS, PC**, a New York professional corporation, **Peter D. Maro**, a New York citizen, **Raymond K. Martin DDS MAGD, PC**, a Massachusetts professional corporation, **Raymond K. Martin**, a Massachusetts citizen, **Lumberton Optometric Associates, PLLC**, a North Carolina professional limited liability company, **Mirkin's Vision Care, PC**, a New York professional corporation, **Daniel Mirkin**, a New York citizen, **Larry J. Moray DDS MS PA**, a New York professional association, **Larry J. Moray**, a New York citizen, **Henderson Mill Dental Care, PC**, a Georgia professional corporation, doing business as Henderson Mill Dental Care, **John T. Uetsuki**, a Georgia citizen, **Asheville Vision Associates OD PA**, a North Carolina professional association, **Sid Morse**, a North Carolina citizen, **Nelson Eye Associates, PC**, a New Jersey

professional corporation, **Marc B. Nelson**, a New Jersey citizen, **Christine Nguyen, D.D.S., P.A.**, a Florida professional association, **Christine Nguyen**, a Florida citizen, **Atul M. Patel, BDS, Inc.**, a California corporation, **Atul M. Patel**, a California citizen, **Signature Smiles, PC**, a Georgia professional corporation, **George Prattas**, a Georgia citizen, **Adnan Qayyum DDS LLC**, a Pennsylvania limited liability company, **Adnan Qayyum**, a Pennsylvania citizen, **Rodeffer, Garner & Minor Orthodontics, LC**, a Florida limited liability company, **Tod Garner**, a Florida citizen, **Charles E. Scholler**, a California citizen, **Fred R. Shanks OD, LLC**, a Tennessee limited liability company, **Fred R. Shanks**, a Tennessee citizen, **Sajini Shetty DMD Dental Offices, PC**, a New Hampshire professional company, **Sajini Shetty**, a New Hampshire citizen, **Eric S. Smith, DDS, PC**, a Utah professional company, **Eric S. Smith**, a Utah citizen, **Gray and Smith Family Dental, PC**, an Idaho professional corporation, **Delmar Gray**, an Idaho citizen, **Randall B. Smith**, an Idaho citizen, **Beth Snyder**, a Pennsylvania citizen, **Ian Sobler**, a New York citizen, **Richard E. Sorkin OD, PA**, a Florida professional association, **Richard E. Sorkin**, a Florida citizen, **Jerry Strauss**, a Florida citizen, **Leonard F. Tau**, a Pennsylvania citizen, **All About Smiles, Inc.**, a California corporation, **Serena Tham**, a California citizen, **Deogsoo Roh**, a California citizen, **Robert R. Thousand, III, PA**, a Florida professional association, **Robert R. Thousand**, a Florida citizen, **Nathan W. Tilman DDS, PC**, a Rhode Island professional corporation, **Nathan W. Tilman**, a Rhode Island citizen, **Value Vision of Tampa Bay, Inc.**, a Florida

3

corporation, **Laura Reilly n/k/a Laura Vizzari**, a Florida citizen, **David C. Suh DDS, Inc.,** a California corporation, **David C. Suh**, a California citizen, **J. Philip Wiygul**, a Tennessee citizen, **Farid Hanachi DDS PA,** a North Carolina corporation, **Farid Hanachi**, a North Carolina citizen, **Ben Schultz**, a Connecticut citizen, **Stephen M. Montaquila**, a Rhode Island citizen, **Richard Pyun**, a New York citizen, **Paul M. Hertz DMD LLC,** a New York limited liability company, **Paul M. Hertz**, a New York citizen, **Richard Bruce, PC,** a Pennsylvania professional corporation, **Richard Bruce**, a Pennsylvania citizen, **Michael Putt**, individually and doing business as Wayland Family Dental Center, a Massachusetts citizen, **Charles Fitzpatrick**, a New Jersey citizen, **The Corbin Family Dental Arts, LLP**, a New York limited liability partnership, **Bruce Corbin**, a New York citizen, **North Shore Dental Arts, LLP,** a New York limited liability partnership, **Richard Corbin**, a New York citizen, **Kevin P. Ryan DDS, PC**, an Illinois professional corporation, **Kevin P. Ryan**, an Illinois citizen, **Jason D. Lewis, DDS, PA,** a Florida corporation, **Jason D. Lewis**, a Florida citizen, **Coley & Coley Family Eyecare, Inc.,** a Tennessee corporation, **Ginger Coley**, a Tennessee citizen, **Geoffrey A. Banga,** a Florida citizen,

Plaintiffs,

vs.

**Brican America, Inc.,** a Florida corporation, **Brican America, LLC**, a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited

liability company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company, and **NCMIC Finance Corporation,** doing business as Professional Solutions Financial Services, an Iowa corporation authorized to do business in Florida,

Defendants.

_____/

4

# First Amended Complaint

Plaintiffs, by and through their undersigned attorneys, sue Defendants, **Brican America, Inc.,** a Florida corporation, **Brican America, LLC,** a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company, and **NCMIC Finance Corporation,** doing business as Professional Solutions Financial Services, an Iowa corporation, and allege:

# Overview of Suit

This putative class action suit, filed in this court pursuant to 28 U.S.C. § 1332(d)(2)(A), is brought by a group of dentists and optometrists located in various states against several Florida entities and their principals, their related companies, and an equipment leasing company, for relief from contracts which were entered into as a result of fraud perpetrated by the Florida entities and their principals, for the benefit of the related companies, with knowledge or confirmation by the equipment leasing company, and for money damages.

The fraud involved the sale to the individual Plaintiffs, through an installment sales or loan agreement improperly labeled a financing lease (solely to obtain the "Hell or high water" protection of Article 2A of the Uniform Commercial Code), of a flat screen television, a

5

computer, and certain inexpensive software used to display advertising in the office of each

optometrist or dentist (collective referred to as the Display System), having a total fair market

value of $3,500, for an inflated price of approximately $30,000. Included with the sale, and the

predominate feature of the contract, was a marketing agreement by a related company which

promised to pay the individual Plaintiffs a sum of money almost equal to the monthly lease

payments, for the right to advertise services by the related entity on the television monitor in

the offices of each Plaintiff. The fraudulent sales were used to create a pool of money for the

related company, which at the time of the perpetration of the fraud, had no business and no

income with which it could possibly fulfill its contractual obligation to pay advertising fees,

other than the money diverted to it from the fraud perpetrators.

Because the payments under the marketing and advertising agreements were just slightly

less than the required monthly lease payments, the fraud set-up was a classic Ponzi scheme

which was doomed to collapse when the new money brought in by continuing the fraudulent

sales could no longer pay the debts created under the earlier contracts. After the collapse, the

Plaintiffs exercised their contractual right to require that the specific Brican company which

was the vendor under their contract, repurchase the equipment and cancel the lease. The Brican

companies refused, resulting in this suit.

## Allegations as to All Counts

### Jurisdiction and Venue

1.      This court has jurisdiction over this matter under 28 U.S.C. § 1332(d)(2)(A) because the

sum or value of the amount in controversy exceeds $5,000,000, exclusive of costs and

6

interest, and is a class action in which one or more members of the class of Plaintiffs is a citizen of a State different from any Defendant.

2.    Venue is properly vested in this court because almost all of the Defendants are residents of the Southern District of Florida, many of the contracts were entered into within the jurisdiction of this court, and because many of the applicable contracts contain a choice of situs provision whereby the parties have agreed that any action related to the contract shall be situated in Miami-Dade County, Florida.

### Parties

**(Plaintiffs, ¶¶ 3 - 424, pp. 7 - 42)**

3.    Plaintiff **Peter M. Blauzvern DDS PC** is a corporation organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

4.    The primary business of Plaintiff Peter M. Blauzvern DDS PC is the practice of dental medicine.

5.    Plaintiff **Jeff E. Donnelly** is a citizen of the Commonwealth of Massachusetts, and is *sui juris*.

6.    The primary business of Plaintiff Jeff E. Donnelly is the practice of dental medicine.

7.    Plaintiff **John M. Highsmith, DDS, PA,** is a corporation organized and existing under the laws of the State of North Carolina, is qualified to do business and is actually doing business in the State of North Carolina, is a citizen of the State of North Carolina, and is authorized to sue and be sued.

7

8.    The primary business of Plaintiff John M. Highsmith, DDS, PA, is the practice of dental medicine.

9.    Plaintiff **Steven B. Oken** is a citizen of the State of New York, and is *sui juris*.

10.    The primary business of Plaintiff Steven B. Oken is the practice of dental medicine.

11.    Plaintiff **Justin Chang, PC,** is a corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

12.    The primary business of Plaintiff Justin Chang, PC, is the practice of optometry.

13.    Plaintiff **David Alemar, DMD, PC,** is a corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

14.    The primary business of Plaintiff David Alemar, DMD, PC, is the practice of dental medicine.

15.    Plaintiff **David Alemar-Vincentry** is a citizen of the State of Georgia, and is *sui juris*.

16.    The primary business of Plaintiff Jeffrey S. Thaller is the practice of dental medicine.

17.    Plaintiff **Jeffrey S. Thaller** is a citizen of the State of New Jersey, and is *sui juris*.

18.    The primary business of Plaintiff Jeffrey S. Thaller is the practice of dental medicine.

19.    Plaintiff **Michael S. Burstein** is a citizen of the State of New York, and is *sui juris*.

20.    The primary business of Plaintiff Michael S. Burstein is the practice of dental medicine.

21.    Plaintiff **Charles H. Estelle** is a citizen of the Commonwealth of Pennsylvania and is

8

*sui juris.*

22.    The primary business of Plaintiff Charles H. Estelle is the practice of dental medicine.

23.    Plaintiff **Kenneth A. Korpan, DDS, PC,** is a corporation organized and existing under the laws of the State of Illinois, is qualified to do business and is actually doing business in the State of Illinois, is a citizen of the State of Illinois, and is authorized to sue and be sued.

24.    The primary business of Plaintiff Kenneth A. Korpan, DDS, PC, is the practice of dental medicine.

25.    Plaintiff **Stuart A. Curry** is a citizen of the Commonwealth of Pennsylvania and is *sui juris.*

26.    The primary business of Plaintiff Stuart A. Curry is the practice of dental medicine.

27.    Plaintiff **Gary Lederman** is a citizen of the State of New York, and is *sui juris.*

28.    The primary business of Plaintiff Gary Lederman is the practice of dental medicine.

29.    Plaintiff **Brian A. McMurtry, DDS, PA,** is a corporation organized and existing under the laws of the State of North Carolina, is qualified to do business and is actually doing business in the State of North Carolina, is a citizen of the State of North Carolina, and is authorized to sue and be sued.

30.    The primary business of Plaintiff Brian A. McMurtry, DDS, PA, is the practice of dental medicine.

31.    Plaintiff **Dr. Chandra R. Williams DMD, LLC,** is a limited liability company organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of

9

Georgia, and is authorized to sue and be sued.

32.    The primary business of Plaintiff Dr. Chandra R. Williams DMD, LLC, is the practice
       of dental medicine.

33.    Plaintiff **Geoffrey S. Wozar, DMD, PC**, is a professional corporation organized and
       existing under the laws of the Commonwealth of Pennsylvania, is qualified to do
       business and is actually doing business in the Commonwealth of Pennsylvania, is a
       citizen of the Commonwealth of Pennsylvania, and is authorized to sue and be sued.

34.    The primary business of Plaintiff Geoffrey S. Wozar, DMD, PC, is the practice of dental
       medicine.

35.    Plaintiff **Jennifer Goldman** is a citizen of the State of California, and is *sui juris*.

36.    The primary business of Plaintiff Jennifer Goldman is the practice of dental medicine.

37.    Plaintiff **Amy Thu Tran** is a citizen of the State of California, and is *sui juris*.

38.    The primary business of Plaintiff Amy Thu Tran is the practice of dental medicine.

39.    Plaintiff **Mountain Lakes Dental Associates, PA**, is a professional association
       organized and existing under the laws of the State of New Jersey, is qualified to do
       business and is actually doing business in the State of New Jersey, is a citizen of the
       State of New Jersey, and is authorized to sue and be sued.

40.    The primary business of Plaintiff Mountain Lakes Dental Associates, PA, is the practice
       of dental medicine.

41.    Plaintiff **Peter K. Eng** is a citizen of the State of New Jersey and is *sui juris*.

42.    The primary business of Plaintiff Peter K. Eng is the practice of dental medicine.

43.    Plaintiff **Eye-Deal Family Eye Care, Inc.**, is a corporation organized and existing

10

under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

44. The primary business of Plaintiff Eye-Deal Family Eye Care, Inc., is the practice of optometry.

45. Plaintiff **David Archibald** is a citizen of the State of Florida, and is *sui juris*.

46. The primary business of Plaintiff David Archibald is the practice of optometry.

47. Plaintiff **Paul Taylor DMD, Inc.**, is a corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

48. The primary business of Plaintiff Paul Taylor DMD, Inc., is the practice of dental medicine.

49. Plaintiff **Arthur B. Silver DDS PC**, is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

50. The primary business of Plaintiff Arthur B. Silver DDS PC, is the practice of dental medicine.

51. Plaintiff **John C. Sieweke DDS PC**, is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is

11

authorized to sue and be sued.

52.   The primary business of Plaintiff John C. Sieweke DDS PC, is the practice of dental medicine.

53.   Plaintiff **John C. Sieweke** is a citizen of the State of Georgia and is *sui juris.*

54.   The primary business of Plaintiff John C. Sieweke is the practice of dental medicine.

55.   Plaintiff **Amarilis Jacobo** is a citizen of the State of New Jersey and is *sui juris.*

56.   The primary business of Plaintiff Amarilis Jacobo is the practice of dental medicine.

57.   Plaintiff **Stephen R. Kepley** is a citizen of the State of Florida, and is *sui juris.*

58.   The primary business of Plaintiff Stephen R. Kepley is the practice of dental medicine.

59.   Plaintiff **Mark Margolies** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris.*

60.   The primary business of Plaintiff Mark Margolies is the practice of dental medicine.

61.   Plaintiff **George C. Weeks DDS PA**, is a professional association organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

62.   The primary business of Plaintiff George C. Weeks DDS PA, is the practice of dental medicine.

63.   Plaintiff **George C. Weeks** is a citizen of the State of Florida, and is *sui juris.*

64.   The primary business of Plaintiff George C. Weeks is the practice of dental medicine.

65.   Plaintiff **Alan M. Rapoport** is a citizen of the Commonwealth of Massachusetts, and is *sui juris.*

12

66.     The primary business of Plaintiff Alan M. Rapoport is the practice of dental medicine.

67.     Plaintiff **Raymond Goodman, OD, PA,** is a professional association organized and existing under the laws of the State of Idaho, is qualified to do business and is actually doing business in the State of Idaho, is a citizen of the State of Idaho, and is authorized to sue and be sued.

68.     The primary business of Plaintiff Raymond Goodman, OD, PA, is the practice of optometry.

69.     Plaintiff **Raymond Goodman** is a citizen of the State of Idaho, and is *sui juris*.

70.     The primary business of Plaintiff Raymond Goodman is the practice of dental medicine.

71.     Plaintiff **Cary Family Eye Care, OD, PA,** is a professional association organized and existing under the laws of the State of New Jersey, is qualified to do business and is actually doing business in the State of New Jersey, is a citizen of the State of New Jersey, and is authorized to sue and be sued.

72.     The primary business of Plaintiff Cary Family Eye Care, OD, PA, is the practice of optometry.

73.     Plaintiff **Dwight W. Barnes** is a citizen of the State of North Carolina, and is *sui juris*.

74.     The primary business of Plaintiff Dwight W. Barnes is the practice of optometry.

75.     Plaintiff **Steven J. Luccarelli** is a citizen of the State of New York, and is *sui juris*.

76.     The primary business of Plaintiff Steven J. Luccarelli is the practice of dental medicine.

77.     Plaintiff **Stanley D. Halpern, DDS, PC**, is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is

13

authorized to sue and be sued.

78.    The primary business of Plaintiff Stanley D. Halpern, DDS, PC, is the practice of dental medicine.

79.    Plaintiff **Stanley D. Halpern** is a citizen of the State of Georgia, and is *sui juris*.

80.    The primary business of Plaintiff Stanley D. Halpern is the practice of dental medicine.

81.    Plaintiff **Webster Cosmetic Dental Ltd.**, is a limited corporation organized and existing under the laws of the State of Illinois, is qualified to do business and is actually doing business in the State of Illinois, is a citizen of the State of Illinois, and is authorized to sue and be sued.

82.    The primary business of Plaintiff Webster Cosmetic Dental Ltd., is the practice of dental medicine.

83.    Webster Cosmetic Dental Ltd., does business as Webster Cosmetic Dental.

84.    Plaintiff **Barbara Webster** is a citizen of the State of Illinois and is *sui juris*.

85.    The primary business of Plaintiff Barbara Webster is the practice of dental medicine.

86.    Plaintiff **Eric S. Smith** is a citizen of the State of Utah, and is *sui juris*.

87.    The primary business of Plaintiff Eric S. Smith is the practice of dental medicine.

88.    Plaintiff **David S. Lee, DDS, Inc.,** is a corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

89.    The primary business of Plaintiff David S. Lee, DDS, Inc., is the practice of dental medicine.

14

90.    Plaintiff **David S. Lee** is a citizen of the State of California, and is *sui juris*.

91.    The primary business of Plaintiff David S. Lee is the practice of dental medicine.

92.    Plaintiff **Stone Creek Dental, PC,** is a professional corporation organized and existing
       under the laws of the State of Idaho, is qualified to do business and is actually doing
       business in the State of Idaho, is a citizen of the State of Idaho, and is authorized to sue
       and be sued.

93.    The primary business of Plaintiff Stone Creek Dental, PC, is the practice of dental
       medicine.

94.    Plaintiff **Casey S. Butterfield** is a citizen of the State of Idaho, and is *sui juris*.

95.    The primary business of Plaintiff Casey S. Butterfield is the practice of dental medicine.

96.    Plaintiff **Carolina Family Vision, OD, PA,** is a professional corporation organized and
       existing under the laws of the State of North Carolina, is qualified to do business and
       is actually doing business in the State of North Carolina, is a citizen of the State of
       North Carolina, and is authorized to sue and be sued.

97.    The primary business of Plaintiff Carolina Family Vision, OD, PA, is the practice of
       optometry.

98.    Plaintiff **Adam B. Bryan** is a citizen of the State of North Carolina, and is *sui juris*.

99.    The primary business of Plaintiff Adam B. Bryan is the practice of optometry.

100.   Plaintiff **Kristy L. Tart-Bryan** is a citizen of the State of North Carolina, and is *sui
       juris*.

101.   The primary business of Plaintiff Kristy L. Tart-Bryan is the practice of optometry.

102.   Plaintiff **Peter Epstein DMD PA,** is a professional corporation organized and existing

15

under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

103.   The primary business of Plaintiff Peter Epstein DMD PA, is the practice of dental medicine.

104.   Plaintiff **Peter Epstein** is a citizen of the State of Florida, and is *sui juris.*

105.   The primary business of Plaintiff Peter Epstein is the practice of optometry.

106.   Plaintiff **Christopher Young DMD PA,** is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

107.   The primary business of Plaintiff Christopher Young DMD PA, is the practice of dental medicine.

108.   Plaintiff **Christopher Young** is a citizen of the State of Florida, and is *sui juris.*

109.   The primary business of Plaintiff Christopher Young is the practice of optometry.

110.   Plaintiff **Chadds Ford Dental Associates, Inc.,** is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is qualified to do business and is actually doing business in the Commonwealth of Pennsylvania, is a citizen of the Commonwealth of Pennsylvania, and is authorized to sue and be sued.

111.   The primary business of Plaintiff Chadds Ford Dental Associates, Inc., is the practice of dental medicine.

112.   Plaintiff **Andrew Pratt** is a citizen of the Commonwealth of Pennsylvania, and is *sui*

16

*juris.*

113.   The primary business of Plaintiff Andrew Pratt is the practice of optometry.

114.   Plaintiff **J.M. Arrue DMD LLC**, is a limited liability company organized and existing under the laws of the State of Geogia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

115.   The primary business of Plaintiff J.M. Arrue DMD LLC, is the practice of dental medicine.

116.   Plaintiff **J.M. Arrue** is a citizen of the State of Georgia, and is *sui juris.*

117.   The primary business of Plaintiff J.M. Arrue is the practice of dental medicine.

118.   Plaintiff **Troy R. Lindh DMD PA,** is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

119.   The primary business of Plaintiff Troy R. Lindh DMD PA, is the practice of dental medicine.

120.   Plaintiff **Troy R. Lindh** is a citizen of the State of Florida, and is *sui juris.*

121.   The primary business of Plaintiff Troy R. Lindh is the practice of optometry.

122.   Plaintiff **Brian G. DePetris** is a citizen of the State of New Jersey, and is *sui juris.*

123.   The primary business of Plaintiff Brian G. DePetris is the practice of dentistry.

124.   Plaintiff **Gordon Bell** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris.*

17

125.   The primary business of Plaintiff Gordon Bell is the practice of dentistry.

126.   Plaintiff **Benjamin Gamm** is a citizen of the Commonwealth of Massachusetts, and is *sui juris.*

127.   The primary business of Plaintiff Benjamin Gamm is the practice of dentistry.

128.   Plaintiff **Eyeacam Associates, PA,** is a professional corporation organized and existing under the laws of the State of New Jersey, is qualified to do business and is actually doing business in the State of New Jersey, is a citizen of the State of New Jersey, and is authorized to sue and be sued.

129.   The primary business of Plaintiff Eyeacam Associates, PA, is the practice of optometry.

130.   Plaintiff **Elizabeth Lewis** is a citizen of the State of Georgia, and is *sui juris.*

131.   The primary business of Plaintiff Elizabeth Lewis is the practice of optometry.

132.   Plaintiff **Kalmar Family Dentistry, LLP**, is a limited liability partnership organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

133.   The primary business of Plaintiff Kalmar Family Dentistry, LLP, is the practice of dental medicine.

134.   Plaintiff **Kelly L. Kalmar** is a citizen of the State of New York, and is *sui juris.*

135.   The primary business of Plaintiff Kelly L. Kalmar is the practice of optometry.

136.   Plaintiff **Henderson Mill Dental Care, PC,** is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is

18

authorized to sue and be sued.

137.    The primary business of Plaintiff Henderson Mill Dental Care, PC, is the practice of dental medicine.

138.    Plaintiff **John H. Mason** is a citizen of the State of Florida, and is *sui juris*.

139.    The primary business of Plaintiff John H. Mason is the practice of dentistry.

140.    Plaintiff **David Alemar-Vincentry** is a citizen of the State of Georgia, and is *sui juris*.

141.    The primary business of Plaintiff **David Alemar-Vincentry** is the practice of dentistry.

142.    Plaintiff **ATL Smiles, LLC,** is a limited liability company organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

143.    The primary business of Plaintiff **ATL Smiles, LLC**, is the practice of dental medicine.

144.    Plaintiff **Joseph F. Alvarez** is a citizen of the State of Florida, and is *sui juris*.

145.    The primary business of Plaintiff **Joseph F. Alvarez** is the practice of dentistry.

146.    Plaintiff  a Georgia citizen, **Dentistry at Vinings, PC**, is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

147.    The primary business of Plaintiff  a Georgia citizen, **Dentistry at Vinings, PC**, is the practice of dental medicine.

148.    Plaintiff **Margaret Ames** is a citizen of the State of New York, and is *sui juris*.

149.    The primary business of Plaintiff **Margaret Ames** is the practice of dentistry.

19

150.   Plaintiff **Luc E. Kanicky** is a citizen of the State of Florida, and is *sui juris*.

151.   The primary business of Plaintiff **Luc E. Kanicky** is the practice of dentistry.

152.   Plaintiff **Wanda Arden** is a citizen of the State of New York, and is *sui juris*.

153.   The primary business of Plaintiff **Wanda Arden** is the practice of dentistry.

154.   Plaintiff **Visual Perceptions Eyecare, LLC**, is a Connecticut limited liability company, is qualified to do business and is actually doing business in the State of Connecticut, is a citizen of the State of Connecticut, and is authorized to sue and be sued.

155.   The primary business of Plaintiff **Visual Perceptions Eyecare, LLC**, is the practice of optometry.

156.   Plaintiff **Catherine M. Ferentin** is a citizen of the State of Connecticut, and is *sui juris*.

157.   The primary business of Plaintiff **Catherine M. Ferentin** is the practice of optometry.

158.   Plaintiff **Visual Perceptions – Vernon, LLC,** is a limited liability company organized and existing under the laws of the State of Connecticut, is qualified to do business and is actually doing business in the State of Connecticut, is a citizen of the State of Connecticut, and is authorized to sue and be sued.

159.   The primary business of Plaintiff **Visual Perceptions – Vernon, LLC,** is the practice of optometry.

160.   Plaintiff **Robert Aube** is a citizen of the State of Connecticut, and is *sui juris*.

161.   The primary business of Plaintiff **Robert Aube** is the practice of optometry.

162.   Plaintiff **Brodedale Dental, PA**, is a professional association organized and existing under the laws of the State of Idaho, is qualified to do business and is actually doing business in the State of Idaho, is a citizen of the State of Idaho, and is authorized to sue

20

and be sued.

163.   The primary business of Plaintiff **Brodedale Dental, PA**, is the practice of dental medicine.

164.   Plaintiff **Eric Barney** is a citizen of the State of Idaho, and is *sui juris.*

165.   The primary business of Plaintiff **Eric Barney** is the practice of dentistry.

166.   Plaintiff **Travis B. Bartschi** is a citizen of the State of Idaho, and is *sui juris.*

167.   The primary business of Plaintiff **Travis B. Bartschi** is the practice of dentistry.

168.   Plaintiff **Cedar Bluff Family & Cosmetic Dentistry, PA**, is a professional corporation organized and existing under the laws of the State of South Carolina, is qualified to do business and is actually doing business in the State of South Carolina, is a citizen of the State of South Carolina, and is authorized to sue and be sued.

169.   The primary business of Plaintiff **Cedar Bluff Family & Cosmetic Dentistry, PA**, is the practice of dental medicine.

170.   Plaintiff **Jeremy R. Bayer** is a citizen of the State of South Carolina, and is *sui juris.*

171.   The primary business of Plaintiff **Jeremy R. Bayer** is the practice of dentistry.

172.   Plaintiff **BW Vision Care, PA**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

173.   The primary business of Plaintiff **BW Vision Care, PA**, is the practice of optometry.

174.   **BW Vision Care, PA**, does business as Bright Eyes Family Vision Care.

175.   Plaintiff **Nathan J. Bonilla-Warford** is a citizen of the State of Florida, and is *sui juris.*

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

176. The primary business of Plaintiff **Nathan J. Bonilla-Warford** is the practice of optometry.

177. Plaintiff **Texarkan Vision Group, PLLC,** is a professional limited liability company organized and existing under the laws of the State of Texas, is qualified to do business and is actually doing business in the State of Texas, is a citizen of the State of Texas, and is authorized to sue and be sued.

178. The primary business of Plaintiff **Texarkan Vision Group, PLLC,** is the practice of optometry.

179. Plaintiff **R. Marc Carozza** is a citizen of the State of Arkansas, and is *sui juris*.

180. The primary business of Plaintiff **R. Marc Carozza** is the practice of optometry.

181. Plaintiff **J. Randall Glass** is a citizen of the State of Arkansas, and is *sui juris*.

182. The primary business of Plaintiff **J. Randall Glass** is the practice of optometry.

183. Plaintiff **Michael J. Barbieri** is a citizen of the State of New York, and is *sui juris*.

184. The primary business of Plaintiff **Michael J. Barbieri** is the practice of dentistry.

185. Plaintiff **Premier Dentistry, Inc.,** is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is qualified to do business and is actually doing business in the Commonwealth of Pennsylvania, is a citizen of the Commonwealth of Pennsylvania, and is authorized to sue and be sued.

186. The primary business of Plaintiff **Premier Dentistry, Inc.,** is the practice of dental medicine.

187. Plaintiff **Daniel Casel** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

22

188.  The primary business of Plaintiff **Daniel Casel** is the practice of dentistry.

189.  Plaintiff **Barry I. Cohen** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

190.  The primary business of Plaintiff **Barry I. Cohen** is the practice of dentistry.

191.  Plaintiff **Michael E. and Maria Domingoes, PA,** is a professional corporation organized and existing under the laws of the State of Florida is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

192.  The primary business of Plaintiff **Michael E. and Maria Domingoes, PA,** is the practice of dental medicine.

193.  **Michael E. and Maria Domingoes, PA,** is doing business as Anastasia Dental Associates.

194.  Plaintiff **Michael W. Domingoes** is a citizen of the State of Florida, and is *sui juris*.

195.  The primary business of Plaintiff **Michael W. Domingoes** is the practice of dentistry.

196.  Plaintiff **Benjamin W. Dreksler** is a citizen of the State of New York, and is *sui juris*.

197.  The primary business of Plaintiff **Benjamin W. Dreksler** is the practice of dentistry.

198.  Plaintiff **Todd J. Feddock** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

199.  The primary business of Plaintiff **Todd J. Feddock** is the practice of dentistry.

200.  Plaintiff **Gregg Fink DMD, Inc.,** is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business and is actually doing business in the State of Delaware, is a citizen of the State of Delaware, and is authorized to sue and be

23

sued.

201.   The primary business of Plaintiff **Gregg Fink DMD, Inc.,** is the practice of dental medicine.

202.   Plaintiff **Gregg Fink** is a citizen of the State of Delaware, and is *sui juris.*

203.   The primary business of Plaintiff **Gregg Fink** is the practice of dentistry.

204.   Plaintiff **Steven A. Firshein DMD, Inc.,** is a corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

205.   The primary business of Plaintiff **Steven A. Firshein DMD, Inc.,** is the practice of dental medicine.

206.   Plaintiff **Steven A. Firshein** is a citizen of the State of California, and is *sui juris.*

207.   The primary business of Plaintiff **Steven A. Firshein** is the practice of dentistry.

208.   Plaintiff **Debra Glassman** is a citizen of the State of New Jersey, and is *sui juris.*

209.   The primary business of Plaintiff **Debra Glassman** is the practice of dentistry.

210.   Plaintiff **Steven Glassman** is a citizen of the State of New Jersey, and is *sui juris.*

211.   The primary business of Plaintiff **Steven Glassman** is the practice of dentistry.

212.   Plaintiff **David Goldberg** is a citizen of the State of New York, and is *sui juris.*

213.   The primary business of Plaintiff **David Goldberg** is the practice of dentistry.

214.   Plaintiff **Raymond C. Goodman, OD, PA,** is a professional corporation organized and existing under the laws of the State of Idaho, is qualified to do business and is actually doing business in the State of Idaho, is a citizen of the State of Idaho, and is authorized

24

to sue and be sued.

215.   The primary business of Plaintiff **Raymond C. Goodman, OD, PA**, is the practice of optometry.

216.   Plaintiff **Raymond C. Goodman** is a citizen of the State of Idaho, and is *sui juris*.

217.   The primary business of Plaintiff **Raymond C. Goodman** is the practice of optometry.

218.    Plaintiff **Handschumacher Enterprises, OD, PA**, is a professional corporation organized and existing under the laws of the State of North Carolina, is qualified to do business and is actually doing business in the State of North Carolina, is a citizen of the State of North Carolina, and is authorized to sue and be sued.

219.   The primary business of Plaintiff **Handschumacher Enterprises, OD, PA**, is the practice of optometry.

220.   Plaintiff **Jeffrey Handschumacher** is a citizen of the State of North CarolinaNorth Carolina, and is *sui juris*.

221.   The primary business of Plaintiff **Jeffrey Handschumacher** is the practice of optometry.

222.   Plaintiff **Samir K. Hanna & Associates, PA**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

223.   The primary business of Plaintiff **Samir K. Hanna & Associates, PA**, is the practice of dental medicine.

224.   Plaintiff **Samir K. Hanna** is a citizen of the State of Florida, and is *sui juris*.

25

225.  The primary business of Plaintiff **Samir K. Hanna** is the practice of dentistry.

226.  Plaintiff **Unique Dental Center, PC**, is a professional corporation organized and existing under the laws of the State of Massachusetts, is qualified to do business and is actually doing business in the State of Massachusetts, is a citizen of the State of Massachusetts, and is authorized to sue and be sued.

227.  The primary business of Plaintiff **Unique Dental Center, PC**, is the practice of dental medicine.

228.  **Unique Dental Center, PC**, is doing business as Unique Dental Care.

229.  Plaintiff **Kevin Wendell** is a citizen of the State of Rhode Island, and is *sui juris*.

230.  The primary business of Plaintiff **Kevin Wendell** is the practice of dentistry.

231.  Plaintiff **Han Hong** is a citizen of the State of New York, and is *sui juris*.

232.  The primary business of Plaintiff **Han Hong** is the practice of dentistry.

233.   Plaintiff **Lisa P. Howard, DDS, PC**, is a professional corporation organized and existing under the laws of the State of Maine, is qualified to do business and is actually doing business in the State of Maine, is a citizen of the State of Maine, and is authorized to sue and be sued.

234.  The primary business of Plaintiff **Lisa P. Howard, DDS, PC,** is the practice of dental medicine.

235.  Plaintiff **Lisa P. Howard, DDS, LLC,** is a limited liability company organized and existing under the laws of the State of Maine, is qualified to do business and is actually doing business in the State of Maine, is a citizen of the State of Maine, and is authorized to sue and be sued.

26

236.   The primary business of Plaintiff **Lisa P. Howard, DDS, LLC,** is the practice of dental medicine.

237.   Plaintiff **Lisa P. Howard** is a citizen of the State of Maine, and is *sui juris*.

238.   The primary business of Plaintiff **Lisa P. Howard** is the practice of dentistry.

239.   Plaintiff **John T. Kalange** is a citizen of the State of Idaho, and is *sui juris*.

240.   The primary business of Plaintiff **John T. Kalange** is the practice of dentistry.

241.   Plaintiff **Gregory W. Kalmar** is a citizen of the State of New York, and is *sui juris*.

242.   The primary business of Plaintiff **Gregory W. Kalmar** is the practice of dentistry.

243.   Plaintiff **Joseph R. Kenneally, DMD, PA**, is a professional corporation organized and existing under the laws of the State of Maine, is qualified to do business and is actually doing business in the State of Maine, is a citizen of the State of Maine, and is authorized to sue and be sued.

244.   The primary business of Plaintiff **Joseph R. Kenneally, DMD, PA**, is the practice of dental medicine.

245.   Plaintiff  **Joseph R. Kenneally** is a citizen of the State of Maine, and is *sui juris*.

246.   The primary business of Plaintiff **Joseph R. Kenneally** is the practice of dentistry.

247.   Plaintiff **Ira D. Koeppel, PC**, is a professional corporation organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

248.   The primary business of Plaintiff **Ira D. Koeppel, PC**, is the practice of dental medicine.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

249.   Plaintiff **Ira D. Koeppel** is a citizen of the State of Florida, and is *sui juris*.

250.   The primary business of Plaintiff **Ira D. Koeppel** is the practice of dentistry.

251.   Plaintiff **David R. Lach, D.D.S., M.S., P.A**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

252.   The primary business of Plaintiff **David R. Lach, D.D.S., M.S., P.A**, is the practice of dental medicine.

253.   Plaintiff **David R. Lach** is a citizen of the State of Florida, and is *sui juris*.

254.   The primary business of Plaintiff **David R. Lach** is the practice of dentistry.

255.   Plaintiff **Anthony LaTempa DMD LLC**, is a professional corporation organized and existing under the laws of the State of New Jersey, is qualified to do business and is actually doing business in the State of New Jersey, is a citizen of the State of New Jersey, and is authorized to sue and be sued.

256.   The primary business of Plaintiff **Anthony LaTempa DMD LLC**, is the practice of dental medicine.

257.   Plaintiff **Anthony LaTempa** is a citizen of the State of New Jersey, and is *sui juris*.

258.   The primary business of Plaintiff **Anthony LaTempa** is the practice of dentistry.

259.   Plaintiff **Raymond Lawrence** is a citizen of the State of Connecticut, and is *sui juris*.

260.   The primary business of Plaintiff **Raymond Lawrence** is the practice of dentistry.

261.   Plaintiff **Lucy S. Lee OD, PLLC**, is a professional corporation organized and existing under the laws of the State of Virginia, is qualified to do business and is actually doing

28

business in the State of Virginia, is a citizen of the State of Virginia, and is authorized to sue and be sued.

262. The primary business of Plaintiff **Lucy S. Lee OD, PLLC**, is the practice of optometry.

263. Plaintiff **Lucy S. Lee** is a citizen of the State of Virginia, and is *sui juris*.

264. The primary business of Plaintiff **Lucy S. Lee** is the practice of optometry.

265. Plaintiff **Treva Diane Lee** is a citizen of the State of California, and is *sui juris*.

266. The primary business of Plaintiff **Treva Diane Lee** is the practice of optometry.

267. Plaintiff **Lewis Family Dentistry, LLC**, is a limited liability company organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

268. The primary business of Plaintiff **Lewis Family Dentistry, LLC**, is the practice of dentistry.

269. Plaintiff **Gregory S. Liss** is a citizen of the State of New Jersey, and is *sui juris*.

270. The primary business of Plaintiff **Gregory S. Liss** is the practice of dentistry.

271. Plaintiff **Robert Lustbader** is a citizen of the State of New York, and is *sui juris*.

272. The primary business of Plaintiff **Robert Lustbader** is the practice of dentistry.

273. Plaintiff **Lucy S. Lee** is a citizen of the State of Virginia, and is *sui juris*.

274. The primary business of Plaintiff **Lucy S. Lee** is the practice of optometry.

275. Plaintiff **Z. Maali Dental, Inc.**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

sue and be sued.

276. The primary business of Plaintiff **Z. Maali Dental, Inc.**, is the practice of dentistry.

277. Plaintiff **Ziyad Maali** is a citizen of the State of Florida, and is *sui juris.*

278. The primary business of Plaintiff **Ziyad Maali** is the practice of dentistry.

279. Plaintiff **Peter D. Maro, Jr., DMD MS, PC**, is a professional corporation organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

280. The primary business of Plaintiff **Peter D. Maro, Jr., DMD MS, PC**, is the practice of dentistry.

281. Plaintiff **Peter D. Maro** is a citizen of the State of New York, and is *sui juris.*

282. The primary business of Plaintiff **Peter D. Maro** is the practice of dentistry.

283. Plaintiff **Raymond K. Martin DDS MAGD, PC**, is a professional corporation organized and existing under the laws of the State of Massachusetts, is qualified to do business and is actually doing business in the State of Massachusetts, is a citizen of the State of Massachusetts, and is authorized to sue and be sued.

284. The primary business of Plaintiff **Raymond K. Martin DDS MAGD, PC**, is the practice of dentistry.

285. Plaintiff **Raymond K. Martin** is a citizen of the State of Massachusetts, and is *sui juris.*

286. The primary business of Plaintiff **Raymond K. Martin** is the practice of dentistry.

287. Plaintiff **Lumberton Optometric Associates, PLLC,** is a professional corporation organized and existing under the laws of the State of North Carolina, is qualified to do

30

business and is actually doing business in the State of North Carolina, is a citizen of the State of North Carolina, and is authorized to sue and be sued.

288.   The primary business of Plaintiff **Lumberton Optometric Associates, PLLC,** is the practice of optometry.

289.   Plaintiff **Mirkin's Vision Care, PC**, is a professional corporation organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

290.   The primary business of Plaintiff **Mirkin's Vision Care, PC**, is the practice of optometry.

291.   Plaintiff **Daniel Mirkin** is a citizen of the State of New York, and is *sui juris.*

292.   The primary business of Plaintiff **Daniel Mirkin** is the practice of optometry.

293.   Plaintiff **Larry J. Moray DDS MS PA**, is a professional corporation organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

294.   The primary business of Plaintiff **Larry J. Moray DDS MS PA**, is the practice of dentistry.

295.   Plaintiff **Larry J. Moray** is a citizen of the State of New York, and is *sui juris.*

296.   The primary business of Plaintiff **Larry J. Moray** is the practice of dentistry.

297.   Plaintiff **Henderson Mill Dental Care, PC,** is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually

31

doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

298.   The primary business of Plaintiff **Henderson Mill Dental Care, PC,** is the practice of dentistry.

299.   **Henderson Mill Dental Care, PC,** is doing business as Henderson Mill Dental Care.

300.   Plaintiff **John T. Uetsuki** is a citizen of the State of Georgia, and is *sui juris.*

301.   The primary business of Plaintiff **John T. Uetsuki** is the practice of dentistry.

302.   Plaintiff **Asheville Vision Associates OD PA**, is a professional corporation organized and existing under the laws of the State of North Carolina, is qualified to do business and is actually doing business in the State of North Carolina, is a citizen of the State of North Carolina, and is authorized to sue and be sued.

303.   The primary business of Plaintiff **Asheville Vision Associates OD PA**, is the practice of optometry.

304.   Plaintiff **Sid Morse** is a citizen of the State of North Carolina, and is *sui juris.*

305.   The primary business of Plaintiff **Sid Morse** is the practice of optometry.

306.   Plaintiff **Nelson Eye Associates, PC**, is a professional corporation organized and existing under the laws of the State of New Jersey, is qualified to do business and is actually doing business in the State of New Jersey, is a citizen of the State of New Jersey, and is authorized to sue and be sued.

307.   The primary business of Plaintiff **Nelson Eye Associates, PC**, is the practice of optometry.

308.   Plaintiff **Marc B. Nelson** is a citizen of the State of New Jersey, and is *sui juris.*

32

309. The primary business of Plaintiff **Marc B. Nelson** is the practice of optometry.

310. Plaintiff **Raymond K. Martin DDS MAGD, PC**, is a professional corporation organized and existing under the laws of the State of Massachusetts, is qualified to do business and is actually doing business in the State of Virginia, is a citizen of the State of Virginia, and is authorized to sue and be sued.

311. The primary business of Plaintiff **Raymond K. Martin DDS MAGD, PC**, is the practice of dentistry.

312. Plaintiff **Christine Nguyen, D.D.S., P.A.**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

313. The primary business of Plaintiff **Christine Nguyen, D.D.S., P.A.**, is the practice of dentistry.

314. Plaintiff **Christine Nguyen** is a citizen of the State of Florida, and is *sui juris*.

315. The primary business of Plaintiff **Christine Nguyen** is the practice of dentistry.

316. Plaintiff **Atul M. Patel, BDS, Inc.**, is a professional corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

317. The primary business of Plaintiff **Atul M. Patel, BDS, Inc.**, is the practice of dentistry.

318. Plaintiff **Atul M. Patel** is a citizen of the State of California, and is *sui juris*.

319. The primary business of Plaintiff **Atul M. Patel** is the practice of dentistry.

33

320. Plaintiff **Signature Smiles, PC**, is a professional corporation organized and existing under the laws of the State of Georgia, is qualified to do business and is actually doing business in the State of Georgia, is a citizen of the State of Georgia, and is authorized to sue and be sued.

321. The primary business of Plaintiff **Raymond K. Martin DDS MAGD, PC**, is the practice of dentistry.

322. Plaintiff **George Prattas** is a citizen of the State of Georgia, and is *sui juris*.

323. The primary business of Plaintiff **George Prattas** is the practice of dentistry.

324. Plaintiff **Adnan Qayyum DDS LLC**, is a professional corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is qualified to do business and is actually doing business in the Commonwealth of Pennsylvania, is a citizen of the Commonwealth of Pennsylvania, and is authorized to sue and be sued.

325. The primary business of Plaintiff **Adnan Qayyum DDS LLC**, is the practice of dentistry.

326. Plaintiff **Adnan Qayyum** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

327. The primary business of Plaintiff **Adnan Qayyum** is the practice of dentistry.

328. Plaintiff **Rodeffer, Garner & Minor Orthodontics, LC**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

329. The primary business of Plaintiff **Raymond K. Martin DDS MAGD, PC**, is the

34

practice of dentistry.

330. Plaintiff **Tod Garner** is a citizen of the State of Florida, and is *sui juris*.

331. The primary business of Plaintiff **Tod Garner** is the practice of dentistry.

332. Plaintiff **Charles E. Scholler** is a citizen of the State of California, and is *sui juris*.

333. The primary business of Plaintiff **Charles E. Scholler** is the practice of dentistry.

334. Plaintiff **Fred R. Shanks OD, LLC**, is a professional corporation organized and existing under the laws of the State of Tennessee, is qualified to do business and is actually doing business in the State of Tennessee, is a citizen of the State of Tennessee, and is authorized to sue and be sued.

335. The primary business of Plaintiff **Fred R. Shanks OD, LLC**, is the practice of optometry.

336. Plaintiff **Fred R. Shanks** is a citizen of the State of Tennessee, and is *sui juris*.

337. The primary business of Plaintiff **Fred R. Shanks** is the practice of optometry.

338. Plaintiff **Sajini Shetty DMD Dental Offices, PC**, is a professional corporation organized and existing under the laws of the State of New Hampshire, is qualified to do business and is actually doing business in the State of New Hampshire, is a citizen of the State of New Hampshire, and is authorized to sue and be sued.

339. The primary business of Plaintiff **Sajini Shetty DMD Dental Offices, PC**, is the practice of dentistry.

340. Plaintiff **Sajini Shetty** is a citizen of the State of New Hampshire, and is *sui juris*.

341. The primary business of Plaintiff **Sajini Shetty** is the practice of dentistry.

342. Plaintiff **Eric S. Smith, DDS, PC**, is a professional corporation organized and existing

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

under the laws of the State of Utah, is qualified to do business and is actually doing business in the State of Utah, is a citizen of the State of Utah, and is authorized to sue and be sued.

343.   The primary business of Plaintiff **Eric S. Smith, DDS, PC**, is the practice of dentistry.

344.   Plaintiff **Eric S. Smith** is a citizen of the State of Utah, and is *sui juris*.

345.   The primary business of Plaintiff **Eric S. Smith** is the practice of dentistry.

346.   Plaintiff **Gray and Smith Family Dental, PC**, is a professional corporation organized and existing under the laws of the State of Idaho, is qualified to do business and is actually doing business in the State of Idaho, is a citizen of the State of Idaho, and is authorized to sue and be sued.

347.   The primary business of Plaintiff **Gray and Smith Family Dental, PC**, is the practice of dentistry.

348.   Plaintiff **Delmar Gray** is a citizen of the State of Idaho, and is *sui juris*.

349.   The primary business of Plaintiff **Delmar Gray** is the practice of dentistry.

350.   Plaintiff **Randall B. Smith** is a citizen of the State of Idaho, and is *sui juris*.

351.   The primary business of Plaintiff **Randall B. Smith** is the practice of dentistry.

352.   Plaintiff **Beth Snyder** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

353.   The primary business of Plaintiff **Beth Snyder** is the practice of dentistry.

354.   Plaintiff **Ian Sobler** is a citizen of the State of New York, and is *sui juris*.

355.   The primary business of Plaintiff **Ian Sobler** is the practice of dentistry.

356.   Plaintiff **Richard E. Sorkin OD, PA,** is a professional corporation organized and

36

existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

357.  The primary business of Plaintiff **Richard E. Sorkin OD, PA,** is the practice of optometry.

358.  Plaintiff **Richard E. Sorkin** is a citizen of the State of Florida, and is *sui juris.*

359.  The primary business of Plaintiff **Richard E. Sorkin** is the practice of dentistry.

360.  Plaintiff **Jerry Strauss** is a citizen of the State of Florida, and is *sui juris.*

361.  The primary business of Plaintiff **Jerry Strauss** is the practice of dentistry.

362.  Plaintiff **Leonard F. Tau** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris.*

363.  The primary business of Plaintiff **Leonard F. Tau** is the practice of dentistry.

364.  Plaintiff **All About Smiles, Inc.,** is a corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

365.  The primary business of Plaintiff **All About Smiles, Inc.,** is the practice of dentistry.

366.  Plaintiff **Serena Tham** is a citizen of the State of California, and is *sui juris.*

367.  The primary business of Plaintiff **Serena Tham** is the practice of dentistry.

368.  Plaintiff **Deogsoo Roh** is a citizen of the State of California, and is *sui juris.*

369.  The primary business of Plaintiff **Deogsoo Roh** is the practice of dentistry.

370.  Plaintiff **Robert R. Thousand, III, PA**, is a professional corporation organized and

37

existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

371. The primary business of Plaintiff **Robert R. Thousand, III, PA**, is the practice of dentistry.

372. Plaintiff **Robert R. Thousand** is a citizen of the State of Florida, and is *sui juris*.

373. The primary business of Plaintiff **Robert R. Thousand** is the practice of dentistry.

374. Plaintiff **Nathan W. Tilman DDS, PC**, is a professional corporation organized and existing under the laws of the State of Rhode Island, is qualified to do business and is actually doing business in the State of Rhode Island, is a citizen of the State of Rhode Island, and is authorized to sue and be sued.

375. The primary business of Plaintiff **Nathan W. Tilman DDS, PC**, is the practice of dentistry.

376. Plaintiff **Nathan W. Tilman** is a citizen of the State of Rhode Island, and is *sui juris*.

377. The primary business of Plaintiff **Nathan W. Tilman** is the practice of dentistry.

378. Plaintiff **Value Vision of Tampa Bay, Inc.**, is a professional corporation organized and existing under the laws of the State of Florida, is qualified to do business and is actually doing business in the State of Florida, is a citizen of the State of Florida, and is authorized to sue and be sued.

379. The primary business of Plaintiff **Value Vision of Tampa Bay, Inc.**, is the practice of optometry.

380. Plaintiff **Laura Reilly n/k/a Laura Vizzari** is a citizen of the State of Florida, and is

38

*sui juris.*

381.    The primary business of Plaintiff **Laura Reilly n/k/a Laura Vizzari** is the practice of dentistry.

382.    Plaintiff **David C. Suh** is a citizen of the State of California, and is *sui juris.*

383.    The primary business of Plaintiff **David C. Suh** is the practice of dentistry.

384.    Plaintiff **David C. Suh DDS, Inc.,** is a corporation organized and existing under the laws of the State of California, is qualified to do business and is actually doing business in the State of California, is a citizen of the State of California, and is authorized to sue and be sued.

385.    The primary business of Plaintiff **David C. Suh DDS, Inc.,** is the practice of dentistry.

386.    Plaintiff **J. Philip Wiygul** is a citizen of the State of Tennessee, and is *sui juris.*

387.    The primary business of Plaintiff **J. Philip Wiygul** is the practice of dentistry.

388.    Plaintiff **Justin Chang** is a citizen of the State of Georgia, and is *sui juris.*

389.    The primary business of Plaintiff **Justin Chang** is the practice of optometry.

390.    Plaintiff **Ben Schultz** is a citizen of the State of Connecticut, and is *sui juris.*

391.    The primary business of Plaintiff **Ben Schultz** is the practice of dentistry.

392.    Plaintiff **Stephen M. Montaquila** is a citizen of the State of New York, and is *sui juris.*

393.    The primary business of Plaintiff **Stephen M. Montaquila** is the practice of optometry.

394.    Plaintiff **Richard Pyun** is a citizen of the State of New York, and is *sui juris.*

395.    The primary business of Plaintiff **Richard Pyun** is the practice of dentistry.

396.    Plaintiff **Paul M. Hertz DMD LLC,** is a limited liability company organized and existing under the laws of the State of New York, is qualified to do business and is

39

actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

397. The primary business of Plaintiff **Paul M. Hertz DMD LLC**, is the practice of dentistry.

398. Plaintiff **Paul M. Hertz** is a citizen of the State of New York, and is *sui juris*.

399. The primary business of Plaintiff **Paul M. Hertz** is the practice of dentistry.

400. Plaintiff **Richard Bruce, PC,** is a professional corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is qualified to do business and is actually doing business in the Commonwealth of Pennsylvania, is a citizen of the Commonwealth of Pennsylvania, and is authorized to sue and be sued.

401. The primary business of Plaintiff **Richard Bruce, PC,** is the practice of dentistry.

402. Plaintiff **Richard Bruce** is a citizen of the Commonwealth of Pennsylvania, and is *sui juris*.

403. The primary business of Plaintiff **Richard Bruce** is the practice of dentistry.

404. Plaintiff **Michael Putt** is a citizen of the State of Massachusetts, and is *sui juris*.

405. The primary business of Plaintiff **Michael Putt** is the practice of dentistry.

406. **Michael Putt** does business as the Wayland Family Dental Center, a Massachusetts citizen.

407. Plaintiff **Charles Fitzpatrick** is a citizen of the State of New Jersey, and is *sui juris*.

408. The primary business of Plaintiff **Charles Fitzpatrick** is the practice of dentistry.

409. Plaintiff **The Corbin Family Dental Arts, LLP,** is a limited liability partnership organized and existing under the laws of the State of New York, is qualified to do

40

business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

410.   The primary business of Plaintiff **The Corbin Family Dental Arts, LLP** is the practice of dentistry.

411.   Plaintiff **Bruce Corbin** is a citizen of the State of New York, and is *sui juris*.

412.   The primary business of Plaintiff **Bruce Corbin** is the practice of dentistry.

413.   Plaintiff **North Shore Dental Arts, LLP**, is a limited liability partnership organized and existing under the laws of the State of New York, is qualified to do business and is actually doing business in the State of New York, is a citizen of the State of New York, and is authorized to sue and be sued.

414.   The primary business of Plaintiff **North Shore Dental Arts, LLP**, is the practice of dentistry.

415.   Plaintiff **Richard Corbin** is a citizen of the State of New York, and is *sui juris*.

416.   The primary business of Plaintiff **Richard Corbin** is the practice of dentistry.

417.   Plaintiff **Kevin P. Ryan DDS, PC**, is a professional corporation organized and existing under the laws of the State of Illinois, is qualified to do business and is actually doing business in the State of Illinois, is a citizen of the State of Illinois, and is authorized to sue and be sued.

418.   The primary business of Plaintiff **Kevin P. Ryan DDS, PC**, is the practice of dentistry.

419.   Plaintiff  **Kevin P. Ryan** is a citizen of the State of Illinois, and is *sui juris*.

420.   The primary business of Plaintiff **Kevin P. Ryan** is the practice of dentistry.

421.   Plaintiff **Farid Hanachi DDS PA,** is a professional corporation organized and existing

41

under the laws of the State of North Carolina, is qualified to do business and is actually

doing business in the State of North Carolina, is a citizen of the State of North Carolina,

and is authorized to sue and be sued.

422.   The primary business of Plaintiff **Farid Hanachi DDS PA,** is the practice of dentistry.

423.   Plaintiff **Farid Hanachi** is a citizen of the State of North Carolina, and is *sui juris.*

424.   The primary business of Plaintiff **Farid Hanachi** is the practice of dentistry.

**(Defendants ¶¶ 425 - 490, pp. 42 - 52)**

**Brican America, Inc.**

425.   Defendant, Brican America, Inc., is a corporation organized and existing under the laws

of the State of Florida, having its principal place of business in Miami-Dade County,

Florida, and is authorized to sue and be sued.

426.   Defendant, Brican America, Inc., is a citizen of the State of Florida, and has its principal

office at 5301 Blue Lagoon Drive, Suite 520, Miami, FL, as do Brican America, LLC,

Brican Financial Services, LLC, and the registered agent of JJR Investments, LLC.

427.   The main entrance door to the offices of Brican America, Inc., Brican America, LLC,

and Brican Financial Services, LLC, (Suite 550, 5301 Blue Lagoon Drive, Miami, FL)

has glass double doors, with a sign next to the door which says simply, "Brican."

428.   There are doors down the hallway from suite 550, one to the North and one to the South,

which are exit doors from suite 550, but which have signs saying, "Brican America,

Inc."

429.   Defendant, Brican America, Inc., was formed on July 30, 2004, by Laurent Goldstein

and Defendant, Jean Francois Vincens, who at the time was an owner of 50% of the

42

outstanding stock of Brican Systems Corporation Vancouver (hereafter Brican Canada). [Vincens Tr., pp. 16-18[1].]

430.   Upon knowledge, information and belief, Plaintiffs allege that Jeff Vincens is the same person as Defendant, Jean Francois Vincens. [Cook (Oct.) Tr., p. 25.]

431.   The original stockholders of Brican America, Inc., were Jean Francois Vincens, Jacques Lemacon, and Laurent Goldstein. [Vincens Tr., p. 17.]

432.   The present stockholders of Brican America, Inc., are Jean Francois Vincens and Jacques Lemacon. [Vincens Tr., p. 18.]

433.   Brican America, Inc., presently has no business, but when it did business, the primary business of Brican America, Inc., was to sell Display Systems to raise money to open and operate the business of Viso Lasik Medspas, LLC.  At one point in time during its sales process, the primary business of Brican America, Inc., (selling Display Systems to raise money for Viso Lasik Medspas, LLC), was transferred to Brican America, LLC, to act as vendor under equipment rental agreements, and the business of Brican America, Inc., became to act as the lessor of equipment rental agreements which were to be immediately assigned to NCMIC Finance Corporation.

434.   The use of Brican America, Inc., to be the lessor and assignor, and the use of Brican America, LLC, to act as vendor, was done at the direction of NCMIC Finance Corporation.

---

[1] "Vincens Tr.," refers to the transcript of the deposition of Jean Francois Vincens taken on Oct. 8, 2009, in the case of *NCMIC Finance Corporation v. Brican America, Inc.,* case number 09-CV-21192 (Huck) (S.D.Fla.). All other transcript citations are to depositions taken in the same case.

43

**Brican America, LLC**

435.   Defendant, Brican America, LLC, is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business in Miami-Dade County, Florida, and is authorized to sue and be sued.

436.   Defendant, Brican America, LLC, is a citizen of the State of Florida, and has its principal office at 5301 Blue Lagoon Drive, Suite 520, Miami, FL.

437.   Defendant, Brican America, LLC, was formed on July 18, 2006.

438.   The managing members of Brican America, LLC, are Jean Francois Vincens and Jacques Lemacon.

439.   The primary business of Brican America, LLC, was and is to sell Display Systems to raise money to open and operate the business of Viso Lasik Medspas, LLC, and to thereby act as vendor under equipment lease agreements to be entered into by Brican America, Inc., immediately assigning those agreements to NCMIC Finance Corporation.

**Brican Financial Services, LLC**

440.   Defendant, Brican Financial Services, LLC,  is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business in Miami-Dade County, Florida, and is authorized to sue and be sued.

441.   Defendant, Brican Financial Services, LLC, is a citizen of the State of Florida, and has its principal office at 5301 Blue Lagoon Drive, Suite 520, Miami, FL.

442.   Defendant, Brican Financial Services, LLC, was formed on April 17, 2009, the day after NCMIC Finance Corporation stopped funding contracts for Brican America, Inc.

443.   The managing members of Brican Financial Services, LLC, are Jean Francois Vincens

44

and Jacques Lemacon.

444.  The primary business of Brican Financial Services, LLC, was to act as the lessor under supposed equipment rental agreements which were intended to be (and some were) sold to leasing companies in connection with the sale of Display Systems by Brican America, LLC.

**Jean Francois Vincens**

445.  Defendant, Jean Francois Vincens, is a citizen of the countries of France and Canada, and is in the United States of America on a visa. [Vincens Tr., p. 8.]

446.  While in the United States of America, Jean Francois Vincens, resides in Miami-Dade County, Florida.

447.  Defendant, Jean Francois Vincens, is over the age of 18 and is *sui juris*.

448.  Defendant, Jean Francois Vincens, is a substantial stockholder and officer in the following corporations which are involved in this suit, and is a managing member or an officer of a corporation which is a managing member, of limited liability companies which are involved in this suit:

a.  Brican America, Inc.;

b.  Brican America, LLC,;

c.  Brican Financial Services, LLC;

d.  JJR Investments, LLC, which itself is a managing member of the following limited liability companies involved in this suit:

i.  Viso Lasik Medspas, LLC;

ii.  Viso Lasik Medspas of Charlotte, LLC; and

45

iii.     Viso Lasik Medspas of San Antonio, LLC.

449.   Defendant, Jean Francois Vincens, has previously been involved in an equipment

leasing fraud described by the United States Court of Appeals, Eleventh Circuit as:

> This case involves a scheme to use electronic billboards and kiosks
> (collectively "kiosks") for advertising. The promoters of the scheme[FN1] executed
> it in the following way. First, they organized Optical Technologies, Inc., and a
> group of affiliated companies, Recomm International Display Corp., Recomm
> Operations, Inc., and Recomm Enterprises, Inc. (hereafter referred to collectively
> with Optical Technologies, Inc., as "Recomm").[FN2] Recomm, in turn, (1)
> convinced several advertising agencies of the merits of advertising via kiosks,
> and (2) convinced pharmacists, veterinarians, optometrists, and others of the
> profits they would earn by locating the kiosks at their places of business. Having
> accomplished this, Recomm (3) acquired the necessary kiosks, leased them to
> the pharmacists and others (the "Lessees"), assigned the leases to finance
> companies (the "Lessors"),[FN3] and (4) entered into advertising contracts with the
> Lessees. These contracts provided that the Lessees would receive a stated
> percentage of the fees Recomm received from the advertising agencies.
> Recomm, the Lessees, and the Lessors contemplated that the Lessees' share of
> the advertising fees would more than cover the Lessees' lease payments.
>
> FN1. Jean Francois Vincens and Raymond Manklow.
>
> FN2. The promoters formed other Recomm corporations as well.
> Although it is unnecessary to refer to them by name, all ultimately
> became part of the Chapter 11 bankruptcy case involved in this appeal.
>
> FN3. As far as we can tell from the record, the lease assignments were
> without recourse.
>
> The scheme worked for the benefit of all parties for a few years, until
> mid-1995, when Recomm began to experience cash-flow problems and ceased
> remitting to the Lessees their portions of the advertising fees. The Lessees
> responded in two ways. First, they quit paying the Lessors the rent due on the
> kiosk leases; then, they sued Recomm. As the law suits multiplied, Recomm
> turned to the bankruptcy court for relief. In January 1996, Recomm filed a
> Chapter 11 petition[FN4] in the Bankruptcy Court for the Middle District of Florida.

*In re: Optical Technologies, Inc.*, 425 F.3d 1294, 1296-97 (11th Cir. 2005).

450.   The equipment supplier for the Optical Technologies scheme was a company owned by

46

Defendant Jean Francois Vincens.

451. At some point in time, Defendant Jean Francois Vincens sold the equipment supply company to his nephew, Jacques Lemacon.

452. Defendant Jean Francois Vincens duplicated the Optical Technologies scheme using Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, JJR Investments, LLC, Viso Lasik Medspas, LLC, Viso Lasik Medspas of Charlotte, LLC, and Viso Lasik Medspas of San Antonio, LLC.

453. Defendant, Jean Francois Vincens, sold his stock in the Recomm Companies to three Recomm employees in 1994, and received a total of $8,965,170 for his stock in Recomm International, Recomm Enterprises and/or Recomm Operations. *In re: Optical Technologies, Inc.*, 252 B.R. 531, 534-536 (M.D.Fla. 2000).

454. After his sale of stock, Defendant, Jean Francois Vincens, left the country to return to Canada. [Vincens Tr., pp. 9-10.]

455. While in Canada, Jean Francois Vincens became associated with, and ultimately was an equity owner of, Brican Canada.

456. Upon knowledge, information, and belief, Plaintiffs allege that Brican Canada was engaged in a similar sales scheme of selling or leasing Display Systems to doctors, with associated marketing or advertising agreements.

457. Upon knowledge, information, and belief, Plaintiffs allege that the sales by Brican Canada were performed in Canada and Europe.

458. One of the funding sources utilized by Brican Canada was NCMIC Finance Corporation.

47

459.    Brican Canada developed or modified certain software used in the Display Systems.

460.    In 2004, Defendant, Jean Francois Vincens, returned to the United States to begin the
business of Brican America, Inc., which was to sell advertising to be displayed in the
offices of optometrists (and later, dentists and other health care providers) utilizing a flat
screen television, a computer and inexpensive computer software, as a means of raising
money to equip, build-out and open a business through which to sell spa treatments in
upscale offices referred to as a medical spa.  [Vincens Tr., p. 9.]

**Jacques Lemacon**

461.    Defendant Jacques Lemacon is the nephew of Defendant Jean Francois Vincens.

462.    Upon knowledge, information and belief, Plaintiffs allege that Defendant, Jacques
Lemacon, is a citizen of a country other than the United States of America, and is
present in the United States pursuant to a visa.

463.    While in the United States of America, Jacques Lemacon, resides in Miami-Dade
County, Florida.

464.    Defendant, Jacques Lemacon, is over the age of 18 and is *sui juris*.

465.    Defendant, Jacques Lemacon, is a substantial stockholder and officer in the following
corporations which are involved in this suit, and is a managing member or an officer of
a corporation which is a managing member, of limited liability companies which are
involved in this suit:

    a.    Brican America, Inc.;

    b.    Brican America, LLC,;

    c.    Brican Financial Services, LLC;

48

     d.     JJR Investments, LLC, which itself is a managing member of the following limited liability companies involved in this suit:

         i.     Viso Lasik Medspas, LLC;

         ii.     Viso Lasik Medspas of Charlotte, LLC; and

         iii.     Viso Lasik Medspas of San Antonio, LLC.

466. Defendant Jacques Lemacon is the owner of the company used to supply the computer hardware and television systems for the Brican Display Systems.

**Salvatore M. DeCanio, Jr.**

467. Upon knowledge, information and belief, Plaintiffs allege that Defendant, Salvatore M. DeCanio, Jr., is a resident of and domiciled within the jurisdiction of the Southern District of Florida, and is a citizen of the State of Florida.

468. Defendant, Salvatore M. DeCanio, Jr., is over the age of 18 and is *sui juris*.

469. Defendant, Salvatore M. DeCanio, Jr., is a substantial stockholder and officer in the following corporations which are involved in this suit, and is a managing member or an officer of a corporation which is a managing member, of limited liability companies which are involved in this suit:

     a.     Lifestyle of Vision, Inc., a Florida corporation, which itself is a managing member of the following limited liability companies involved in this suit:

         i.     Viso Lasik Medspas, LLC;

         ii.     Viso Lasik Medspas of Charlotte, LLC; and

         iii.     Viso Lasik Medspas of San Antonio, LLC.

**JJR Investments, LLC**

49

470. Defendant, JJR Investments, LLC, is a limited liability company organized and existing under the laws of the State of Florida, is a citizen of the State of Florida, is authorized to, and actually doing business in, the State of Florida, and is authorized to sue and be sued.

471. The address of the registered agent for JJR Investments, LLC, is 5301 Blue Lagoon Drive, Suite 520, Miami, FL.

472. Defendant, JJR Investments, LLC, was formed on July 18, 2006, the same date as Brican America, LLC, was formed, and utilizing the same lawyer.

473. Defendant, JJR Investments, LLC, is a managing member of the following limited liability companies involved in this suit:

    i.      Viso Lasik Medspas, LLC;

    ii.     Viso Lasik Medspas of Charlotte, LLC; and

    iii.    Viso Lasik Medspas of San Antonio, LLC.

**Lifestyle of Vision, Inc.**

474. Defendant, Lifestyle of Vision, Inc., was formed as Laser Eye Spa, Inc., under the laws of the State of Florida on September 13, 2006, and changed its name to Lifestyle of Vision, Inc., on March 4, 2007.

475. Defendant, Lifestyle of Vision, Inc., is a resident and citizen of the State of Florida, having its principal place of business at 9 Fairway Drive, Boynton Beach, FL.

476. Defendant, Lifestyle of Vision, Inc., is authorized to sue and be sued.

**Viso Lasik Medspas, LLC**

477. Defendant, Viso Lasik Medspas, LLC, is a limited liability company organized and

50

existing under the laws of the State of Florida, is a resident of and citizen of the State of Florida, and is authorized to sue and be sued.

478.   Defendant, Viso Lasik Medspas, LLC, was organized on November 26, 2007.

479.   The majority interest in Defendant, Viso Lasik Medspas, LLC, is owned by JJR Investments, LLC, and Lifestyle of Vision, Inc.

**Viso Lasik Medspas of Charlotte, LLC**

480.   Defendant, Viso Lasik Medspas of Charlotte, LLC, is a limited liability company organized and existing under the laws of the state of North Carolina, is a resident and citizen of the State of North Carolina, and is authorized to sue and be sued.

481.   Defendant, Viso Lasik Medspas of Charlotte, LLC, was organized on November 27, 2007, by JJR Investments, LLC, Lifestyle of Vision, Inc., and a Dr. Amir Khoshnevis.

482.   The majority interest in Defendant, Viso Lasik Medspas of Charlotte, LLC, is owned by JJR Investments, LLC, and Lifestyle of Vision, Inc.

**Viso Lasik Medspas of San Antonio, LLC**

483.   Defendant, Viso Lasik Medspas of San Antonio, LLC, is a limited liability company organized and existing under the laws of the State of Texas, is a resident and citizen of the State of Texas, and is authorized to sue and be sued.

484.   Defendant, Viso Lasik Medspas of San Antonio, LLC, was organized on January 3, 2008, by JJR Investments, LLC, Lifestyle of Vision, Inc., and one Mark K. Davis & Associates, PA.

485.   The majority interest in Defendant, Viso Lasik Medspas of San Antonio LLC, is owned by JJR Investments, LLC, and Lifestyle of Vision, Inc.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

**NCMIC Finance Corporation**

486.   Defendant, NCMIC Finance Corporation, is a corporation organized and existing under the laws of the State of Iowa, is a resident and a citizen of the State of Iowa, having its principal place of business in the State of Iowa.

487.   Defendant, NCMIC Finance Corporation, was incorporated on September 9, 1993.

488.   Defendant, NCMIC Finance Corporation, adopted the fictitious name "Professional Solution Financial Services" on July 6, 2009[2].

489.   Defendant, NCMIC Finance Corporation, is authorized to sue and be sued.

490.   Defendant NCMIC Finance Corporation, at all times material hereto, was and is authorized to do business in, and is doing business in, the State of Florida.

# Facts

**(¶¶ 491- 635, pp. 52-86)**

491.   Defendants, Jean Francois Vincens and Jacques Lemacon, jointly determined to conduct the following program:

    a.   They would sell a flat screen television and computer with inexpensive display software and a library of graphics (whether graphic art, photographs, or video) to an optometrist or dentist for use in his, her or its office;

    b.   At the same time, and as the predominate feature of the contract, they would

---

[2] Sometimes in this complaint, Professional Solution Financial Services is used in place of NCMIC Finance Corporation, but only for clarification purposes. At all times material to the facts alleged herein, NCMIC Finance Corporation used Professional Solution Financial Services as a trade name.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

enter into a marketing or advertising agreement whereby one of their related entities would contract to pay the optometrist or dentist advertising revenue to utilize a portion of the time that the display system would be used with patients present, which revenue would be almost equal to the monthly cost of the system if the optometrist or dentist decided to lease the system;

c.  They had already entered into a vendor relationship or program agreement with a funding source whereby the funding source would either directly enter into an equipment rental agreement under a semi-private label arrangement[3], or would receive an assignment from the vendor (their company) of an equipment rental agreement to be signed by the customer;

d.  Once the signed equipment rental agreement and acceptance certificate were received by the funding source, a purchase order was issued by the funding source, and upon telephone verification with the customer that the goods had been received, the funding source would disburse the net present value of the lease payments to them;

e.  They would use the money paid to:

    i.  Pay approximately $3,500 for the equipment and software license;

    ii.  Pay a commission of either $1,000 or $2,000 dollars to the commissioned

---

[3] A semi-private label relationship is a form of institutionalized deception whereby the funding source permits the vendor to place the vendor's name and logo in one or more predominate places, using some of the largest type sizes used in the document, for the purpose of giving the customer the impression that the contract is with the vendor, while in the small type used throughout the rest of the document, it is disclosed (if one has the physical ability to read that small type) that the lessor is an entity other than the vendor.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

salesperson[4];

    iii.    Pay the marketing or advertising contract payments coming due to each

of the contracted dentists or optometrists;

    iv.    Pay their indirect overhead; and

    v.    Transfer the balance of the money to an associated entity owned by them

to ultimately rent, equip, and open medical spas in three cities[5].

492.    As Defendant, Jean Francois Vincens, agreed in his deposition:

So the advertising was done to entice doctors into entering into these lease
agreements so Brican could generate income that it would then lend back to Viso
Lasik.

[Vincens Tr., p. 74.]

**Fraudulent Aspect of Program**

493.    At the time of entering into the marketing or advertising agreements, the company

utilized by Jean Francois Vincens and Jacques Lemacon as the advertising company,

Viso Lasik Medspas, LLC, had no business and no source of income with which to meet

its contractual obligations to pay for advertising; rather, it was utilizing the monetized

portions of the equipment rental agreements to pay for the advertising, which payment

obligations were the attraction of the Plaintiffs into the program.

494.    No Defendant reserved any money from the monetization of the leases to enable that

Defendant to meet the obligation of paying advertising or marketing fees in the future.

---

[4]Sales personal were compensated on either a straight commission basis, in which case
the commission would be $2,000 per contract, or a combination of salary ($4,000 per month)
and commission of $1,000 per contract.

[5]Over $7,000,000 was transferred to the Viso Lasik Medspas in this fashion.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

495.    In short, the lease of equipment with a marketing or advertising contract was a Ponzi
        scheme which could survive as long, and only as long, as more and more transactions
        were closed to fund the payment of the marketing contracts.

496.    In fact, unless sales of contracts outpaced the payments due under the marketing and
        advertising contracts, the Ponzi scheme would, and did, collapse:

        a.      Each contract would generate approximately $24,000 from the funding source;

        b.      From that $24,000, $3,500 would be paid for the equipment, leaving a balance
                of $20,500;

        c.      From that $20,500, commissions would be paid (assuming the lowest amount)
                of $1,000, leaving a balance of $19,500;

        d.      From that $19,500, a 4.5% "management fee" was paid to each Jean Francois
                Vincens and Jacques Lemacon, [Ellzey Tr., pp. 39-40] which would be $2,160,
                leaving only $17,340, before meeting indirect overhead;

        e.      Yet, to generate the $17,340, Brican America, Inc., Brican America, LLC, and/or
                Viso Lasik Medspas would enter into contracts requiring them to pay a minimum
                of $5,800 per year for the 5-year term of the leasing agreement, for a total payout
                of $29,400; and,

        f.      As a result, each contract was approximately $12,000 underwater before any
                indirect overhead was paid.

497.    However, no Plaintiff was advised of these features of the program by any Defendant.

**Beginning of Fraudulent Program**

498.    The first step taken by Defendants, Jean Francois Vincens and Jacques Lemacon,

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

toward the conduct of the fraud was the formation of Brican America, Inc., on July 30, 2004.

499.   Between July 30, 2004 and July 16, 2005, Brican America, Inc., and NCMIC Finance Corporation operated under what is known in the lease-finance industry as a vendor relationship, whereby NCMIC Finance Corporation has orally agreed to act as a funding source for the finance of equipment sold by Brican America, Inc., the vendor.

500.   On or about July 16, 2005, Brican America, Inc., entered into a contract with NCMIC Finance Corporation, known as a "Vendor Agreement," a true and correct copy of which is attached hereto as Plaintiffs' Exhibit 1, and by reference is made a part hereof.

501.   Although the formal Vendor Agreement was entered into on July 16, 2005, the parties to the Vendor Agreement actually began their vendor relationship before December, 2004, according to the former employee of NCMIC Finance Corporation who was responsible for funding leases generated by Brican America, Inc., Paula Barkley. [Barkley Tr., p. 28.]

502.   Among other things, Plaintiffs' Exhibit 1 provides that NCMIC Finance Corporation intended to purchase goods from Brican America, Inc., for the purpose of leasing or financing such goods to customers of Brican America, Inc.

503.   Fred Scott was authorized by NCMIC Finance Corporation to negotiate a relationship with Vincens and his companies (and Fred Scott ultimately signed the Vendor Agreement on behalf of NCMIC Finance Corporation).

504.   Prior to utilizing marketing or advertising agreements in connection with sales of the Display Systems, Jean Francois Vincens advised NCMIC Finance Corporation, through

56

its employee, Fred Scott, of Vincens' intention to utilize advertising and marketing agreements in connection with the sale of Display Systems. [Vincens Tr., pp. 165-166.]

505. Fred Scott, on behalf of NCMIC Finance Corporation, voiced no objection to Jean Francois Vincens to his announced intention to utilize the marketing or advertising agreements, and never asked for a copy. [Vincens Tr., p. 166.]

506. Jean Thompson began her employment with NCMIC Finance Corporation during September, 2004, and became an account manager for NCMIC Finance Corporation in September, 2005, which is her present position with NCMIC Finance Corporation. [Thompson Tr., pp. 5-6.]

507. Sometime between September, 2005, and February, 2007, Jean Thompson learned of the use of the advertising and marketing agreements. [Thompson Tr., pp. 12-14.]

508. After learning of the utilization of the advertising and marketing agreements, Jean Thompson conversed with Fred Scott and possibly Scott Stewart and Bill Artino, all people above her in the chain of command within NCMIC Finance Corporation, about the utilization of these agreements by Brican America, Inc. [Thompson Tr., pp. 13-14.]

509. From April, 2007, the date that Sandra Ellzey was first employed by Brican America, LLC, she had frequent (i.e., almost daily) communication with Jean Thompson at NCMIC Finance Corporation.

510. Frequently, Jean Thompson would advise Sandra Ellzey that a particular customer had failed to pay his monthly payment to NCMIC Finance Corporation because he had not received his advertising or marketing payment, and Jean Thompson would request that Sandra Ellzey speak with the customer. [Ellzey Tr., pp. 27-29.]

57

511.  The first such conversation took place in April, 2007, and concerned a customer named Alfonso Montemayor. [Ellzey Tr., p. 29.]

512.  After settling the *NCMIC Finance Corporation v. Brican America, Inc.*, suit Brican America, LLC, released a press release and sent email to its customer base stating, among other things:

   a.  PSFS was fully aware of the Marketing Agreement, its scope and its use since 2006

   b.  Having full knowledge of the Marketing Agreement, PSFS never required Brican to supply copies of this Agreement or any updates related to the Marketing Agreement

   c.  PSFS never objected to any of the clauses contained in the Marketing Agreement, even after having its counsel review and approve its continued use in 2008.

513.  No one at NCMIC Finance Corporation voiced a concern about the utilization of the advertising and marketing agreements by Brican America, Inc., and no one at NCMIC Finance Corporation requested that Brican America, Inc., provide NCMIC Finance Corporation with copies of the advertising and marketing agreements in use. [Thompson Tr., pp. 14-15.]

514.  During the time that the parties operated under the vendor relationship and the Vendor Agreement, the televisions which were a part of the goods leased or financed, had a maximum cost of less than $2,000.

515.  During the time that the parties operated under the vendor relationship and the Vendor

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

Agreement, the computers which were a part of the goods leased or financed, had a maximum cost of less than $1,000.

516. During the time that the parties operated under the vendor relationship and the Vendor Agreement, the software used on the computers which were a part of the goods leased or financed, had a maximum fair market value of $500 per license.

517. Plaintiffs have knowledge, information and belief, and therefore allege, that minimal (less than $10) or no license fees were paid by Brican America, Inc., for the use of the software developed by Brican Canada.

518. NCMIC Finance Corporation knew, or with the exercise by them of reasonable care, would have known, that the maximum value of the goods subject to the lease or finance agreement was $3,500.

519. Upon knowledge, information and belief, Plaintiffs allege that NCMIC Finance Corporation valued the equipment at $3,500 for tax purposes.

520. Ignoring the maximum value of the goods subject to the lease or financing agreement, NCMIC Finance Corporation entered into leases directly with the customers of the program, including Plaintiffs, requiring those customers to repay approximately $30,000 for the goods worth $3,500.

521. NCMIC Finance Corporation was to profit $6,000 per lease if the lease were paid timely and fully paid by the end of its term.

522. NCMIC Finance Corporation issued or obtained a total of 1,672 leases.

523. The total profit to be earned by NCMIC Finance Corporation from the 1,672 leases, then, was $10,032,000.

59

524.    NCMIC Finance Corporation knew, or with the exercise of reasonable care, would have known that the advertising and marketing agreements were the predominate feature of the transactions with Plaintiffs.

525.    NCMIC Finance Corporation knew, or with the exercise of reasonable care, would have known that the contractual commitment to pay each Plaintiff almost the entire cost of the lease of the Display System leased by that doctor (with the contractual entitlement to stop making payments under all related contracts, including the equipment rental agreements should the advertising and marketing fees not be paid) was the reason that the Plaintiffs were entering into the leases.

526.    NCMIC Finance Corporation permitted Defendant, Brican America, Inc., to utilize an institutionalized form of deception known as "semi-private label" leasing whereby the name and logo of Brican America, Inc., is dominant on the equipment lease application and agreement, and the name of Professional Solution Financial Services, is included on the form, but in a much smaller font.

527.    Semi-private label leasing is designed to deceive the lessee into believing that he is entering into a lease with the same entity as that selling the product to him. In other words, lead the customer to believe that the vendor and the lessor were the same entity.

528.    The effect of that deception is that the customer believes that it will have certain legal rights against the lessor if the vendor fails to perform which the customer, in fact, does not have.

**Fraudulent Program Grows**

529.    During the early sales under the program, the vendor was Brican America, Inc., and the

60

lessor or secured party was NCMIC Finance Corporation, doing business as Professional Solution Financial Services, operating under the semi-private label lease form.

530.   The salesman would advise the potential customer that:

    a.   The equipment (described by various names such as the Brican Display System, and later, the Exhibeo System) could be purchased for an outright payment of $22,000 or could be leased for $508 per month plus tax, for 60 months, with a $1 buy-out at the end of the lease, for a total cost of $30,481;

    b.   At the same time, Brican America, Inc., would enter into a marketing or advertising agreement through which Brican America, Inc., would pay the customer almost $500 per month, resulting in the net cost of the system to the customer being next to nothing;

    c.   The marketing agreement provided that if it stopped making payments on the marketing agreement, the customer could either stop making payments or Brican America, Inc., would buy back the system and lease agreement so that the customer would have no further financial obligation.

531.   The salesmen failed to advise the Plaintiffs that:

    a.   The advertising entity had no business, no income, and no source for paying the financial obligations under the advertising or marketing agreement except by utilizing the monetized portion of the leases which would be insufficient to meet the financial obligations on a long-term basis, and

    b.   No entity was reserving sufficient funds from the monetization of the leases to

61

enable fulfillment of the financial obligation to pay the advertising and marketing agreements.

532.   Prior to offering the marketing agreements to customers, Defendant Jean Francois Vincens discussed the concept and use of marketing agreements with Fred Scott, of NCMIC Finance Corporation, who gave his verbal consent to their use. [Vincens Tr., pp. 165-166.]

533.   An example of such a lease and marketing agreement are attached hereto as Plaintiffs' Exhibit 2, and by reference, are made a part hereof.

**NCMIC Finance Corporation Affirms the Cancellation Provision**

534.   Fred Scott left the employ of NCMIC Finance Corporation before July, 2008.

535.   A successor employee of NCMIC Finance Corporation responsible for certain aspects of the relationship with Vincens and his companies was Todd Cook, a vice-president and manager of the equipment leasing division of NCMIC Finance Corporation.

536.   Mr. Cook was not employed by NCMIC Finance Corporation during the same time that Fred Scott was employed by NCMIC Finance Corporation.

537.   According to the testimony of Todd Cook, he became aware of the marketing agreements, and the specific language which permitted the customer to cancel the lease if Brican America, Inc., failed to honor its financial commitments pursuant to the marketing agreement, during July, 2008[6]. [Cook (Oct.) Tr., p. 13.]

538.   When Mr. Cook became aware of the existence of the marketing agreements, he asked

---

[6]Mr. Cook did not become aware of the existence of a written Vendor Agreement with Brican America, Inc., until a visit to the offices of Brican America, Inc., in November, 2008. [Cook (Oct.) Tr., p. 16.]

62

Vincens and Lemacon how many such agreements existed. [Cook (Nov.) Tr., p. 76.]

539.    Vincens and Lemacon responded that there were "some." [Cook (Nov.) Tr., p. 76.]

540.    Although Mr. Cook was a CPA by education and training, and accustomed to exactness in his business affairs, he accepted the representation that there were "some" marketing agreements in existence, and failed to request copies of all which had been extended to customers. [Cook (Nov.) Tr., p. 76.]

541.    Although Mr. Cook reported to the president of NCMIC Finance Corporation in the hierarchy of the corporation, according to the president of NCMIC Finance Corporation, Gregory Cole, no one advised him of the existence of the marketing agreements until April, 2009. [Cole Tr., p. 15.]

542.    During July, 2008, (the time when Mr. Cook admits to knowledge of the existence of the marketing agreements) the Vendor Agreement between NCMIC Finance Corporation and Brican America, Inc., provided that Brican America, Inc., warranted and represented that:

　　　6.c.    There are no other agreements or warranties given to Lessee relating to the Goods or Leases written or verbal that are not included in the documents given to PSFS.

543.    Brican America, Inc., had not provided NCMIC Finance Corporation with copies of the marketing agreements because, as Jean Francois Vincens testified, nobody from NCMIC Finance Corporation asked for them. [Vincens Tr., p. 166.]

544.    Upon learning of the apparent breach of representation and warranty contained in ¶ 6.c, as quoted above, rather than demanding that copies of all such agreements be provided to it, NCMIC Finance Corporation asked Brican America, Inc., how many leases had

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

marketing agreements connected to them. [Cook (Nov.) Tr., p. 76.]

545. Brican America, Inc., answered that only "some" existed. [Cook (Nov.) Tr., p. 76.]

546. NCMIC Finance Corporation took no steps to obtain copies of all of the marketing agreements, or to advise those Plaintiffs who had marketing agreements that NCMIC Finance Corporation would not honor the representations contained in the marketing agreement, specifically the representation that the equipment rental agreement could be canceled.

547. By permitting the existence of the marketing agreements, as authorized by Fred Scott, NCMIC Finance Corporation ratified and confirmed the cancellation provision contained therein.

548. By failing to so notify the customers of a contrary position in July, 2008 (when Todd Cook learned of the marketing agreements), NCMIC Finance Corporation ratified and affirmed the cancellation provision of the advertising and marketing agreements.

**NCMIC Finance Corporation Conspires with the Brican Companies**

549. Having learned that the leases contained related marketing agreements which contained cancellation clauses, NCMIC Finance Corporation, through its officer and employee Todd Cook, conspired with Brican America, Inc., and Brican America, LLC, to modify the contract documents so that the fraud could continue.

550. From the beginning of the vendor relationship through December, 2008, 25% of the total business done by NCMIC Finance Corporation was with Brican America, Inc. That figure increased to 70% during the first four months of 2009. [Cook (Oct.) Tr., p. 23.]

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

551.   During July and August, 2008, Todd Cook, the vice president and general manager of
       the equipment finance division of NCMIC Finance Corporation, assisted Brican
       America, Inc., and Brican America, LLC, in furthering the fraud in this fashion:

   a.    He changed the program from a semi-private label program (where the name and
         logo of Brican America, Inc., were dominant on the lease forms) to a private
         label program (where only the name of Brican America, Inc., or Brican America,
         LLC, appeared on the lease forms), although by agreement the leases would be
         immediately assigned to NCMIC Finance Corporation;

   b.    He advised Brican America, Inc., and Brican America, LLC, that Brican
         America, LLC, could not be both the vendor and the lessor on leases to be
         assigned to NCMIC Finance Corporation;

   c.    He helped rewrite the language of the marketing agreement, changing it from:

         6. Cancellation: If Brican fails to honor its financial commitment
         pursuant to this agreement, then all related agreements can be
         cancelled by the Client[7]

                                        To:

         6. Cancellation: If Brican fails to honor its commitment relating
         to the advertising fees, and if the Client requests it, Brican will
         assume assignment of the Client's lease agreement in regard to
         [the display system].

   [Cook (Oct.) Tr., pp. 12-17.]

552.   Pursuant to the direction of NCMIC Finance Corporation, Brican America, LLC,
       became the vendor, Brican America, Inc., became the lessor, and Brican America, Inc.,

---

[7]The only "related agreements" would be the lease agreements.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

assigned the leases immediately to NCMIC Finance Corporation pursuant to the Vendor Agreement.

553.   In spite of this direction coming from NCMIC Finance Corporation, NCMIC Finance Corporation failed to either amend the Vendor Agreement, or to enter into a new Vendor Agreement, whereby Brican America, LLC, would become a vendor under a written Vendor Agreement with NCMIC Finance Corporation.

554.   The parties continued to operate with no regard for any difference between Brican America, Inc., and Brican America, LLC.

**Professional Solution Financial Services Stops Funding, but the Fraud Marches On**

555.   On April 15, 2009, NCMIC Finance Corporation, doing business as Professional Solution Financial Services, stopped funding any more assignment of leases from Brican America, Inc., although $3,000,000 in purchase orders had been issued by NCMIC Finance Corporation to Brican America, Inc., and Brican America, Inc., had acquired the equipment to fill those purchase orders. [Cook (Oct.) Tr., pp. 19-21.]

556.   Defendants, Jean Francois Vincens and Jacques Lemacon, immediately formed Brican Financial Services, LLC, to be the funding source for the fraud.

557.   Ultimately, as happened in the prior kiosk fraud committed by Defendant, Jean Francois Vincens, the payments under the marketing and advertising agreements stopped.

558.   By the time that the payments stopped, Brican America, Inc., and Brican America, LLC, transferred over $7,000,000 to Defendants, Viso Lasik Medspas, LLC, Viso Lasik Medspas of Charlotte, LLC, and Viso Lasik Medspas of San Antonio, LLC, (jointly referred to as the Viso Lasik Defendants).

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

559. Ostensibly, the money transferred to the Viso Lasik Defendants was transferred pursuant to a "Credit Agreement," dated January 1, 2008, a copy of which is attached hereto as Plaintiffs' Exhibit 3.

560. However, as Defendant, Jean Francois Vincens testified in his deposition, it was the plan all along for the money raised by the sale of the Display Systems, and the monetization of those leases obtained during said sale, to fund the start-up of the business of the Viso Lasik Defendants.

561. On May 4, 2009, less than 3 weeks after NCMIC Finance Corporation stopped funding, NCMIC Finance Corporation filed suit in this court against Brican America, Inc., and only Brican America, Inc., requesting that this court enter an order requiring Brican America, Inc., to repurchase $38,000,000 in leases funded by NCMIC Finance Corporation. *NCMIC Finance Corporation v. Brican America, Inc.*, 09-cv-21192 (Huck) (S.D.Fla.).

562. On January 1, 2010, Brican America, Inc., and Viso Lasik Medspas, LLC, breached the marketing and advertising agreements by failing to make the quarterly payments coming due thereunder to each putative class member.

563. On February 22, 2010, NCMIC Finance Corporation and Brican America, Inc., agreed to the dismissal of the suit with prejudice. (DE 94)

564. On February 23, 2010, this court enter its order of dismissal with prejudice. (DE 95)

565. In a press release to the putative class members in March, 2010, NCMIC Finance Corporation asserted that it believed that Brican America, Inc., was insolvent and to continue to incur attorneys' fees to pursue a money judgment against an apparently

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

insolvent company "did not make business sense.[8]"

**Demand to Repurchase**

566.    Plaintiffs have demanded that Defendants Brican America, Inc., and Brican America,

        LLC, repurchase the lease agreements.

567.    Defendants Brican America, Inc., and Brican America, LLC, responded to the demands

        advising that neither was in a position to do so, and reiterated to each Plaintiff that he,

        she or it should continue making the payments coming due under the lease or finance

        agreements.

**Damages**

568.    Each Plaintiff has been damaged as a result of the actions of each Defendant.

569.    Each Plaintiff has retained the undersigned attorneys to represent them, and are

        obligated to pay said attorneys a reasonable fee for their services.

570.    Each equipment rental agreement contains a one-way attorneys' fee-shifting provision

        requiring each Plaintiff to pay the attorneys' fee of NCMIC Finance Corporation.

571.    Pursuant to § 57.105, FLA. STAT. (2009), said provision is made reciprocal.

572.    Plaintiffs have performed all conditions by them to be performed prior to bringing this

        claim for relief.

## Fraud Perpetrated on Named Plaintiffs

### Peter M. Blauzvern DDS PC

573.    On or about January 20, 2009, Brican America, LLC, represented to this Plaintiff that

---

[8]Dismissing a claim *with prejudice* does not make business sense if one really believed
that one's opponent was insolvent.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

if it would enter into a lease with Brican America, Inc., for 1 Exhibeo System, which would require a monthly payment of $508, Brican America, LLC, would enter into a marketing agreement on behalf of Viso Lasik Medspas, LLC, through which Brican America, LLC, would pay a minimum of $5,800 per year to Plaintiff, and that if it failed to pay the minimum of $5,800 per year, or if Viso Lasik Medspas, LLC, failed to make the payment, then Brican America, LLC, would at Plaintiff's request "repurchase" Plaintiff's lease agreement, leading Plaintiff to reasonably believe that the lease would be canceled.

574. The above representations are contained in Plaintiffs' Exhibit 4 attached hereto.

575. The above representations were false when they were made by Brican America, LLC, and were known by Brican America, LLC, to be false when they were made.

576. Brican America, LLC, intended that Plaintiff rely upon those representations.

577. Plaintiff reasonably relied upon those representations to its detriment.

578. Plaintiff has been damaged as a result of such reliance.

579. On February 7, 2009, Brican America, Inc., executed Plaintiffs' Exhibit 4 as Lessor.

580. On February 3, 2009, Brican America, Inc., assigned its interest in Plaintiffs' Exhibit 4 to NCMIC Finance Corporation.

581. Brican America, LLC, and Viso Lasik Medspas, LLC, breached the marketing agreement on or about January 1, 2010, by failing to pay Plaintiff the fee required by the contract.

582. On or about February 1, 2010, Plaintiff demanded that Brican America, LLC, repurchase the lease, and end Plaintiff's obligation to make payments thereunder.

69

583.   On or about February 11, 2010, Brican America, LLC, refused to assume the lease, and advised Plaintiff that it must continue making its lease payments.

**Jeff E. Donnelly**

584.   On or about April 20, 2009, Brican America, LLC, represented to this Plaintiff that if he would enter into a lease with Brican America, Inc., for 1 Exhibeo System, which would require a monthly payment of $508, Brican America, LLC, would enter into a marketing agreement on behalf of Viso Lasik Medspas, LLC, through which Brican America, LLC, would pay a minimum of $5,800 per year to Plaintiff, and that if it failed to pay the minimum of $5,800 per year, or if Viso Lasik Medspas, LLC, failed to make the payment, then Brican America, LLC, would at Plaintiff's request "repurchase" Plaintiff's lease agreement, leading Plaintiff to reasonably believe that the lease would be canceled.

585.   The above representations are contained in Plaintiffs' Exhibit 5 attached hereto.

586.   The above representations were false when they were made by Brican America, LLC, and were known by Brican America, LLC, to be false when they were made.

587.   Brican America, LLC, intended that Plaintiff rely upon those representations.

588.   Plaintiff reasonably relied upon those representations to its detriment.

589.   Plaintiff has been damaged as a result of such reliance.

590.   On April 30, 2009, Brican America, Inc., executed Plaintiffs' Exhibit 5 as Lessor.

591.   Thereafter, Brican America, Inc., assigned its interest in Plaintiffs' Exhibit 5 to NCMIC Finance Corporation.

592.   Brican America, LLC, and Viso Lasik Medspas, LLC, breached the marketing

70

agreement on or about January 1, 2010, by failing to pay Plaintiff the fee required by the contract.

593.   On or about March 3, 2010, Plaintiff demanded the Brican America, LLC, repurchase the lease, and end Plaintiff's obligation to make payments thereunder.

594.   Thereafter, Brican America, LLC, refused to assume the lease, and advised Plaintiff that it must continue making its lease payments.

**David Alemar DMD, PC**

595.   On or about March 30, 2009, Brican America, LLC, represented to this Plaintiff that if he would enter into a lease with Brican America, Inc., for 1 Exhibeo System, which would require a monthly payment of $508, Brican America, LLC,, would enter into a marketing agreement on behalf of Viso Lasik Medspas, LLC, through which Brican America, LLC, would pay a minimum of $5,800 per year to Plaintiff, and that if it failed to pay the minimum of $5,800 per year, or if Viso Lasik Medspas, LLC, failed to make the payment, then Brican America, LLC, would at Plaintiff's request "repurchase" Plaintiff's lease agreement, leading Plaintiff to reasonably believe that the lease would be canceled.

596.   The above representations are contained in Plaintiffs' Exhibit 6 attached hereto.

597.   The above representations were false when they were made by Brican America, LLC, and were known by Brican America, LLC, to be false when they were made.

598.   Brican America, LLC, intended that Plaintiff rely upon those representations.

599.   Plaintiff reasonably relied upon those representations to its detriment.

600.   Plaintiff has been damaged as a result of such reliance.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

601.  On April 15, 2009, Brican America, Inc., executed Plaintiffs' Exhibit 6 as Lessor.

602.  Brican America, LLC, and Viso Lasik Medspas, LLC, breached the marketing
agreement on or about January 1, 2010, by failing to pay Plaintiff the fee required by the
contract.

**Kenneth A. Korpan DDS, PC**

603.  On or about March 23, 2009, Brican America, LLC, represented to this Plaintiff that if
it would enter into a lease with Brican America, Inc., for 1 Exhibeo System, which
would require a monthly payment of $508, Brican America, LLC, would enter into a
marketing agreement on behalf of Viso Lasik Medspas, LLC, through which Brican
America, LLC, would pay a minimum of $5,800 per year to Plaintiff, and that if it failed
to pay the minimum of $5,800 per year, or if Viso Lasik Medspas, LLC, failed to make
the payment, then Brican America, LLC, would at Plaintiff's request "repurchase"
Plaintiff's lease agreement, leading Plaintiff to reasonably believe that the lease would
be canceled.

604.  The above representations are contained in Plaintiffs' Exhibit 7 attached hereto.

605.  The above representations were false when they were made by Brican America, LLC,
and were known by Brican America, LLC, to be false when they were made.

606.  Brican America, LLC, intended that Plaintiff rely upon those representations.

607.  Plaintiff reasonably relied upon those representations to its detriment.

608.  Plaintiff has been damaged as a result of such reliance.

609.  On or about March 11, 2009, Brican America, Inc., executed Plaintiffs' Exhibit 7 as
Lessor.

72

610.    On April 14, 2009, Brican America, Inc., assigned its interest in Plaintiffs' Exhibit 4 to NCMIC Finance Corporation.

611.    Brican America, LLC, and Viso Lasik Medspas, LLC, breached the marketing agreement on or about January 1, 2010, by failing to pay Plaintiff the fee required by the contract.

**Dr. Chandra R. Williams DMD, LLC**

612.    On or about February 22, 2009, Brican America, LLC, represented to this Plaintiff that if it would enter into a lease with Brican America, Inc., for 1 Exhibeo System, which would require a monthly payment of $508, Brican America, LLC,, would enter into a marketing agreement on behalf of Viso Lasik Medspas, LLC, through which Brican America, LLC, would pay a minimum of $5,800 per year to Plaintiff, and that if it failed to pay the minimum of $5,800 per year, or if Viso Lasik Medspas, LLC, failed to make the payment, then Brican America, LLC, would at Plaintiff's request "repurchase" Plaintiff's lease agreement, leading Plaintiff to reasonably believe that the lease would be canceled.

613.    The above representations are contained in Plaintiffs' Exhibit 8 attached hereto.

614.    The above representations were false when they were made by Brican America, LLC, and were known by Brican America, LLC, to be false when they were made.

615.    Brican America, LLC, intended that Plaintiff rely upon those representations.

616.    Plaintiff reasonably relied upon those representations to its detriment.

617.    Plaintiff has been damaged as a result of such reliance.

618.    On March 11, 2009, Brican America, Inc., executed Plaintiffs' Exhibit 8 as Lessor.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

619.    On March 11, 2009, Brican America, Inc., assigned its interest in Plaintiffs' Exhibit 8 to NCMIC Finance Corporation.

620.    Brican America, LLC, and Viso Lasik Medspas, LLC, breached the marketing agreement on or about January 1, 2010, by failing to pay Plaintiff the fee required by the contract.

## Similar Contracting with Remaining Plaintiffs

621.    A similar scenario occurred with each of the following Plaintiffs.  Copies of their contracts, marketing agreements, and communication to and from Defendants will be supplied with the Rule 26 disclosures, and not attached to this complaint to avoid unnecessarily attaching a large number of exhibits to the complaint.  The additional Plaintiffs are:

a.    Geoffrey S. Wozar, DMD, PC

b.    Jennifer Goldman

c.    Amy Thu Tran

d.    Mountain Lakes Dental Associates, PA

e.    Peter K. Eng

f.    Eye-Deal Family Eye Care, Inc.

g.    Paul Taylor DMD, Inc.

h.    Arthur B. Silver DDS PC,

i.    John C. Sieweke DDS PC,

j.    John C. Sieweke,

k.    Amarilis Jacobo,

74

l.      Stephen R. Kepley,

m.      Mark Margolies,

n.      George C. Weeks DDS PA,

o.      George C. Week,

p.      Alan M. Rapoport,

q.      Raymond Goodman, OD, PA,

r.      Raymond Goodman,

s.      Cary Family Eye Care, OD, PA,

t.      Dwight W. Barnes,

u.      Steven J. Luccarelli,

v.      Stanley D. Halpern, DDS, PC,

w.      Stanley D. Halpern,

x.      Webster Cosmetic Dental Ltd.,

y.      Barbara Webster,

z.      Eric Smith;

aa.     John M. Highsmith, DDS, PA

bb.     Steven B. Oken

cc.     Justin Chang, PC;

dd.     Jeffrey S. Thaller

ee.     Michael S. Burstein

ff.     Charles H. Estelle

gg.     Stuart A. Curry

75

hh. Gary Lederman

ii. Brian A. McMurtry, DDS, PA

jj. David S. Lee, DDS, Inc.,

kk. David S. Lee,

ll. Stone Creek Dental, PC,

mm. Casey S. Butterfield,

nn. Carolina Family Vision, OD, PA,

oo. Adam B. Bryan,

pp. Kristy L. Tart-Bryan,

qq. Peter Epstein DMD PA,

rr. Peter Epstein,

ss. Christopher Young DMD PA,

tt. Christopher Young,

uu. Chadds Ford Dental Associates, Inc.,

vv. Andrew Pratt,

ww. J.M. Arrue DMD LLC,

xx. J.M. Arrue,

yy. Troy R. Lindh DMD PA,

zz. Troy R. Lindh,

aaa. Brian G. DePetris,

bbb. Gordon Bell,

ccc. Benjamin Gamm,

76

ddd.    Eyeacam Associates, PA,

eee.    Elizabeth Lewis,

fff.    Kelly L. Kalmar,

ggg.    Kalmar Family Dentistry, LLP,

hhh.    Henderson Mill Dental Care, PC,

iii.    John H. Mason,

jjj.    David Alemar-Vincentry,

kkk.    ATL Smiles, LLC,

lll.    Joseph F. Alvarez,

mmm. Dentistry at Vinings, PC,

nnn.    Margaret Ames,

ooo.    Luc E. Kanicky,

ppp.    Wanda Arden,

qqq.    Visual Perceptions Eyecare, LLC,

rrr.    Catherine M. Ferentin,

sss.    Visual Perceptions – Vernon, LLC,

ttt.    Robert Aube,

uuu.    Brodedale Dental, PA,

vvv.    Eric Barney,

www. Travis B. Bartschi,

xxx.    Cedar Bluff Family & Cosmetic Dentistry, PA,

yyy.    Jeremy R. Bayer,

77

zzz.     BW Vision Care, PA, doing business as Bright Eyes Family Vision Care,

aaaa.   Nathan J. Bonilla-Warford,

bbbb.   Texarkan Vision Group, PLLC,

cccc.   R. Marc Carozza,

dddd.   J. Randall Glass,

eeee.   Michael J. Barbieri,

ffff.     Premier Dentistry, Inc.,

gggg.   Daniel Casel,

hhhh.   Barry I. Cohen,

iiii.     Michael E. and Maria Domingoes, PA,

jjjj.     Anastasia Dental Associates,

kkkk.   Michael W. Domingoes,

llll.     Benjamin W. Dreksler,

mmmm.     Todd J. Feddock,

nnnn.   Gregg Fink DMD, Inc.,

oooo.   Gregg Fink,

pppp.   Steven A. Firshein DMD, Inc.,

qqqq.   Steven A. Firshein,

rrrr.    Debra Glassman,

ssss.    Steven Glassman,

tttt.     David Goldberg,

uuuu.   Raymond C. Goodman, OD, PA,

78

vvvv.  Raymond C. Goodman,

wwww.       Handschumacher Enterprises, OD, PA,

xxxx.  Jeffrey Handschumacher,

yyyy.  Samir K. Hanna & Associates, PA,

zzzz.  Samir K. Hanna,

aaaaa. Unique Dental Center, PC,

bbbbb.       Unique Dental Care,

ccccc. Kevin Wendell,

ddddd.       Han Hong,

eeeee. Lisa P. Howard, DDS, PC,

fffff.  Lisa P. Howard, DDS, LLC,

ggggg.       Lisa P. Howard,

hhhhh.       John T. Kalange,

iiiii.  Gregory W. Kalmar,

jjjjj.  Joseph R. Kenneally, DMD, PA,

kkkkk.       Joseph R. Kenneally,

lllll.  Ira D. Koeppel, PC,

mmmmm.       Ira D. Koeppel,

nnnnn.       David R. Lach, D.D.S., M.S., P.A,

ooooo.       David R. Lach,

ppppp.       Anthony LaTempa DMD LLC,

qqqqq.       Anthony LaTempa,

79'

rrrrr.   Raymond Lawrence,

sssss.   Lucy S. Lee OD, PLLC,

ttttt.   Lucy S. Lee,

uuuuu.   Treva Diane Lee,

vvvvv.   Lewis Family Dentistry, LLC,

wwwww.   Gregory S. Liss,

xxxxx.   Robert Lustbader,

yyyyy.   Z. Maali Dental, Inc.,

zzzzz.  Ziyad Maali,

aaaaaa.   Peter D. Maro, Jr., DMD MS, PC,

bbbbbb.   Peter D. Maro,

cccccc.   Raymond K. Martin DDS MAGD, PC,

dddddd.   Raymond K. Martin,

eeeeee.   Lumberton Optometric Associates, PLLC,

ffffff.  Mirkin's Vision Care, PC,

gggggg.   Daniel Mirkin,

hhhhhh.   Larry J. Moray DDS MS PA,

iiiiii.  Larry J. Moray,

jjjjjj.  Henderson Mill Dental Care, PC,

kkkkkk.   Henderson Mill Dental Care,

llllll.  John T. Uetsuki,

mmmmmm.  Asheville Vision Associates OD PA,

80

nnnnnn.    Sid Morse,

oooooo.    Nelson Eye Associates, PC,

pppppp.    Marc B. Nelson,

qqqqqq.    Christine Nguyen, D.D.S., P.A.,

rrrrrr.  Christine Nguyen,

ssssss. Atul M. Patel, BDS, Inc.,

tttttt.  Atul M. Patel,

uuuuuu.    Signature Smiles, PC,

vvvvvv.    George Prattas,

wwwwww.    Adnan Qayyum DDS LLC,

xxxxxx.    Adnan Qayyum,

yyyyyy.    Rodeffer, Garner & Minor Orthodontics, LC,

zzzzzz.    Tod Garner,

aaaaaaa.    Charles E. Scholler,

bbbbbbb.    Fred R. Shanks OD, LLC,

ccccccc.    Fred R. Shanks,

ddddddd.    Sajini Shetty DMD Dental Offices, PC,

eeeeeee.    Sajini Shetty,

fffffff. Eric S. Smith, DDS, PC,

ggggggg.    Eric S. Smith,

hhhhhhh.    Gray and Smith Family Dental, PC,

iiiiiii.  Delmar Gray,

81

jjjjjjj.  Randall B. Smith,

kkkkkkk.    Beth Snyder,

lllllll.  Ian Sobler,

mmmmmmm.    Richard E. Sorkin OD, PA,

nnnnnnn.    Richard E. Sorkin,

ooooooo.    Jerry Strauss,

ppppppp.    Leonard F. Tau,

qqqqqqq.    All About Smiles, Inc.,

rrrrrrr. Serena Tham,

sssssss.    Deogsoo Roh,

ttttttt.  Robert R. Thousand, III, PA,

uuuuuuu.    Robert R. Thousand,

vvvvvvv.    Nathan W. Tilman DDS, PC,

wwwwwww. Nathan W. Tilman,

xxxxxxx.    Value Vision of Tampa Bay, Inc.,

yyyyyyy.    Laura Reilly n/k/a Laura Vizzari,

zzzzzzz.    David C. Suh DDS, Inc.,

aaaaaaaa.    David C. Suh,

bbbbbbbb.    J. Philip Wiygul,

cccccccc.    Farid Hanachi DDS PA,

dddddddd.    Farid Hanachi,

eeeeeeee.    Ben Schultz.

82

**Class Action Allegations: Numerosity**

622.   Plaintiffs request that this court certify the following class and subclasses[9]:

   a.   **Main class**:   All entities which entered into contracts with any of the
Defendant entities for purchase or lease of an advertising display
system and also entered into a marketing or advertising agreement
with one or more of the Defendant entities, and all individuals
who personally guaranteed payment of the purchase or lease
agreement.

623.   The main class consists of over 1670 entities, thus satisfying the numerosity requirement

   of Rule 23.

624.   Each subclass consists of more than 30 members, thereby individually satisfying the

   numerosity requirement of Rule 23.

625.   According to the suit filed by *NCMIC Finance Corporation v. Brican America, Inc.*,

   case number 09-CV-21192 (Huck) (S.D.Fla.), NCMIC Finance Corporation has entered

   into 1672 leases with customers of Brican America, Inc., having a total value of more

   than $38,000,000.

**Commonality**

626.   There are numerous issues of law and fact which are common to the claims of the

   putative class representatives and class members, including:

   a.   Whether the contracts are void *ab initio* for fraud;

   b.   Whether the contracts are enforceable;

   c.   Whether the contracts were breached;

---

[9]The reason for the existence of the subclasses, grouped by state, is for the application
of Little FTC Acts from the various states as required by *Phillips Petroleum v. Shutts*, 472 U.S.
797 (1985).

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

d.     Whether the claimants were damaged as a result of the breach;

e.     Whether the various Defendants fraudulently misrepresented material facts to the claimants which were known to the Defendants to be false or which were represented with reckless disregard for their truthfulness, with the intent that the claimants rely upon those representations, and whether the claimants relied upon those representations to their detriment;

f.     Whether Defendant NCMIC Finance Corporation ratified and affirmed the cancellation clause contained in the marketing and advertising agreements;

g.     Whether the various Defendants conspired to defraud the claimants;

h.     Whether the Defendants violated the Little FTC Acts of the resident states of the claimants causing them damage;

i.     Whether the corporate identities of the various Defendants, except NCMIC Finance Corporation, should be pierced and each Defendant become jointly and severally obligated for the damages claimed by the claimants; and,

j.     Such other issues as are identified as discovery is conducted in this matter.

**Typicality**

627.   The fraud perpetrated on the putative class representatives is typical of the fraud encountered by each member of the putative class, thereby satisfying the typicality requirement of Rule 23.

**Adequacy of Representation**

628.   The putative class representatives are adequate representatives of the class and will fairly and adequately protect the interests of the class members.

84

629. The putative class members are committed to the prosecution of this action, and have retained competent counsel who are experienced in complex class action litigation growing out of equipment leasing.

630. There is no hostility among the various putative class representative and any class member.

631. To prosecute this action, the putative class representatives have retained the undersigned law firms to represent the class:

   a. Ronald P. Gossett of Gossett & Gossett, P.A., has litigated several group and class action cases arising out of equipment leasing, including those involving NorVergence, Inc., (a telephone equipment leasing fraud case which fraud extended to 11,000 small businesses throughout the country), and those involving the 3Com Power of $Zero™ Program (another telephone equipment leasing fraud case involving approximately 300 small businesses located in 12 states[10]); and,

   b. Michael J. Witt, of West Des Moines, Iowa, who before starting his firm, was Managing Counsel at Wells Fargo & Co., and was chief counsel to Wells Fargo Equipment Finance and Wells Fargo Financial Leasing. Earlier, he was Sr. Vice President and General Counsel of Advanta Leasing Corp.  He is well experienced in UCC law, and equipment rental agreements in particular.

---

[10]The motion for class certification is presently scheduled for evidentiary hearing to be conducted by the United States District Court for the Eastern District of Pennsylvania on May 4 and 5.

85

632.   Neither the putative class representatives or their chosen counsel anticipate any difficulty in the management of this litigation as a class action.

**Predominance**

633.   The common questions of law and fact predominate over any question that may be individualized of any class member.

**Superiority**

634.   Class representation and litigation as a class in one court is far superior to having the common questions of law and fact decided by many courts in each of the two available fora—Miami-Dade County, Florida, and through a floating jurisdiction clause of questionable enforceability, the courts in Iowa.

635.   There is no particular or overriding interest of any member of any of the class members in individually controlling the prosecution of separate claims.

# Count I
# Declaratory Relief

636.   Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said allegations were set forth individually herein.

637.   This is an action for declaratory relief, seeking a declaration of the court as to the rights and obligations of the parties to the respective marketing and advertising agreements, and the equipment rental agreements.

638.   Plaintiffs, and those similarly situated, are genuinely in doubt about their rights and obligations under the contracts—the equipment rental agreements and the marketing

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

and advertising contracts.

639.   Pursuant to § 86.021, FLA. STAT. (2009), Plaintiffs are entitled to declaratory relief.

640.   There is a bona fide need for the declaration sought herein because the funding source,

NCMIC Finance Corporation (in most cases) is threatening to sue each Plaintiff who has

stopped paying the contract when he, she or it discovered the fraud, and when the

obligor under the marketing and advertising contract stopped paying the fees required

by said contracts.

Wherefore, Plaintiffs request that this court enter its final judgment declaring that the

equipment rental agreement contracts are unenforceable, and assessing money damages against

Defendants who are responsible for same.  Further, Plaintiffs request that this court grant them

such further relief as this court deems just.

# Count II
# Money Damages Breach of Contract

641.   Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said

allegations were set forth individually herein.

642.   This is an action for money damages against **Brican America, Inc.,** a Florida

corporation, **Brican America, LLC**, a Florida limited liability company, **Brican**

**Financial Services, LLC,** a Florida limited liability company, **Jean Francois Vincens,**

**Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida

limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik**

**Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte,**

**LLC,** a North Carolina limited liability company, and **Viso Lasik Medspas of San**

87

**Antonio, LLC,** a Texas limited liability company, jointly and severally, in an amount exceeding $75,000, plus costs, interest and attorneys' fees.

643.    **Brican America, Inc.,** a Florida corporation, **Brican America, LLC,** a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, and **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company, were alter egos of each other, with the individual Defendants, Jean Francois Vincens, Jacques Lemacon, and Salvatore M. DeCanio, Jr., ignoring the corporate entities and conducting business without regard thereto.

644.    **Brican America, Inc.,** a Florida corporation, **Brican America, LLC,** a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, and **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company, breached the contract between the parties, Plaintiffs' Exhibits 4 and higher.

645.    Plaintiffs and each class member were damaged as a direct and proximate result of said breach.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

646.  Plaintiffs and each class member will continue to incur damage throughout the life of
       Plaintiffs' Exhibit 4 and higher, as a direct and proximate result of said breach.

       Wherefore, Plaintiffs on behalf of themselves and all putative class members, demand
money judgment against **Brican America, Inc.,** a Florida corporation, **Brican America, LLC**,
a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability
company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR
Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida
corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik
Medspas of Charlotte, LLC,** a North Carolina limited liability company, and **Viso Lasik
Medspas of San Antonio, LLC,** a Texas limited liability company, jointly and severally, plus
costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count III
# Money Damages for Fraudulent Misrepresentations

647.  Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said
       allegations were set forth individually herein.

648.  This is an action for money damages in an amount exceeding $75,000, plus costs,
       interest and attorneys' fees for the tort of fraudulent misrepresentation, against **Brican
       America, Inc.,** a Florida corporation, **Brican America, LLC**, a Florida limited liability
       company, **Brican Financial Services, LLC,** a Florida limited liability company, **Jean
       Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments,
       LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida
       corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso**

89

**Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, and **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company.

649. **Brican America, Inc.,** a Florida corporation, **Brican America, LLC,** a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr., JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,** a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company, **Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company, and **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company, were alter egos of each other, with the individual Defendants, Jean Francois Vincens, Jacques Lemacon, and Salvatore M. DeCanio, Jr., ignoring the corporate entities and conducting business without regard thereto.

650. Said Defendants made certain representations to Plaintiffs more particularly set forth above.

651. Said representations were false when they were made by Defendants.

652. The falsity of the representations was known to Defendants at the time they made them, or they made them under circumstances where they should have known of the falsity thereof.

653. Defendants intended that Plaintiffs and each class member rely upon said representations.

654. Plaintiffs and each class member reasonably relied upon the representations to the financial detriment of Plaintiffs and each class member.

90

655.   Plaintiffs and each class member have been damaged as a result of said reliance upon

the fraudulent misrepresentations made by Defendants.

656.   As an item of special damage, Plaintiffs and each class member have incurred attorneys'

fees in defending each case brought by NCMIC Finance Corporation to collect on the

equipment rental agreements, solely, proximately and directly as a consequence of the

fraudulent misrepresentations made by Defendants to Plaintiffs and each class member.

657.   Not unexpectedly, because a claim for relief based upon fraudulent misrepresentation

arose under common law, the elements are substantially identical from state to state.[11]

They are:

| State | Authority | Elements |
|---|---|---|
| Alabama | Consolidated Constr. Co. of Alabama v. Metal Bldg. Components, L.P., 961 So.2d 820, 825 (Ala.2007) | To establish the elements of fraudulent misrepresentation claimant has to show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the claimant relied on the false representation, and (4) that actual injury resulted from that reliance. |
| Arkansas | Rosser v. Columbia Mut. Ins. Co., 55 Ark.App. 77, 928 S.W.2d 813 (1996) | In an action for fraudulent misrepresentation and deceit, the plaintiff must show triable issues of fact with respect to each of the following elements: 1) a false representation of fact; 2) knowledge that the representation is false, or knowledge that there is insufficient evidence upon which to make the representation; 3) intent to induce action or inaction on reliance upon the representation; 4) justifiable reliance |

---

[11] Named Plaintiffs are joining this suit on a daily basis. As they join, the complaint will be amended as appropriate to add states which do not presently appear in this table.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

| | | |
|---|---|---|
| | | upon the representation; and 5) damage suffered as a result. |
| California | *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 99 Cal.Rptr.3d 768 (Cal.App. 2009) | A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages |
| Florida | *Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So.2d 251 (Fla. 3d DCA 2005); *Elders v. United Methodist Church*, 793 So.2d 1038 (Fla. 3d DCA 2001); *Chino Elec., Inc. v. United States Fid. Guar. Co.*, 578 So.2d 320, 322 n. 4 (Fla. 3d DCA 1991). | To state a cause of action for fraudulent misrepresentation, a plaintiff is required to allege the following elements in the complaint: (1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages. |
| Georgia | *Lehman v. Keller*, 677 S.E.2d 415 (Ga.App. 2009) | The tort of "fraud" has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. |
| Illinois | *Linhart v. Bridgeview Creek Development, Inc.*, 391 Ill.App.3d 630, 909 N.E.2d 865 (Ill.App. 2009) | The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. |
| Kansas | *Alires v. McGehee*, 85 P.3d 1191, 1199 (Kan.2004) | The elements of fraud are as follows: (1) an untrue statement of fact; (2) known to be untrue by the party |

**GOSSETT & GOSSETT, P.A.** 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

| | | |
|---|---|---|
| | | making it; (3) made with the intent to deceive or with reckless disregard for the truth; (4) upon which another party justifiably relies and acts to his or her detriment. |
| Massachusetts | *Commerce Bank & Trust Co. v. Hayeck*, 46 Mass.App.Ct. 687, 709 N.E.2d 1122 (1999) | the elements of common law deceit, which include 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying |
| Missouri | *State ex rel. Painewebber, Inc., v. Voorhees,* 891 S.W.2d 126 (Mo. 1995) | In Missouri, common law fraud has nine essential elements: "a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury |
| New York | *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 668 N.E.2d 1370 (N.Y. App. 1996) | In action to recover damages for fraud, plaintiff must prove misrepresentation or material omission of fact which was false and known to be false by defendant, made for purpose of inducing other party to rely upon it, justifiable reliance of other party on misrepresentation or material omission, and injury. |
| North Carolina | *Ragsdale v. Kennedy,* 286 N.C. 130, 209 S.E.2d 494 (1974) | The elements of fraud are (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party. |
| Pennsylvania | *Youndt v. First National Bank of Port Allegeny,* 868 | The specific elements of fraud are as follows: (1) a representation; (2) which is material to the transaction at hand; |

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

| | A.2d 539 (Pa. Super. 2005) | (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance |
|---|---|---|
| Tennessee | *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct. App.1992) | A plaintiff must allege the following elements to assert a common law fraud claim: "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, ... (3) an injury caused by reasonable reliance on the representation [and (4) the requirement] that the misrepresentation involve a past or existing fact...." |
| Texas | *Marin v. Iesi Tx Corp.*, 2009 WL 3321267 (Tx.App.) | stating elements of common-law fraud: (1) material representation that was false when made; (2) when representation was made, speaker knew it was false or made it recklessly as positive assertion without any knowledge of its truth; (3) speaker made representation with intent that other party should act upon it; (4) other party actually and justifiably relied on representation; and (5) thereby suffered injury. |
| Virginia | *Winn v. Aleda Const. Co., Inc.*, 227 Va. 304, 315 S.E.2d 193 (Va. 1984) | The elements necessary to state a claim of actual fraud are: (1) a false representation (2) of a material fact (3) made intentionally or knowingly (4) with the intent to mislead (5) reliance by the misled party and (6) injury. |

## Applicable Law per *Shutts*:

658.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985), requires the following

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

anaylsis:

We must first determine whether Kansas law [where the court is situated] conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.

659.    Examining the table of laws of the various states set forth above, we see that the law of

Florida does not conflict in any material way with the law of any other state which could

apply.

660.    Therefore, Plaintiffs assert that the law of Florida applies to the common law fraud

claims of the class. That law is:

To state a cause of action for fraudulent misrepresentation, a plaintiff is required to allege the following elements in the complaint: (1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages.

*Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.,* 903 So.2d 251 (Fla. 3d DCA 2005); *Elders v. United Methodist Church,* 793 So.2d 1038 (Fla. 3d DCA 2001); *Chino Elec., Inc. v. United States Fid. Guar. Co.,* 578 So.2d 320, 322 n. 4 (Fla. 3d DCA 1991)

661.    Punitive damages are able to be award for fraudulent misrepresentation in all states:

| State | Authority | Punitive Damages | |
|---|---|---|---|
| | | Yes | No |
| Alabama | *Hunt Petroleum Corp. v. State,* 901 So.2d 1 (2004) | ✓ | |
| Arkansas | *Robertson Oil Co., Inc. v. Phillips Petroleum Co.,* 14 F.3d 373 (8th Cir. 1993) | ✓ | |
| California | *The Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment,* 189 F.3d | ✓ | |

95

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

| | 1017 (9th Cir. 1999) | | |
|---|---|---|---|
| Florida | *Wallace Int'l Trucks, Inc. v. Magruda Trucking Co., LP*, 265 Fed.Appx. 816, 2008 WL 399449 (C.A.11 (Fla.))| ✓ | |
| Georgia | *Southern Prestige Homes, Inc. v. Moscoso*, 243 Ga.App. 412, 532 S.E.2d 122 (Ga.App.,2000) | ✓ | |
| Illinois | *Cripe v. Leiter*, 291 Ill. App. 3d 155, 225 Ill. Dec. 348, 683 N.E.2d 516 (3d Dist. 1997) | ✓ | |
| Kansas | *Tetuan v. A.H. Robbins Co.*, 738 P.2d 1210 (Kan. 1987) | ✓ | |
| Massachusetts | *Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59 (C.A.Mass.,1984) | ✓ | |
| Missouri | *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175 (Mo.App. W.D. 2002) | ✓ | |
| New York | *Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.*, 174 A.D.2d 963, 571 N.Y.S.2d 650 (1991) | ✓ | |
| North Carolina | *Oestreicher v. American National Stores, Inc.*, 225 S.E.2d 797 (N.C. 1976) | ✓ | |
| Pennsylvania | *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (Pa.Super. 1983) | ✓ | |
| Tennessee | *Tschira v. Willingham*, 135 F.3d 1077 (C.A.6 (Tenn.),1998) | ✓ | |
| Texas | *Glazener v. Jansing*, 2003 WL 22207226 (Tex.App.-Austin) | ✓ | |
| Virginia | *Vanguard Military Equipment Corp. v. David B. Finestone Co.,* | ✓ | |

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

| | *Inc.*, 6 F.Supp.2d 488 (E.D.Va. 1997) | | |
|---|---|---|---|

662.   Applying *Shutts* again, we find that the law of Florida does not conflict in any material way with any other law which could apply regarding the ability to award punitive damages against Defendants in connection with the common law fraud claims.

663.   Therefore, Plaintiffs contend that the applicable legal principles relating to the claim for punitive damages for the common law fraud claims are those of Florida.

Wherefore, Plaintiffs on behalf of themselves and all putative class members, demand money judgment against Defendants plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count IV
# Money Damages for Conspiracy to Commit Fraud

664.   Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said allegations were set forth individually herein.

665.   This is an action for money damages against all Defendants in an amount exceeding $75,000, plus costs, interest and attorneys' fees, sounding in the tort of conspiracy to commit fraud[12].

666.   **Brican America, Inc.,** a Florida corporation, **Brican America, LLC**, a Florida limited liability company, **Brican Financial Services, LLC,** a Florida limited liability

---

[12]Plaintiffs are not presently able, in good faith, to allege malice as defined by the law of the Commonwealth of Pennsylvania related to the tort of conspiracy to commit fraud. Therefore, those Plaintiffs who are citizens of the Commonwealth of Pennsylvania are not a part of the class seeking money damages for conspiracy to commit fraud.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

company, **Jean Francois Vincens, Jacques Lemacon, Salvatore M. DeCanio, Jr.,
JJR Investments, LLC,** a Florida limited liability company, **Lifestyle of Vision, Inc.,**
a Florida corporation, **Viso Lasik Medspas, LLC,** a Florida limited liability company,
**Viso Lasik Medspas of Charlotte, LLC,** a North Carolina limited liability company,
and **Viso Lasik Medspas of San Antonio, LLC,** a Texas limited liability company,
were alter egos of each other, with the individual Defendants, Jean Francois Vincens,
Jacques Lemacon, and Salvatore M. DeCanio, Jr., ignoring the corporate entities and
conducting business without regard thereto.

667.  All Defendants knowingly and intentionally conspired together with the specific intent
to defraud Plaintiffs and each class member by making the fraudulent
misrepresentations to Plaintiffs and each class member as set forth above.

668.  Said representations were false when they were made by Defendants.

669.  The falsity of the representations was known to Defendants at the time they were made,
or Defendants made them under circumstances where they should have known of the
falsity thereof.

670.  Defendants intended that Plaintiffs and each class member rely upon said
representations.

671.  Plaintiffs and each class member reasonably relied upon the representations to the
financial detriment of Plaintiffs and each class member.

672.  Plaintiffs and each class member have been damaged as a result of said reliance upon
the fraudulent misrepresentations made by Defendants.

673.  As an item of special damage, Plaintiffs and each class member have incurred attorneys'

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

fees in defending any action brought by Defendant, NCMIC Finance Corporation, to

enforce the equipment rental agreements, solely, proximately and directly as a

consequence of the fraudulent misrepresentations made by Defendants to each such

Plaintiff and each class member.

674.   Punitive damages are able to be awarded for fraudulent misrepresentation in all states:

| State | Authority | Punitive Damages | |
|---|---|---|---|
| | | Yes | No |
| Alabama | *Hunt Petroleum Corp. v. State,* 901 So.2d 1 (2004) | ✓ | |
| Arkansas | *Robertson Oil Co., Inc. v. Phillips Petroleum Co.,* 14 F.3d 373 (8th Cir. 1993) | ✓ | |
| California | *The Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment,* 189 F.3d 1017 (9th Cir. 1999) | ✓ | |
| Florida | *Wallace Int'l Trucks, Inc. v. Magruda Trucking Co., LP,* 265 Fed.Appx. 816, 2008 WL 399449 (C.A.11 (Fla.))* | ✓ | |
| Georgia | *Southern Prestige Homes, Inc. v. Moscoso,* 243 Ga.App. 412, 532 S.E.2d 122 (Ga.App.,2000) | ✓ | |
| Illinois | *Cripe v. Leiter,* 291 Ill. App. 3d 155, 225 Ill. Dec. 348, 683 N.E.2d 516 (3d Dist. 1997) | ✓ | |
| Kansas | *Tetuan v. A.H. Robbins Co.,* 738 P.2d 1210 (Kan. 1987) | ✓ | |
| Massachusetts | *Computer Systems Engineering, Inc. v. Qantel Corp.,* 740 F.2d 59 (C.A.Mass.,1984) | ✓ | |
| Missouri | *Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175 (Mo.App. W.D. | ✓ | |

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

| | 2002) | | |
|---|---|---|---|
| New York | *Barclays Bank of New York, N.A. v. Heady Electric Co., Inc.*, 174 A.D.2d 963, 571 N.Y.S.2d 650 (1991) | ✓ | |
| North Carolina | *Oestreicher v. American National Stores, Inc.*, 225 S.E.2d 797 (N.C. 1976) | ✓ | |
| Pennsylvania | *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243 (Pa.Super. 1983) | ✓ | |
| Tennessee | *Tschira v. Willingham*, 135 F.3d 1077 (C.A.6 (Tenn.),1998) | ✓ | |
| Texas | *Glazener v. Jansing,* 2003 WL 22207226 (Tex.App.-Austin) | ✓ | |
| Virginia | *Vanguard Military Equipment Corp. v. David B. Finestone Co., Inc.*, 6 F.Supp.2d 488 (E.D.Va. 1997) | ✓ | |

675.    Applying *Shutts* again, we find that the law of Florida does not conflict in any material way with any other law which could apply regarding the ability to award punitive damages against Defendants in connection with the common law fraud claims.

676.    Therefore, Plaintiffs contend that the applicable legal principles relating to the claim for punitive damages for the common law fraud claims are those of Florida.

Wherefore, Plaintiffs on behalf of themselves and all putative class members, demand money judgment for compensatory and punitive damages against each Defendant, jointly and severally, plus costs, interest and attorneys' fees, and such further relief as this court deems just.

# Count V
# Money Damages for Violation of Little FTC Acts of

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

# Various States

677.   Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said allegations were set forth individually herein.

678.   This is an action for money damages against each Defendant, jointly and severally, in an amount exceeding $75,000, plus costs, interest and attorneys' fees, sounding in the violation by Defendants of each applicable state's adaptation of a Little FTC Act, which in Florida is codified at §§ 501.201 *et seq.*, FLA. STAT. (2009).

679.   The conduct of Defendants as more particularly alleged above, violates the Florida Deceptive and Unfair Trade Practices Act.

680.   Specifically, as to NCMIC Finance Corporation, it was NCMIC Finance Corporation which sold the goods which had a maximum value of $3,500, to each Plaintiff for a grossly inflated price of over $30,000, in the following fashion:

a.   Although the agreement between each Plaintiff and NCMIC Finance Corporation is called a lease, the transaction is actually a sale and the instrument is a security agreement, securing a sale of goods from NCMIC Finance Corporation to each Plaintiff (*See Kinerd v. Colonial Leasing Co.*, 800 S.W.2d 187 (Tex. 1990));

b.   NCMIC Finance Corporation, in concert with the Brican group of Defendants, attempted to remove itself from the sales-with-security-agreement scenario by directing the Brican group of Defendants to have one Brican entity be the vendor, another Brican entity be the lessor, and have the lessor assign the leases to NCMIC Finance Corporation; however, the intention throughout was to have

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

the Plaintiffs enter into sales with security agreements which would ultimately

be held by NCMIC Finance Corporation;

c.   However, even though this change, directed by NCMIC Finance Corporation,

was implemented so that Brican America, Inc., became the named lessor under

the leases which would then be assigned to NCMIC Finance Corporation,

NCMIC Finance Corporation did not pay Brican America, Inc., for the leases,

but rather, continued to wire payments to Brican America, LLC. [Ellzey Tr., p.

39.]

681.   Plaintiffs have been damaged as a direct and proximate result of the violation by

Defendants of Florida Deceptive and Unfair Trade Practices Act.

682.   All conditions precedent to be performed by Plaintiffs prior to the bringing of an action

under the Florida Deceptive and Unfair Trade Practices Act have either been performed

by Plaintiffs, or would be futile as is evidenced by the efforts of each individual Plaintiff

to have the various Defendants fulfill their obligations under the existing contracts.

683.   The most divergent law governing the claims raised by Plaintiffs is the statutory law

enacted by each state known generally as consumer protection laws, deceptive and

unfair trade practices acts, or Little FTC Acts:

The ABA Journal reported in 1986 that "business lawyers involved in
commercial disputes are beginning to use what are probably the most potent
litigation weapons now available—state versions of the Federal Trade
Commission Act, known as 'Little FTC Acts,' and that such statutes "will play
an increasingly decisive role in business litigation."[13]   This is a fairly recent

---

[13] Gilleran and Stadfeld, *Little FTC Acts Emerge in Business Litigation*, 72 A.B.A.J.
58, 61 (1986).

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

development in state consumer protection litigation, but may well be a precursor of things to come.

The original rationale for little FTC Acts was to provide greater protection for consumers in their private suits against deceptive or unfair sellers, due to the perceived inadequacies of common-law or UCC remedies. Business people were not thought to need any augmented legal protection because presumably they could protect themselves.

After the initial wave of little FTC Acts in the late 1960s and early 1970s, some state courts and legislatures began to recognize that inexperienced purchasers of business franchises were at much the same disadvantage as consumers of automobiles or houses[14]. Thus, statutory consumer protection was extended to such purchasers either through amendment to the state law, [citation omitted] or the enactment of new legislation. ...

Mary Dee Pridgen, CONSUMER PROTECTION AND THE LAW § 4:3 (2009).

684.   Some states, such as Pennsylvania, confine their Little FTC Act coverage to individual claimants who have purchased goods for household or personal use.  Some, such as Florida, extend coverage to businesses.

685.   All Little FTC Acts carry with them the potential for award of treble damages, and attorneys' fees.

686.   In all of the applicable FTC Acts, found in the table below, a fraudulent misrepresentation is a basis for relief under the Act.

687.   Because common law claims for fraud carry with them the potential for an award of punitive or exemplary damages, and because generally speaking, a claimant cannot duplicate recovery of its damages, it would appear that a claimant would need to make an election of remedies between an award of compensatory and punitive damages for

---

[14]Note, *Toward Greater Equality in Business Transactions: A Proposal to Extend the Little FTC Act to Small Businesses,* 96 HARV. L. REV. 1621 (1983)

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

common law fraud, and an award of compensatory and treble damages for a violation
of the Little FTC Act based upon the same fraud.

688. However, because an election of remedy is to be made only after the return of the
verdict (in a jury trial) or after return of preliminary findings by the court (in a bench
trial), Plaintiffs will continue to pursue their claims individually and on behalf of those
class members who have viable Little FTC Act claims.

689. The Due Process Clause and the Full Faith and Credit Clause of the Constitution of the
United States require "that for a State's substantive law to be selected in a
constitutionally permissible manner, that State must have a significant contact or
significant aggregation of contacts, creating state interests, such that choice of its law
is neither arbitrary nor fundamentally unfair." *Phillips Petroleum v. Shutts,* 472 U.S.
797, 819 (1985) quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-313 (1981).

690. In this case, the fraudulent conduct complained of occurred within the home state of
each Plaintiff—the location where the written fraudulent representations were conveyed
to the customers. Each of those states would have a significant state interest in
regulating away the fraudulent behavior, or punishing its occurrence. Therefore, the law
of each such state will be examined to see if there is a commonality sufficient to litigate
this issue through a class action.

691. The various state Little FTC Acts are as follows:

| State—Applicable to Case | Authority | Elements |
|---|---|---|
| Alabama:      No | § 8-19-3. Definitions. | Limited to "Any natural person who buys goods or services for personal, |

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828 · Fax (954) 983-2850

| | | | family or household use" |
|---|---|---|---|
| Arkansas: | No | § 4-88-101 | Creates no private cause of action. |
| California: | No | § 1761. Definitions | Limited to primarily personal, family or household purposes |
| Florida | Yes | §§ 501.201 *et seq.* | "Consumer" means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination. |
| Georgia: | Yes | § 10-1-370 *et seq.* | The Uniform Deceptive Trade Practices Act, §§ 10-1-370 through 10-1-382 applies to businesses, while the Fair Trade Business Practices Act, found at § 10-1-392 *et seq.*, does not. DLL has previously advised this court that "the consumer protection law statutes in ... Georgia, ... limit claims to those related to goods or services acquired for personal, family or household use. ... GA. CODE ANN. §§ 10-1-392, 10-1-393 (2009)." DE# 87, p. 74, fn. 37.   This misstates Georgia law.  Further, DLL advised this court in the same paragraph that Georgia's law "entirely prohibit[s] consumer protection class actions," then cites a portion of the inapplicable Fair Trade Business Practices Act in support of that statement. "Chapter 5B" referred to in § 10-1-399, refers to telemarketing restrictions found in § 10-5B-101 *et seq.;* "this part" referred to in § 10-1-399 refers to the Fair Trade Business Practices Act, the first section of which, § 10-1-390, states "This part shall be known and may be cited as the "Fair Business Practices |

105

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

| | | | Act of 1975." |
|---|---|---|---|
| Illinois: | No | § 505/1. Definitions | Limited by the definition of consumer as being "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." |
| Kansas: | No | § 50-623 et seq. | "Consumer" means an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes. The Kansas company involved is "Individual Assurance Company, LLC, which is most likely not a family partnership. |
| Massachusetts: | Yes | Mass. Gen. Laws ch. 93A, § 11 (2009). | Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two may, as hereinafter provided, bring an action in the superior court, or in the housing court as provided in section three of chapter one hundred and eighty-five C, whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper. |
| Missouri: | No | § 407.010 et seq. | Private cause of action limited to those |

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828  • Fax (954) 983-2850

| | | | who purchase goods for personal, family or household purposes |
|---|---|---|---|
| New York: | Yes | § 349. Deceptive acts and practices unlawful | In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff. |
| North Carolina: | Yes | § 75-16. Civil action by person injured; treble damages | If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict. |
| Pennsylvania: | No | 201-9.2. Private actions. | Limited to "goods or services primarily for personal, family or household purposes " |
| Tennessee: | No | § 47-18-101 *et seq.* | Defines consumer to be a "natural person" thus, if any class member is a natural person, this law would permit a claim. The Tennessee claimants are |

107

| | | | not natural persons. |
|---|---|---|---|
| Texas: | Yes | § 17.50. Relief for Consumers | "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more. Note: DLL asserted that the statute of limitations under the Texas code is two years, and that is correct, but incomplete. The statute of limitations is "two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." § 17.565. |
| Virginia: | No | § 59.1-196, *et seq.* | Limits consumer transaction to one primarily for personal, family or household purposes |

692.   In each state, if the elements of a claim for relief for common law fraud are proved, that same evidence establishes a violation of the Little FTC Act.

693.   From the above, Plaintiffs concede that not all Plaintiffs can sue Defendants for violation of the home state's Little FTC Act, and will provide the court and counsel with a table delineating which Plaintiffs seek damages for violation of their state's Little FTC Act when all named Plaintiffs have been joined.

Wherefore, Plaintiffs demand money judgment against Defendants, jointly and severally, for all damages incurred by Plaintiffs and all putative class members similarly situated, as a

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 · (954) 983-2828  · Fax (954) 983-2850

direct and proximate result of their violation of said act, plus the enhanced damages provided by each such act, costs, interest and attorneys' fees, and requests that this court grant it such further relief as this court deems just.

## Count VI
## Money Damages for Usury and Criminal Usury

694.   Plaintiffs adopt and reallege the allegations contained in ¶ 1 through 635 as though said allegations were set forth individually herein.

695.   This is an action for money damages against each Defendant, jointly and severally, in an amount exceeding $75,000, plus costs, interest and attorneys' fees, sounding in the violation by Defendants of the usury laws of the State of Florida.

696.   The contracts entered into by the parties, requiring Plaintiffs to pay over $30,000 over a five-year period for goods worth $3,500, violates §§ 687.01, *et seq*. FLA. STAT. (2009) in that the rate of interest for such transaction is over 174%.

697.   Such a rate of interest violates Florida's criminal usury statute, §687.071, FLA. STAT. (2009).

698.   Plaintiffs have been damaged as a result of the violation by all Defendants of Florida's usury statutes.

Wherefore, Plaintiffs demand money judgment against all Defendants, jointly and severally, for compensatory, punitive, and treble damages, plus the forfeiture of the principal amount of the loans, and the return of all money paid by each Plaintiff to each Defendant under the criminally usurious contracts, plus costs, interest and attorneys' fees.

GOSSETT & GOSSETT, P.A. 4700 Sheridan Street, Building I, Hollywood, Florida 33021 • (954) 983-2828 • Fax (954) 983-2850

## Demand for Trial by Jury

Plaintiffs demand trial by jury of all issues so triable.

Dated:          March 19, 2010
                Hollywood, FL

                            /s/ *Ronald P. Gossett*

                            Ronald P. Gossett (210811)
                            rongossett@gossettlaw.com
                            Gossett & Gossett, P.A.
                            4700 Sheridan St., Building I
                            Hollywood, FL  33021
                            (954) 983-2828 • (954) 212-0439 Fax
                            Attorneys for Plaintiffs

 **Professional Solutions**
Financial Services™

*General Vendor Agreement*

This agreement dated July 15, 2005 is by and between Brican America, Inc., (herein after Brican), with a principle place of business at 5301 Blue Lagoon Dr. Suite 520, Miami, FL 33126, and NCMIC Finance Corporation d/b/a Professional Solutions Financial Services (herein after PSFS) with a principle place of business at 14001 University Ave, Clive, IA 50325.

*Recitals.* PSFS proposes to purchase certain goods from Brican from time to time for the purpose of leasing or financing such goods to customers of Brican and Brican proposes to sell such goods to PSFS. In consideration of such proposals and for other valuable consideration, PSFS and Brican agree as follows:

1. **Definitions.** As used herein:
   a. "Goods" means the personal property purchased by PSFS hereunder, together with any accessories, attachments, parts and repairs now or hereafter incorporated in or affixed to or used in connection with any such Goods, and includes Goods substituted for the original Goods leased, financed or sold under a Lease and Goods that may be added to a lease.
   b. "Lease" means any Lease, Rental Agreement, Services Agreement or other agreement of which Goods are a subject thereof.
   c. "Lessee" means the Lessee or Lessees under a Lease.

2. **Purchase of Goods.** Goods purchased by PSFS from Brican shall be purchased subject to the terms and conditions of this Agreement. The purchase price of any Goods shall be the amount agreed upon by the parties at the time of purchase ("Purchase Price").

3. **Documents.** PSFS shall pay the Purchase Price upon the delivery and acceptance of the Goods by the Lessee provided PSFS has also received the following properly executed documents and has been able to verbally verify delivery and installation with the person signing the Lease or another authorized person.
   a. PSFS's then current Lease, Rental or other agreement, an application and requested financial information;
   b. PSFS's delivery and acceptance certificate;
   c. Brican's invoice to PSFS;
   d. Such additional support documents (i.e. guaranties, etc.) from Lessee as PSFS may reasonable require; and,
   e. Lessees check or other instrument for the advance payment.

4. **Leases.** From time to time seller shall submit to PSFS the names of prospective Lessees together with proposal for the purchase of Goods by PSFS to such prospective Lessees. Brican shall supply the financial data and other credit information pertaining to each prospective Lessee, which is necessary to render a fair judgment of the credit standing of such prospective Lessee. In addition, with Brican's consent, PSFS may directly contact prospective Lessees to obtain whatever additional credit and financial information is needed. PSFS agrees to accept or reject each sale and leasing proposal submitted by Brican within one (1) business days after receipt of all credit and financial and other information deemed necessary by PSFS.

5. **Representation and Warranties: Brican.** Brican represents and warrants that:
   a. Brican is a corporation, partnership or individual validly existing and in good standing under the laws of Nebraska and has the corporate power or other authority to execute, deliver and perform its obligations under this Agreement:
   b. Brican is duly qualified to do business in such states in the United States where qualification is reasonably believed necessary for its business operations; and,
   c. The individual signing this agreement has been duly authorized by the corporate bylaws to sign on its behalf.

6. **Representations and Warranties: Goods.** With respect to Goods sold hereunder, Brican warrants that:
   a. Title to any Goods purchased under this Agreement shall be free of all liens and other encumbrances;
   b. All signatures, names, addresses, amounts and descriptions of Goods contained in the documents submitted to PSFS by Brican are true and correct;
   c. There are no other agreements or warranties given to Lessee relating to the Goods or Leases written or verbal that are not included in the documents given to PSFS;
   d. Brican has and will continue to perform all of its obligations under the warranties given by Brican relating to the Goods; and,
   e. Brican will make available a complete maintenance and service operation for the Goods, and furnish all supplies for which PSFS is collecting payments from Lessee.

7. **Brican's Breach of Representations and Warranties.** If Brican breaches any representation or warranty herein with respect to a Lease entered into by PSFS, Brican shall repurchase such Lease and /or Goods from PSFS on demand for the

EXHIBIT

/ /

10-28-09  LP

PENGAD 800-631-6989

*General Vendor Agreement – Page 2*

unpaid balance due thereon. PSFS may, upon notice to Brican, offset any indebtedness or monies PSFS owes to Brican against any obligation owed to PSFS by Brican. After Brican repurchases a Lease and/or Goods, PSFS will reconvey all of its rights, title and interest in and to the Lease and/or Goods to Brican. Brican's repurchase obligations are not contingent upon Brican recovering the Goods from the Lessee.

8. Assignment of Agreement. Brican may not assign this Agreement or any of its obligations or rights under this Agreement without PSFS's prior written consent.

9. Brican Default.
   a. The following events will constitute Events of Default under this Agreement:
      i. Brican's breach of or failure to perform any of its obligations under this Agreement;
      ii. Brican's insolvency or dissolution, institution by or against Brican of bankruptcy, reorganization, receivership, conservatorship or insolvency proceedings, Brican's making an assignment for the benefit of creditors, or Brican's ceasing to do business as a going concern.
   b. Upon the occurrence of any Event of Default, PSFS may do either or both of the following:
      i. Immediately terminate this Agreement, without prior notice to Brican; and,
      ii. exercise any other rights it has under this Agreement, the Uniform Commercial Code or any other law. Brican will be liable for all costs and expenses incurred by PSFS because of the occurrence of any Event of Default, including repossession cost, court cost and reasonable attorneys' fees.

10. Customer Default. In the event of a default by the customer (lessee), and at the request of PSFS, or its assigns, Seller agrees to repossess within 14 days of notification and remarket the equipment on a best efforts basis. Seller will remit the amount equal to the proceeds, less its refurbishing costs, of the sales of the equipment to PSFS, or it's assigns after the equipment is sold. Seller will consult with PSFS, or it's assigns, prior to selling the equipment if the expected sale price is below the current outstanding book value of the transaction. If Seller cannot remarket the equipment within 60 days after repossession PSFS may assume remarketing efforts on their own accord if desired.

11. Miscellaneous. Brican waives notice of acceptance hereof. PSFS's knowledge of any breach of or noncompliance with any of the provisions of this Agreement shall not constitute any waiver by PSFS. Except for certain supplemental and supporting documents, which may be required by PSFS, this Agreement constitutes the entire agreement between the parties and any change or modification to this Agreement must be in writing and signed by the parties. Brican agrees that PSFS may directly provide lease applicants with any written notices required by the Equal Credit Opportunity Act or other law.

12. Law: This Agreement shall be deemed to have been made in and shall be construed and governed in accordance with the laws of the State of Iowa.

13. Term: This Agreement shall remain in effect from the date above until for a period of twenty-four (24) months and thereafter will automatically renew for consecutive 12 month terms. This Agreement may be terminated either by written agreement or after 30 days written notice by either party to the other. During the term of the agreement Brican will use it's best efforts to give PSFS first right of refusal on all financed transactions submitted to Brican. Notwithstanding such termination, the provisions hereof shall continue in force as to all Finance Agreements financed by PSFS.

Professional Solutions Financial Services          Brican America, Inc.

*(signatures)* Business Development Manager          Vice President

## Equipment Lease Application and Agreement Number:

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| **BRICAN** | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax (786)388-1489 | |

| BUSINESS INFORMATION | PERSONAL INFORMATION |
|---|---|

**Lessee**
Legal Name of Business: Raymond Goodman O.D. P.A.

Address: 317 Main St

City/State/Zip: Goodin, ID 83330

Phone: (208)934-4856 Fax: (208)934-5818

E Mail: doctorgoodman@hotmail.com

Specialty: Optometry

Years Licensed: 6   License Number: ODP-L00008

Do you own your business? Y   How long have you owned your business? 5

Vendor: Brican America L.L.C.

Applicant Name: Dr. Raymond Goodman

Address: 317

City/State/Zip: Goodin, ID 83330

Phone: (208)934-4856 Fax: (208)934-5818

Social Security: 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

Do you have a checking account? yes

Do you have a savings account? yes

Do you own your home? yes How long have you owned your home? 2

## TERMS AND CONDITIONS – PLEASE READ CAREFULLY BEFORE SIGNING

o Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated bove. When we use the words "We", "Us", and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that 'ou have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate r cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any eason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household se, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

### Equipment Description:

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| 1 | Exhibeo System |

### Payment Terms:

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3 Monthly Payments of $ 0 , then 60 Monthly Payments of $ 508 + Tax | $ 95.00 | $ 0 | ☒ $1.00 ☐ Other _____ ☐ Rental ☐ FMV |

**1. LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We lesignate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover locumentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us s not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the ighest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in he final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result n an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be :harged at the highest rate allowed by law.

**2. NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the :quipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or nanufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You igree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

**3. EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. 'ou are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the :quipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or lossession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

**4. END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed n the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of 'our intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this .ease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for se by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You nave not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

**5. OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title o it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Dur interest in the Equipment.

**6. SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor inder any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

**7. LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering he Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2008

Plaintiffs' Exhibit 2, Page 1 of 3

## Equipment Lease Agreement – Page 2                    Number: _____

insurance for You and add an insurance fee to the payment amounts due from You. Lesse hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as art of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated > make all lease payments.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to eclare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute ght to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by s due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may equire that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount ate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this ease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked esidual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from he due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the ight to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

**14. CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATIES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

**15. NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (as stated above) | This Lease is not binding until We sign below. Lessor: Brican America Inc. |
|---|---|
| By: _____  Date  2-17-09<br>(Signature)<br>President<br>(Title) | By: _____  Date _____<br>(Signature) |

### UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____, Individually | X _____, Individually |
|---|---|

IFC ELAA – 09 2008

Plaintiffs' Exhibit 2, Page 2 of 3

# ADVERTISING AGREEMENT

The following agreement shall be made part of the Purchase Order # 74546 _____ and be taken into consideration when and if clarification and/or interpretations are needed regarding the following:

A) **Purchase of Advertising:** Brican America Inc. shall purchase from the Client $ 5800 _____ worth of advertising space for each year that this agreement remains in effect. The purchase of Advertising space hereunder may be made by Brican or any other entity in which Brican owns shares of voting stock as long as the Client is current regarding payments to the leasing institution financing the Exhibeo Concept.

B) **Term:** Client will become **eligible** for the payment schedule described in Paragraph C 90 days after delivery of the Exhibeo Concept. **This does not mean the quarterly payments begin after 90 days.** This Agreement shall automatically renew for four additional one year terms, unless terminated by the Client upon written notice to Brican.

C) **Payments:** All applicable payments issued by Brican to the Client, in accordance with Paragraph A, will be paid on a quarterly basis according to the following schedule:

<div align="center">January 1st / April 1st / July 1st / October 1st</div>

|  |  |
|---|---|
| **PAYMENT EXAMPLE 1** | **PAYMENT EXAMPLE 2** |
| Purchase Order signed May 23, 2006 | Purchase Order signed June 23, 2006 |
| Equipment delivered June 10, 2006 | Equipment delivered July 10, 2006 |
| Client is eligible September 10, 2006 | Client is eligible October 10, 2006 |
| First payment is due October 1, 2006 for $322. Calculated as follows - ($5800 per year div by 4 payments = $1450 per payment div by 90 days = $16.11 per day X 20 days = $322.) | First payment is due January 1, 2007 for $1289. Calculated as follows - ($5800 per year div by 4 payments = $1450 per payment div by 90 days = $16.11 per day X 80 days = $1289.) |
| Next payment January 1, 2007 for $1450 ($5800 div by 4 = $1450) | Next payment April 1, 2007 for $1450 ($5800 div by 4 = $1450) |
| Last payment October 1, 2011 for $1128 ($1450 - $322 = $1128) | Last payment January 1, 2012 for $161 ($1450 - $1289 = $161) |

D) **Content of Advertising:** (Mark one option)

☒ The Client reserves the right to refuse any advertisement from companies that produce or provide tobacco, alcohol, gambling or pornographic products or services. **Brican reserves the right to run any advertisements including posters and printed materials regarding Laser Vision Correction, Refractive Surgery and LASIK Centers practicing these procedures.**

☐ The Client has the right to refuse any LASIK-related Advertising under the condition that Brican be allowed to advertise other products sold within the Client's practice. Any income derived from advertising sold by Brican will be retained by Brican.

E) **Advertising Space:** The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by

the Client and Brican together. **The Client is not under any obligation to refer or direct his patients to the advertised VISO LASIK MEDSPAS.**

F) **Cancellation:** If the advertised VISO LASIK MEDSPAS fails to honor its financial commitment pursuant to this agreement, then all related agreements can be cancelled and Brican will buy back the related lease agreement.





Client

_Salvatore M DeLauro/ros_

CREDIT AGREEMENT

BRICAN AMERICA, INC.,
Lender

and

VISO LASIK MEDSPAS, LLC,
Borrower

$R-3$

January 1, 2008

CREDIT AGREEMENT, dated as of January 1, 2008 (as amended, supplemented or modified from time to time, this "Agreement"), between Brican America, Inc., a Florida corporation, ("Lender") and Viso Lasik Medspas, LLC, a Florida limited liability company ("Borrower");

WITNESSETH:

WHEREAS, the Borrower has requested that the Lender make available to the Borrower a credit loan for an undetermined amount, the proceeds of which will be used by the Borrower for general corporate purposes; and Lender is willing to make available such a credit loan pursuant to this Agreement upon the terms and conditions hereinafter set forth; the parties hereto hereby agree as follows:

Section 1: Amounts and Terms of Loans

(a) Loan Amount. Subject to availability, Lender hereby agrees to make to the Borrower from time to time credit loans for an undetermined amount at Borrower's request and/or as payment of expenses on Borrower's behalf in the amounts requested, inclusive of any prior unpaid loan amounts made by Lender to Borrower ( "Loan(s)"). Loans may be prepaid at any time without penalty, but will become due and payable immediately upon Borrower's receipt of the first payment made by any affiliated Lasik eye center pursuant to the Sub Credit Agreements attached hereto. All subsequent payments received by Borrower pursuant to such Sub Credit Agreements will be repaid to Lender within thirty (30) days of receipt until this Agreement is paid in full.

(b) Loan Accounts; Notes. The Loans shall be evidenced by one or more loan accounts maintained by the Lender in the ordinary course of business (each a "Loan Account"). The Loan Accounts or records maintained by the Lender shall be conclusive absent manifest error of the amount of the Loans made by the Lender to the Borrower and the interest and payments thereon. Any failure so to record or any error in doing so shall not, however, limit or otherwise affect the obligation of the Borrower hereunder to pay any amount owing with respect to the Loans.

(c) Rate of Interest. The Borrower promises to pay interest on the unpaid principal amount of all Loans from the date made until paid in full at an interest rate 5% per annum, payable quarterly based upon a calendar year. The monthly Loan repayments will be comprised of interest and principal payments amortized over the life of the Loan. However, if Borrower is in default of this Agreement as specified in Section 3 below, then the highest interest rate permitted by law shall be applied from the date of such default. Interest shall be based upon the actual number of days elapsed in the period during which interest accrues and a year of 365 or 366 days.

Section 2: Securitization of Loans

Loans may be secured by Borrower's accounts receivable until the Loans are paid in full. Lender may file a Form UCC-1 to perfect this security interest in Borrower's accounts receivable.

Section 3: Default

Borrow shall be in default of this Agreement if it fails to perform its obligations under this Agreement; is the subject of any bankruptcy, insolvency or other similar proceeding; or permits another encumbrance of Borrower's accounts receivables without Lenders prior written consent; provided, however, that such event of default remains uncured for three (3) business days.



EXHIBIT
3
10-8-09
PENGAD 800-631-6989

Section 4: Rights and Remedies

Upon the occurrence of any uncured default with respect to the Borrower, Lender may automatically and immediately terminate additional funding under this Agreement and the unpaid principal amount of and any and all accrued interest on the Loans at the rate specified in Section 1(c) above shall automatically become immediately due and payable without further demand.

5. Miscellaneous

(a) Assignments: This Agreement is not assignable without the prior written consent of Lender and Borrower.

(b) Confidentiality: Lender and Borrower each agree to take normal and reasonable precautions and exercise due care to maintain the confidentiality of all information provided to it by the other part in connection with this Agreement, and neither shall use any such information for any purpose or in any manner other than pursuant to the terms contemplated by this Agreement; except to the extent such information (i) was or becomes generally available to the public other than as a result of a disclosure by such Lender, or (ii) was or becomes available on a non-confidential basis from a source other than the Borrower, provided further, however, that either party may disclose such information (A) at the request or pursuant to any requirement of any Governmental Authority pursuant to a lawful investigation requiring such disclosure; (B) pursuant to subpoena or other court process; (C) to either party's independent auditors and other professional advisors which are required to keep such information confidential. Each party shall notify the other in writing of such request for disclosure within ten (10) days of receipt of such request.

(c) Expenses After Default. The Borrower further agrees to pay, or reimburse Lender for all out-of-pocket costs and expenses, including reasonable attorneys fees and disbursements of counsel (including, without duplication, the allocated cost of staff counsel) and also including all costs of settlement after the occurrence of default, (i) in enforcing any obligation or in foreclosing against the collateral or exercising or enforcing any other right or remedy available by reason of such event of default; (ii) in commencing, defending or intervening in any litigation or in filing a petition, complaint, answer, motion or other pleadings in any legal proceeding relating to this Agreement (other than, with respect to Lender, to the extent resulting from or arising out of any litigation by the Borrower against such Lender in respect of a breach by such Lender of its obligations under this Agreement if such Lender is found by a court of competent jurisdiction to have breached its obligations under this Agreement (it being agreed that, to the extent that the Borrower shall have paid any fees and expenses of such Lender relating to any such litigation, such amounts shall be refunded to the Borrower upon such decision of such court); (iii) in taking any other action in or with respect to any suit or proceeding (whether in bankruptcy or otherwise); (iv) in protecting, preserving, collecting, leasing, selling, taking possession of, or liquidating any of the collateral; or (v) attempting to enforce or enforcing any security interest in any of the collateral or any other rights under the collateral documents.

(d) Setoff. In addition to any security interest granted to Lender and any rights now or hereafter granted under applicable law and not by way of limitation of any such Lien or rights, upon the occurrence and during the continuance of any event of default, Lender is hereby authorized by the Borrower at any time or from time to time, without notice to the Borrower, or to any other Person (any such notice being hereby expressly waived) to set off and to appropriate and to apply any and all assets and any other indebtedness at any time held or owing by Lender to or for the credit or the account of the Borrower during the continuation of an event of default.

(e) Amendments and Waivers. (a) No amendment or modification of any provision of this Agreement shall be effective without the written agreement of Lender and the Borrower, and no termination or waiver of any provision of this Agreement or any other loan document, or consent to any departure by the Borrower therefrom, shall in any event be effective without the written concurrence of Lender, which Lender shall have the right to grant or withhold at its sole discretion. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on the Borrower in any case shall entitle the Borrower to any other or further notice or demand in similar or other circumstances.

(f) Severability. In case any provision in or obligation under this Agreement or the other loan documents shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

Plaintiffs' Exhibit 3, Page 2 of 2

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| **BRICAN** America Inc | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax: (786)388-1489 | 5008933-1 |

| BUSINESS INFORMATION | PERSONAL INFORMATION |
|---|---|

**BUSINESS INFORMATION**

Lessee
Legal Name of Business: Peter M Blauzvern DDS

Address: 316 North Bradway

City/State/Zip: Jericho NY 11753

Phone: (516)681-5800 Fax: (516)681-5827

E Mail: DRPLAUZVERN@AOL.COM

Specialty: Dentist

Years Licensed: 25    License Number: 37688

Do you own your business? Y    How long have you owned your business? 23

Vendor: Brican America L.L.C.

**PERSONAL INFORMATION**

Applicant Name: Peter M Blauzvern

Address: 86 Westwood Circle

City/State/Zip: Roslyn Hts, NY 11577

Phone: (516)     3 Yr No Fax: (

Social Security: 054 52 7620

Do you have a checking account? Yes

Do you have a savings account? Yes

Do you own your home? Y    How long have you owned your home? 17

## TERMS AND CONDITIONS – PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| | Exhibeo System |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3  Monthly Payments of $ 0 plus tax, then | $ 95.00 | $ 0 | ☑ $1.00  ☐ Other ____ |
| 60  Monthly Payments of $ 508 plus tax | | | ☐ Rental  ☐ FMV |

1. **LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. **NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. **EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. **END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

5. **OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. **SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. **LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2006

Initial

Plaintiffs' Exhibit 4, Page 1 of 9

insurance for You and add an insurance fee to the payment amounts due from You. Lessee hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

8. **TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease. You agree to file any required personal property tax returns.

9. **DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under the Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

10. **ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or payment to You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

11. **WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time.

12. **MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

13. **GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

14. **CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 6301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

15. **NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (as stated above) | This Lease is not binding until We Sign below. Lessor: Brican America Inc. |
|---|---|
| By: _____ Date 1/20/09 (Signature) Owner (Title) | By: _____ Date 02/02/09 (Signature) |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____ , Individually | X _____ , Individually |
|---|---|

NFC ELAA – 09 2008

Plaintiffs' Exhibit 4, Page 2 of 9

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order # 221324.

A)   **Complimentary Cards:** VISO LASIK MEDSPAS will provide the Client, on demand, with unlimited "Complimentary MedSpa" gift cards ($55 value), allowing the client to reward patients for their faithfulness.

B)   **Network:** The Client will automatically belong to the Viso network and will be listed as such on the local VISO LASIK MEDSPAS website. Every patient coming to the VISO LASIK MEDSPAS will be directed to a member of the network if he/she has the need for a specialist in the area.

C)   **Preferred rates:** As part of this agreement, the Client and any employees of the Client will be eligible for a 50% discount on LASIK surgery. The Client, employees and relatives are also eligible for the Passport program. They will receive a 50% discount on all Medspa treatments up to the time they recoup the cost of LASIK procedure.

D)   **Purchase of Advertising:** Brican America LLC (Brican), **on behalf of VISO LASIK MEDSPAS LLC.** Shall purchase advertising space from the Client in accordance with the terms of this Agreement for each year that this Agreement remains in effect. The purchase of the advertising space hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)   **Advertising Space:** The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by the Client and will consist of 15 seconds animations after each sequence of 4 client's animations.

F)   **Content of Advertising:** (Mark one option)

☑ Brican reserves the exclusive right, even if the local LASIK center is not open yet, to run any advertisements or placing of posters and printed materials regarding Laser Vision Correction, Refractive Surgery and LASIK Centers practicing these procedures.

☐ Brican reserves the exclusive right to advertise products sold within the Client's practice. Any income derived from advertising sold by Brican will be retained by Brican.

G)   **Advertising Fees:** Brican agrees to pay Client a minimum of $5,800 per year for advertising space, for each year this Agreement remains in effect. Within thirty (30) days following the end of each year of the term of this Agreement, Brican will review the value of the advertising space provided by Client, taking into account potential customer volume at Client's facility and actual business generated from LASIK patients from such advertisements except for those receiving co-management fees from VISO LASIK MEDSPAS. Brican will adjust the annual advertising payment, on an annual basis, retroactive to the beginning of the then current year of the term, based upon Brican's determination of the fair market value of advertising space at Client's facility but the annual value will never be less than the minimum amount specified above.

H)   **Timing of Payments:** Client will become eligible for the payment schedule described below 90 days after delivery of the Exhibeo Concept. This does not mean the quarterly payments begin after 90 days. All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid on a quarterly basis according to the following schedule: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

I)   **Term:** This Agreement shall be effective for a period of two years following delivery of the Exhibeo Concept, and shall automatically be renewed for three (3) additional, consecutive one year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client.

J)   **Cancellation:** If VISO LASIK MEDSPAS fails to honor its commitment relating to the advertising fees and if the Client requests it, Brican will repurchase the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN        VISO        Client

WHITE: To Company

YELLOW: To Client

Plaintiffs' Exhibit 4, Page 3 of 9

$1450 \longrightarrow 1450$

# PAYMENT EXAMPLE 1

Purchase Order signed May 23, 2008

$1/20/09$

Equipment delivered June 10, 2008

$2/5/09$

Client is eligible September 10, 2008

$5/5/09$

First payment is due October 1, 2008 for $322.
Calculated as follows-($5800 per year div by 4
payments =1450 per payment div by 90 days =
$16.11 per day X 20 days = $322)

Next payment January 1, 2009 for $1450 ($5800 div
by 4 = $1450

Last payment October 1, 2013 for $1128 ($1450
-$322 = $1128)

# PAYMENT EXAMPLE 2

Purchase Order signed June 23, 2008

Equipment delivered July 10, 2008

Client is eligible October 10, 2008

First payment is due January 1, 2009 for $1289. Calculated
as follows-($5800 per year div by 4 payments =1450
per payment div by 90 days =$16.11 per day X 80 days =
$1289.)

Next payment April 1, 2009 for $1450 ($5800 div by 4 =
$1450

Last payment January 1, 2014 for $161 ($1450-$1289 =
$161)

Plaintiffs' Exhibit 4, Page 4 of 9

2  26" LCDs ① 1  20" monitor ① computer (200+ flash
videos and 600 still photos) ④ updated CD annually
⑤ keyboard ⑥ wireless mouse ⑦ digital camera

₿ 508 | mth + tax  60 mths  →  $1 B.O.

$5,800 / year  Quarterly

Feb 20  →  May 20 (40 days tot 6/30) ✗ 16:11

Jan      Apr  ← Jul      Oct

1450     1450     1450     (1450)  ($16½/day)

÷ 3    = 483³³    =  $257 tax = $720

Section 179  =    ₿ 8,000    4/15/10
ADA Tax Credit    min 2,TW

$400/ referral.

Plaintiffs' Exhibit 4, Page 5 of 9

Lessee:

Peter M. Blauzver, DDS., PC

Lease Number:

DS979

Dated:       February 3, 2009

## ASSIGNMENT

For valuable consideration, the receipt of which is hereby acknowledged, the undersigned Assignor (Lessor) hereby sells, assigns, transfers and sets over to Professional Solutions Financial Services, a division of NCMIC Finance Corporation (Assignee), its successors and assigns all rights, powers and remedies thereunder and any guaranty or surety and collateral of every kind and nature which the undersigned, except for breach of any agreement or warranties set forth in this assignment.

Assignor(Lessor) hereby warrants the Lease and documents related in any way to the Lease are genuine, enforceable and constitutes the entire agreement with respect to the lease of the equipment arising out of a bona fide leasing of the equipment to Lessee in the ordinary course of business to be performed according to it terms; that all statements contained therein are true; that at the time of the execution of this Assignment, Assignor (Lessor) has good title to the equipment and the right to transfer title to Assignee; that the equipment has been duly delivered and accepted in accordance with the terms of the Lease and is insured as provided in the Lease; that there is unpaid and owing thereon the entire balance due under the Lease. Assignor (Lessor) expressly represents and warrants

**Plaintiffs' Exhibit 4, Page 6 of 9**

that the Lease arises out of a bona fide lease of the equipment to the Lessee, that title to the equipment originated with Assignor (Lessor) and not with Lessee, that prior to the execution of the Lease, Lessee did not either directly or indirectly have an interest in the equipment, that delivery and acceptance by Lessee has been made and that Lessee has not and will not, either directly or indirectly, receive from, by or through the undersigned any part of the consideration for this agreement. The undersigned shall have no authority without the Assignee's prior written consent to accept any collections, make repossessions or modify in any way of the terms of this Lease.

The undersigned represents and warrants that as of the day of execution of this Assignment, the undersigned knows of nothing which would make the Lease less valuable or would adversely affect Assignee's decision to acquire the Lease which has not previously been disclosed to the Assignee in writing.

IN WITNESS WHEREOF, the undersigned has executed this agreement the     day of     2008.

BRICAN AMERICA
Assignor (Lessor)

By:
Its:     Vice President

Plaintiffs' Exhibit 4, Page 7 of 9

# B R I C A N
### A M E R I C A   L L C

February 11, 2010

Dear Client:

We are in receipt of your request for Brican America, LLC to assume the lease you signed with your Lessor. We understand your frustration in regards to Viso Lasik Medspas ("Viso") not being able to meet its obligations and we appreciate your expressed concern regarding your continued obligations under the lease agreement you signed (the "Lease").

Brican America has been affected by the eroding economic condition of the country, similar to many small businesses. As a result, we find ourselves in a challenged financial position that does not allow us to fulfill your request. However, we are actively working to find solutions that will assist us in meeting our remaining commitments to our clients. We want to assure you that we are currently working on alternatives that will be designed to allow us to fulfill Viso's obligations under your marketing agreement.

Regarding your Lease, please be aware that the marketing agreement that you have with Viso is a separate and distinct agreement, and that the Lease you executed with your Lessor is a binding, non-cancellable agreement. To that end, while we continue to work diligently on these new programs, we encourage you to continue to make your lease payments under the Lease.

5301 Blue Lagoon Drive, Suite 520 |Miami, Florida 33126 |P: 786-388-6995 • F: 786-388-1489

**Plaintiffs' Exhibit 4, Page 8 of 9**

● Page 2                                                              February 11, 2010

We are asking for your patience as we continue to pursue income-generating alternatives for all of

our clients and their practices.

If you would like to discuss this matter further, please contact our office.

Kindest regards,



BRICAN AMERICA, LLC

**Plaintiffs' Exhibit 4, Page 9 of 9**

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| **BRICAN** | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax (786)388-1489 | |

| BUSINESS INFORMATION | PERSONAL INFORMATION |
|---|---|

**Lessee**

Legal Name of Business: Beverly Orthodontics

Address: 26 East St

City/State/Zip: Havre NY 63305

Phone: ( ) Fax: (87) 826-4435

E Mail: Dr Beverly.com

Specialty: Dentist

Years Licensed: 22   License Number: 15428

Do you own your business? ✓   How long have you owned your business? 20

Vendor: Brican America L.L.C.

**PERSONAL INFORMATION**

Applicant Name: Jeff Beverly

Address: 202 Edgwater Dr

City/State/Zip: Pembroke FL 63305

Phone: (781)826-44889 Fax: ( )

Social Security: 024 - 36 - 6044

Do you have a checking account? ✓

Do you have a savings account? ✓

Do you own your home? ✓   How long have you owned your home?

## TERMS AND CONDITIONS -- PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (I) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| 1 | Exhibeo System |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| Monthly Payments of $ () plus tax, then Monthly Payments of $ 308 plus tax | $ 95.00 | $ 0 | ☒ $1.00 ☐ Other _____ ☐ Rental ☐ FMV |

1. **LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. **NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. **EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. **END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS".

5. **OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. **SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. **LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA -- 09 2008

Initial

Plaintiffs' Exhibit 5, Page 1 of 7

Insurance for You and add an insurance fee to the payment amounts due from You. Lessee hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

**14. CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATIES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

**15. NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (as stated above) | This Lease is not binding until We sign below. Lessor: Brican America Inc. |
|---|---|
| By: _____  Date ___ / 20 - 9  (Signature)  owner  (Title) | By: _____  Date 04/30/09  (Signature) |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____ , Individually | X _____ , Individually |
|---|---|

NFC ELM – 09 2008

**Plaintiffs' Exhibit 5, Page 2 of 7**

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order # 24129

A)  **Complimentary gift certificates/Next appointment cards:** Viso Lasik Medspas will provide the Client, on demand, with unlimited Viso Renewing Facial complimentary cards ($55 value) that act simultaneously as "next appointment" reminder cards and loyalty rewards for their patients.

B)  **Network:** The Client will automatically become a member of the Viso healthcare provider network and will be listed on the local Viso Lasik Medspas website. Viso Lasik Medspas patients seeking healthcare providers in their area will be directed to this network of preferred specialists.

C)  **Preferred rates:** As part of this agreement, the Client and their employees will be eligible for a 50% discount on all LASIK surgery. The Client, employees and relatives are also eligible for the Viso Passport program, which offers a 50% discount on all Medspa treatments up to the point when the cost of the prior LASIK procedure is recouped-essentially making LASIK a no cost procedure.

D)  **Purchase of Advertising:** Brican America LLC (Brican), on behalf of Viso Lasik Medspas LLC, will purchase advertising time on the Client's Exhibeo Concept, in accordance with the terms of this Agreement, for each year that this Agreement is in effect. The purchase of the advertising time hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)  **Advertising Space:** The Client agrees to allow Brican to insert advertising spots on the Exhibeo Concept within the loop of flash movie and still messages chosen and displayed by the Client. Brican advertising will not exceed _10 %_ of the screen time occupied by the Client and will consist of 15 second animations after each sequence of 4 client-chosen flash movies or videos.

F)  The Client agrees to allow Brican to insert a Viso URL link into the home page of their website as well as a banner display advertisement.

G)  **Content of Advertising:**

☑  Brican reserves the exclusive right, even if a local Viso Lasik Medspas center is not yet open, to run any advertisements and place posters and printed materials regarding Laser Vision Correction and Refractive Surgery.

☐  Brican reserves the exclusive right to advertise other products sold within the Client's practice on the Exhibeo Concept. Any income derived from advertising time sold by Brican will be divided equally between the Client and Brican.

H)  **Advertising Fees:** Brican agrees to pay Client a minimum of $ _5800.°°_ per year for advertising time, for each year this Agreement is in effect. Brican will conduct an annual review of the efficacy and value of the advertising time on the Client's Exhibeo Concept and may adjust the annual advertising payment upward-except to those receiving co-management fees from Viso Lasik Medspas-if it is determined that the advertising time on the Client's Exhibeo Concept warrants it. The annual amount of advertising fees paid to the client will never be less than the minimum amount specified above.

I)  **Timing of Payments:** Client will become **eligible** for the payment schedule described below 90 days after delivery of the Exhibeo Concept. This **does not mean** the quarterly payments begin after **90 days.** All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid quarterly. January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

J)  **Term:** This Agreement shall be effective for a period of one year following delivery of the Exhibeo Concept, and will automatically be renewed for four (4) additional, consecutive one-year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client. Brican may also terminate this Agreement if the Client does not regularly display the agreed to advertising to their patients in the practice during normal business hours or does not distribute the appointment/complimentary cards to his/her patients.

K)  **Cancellation:** If Viso Lasik Medspas fails to honor its commitment relating to the advertising fees, and if the Client requests it, Brican will assume assignment of the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN             LASIK MEDSPAS            Client

Carol Bonne     Salvatore M De Cann/ron   J.V.



## ASSUMPTION OF LEASE LETTER

VIA USPS

July 20, 2009

Donnelly Orthodontics
20 East St.
Hanover, MA 02339

RE: Purchase Order 24129

Dear Dr. Donnelly,

This letter serves to inform you that your lease of Brican America, LLC's Exhibeo system, has
been transferred to Brican Financial Services, LLC effective July 1, 2009.

Schedule #24129 commenced on May 14, 2009 and monthly lease payments in the amount of
$508.00 plus applicable taxes are due beginning August 13, 2009, 2009. As a reminder, your
first bill includes a $95.00 Documentation/Filing Fee.

Enclosed, please find a copy of your executed Equipment Lease Application and Agreement as
endorsed by yourself and Brican America, Inc.

Should you have any questions pertaining to this matter, please feel free to contact me at
(786) 388-6995.

Best Regards,

Charles Brazier
President
Brican Financial Services, LLC

5301 BLUE LAGOON DRIVE, SUITE 520 • MIAMI,

Plaintiffs' Exhibit 5, Page 4 of 7

# LADAS & LADAS, P.C.

### ATTORNEYS AND COUNSELORS AT LAW
www.ladaslaw.com

J. STEPHEN LADAS
(781) 829-0099
sladas@ladaslaw.com

90 Rockland Street, Suite 4
Hanover, MA 02339
Fax: (781) 829-9191

ELIZABETH LADAS HARRINGTON
(781) 829-8986
eladas@ladaslaw.com

March 3, 2010

SENT VIA FAX AND REGULAR MAIL
(786) 388-1489

Yvette Harrell, Counsel
Legal Department
Brican Financial Services, LLC
5301 Blue Lagoon Drive, Suite 520
Miami, FL  33126

> **RE:   Dr. Jeff Donnelly**
> **Donnelly Orthodontics**
> **Exhibeo Equipment Lease: DS1709**

Dear Attorney Harrell:

Please be advised this office represents the interests of Dr. Jeff Donnelly and Donnelly Orthodontics.  Pursuant to the marketing agreement entered into by Dr. Donnelly and Viso Lasik MedSpas, please accept this as notice that Dr. Donnelly is exercising the option in the lease and market agreement under Item K (cancellation):

> "*If Viso Lasik MedSpas fails to honor its commitment relating to the advertising fees, and if the client requests it, Brican will assume assignment of the client's lease agreement in regard to Exhibeo concept.*"

Effective immediately, Dr. Donnelly will no longer be making any payments under the equipment lease agreement.  Brican America Inc, and Brican Financial Services LLC, should look to Viso Lasik MedSpas, who will be assuming any future financial obligation.

Very truly yours,

J. Stephen Ladas

JSL:cta

cc:   Charles Brazier, President, Brican Financial Services, LLC
Jeff Donnelly

**Plaintiffs' Exhibit 5, Page 5 of 7**

# BRICAN
### AMERICA LLC

March 3, 2010

Dear Client:

We are in receipt of your request for Brican America, LLC to assume the lease you signed with your Lessor. We understand your frustration in regards to Viso Lasik Medspas ("Viso") not being able to meet its obligations and we appreciate your expressed concern regarding your continued obligations under the lease agreement you signed (the "Lease").

Brican America has been affected by the eroding economic condition of the country, similar to many small businesses. As a result, we find ourselves in a challenged financial position that does not allow us to fulfill your request. However, we are actively working to find solutions that will assist us in meeting our remaining commitments to our clients. We want to assure you that we are currently working on alternatives that will be designed to allow us to fulfill Viso's obligations under your marketing agreement.

Regarding your Lease, please be aware that the marketing agreement that you have with Viso is a separate and distinct agreement, and that the Lease you executed with your Lessor is a binding, non-cancellable agreement. To that end, while we continue to work diligently on these new programs, we encourage you to continue to make your lease payments under the Lease.

5301 Blue Lagoon Drive, Suite 520 |Miami, Florida 33126 |P: 786-388-6995 • F: 786-388-1489

Plaintiffs' Exhibit 5, Page 6 of 7

● Page 2                                                              March 3, 2010

We are asking for your patience as we continue to pursue income-generating alternatives for all of

our clients and their practices.


If you would like to discuss this matter further, please contact our office.


Kindest regards,
Brican America, LLC



**Plaintiffs' Exhibit 5, Page 7 of 7**

## Equipment Lease Application and Agreement

**Number:** DS/490

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| BRICAN *America Inc.* | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax (786)388-1489 | |

| BUSINESS INFORMATION | PERSONAL INFORMATION |
|---|---|

**Lessee**

**Legal Name of Business:** David Alemar DMD, PC

**Applicant Name:** David Alemar - Vincenty

**Address:** 3128 Washington Rd, Ste A

**Address:** 213 Uxem CT

**City/State/Zip:** Augusta GA 30907

**City/State/Zip:** Evans, GA 30809

**Phone:** (706) 860-9882 **Fax:** (706) 860 4740

**Phone:** (70) 860 9807 **Fax:** ( ) -

**E.Mail:** d-alemar@hotmail.com

**Social Security:** 580 21 4437

**Specialty:** General

**Do you have a checking account?** yes

**Years Licensed:** **License Number:** DN 012310

**Do you have a savings account?**

**Do you own your business?** y **How long have you owned your business?** 8 yrs

**Do you own your home?** yes **How long have you owned your home?** 3 yrs

**Vendor:** Brican America L.L.C.

### TERMS AND CONDITIONS -- PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| 1 | Exhibeo System |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3 Monthly Payments of $ 0 plus tax, then 60 Monthly Payments of $ 508 plus tax | $ 95.00 | $ 0 | ☑ $1.00 ☐ Other _____ ☐ Rental ☐ FMV |

**1. LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six (\$26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

**2. NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

**3. EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

**4. END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a \$1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

**5. OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our Interest in the Equipment.

**6. SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

**7. LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and as additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2008

*Initial*

Plaintiffs' Exhibit 6, Page 1 of 5

## *Equipment Lease Agreement – Page 2*                                        Number: *DS1410*

insurance for You and add an insurance fee to the payment amounts due from You. Lasse hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing our rights at a later time.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

**14. CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

**15. NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. | This Lease is not binding until We sign below. |
|---|---|
| Lessee: (as stated above) | Lessor: Brican America Inc. |
| By: _____ Date 3/30/09 | By: _____ Date 04/15/09 |
| (Signature) | (Signature) |
| (Title) | |

## **UNCONDITIONAL GUARANTY**

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____ , Individually | X _____ , Individually |
|---|---|

NFC ELAA – 09 2008

Plaintiffs' Exhibit 6, Page 2 of 5

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order # 25507

A) **Complimentary gift certificates/Next appointment cards:** Viso Lasik Medspas will provide the Client, on demand, with unlimited Viso Renewing Facial complimentary cards ($55 value) that act simultaneously as "next appointment"reminder cards and loyalty rewards for their patients.

B) **Network:** The Client will automatically become a member of the Viso healthcare provider network and will be listed on the local Viso Lasik Medspas website. Viso Lasik Medspas patients seeking healthcare providers in their area will be directed to this network of preferred specialists.

C) **Preferred rates:** As part of this agreement, the Client and their employees will be eligible for a 50% discount on all LASIK surgery. The Client, employees and relatives are also eligible for the Viso Passport program. which offers a 50% discount on all Medspa treatments up to the point when the cost of the prior LASIK procedure is recouped-essentially making LASIK a no cost procedure.

D) **Purchase of Advertising:** Brican America LLC (Brican), **on behalf of Viso Lasik Medspas LLC,** will purchase advertising time on the Client's Exhibeo Concept, in accordance with the terms of this Agreement, for each year that this Agreement is in effect. The purchase of the advertising time hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E) **Advertising Space:** The Client agrees to allow Brican to insert advertising spots on the Exhibeo Concept within the loop of flash movie and still messages chosen and displayed by the Client. Brican advertising will not exceed _10%_ of the screen time occupied by the Client and will consist of 15 second animations after each sequence of 4 client-chosen flash movies or videos.

F) The Client agrees to allow Brican to insert a Viso URL link into the home page of their website as well as a banner display advertisement.

G) **Content of Advertising:**

☑ Brican reserves the exclusive right, even if a local Viso Lasik Medspas center is not yet open, to run any advertisements and place posters and printed materials regarding Laser Vision Correction and Refractive Surgery.

☐ Brican reserves the exclusive right to advertise other products sold within the Client's practice on the Exhibeo Concept. Any income derived from advertising time sold by Brican will be divided equally between the Client and Brican.

H) **Advertising Fees:** Brican agrees to pay Client **a minimum of $** _5800_ per year for advertising time, **for each year this Agreement is in effect.** Brican will conduct an annual review of the efficacy and value of the advertising time on the Client's Exhibeo Concept and may adjust the annual advertising payment upward-except for those receiving co-management fees from Viso Lasik Medspas-if it is determined that the advertising time on the Client's Exhibeo Concept warrants it. **The annual amount of advertising fees paid to the client will never be less than the minimum amount specified above.**

I) **Timing of Payments:** Client will become <u>eligible</u> for the payment schedule described below 90 days after delivery of the Exhibeo Concept. **This does not mean the quarterly payments begin after 90 days.** All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid quarterly: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

J) **Term:** This Agreement shall be effective for a period of one year following delivery of the Exhibeo Concept, and will automatically be renewed for four (4) additional, consecutive one-year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client. Brican may also terminate this Agreement if the Client does not regularly display the agreed to advertising to their patients in the practice during normal business hours **or does not distribute the appointment/complimentary cards to his/her patients.**

K) **Cancellation:** If Viso Lasik Medspas fails to honor its commitment relating to the advertising fees, and if the Client requests it, Brican will assume assignment of the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN

VISO LASIK MEDSPAS

Client



Salvatore M de Lauro ( ... )

Plaintiff's Exhibit 0; Page 3 of 5



### ASSUMPTION OF LEASE LETTER

VIA USPS

July 18, 2009

David Alemar, DMD, PC
3128 Washington Road
Suite A
Augusta, GA 30907

RE: Purchase Order 25507

Dear Dr. Alemar,

This letter serves to inform you that your lease of Brican America, LLC's Exhibeo system, has been transferred to Brican Financial Services, LLC effective July 1, 2009.

Schedule #25507 commenced on April 17, 2009 and monthly lease payments in the amount of $508.00 plus applicable taxes are due beginning July 18, 2009. As a reminder, your first bill includes a $95.00 Documentation/Filing Fee.

Enclosed, please find a copy of your executed Equipment Lease Application and Agreement as endorsed by yourself and Brican America, Inc.

Should you have any questions pertaining to this matter, please feel free to contact me at (786) 388-6995.

Best Regards,


Charles Brazier
President
Brican Financial Services, LLC



Dr. David Alemar
3128 Washington Rd., Suite A
Augusta, GA 30907
Fax: 706-860-4740

Ref: Your Exhibeo System Purchase                                          July 7, 2009

Dear Dr. Alemar,

Congratulations, once again, on your purchase of the Exhibeo System from Brican
America LLC. As you know, we were able to get your financing needs approved through a
third party funding source, LEAF Funding, Inc.

After careful review of your impressive credit and business conditions, we're pleased to
inform you that we are taking your account in-house for administration by our internal
leasing company, Brican Financial LLC.

With the current credit climate in the financial markets, we are taking this step to secure
the most credit worthy accounts in-house to isolate them from the turbulent third party
financial markets that we are all reading and hearing about in today's news and media
outlets.

You will be receiving notification from LEAF Funding, Inc. that will include the return of
the Equipment Finance Agreement (EFA) and Document Fee check you executed for that
third party.

Naturally, your terms will not change in any way and you'll be dealing directly with the
financing arm of the vendor—Brican America LLC.

We will be contacting your office shortly by telephone to ensure you have received the
voided LEAF Funding, Inc. documents and to discuss the administration of your preferred
account with Brican Financial LLC.

We are happy to have you as a client and look forward to serving you.

Sincerely,

Charles Brazier
President
Brican Financial LLC

Plaintiffs' Exhibit 6, Page 5 of 5

Case MDL No. 2183 Document 1 Filed 06/14/10 Page 233 of 401
Case 1:10-cv-20782-PAS Document 4-7 Entered on FLSD Docket 03/19/2010 Page 1 of 3
630-879-2060 p.5
Mar 09 10 09:13a    batavia famliy dental

## Equipment Lease Application and Agreement    Number: DS1428

| lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| BRICAN AMERICA INC | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax (786)388-1489 | 5009530-1 |

| BUSINESS INFORMATION | PERSONAL INFORMATION #2 |
|---|---|

**Lessee**
Legal Name of Business: Kenneth A. Korpan DDS
Address: 239 W. Wilson St
City/State/Zip: Batavia IL 61510
Phone: (630) 879-2011  Fax: (  )
E Mail: Batavia.dental.gmail.Com
Specialty: General Dentistry
Years Licensed: 16   License Number: 019-023927
Do you own your business? ✓ How long have you owned your business? 16
Vendor: Brican America L.L.C.

**Applicant Name:** Kenneth A. Korpan DDS.
Address: 1827 Church
City/State/Zip: Wonalds IL
Phone: (  )   Fax: (  )
Social Security: 339.66 8341    APR 15 2009
Do you have a checking account? ✓    ORIGINALS
Do you have a savings account? ✓
Do you own your home? ✓  How long have you owned your home? 5

### TERMS AND CONDITIONS — PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use; (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease; (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| | Exhibeo System |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3 Monthly Payments of $ __ plus tax, then 60 Monthly Payments of $ 528 plus tax | $ 95.00 | $ 0 | ☑ $1.00 ☐ Other ___ ☐ Rental ☐ FMV |

1. **LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. **NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. **EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. **END OF TERM:** According to the selection in the End of Term Options section above; if this Lease's is $1.00 out; or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

5. **OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. **SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement You enter. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. **LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2008     Init:

Plaintiffs' Exhibit 7, Page 1 of 3

Case 1:10-cv-20782-PAS Document 4-7 Entered on FLSD Docket 03/19/2010 Page 2 of 3
Case MDL No. 2183 Document 1 Filed 06/14/10 Page 234 of 401

Mar 09 10 09:14a     batavia famliy dental                    630-879-2060                    p.6

*Equipment Lease Agreement – Page 2*                                    *Number:* **DS1428**

insurance for You and add an insurance fee to the payment amounts due from You. Lessee hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing our rights at a later time.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive our rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

**14. CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

**15. NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (as stated above) | This Lease is not binding until We sign below. Lessor: Brican America Inc. |
|---|---|
| By: _____ Date 3/23/09 (Signature) | By: _____ APR 1 4 2009 Date (Signature) |
| (Title) | |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| x _____ Individually | x _____ Individually |
|---|---|

NFC ELAA – 09 2006

**Plaintiffs' Exhibit 7, Page 2 of 3**

KORPAN

Case 1:10-cv-20782-PAS  Document 1  Entered on FLSD Docket 03/19/2010  Page 3 of 3
Case MDL No. 2183  Document 4-7  Filed 06/14/10  Page 235 of 401

Mar 09 10 09:14a     batavia famliy dental                    630-879-2060                    p.7

## ASSIGNMENT

For valuable consideration, the receipt of which is hereby acknowledged, the undersigned Assignor (Lessor) hereby sells, assigns, transfers and sets over to Professional Solutions Financial Services, a division of NCMIC Finance Corporation (Assignee), its successors and assigns all rights, powers and remedies thereunder and any guaranty or surety and collateral of every kind and nature which the undersigned, except for breach of any agreement or warranties set forth in this assignment.

Assignor (Lessor) hereby warrants the Lease and documents related in any way to the Lease are genuine, enforceable and constitutes the entire agreement with respect to the lease of the equipment arising out of a bona fide leasing of the equipment to Lessee in the ordinary course of business to be performed according to it terms; that all statements contained therein are true; that at the time of the execution of this Assignment, Assignor (Lessor) has good title to the equipment and the right to transfer title to Assignee; that the equipment has been duly delivered and accepted in accordance with the terms of the Lease and is insured as provided in the Lease; that there is unpaid and owing thereon the entire balance due under the Lease. Assignor (Lessor) expressly represents and warrants that the Lease arises out of a bona fide lease of the equipment to the Lessee, that title to the equipment originated with Assignor (Lessor) and not with Lessee, that prior to the execution of the Lease, Lessee did not either directly or indirectly have an interest in the equipment, that delivery and acceptance by Lessee has been made and that Lessee has not and will not, either directly or indirectly, receive from, by or through the undersigned any part of the consideration for this agreement. The undersigned shall have no authority without the Assignee's prior written consent to accept any collections, make repossessions or modify in any way of the terms of this Lease.

The undersigned represents and warrants that as of the day of execution of this Assignment, the undersigned knows of nothing which would make the Lease less valuable or would adversely affect Assignee's decision to acquire the Lease which has not previously been disclosed to the Assignee in writing.

IN WITNESS WHEREOF, the undersigned has executed this agreement the     day of     APR 1 4 2009

BRICAN AMERICA
Assignor (Lessor)

By:
Its:     Vice President

Plaintiffs' Exhibit 7, Page 3 of 3

KORMAN

**Equipment Application and Agreement number:**

| B·R·I·C·A·N | Address 5301 Blue Lagoon Dr. Suite 520 | City Miami | State FL | Zip Code 33126 | Phone (786)388-4903 Fax (786)388-1489 | E-mail 5-009247-1 |

| BUSINESS INFORMATION | PERSONAL INFORMATION |

**Lessee**

Legal Name of Business: Dr Chandra R W. Iliams DMDLLC

Applicant Name: Chandre R Williams

Address: 145 5 Belair Rd

Address: 459 Amy Hay

City/State/Zip: Mo./hnz GA 30307

City/State/Zip: Covove town CoA 30813

Phone (70u)Z10-1519 Fax (70u)Z10- 8081

Phone (706)8140-10 111 Fax (706)210- 8081

E Mail: Chandra @ drchan williams.com

Social Security 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

Specialty: General Dentist

Do you have a checking account? yes

Years Licensed: 1993 License Number 11893

Do you have a savings account? yes

Do you own your business? yes How long have you owned your business?

Do you own your home? yes How long have you owned your home?

Vendor: Brican America L.L.C.

## TERMS AND CONDITIONS -- PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease. (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel. You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
| --- | --- |
| | Exhibeo System |

**Payment Terms:**

| Form (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
| --- | --- | --- | --- |
| Monthly Payments of $ ___ plus tax, then Monthly Payments of $ 50 plus tax | $ 95.00 | $ 0 | ☑ $1.00  ☐ Other ___ ☐ Rental  ☐ FMV |

1. **LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc, to buy the Equipment and then lease it to You  This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. **NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. **EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against any claims, losses or damages, including attorney fees, related to Your use or possession of equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. **END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination.  If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to either return, at Your expense, or purchase the Equipment prior to Lease termination.  If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

5. **OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. **SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You  Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. **LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2008

APR 1 7 2009

Initial

SCANNED

**Plaintiffs' Exhibit 8, Page 1 of 6**

**Equipment Lease Agreement – Page 2**                                          Number: ☐ 5 1 2 ☒

insurance for You and add an insurance fee to the payment amounts due from You. Lessee hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

8. TAXES: You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

9. DEFAULT: The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

10. ASSIGNMENT. You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

11. WAIVER OF ARTICLE 2A RIGHTS: You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time.

12. MISCELLANEOUS: You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS: You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential form to Assignee's willingness to take an assignment of this Lease.

14. CREDIT APPLICATION AND INFORMATION: YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

15. NO AGENT: YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee-(as stated above) | This Lease is not binding until We sign below. Lessor: Brican America Inc. | MAR 1 1 2009 |
|---|---|---|
| By _Xandr K Wilhain_   Date 2/22/09 (Signature) Wner (Title) | By _____ (Signature) | Date _____ |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| _Xandr K Wilh_ , Individually | X _____ , Individually |
|---|---|

NFC ELAA – 09 7008

**Plaintiffs' Exhibit 8, Page 2 of 6**

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order # 25326

A)   **Appointment/Complimentary cards:** VISO LASIK MEDSPAS will provide the Client, on demand, with unlimited "Complimentary MedSpa" gift cards ($55 value), allowing the client to book an appointment and to reward patients for their faithfulness.

B)   **Network:** The Client will automatically belong to the Viso network and will be listed as such on the local VISO LASIK MEDSPAS website. Every patient coming to the VISO LASIK MEDSPAS will be directed to a member of the network if he/she has the need for a specialist in the area.

C)   **Preferred rates:** As part of this agreement, the Client and any employees of the Client will be eligible for a 50% discount on LASIK surgery. The Client, employees and relatives are also eligible for the Passport program. They will receive a 50% discount on all Medspa treatments up to the time they recoup the cost of LASIK procedure.

D)   **Purchase of Advertising:** Brican America LLC (Brican), **on behalf of VISO LASIK MEDSPAS LLC.** Shall purchase advertising space from the Client in accordance with the terms of this Agreement for each year that this Agreement remains in effect. The purchase of the advertising space hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)   **Advertising Space:** The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed _____ of the space occupied by the Client and will consist of 15 seconds animations after each sequence of 4 client's animations.

F)   The Client agrees to allow Brican to insert a marketing URL into the home page of their website as well as a banner.

G)   **Content of Advertising:**

Brican reserves the exclusive right, even if a local VISO LASIK MEDSPAS center is not open yet, to run any advertisements or placing of posters and printed materials regarding Laser Vision Correction and Refractive Surgery.

Brican reserves the exclusive right to advertise other products sold within the Client's practice. Any income derived from advertising sold by will be devided equally between the Client and Brican.

H)   **Advertising Fees:** Brican agrees to pay Client **a minimum of $ 5800** per year for advertising space, **for each year this Agreement remains in effect.** Within thirty (30) days following the end of each year of the term of this Agreement, Brican will review the value of the advertising space provided by Client, taking into account potential customer volume at Client's facility and actual business generated from LASIK patients from such advertisements except for those receiving co-management fees from VISO LASIK MEDSPAS. Brican will adjust the annual advertising payment, on an annual basis, retroactive to the beginning of the then current year of the term, based upon Brican's determination of the fair market value of advertising space at Client's facility but **the annual value will never be less than the minimum amount specified above.**

I)   **Timing of Payments:** Client will become eligible for the payment schedule described below 90 days after delivery of the Exhibeo Concept. **This does not mean the quarterly payments begin after 90 days.** All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid on a quarterly basis according to the following schedule: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

J)   **Term:** This Agreement shall be effective for a period of two years following delivery of the Exhibeo Concept, and shall automatically be renewed for three (3) additional, consecutive one year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client. Same termination may apply if the Client does not display advertising to his patients constantly during normal business hours.

K)   **Cancellation:** If VISO LASIK MEDSPAS fails to honor its commitment relating to the advertising fees and if the Client requests it, Brican will repurchase the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN AMERICA LLC.                    VISO LASIK MEDSPAS                    Client

_Salvatore M De Canis / HD_

Plaintiffs' Exhibit B, Page 3 of 6

Lessee:



Dr. Chandra R. Willias. DMD. LLC

Lease Number:   DS1226
DS1213
DS1214
DS1204
OPA779
OPA776
OPA777
DS1227
DS1230
DS1021
DS1238
DS1239
DS1259
DS1281
DS1282
DS1289

XFL 5.268

Plaintiffs' Exhibit 8, Page 4 of 6

DS1280
DS1257
DS1258
DS1260
DS1261
DS1219
DS1225
DS1212
DS1216
DS1218
DS1266
DS1221
OPA778
DS1156
LLL
Dated:            March 11, 2009 _____

## ASSIGNMENT

For valuable consideration, the receipt of which is hereby acknowledged, the undersigned Assignor (Lessor) hereby sells, assigns, transfers and sets over to Professional Solutions Financial Services, a division of NCMIC Finance Corporation (Assignee), its successors and assigns all rights, powers and remedies thereunder and any guaranty or surety and collateral of every kind and nature which the undersigned, except for breach of any agreement or warranties set forth in this assignment.

Assignor(Lessor) hereby warrants the Lease and documents related in any way to the Lease are genuine, enforceable and constitutes the entire agreement with respect to the lease of the equipment arising out of a bona fide leasing of the equipment to Lessee in the ordinary course of business to be performed according to it terms; that all statements contained therein are true, that at the time of the execution of this Assignment, Assignor (Lessor) has good title to the equipment and the right to transfer title to Assignee; that the equipment has been duly delivered and accepted in accordance with the terms of the Lease and is insured as provided in the Lease; that there is unpaid and owing thereon the entire balance due under the Lease. Assignor (Lessor) expressly represents and warrants that the Lease arises out of a bona fide lease of the equipment to the Lessee, that title to the equipment originated with Assignor (Lessor) and not with Lessee, that prior to the execution of the Lease, Lessee did not either directly or indirectly have an interest in the equipment, that delivery and acceptance by Lessee has been made and that Lessee has not and will not, either directly or indirectly, receive from, by or through the undersigned any part of the consideration for this agreement. The undersigned shall have no authority without the Assignee's prior written consent to accept any collections, make repossessions or modify in any way of the terms of this Lease.

The undersigned represents and warrants that as of the day of execution of this Assignment, the undersigned knows of nothing which would make the Lease less

301 5268

**Plaintiffs' Exhibit 8, Page 5 of 6**

valuable or would adversely affect Assignee's decision to acquire the Lease which has
not previously been disclosed to the Assignee in writing.

IN WITNESS WHEREOF, the undersigned has executed this agreement the   day

' MAR 1 1 2009

BRICAN AMERICA
Assignor (Lessor)

By:
Its:    Vice President

Original . located
       w| 5069252 -1

Plaintiffs' Exhibit 8, Page 6 of 6

# EXHIBIT "D"

JJO

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:10-cv-20782-PAS

Peter M. Blauzvern DDS PC et al v. Brican America, Inc. et al

Assigned to: Judge Patricia A. Seitz

Cause: 28:1332 Diversity-Fraud

Date Filed: 03/16/2010

Jury Demand: Plaintiff

Nature of Suit: 370 Fraud or Truth-In-Lending

Jurisdiction: Diversity

**Plaintiff**

**Peter M. Blauzvern DDS PC**
*a New York professional corporation*

represented by   **Ronald Pendl Gossett**
Gossett & Gossett
Building I
4700 Sheridan Street
Hollywood, FL 33021
954-983-2828
Fax: 954-212-0439
Email: rongossett@gossettlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeff E. Donnelly**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John M. Highsmith, DDS, PA**
*a North Carolina professional association*

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven B Oken**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Chang, PC**
*a Georgia professional corporation*

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Alemar DMD, PC**
*a Georgia professional corporation*

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrey S Thaller**                    represented by **Ronald Pendl Gossett**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael S Burstein**                   represented by **Ronald Pendl Gossett**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles H Estelle**                    represented by **Ronald Pendl Gossett**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth A. Korpan DDS, PC**            represented by **Ronald Pendl Gossett**
*an Illinois professional corporation*     (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stuart A Curry**                       represented by **Ronald Pendl Gossett**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Lederman**                        represented by **Ronald Pendl Gossett**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brian A. McMurtry, DDS, PA**           represented by **Ronald Pendl Gossett**
*a North Carolina professional*            (See above for address)
*association*                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dr. Chandra R. Williams DMD, LLC**     represented by **Ronald Pendl Gossett**
                                           (See above for address)
*a Georgia limited liability company*      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Geoffrey S. Wozar, DMD, PC**           represented by **Ronald Pendl Gossett**
*a Pennsylvania professional*              (See above for address)
*corporation*                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennifer Goldman**                     represented by **Ronald Pendl Gossett**
                                           (See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amy Thu Tran**                             represented by **Ronald Pendl Gossett**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mountain Lakes Dental Associates,**        represented by **Ronald Pendl Gossett**
**PA**                                       (See above for address)
*a New Jersey professional association*      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter K Eng**                              represented by **Ronald Pendl Gossett**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eye-Deal Family Eye Care, Inc.**           represented by **Ronald Pendl Gossett**
*a Florida corporation*                      (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Archibald**                          represented by **Ronald Pendl Gossett**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Taylor DMD, Inc.**                    represented by **Ronald Pendl Gossett**
*a California corporation*                   (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Arthur B. Silver DDS PC**                  represented by **Ronald Pendl Gossett**
*a Georgia professional corporation*         (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John C. Sieweke DDS PC**                   represented by **Ronald Pendl Gossett**
*a Georgia professional corporation*         (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**John C Sieweke**                           represented by **Ronald Pendl Gossett**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amarilis Jacobo**                          represented by **Ronald Pendl Gossett**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephen R Kepley**                           represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Margolies**                             represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**George C. Weeks DDS PA**                     represented by **Ronald Pendl Gossett**
*a Florida professional association*           (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**George C Weeks**                             represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alan M Rapoport**                            represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond Goodman, OD, PA**                    represented by **Ronald Pendl Gossett**
*an Idaho professional association*            (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond Goodman**                            represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cary Family Eye Care, OD, PA**               represented by **Ronald Pendl Gossett**
*a North Carolina professional*                (See above for address)
*association*                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dwight W Barnes**                            represented by **Ronald Pendl Gossett**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven J Luccarelli**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stanely D. Halpern, DDS, PC**
*a Georgia professional corporation*

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stanley D Halpern**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Webster Cosmetic Dental Ltd.**
*an Illinois limited company, d/b/a*
*Webster Cosmetic Dental*

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara K. Webster**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric Smith**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David S. Lee, DDS, Inc.**
*a California corporation*

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David S Lee**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stone Creek Dental, PC**
*an Idaho professional corporation*

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Casey S Butterfield**

    represented by **Ronald Pendl Gossett**
         (See above for address)
         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carolina Family Vision, OD, PA**
*a North Carolina professional*
*association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Adam B Bryan**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kristy L Tart-Bryan**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Epstein DMD PA**
*a Florida professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Epstein**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Young DMD PA**
*a Florida professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Young**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chadds Ford Dental Associates, Inc.**
*a Pennsylvania corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andrew Pratt**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J.M. Arrue DMD LLC**
*a Georgia limited liability company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J M Arrue**                                   represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Troy R. Lindh DMD PA**                        represented by   **Ronald Pendl Gossett**
*a Florida professional association*            (See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Troy R Lindh**                                represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brian G DePetris**                            represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gordon Bell**                                 represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benjamin Gamm**                               represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eyexam Associates, PA**                       represented by   **Ronald Pendl Gossett**
*a New Jersey professional association*         (See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elizabeth Lewis**                             represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kelly L Kalmar**                              represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kalmar Family Dentistry, LLP**                represented by   **Ronald Pendl Gossett**
*a New York limited liability partnership*      (See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Henderson Mill Dental Care, PC**
*a Georgia professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John H Mason**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric S Smith**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert R Thousand**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lumberton Optometric Associates,
PLLC**
*a North Carolina professional limited
liability company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles E Scholler**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marc B Nelson**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael E. and Maria Domingoes,
PA**
*a Florida professional association,
doing business as Anastasia Dental
Associates*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Todd J Feddock**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Visual Perceptions Eyecare, LLC**
*a Connecticut limited liability company*

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Geoffrey A Banga**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christine Nguyen**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Han Hong**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dentistry at Vinings, PC**
*a Georgia professional corporation*

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter D Maro**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Casel**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce Corbin**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sid Morse**

represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul M Hertz**

represented by   **Ronald Pendl Gossett**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Larry J Moray**                                represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deogsoo Roh**                                  represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Farid Hanachi DDS PA**                         represented by **Ronald Pendl Gossett**
*a North Carolina corporation*                   (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**J Randall Glass**                              represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard E Sorkin**                             represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ginger Coley**                                 represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph R. Kenneally, DMD, PA**                 represented by **Ronald Pendl Gossett**
*a Maine professional association*               (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason D Lewis**                                represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ben Schultz**                                  represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Mirkin**                                represented by **Ronald Pendl Gossett**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathan J Bonilla-Warford**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David C. Suh DDS, Inc.**
*a California corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathan W Tilman**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Visual Perceptions Vernon, LLC**
*a Connecticut limited liability company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Delmar Gray**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brodedale Dental, PA**
*an Idaho professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Lustbader**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David R Lach**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Luc E Kanicky**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Corbin Family Dental Arts, LLP**
*a New York limited liability partnership*

Plaintiff

**Jeremy R Bayer**

Plaintiff

**Eric Barney**

Plaintiff

**Premier Dentistry, Inc.**
*a Pennsylvania corporation*

Plaintiff

**Richard Bruce**

Plaintiff

**Raymond C. Goodman, OD, PA**
*an Idaho professional association*

Plaintiff

**Beth Snyder**

Plaintiff

**BW Vision Care, PA**
*a Florida professional association*

Plaintiff

**Asheville Vision Associates OD PA**
*a North Carolina professional
association*

Plaintiff

**Richard Bruce, PC**
*a Pennsylvania professional
corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lucy S Lee**                                    represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Michael W Domingoes**                          represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Adnan Qayyum DDS LLC**                          represented by **Ronald Pendl Gossett**
*a Pennsylvania limited liability*               (See above for address)
*company*                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**All About Smiles, Inc.**                        represented by **Ronald Pendl Gossett**
*a California corporation*                        (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Leonard F Tau**                                 represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Rodeffer, Garner & Minor**                      represented by **Ronald Pendl Gossett**
**Orthodontics, LC**                              (See above for address)
*a Florida limited liability company*             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Debra Glassman**                                represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Texarkan Vision Group, PLLC**                   represented by **Ronald Pendl Gossett**
*a Texas company*                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Richard Pyun**                                  represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Fred R Shanks**                                 represented by **Ronald Pendl Gossett**
                                                 (See above for address)
                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**J Philip Wiygul**                              represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Corbin**                              represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ira D Koeppel**                               represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter D. Maro, Jr., DMD MS, PC**              represented by   **Ronald Pendl Gossett**
*a New York professional corporation*           (See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lisa P Howard**                               represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven A. Firshein DMD, Inc.**                represented by   **Ronald Pendl Gossett**
*a California corporation*                       (See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephen M Montaquila**                        represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric S. Smith, DDS, PC**                      represented by   **Ronald Pendl Gossett**
*a Utah professional company*                    (See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond Lawrence**                            represented by   **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**North Shore Dental Arts, LLP**                represented by   **Ronald Pendl Gossett**
*a New York limited liability partnership*       (See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph F Alvarez**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Larry J. Moray DDS MS PA**
*a New York professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barry I Cohen**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laura Vizzari**
*formerly known as Laura Reilly*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond K Martin**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gregory S Liss**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond K. Martin DDS MAGD, PC**
*a Massachusetts professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael J Barbieri**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gregg Fink DMD, Inc.**
*a Delaware corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John T Kalange**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sajini Shetty DMD Dental Offices,
PC**
*a New Hampshire professional
company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mirkins Vision Care, PC**
*a New York professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert R. Thousand, III, PA**
*a Florida professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Samir K. Hanna & Associates, PA**
*a Florida professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gregory W Kalmar**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Signature Smiles, PC**
*a Georgia professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Coley & Coley Family Eyecare, Inc.**
*a Tennessee corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Alemar-Vincentry**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jason D. Lewis DDS PA**
*a Florida professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Kevin P Ryan                              represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Benjamin W Dreksler                       represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Handschumacher Enterprises, OD,           represented by **Ronald Pendl Gossett**
PA                                                      (See above for address)
*a North Carolina professional*                         *ATTORNEY TO BE NOTICED*
*association*

**Plaintiff**

Joseph R Kenneally                        represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Farid Hanachi                             represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Kevin Wendell                             represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Tod Garner                                represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Anthony LaTempa DMD LLC                    represented by **Ronald Pendl Gossett**
*a New Jersey limited liability company*                (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

David R. Lach, D.D.S., M.S., P.A          represented by **Ronald Pendl Gossett**
*a Florida professional association*                    (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

Value Vision of Tampa Bay, Inc.           represented by **Ronald Pendl Gossett**

| | |
|---|---|
| *a Florida corporation* | (See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Robert Aube** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Randall B Smith** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**John T Uetsuki** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Catherine M Ferentin** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Steven Glassman** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Z. Maali Dental, Inc.**<br>*a Florida corporation* | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Ian Sobler** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**R Marc Carozza** | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff**<br>**Lisa P. Howard, DDS, PC**<br>*a Maine professional corporation* | represented by **Ronald Pendl Gossett**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

**Atul M. Patel, BDS, Inc.**
*a California corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Fitzpatrick**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**George Prattas**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard E. Sorkin OD, PA**
*a Florida professional association*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Unique Dental Center, PC**
*a Massachusetts professional
corporation, doing business as Unique
Dental Care*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gregg Fink**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony LaTempa**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nelson Eye Associates, PC**
*a New Jersey professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrey Handschumacher**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Samir K Hanna**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Goldberg**                                      represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Raymond C Goodman**                                   represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Treva Diane Lee**                                     represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Lisa P. Howard, DDS, LLC**                            represented by **Ronald Pendl Gossett**
*a Maine limited liability company*                     (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Adnan Qayyum**                                        represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Lucy S. Lee OD, PLLC**                                represented by **Ronald Pendl Gossett**
*a Virginia professional limited liability*             (See above for address)
*company*                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cedar Bluff Family & Cosmetic**                       represented by **Ronald Pendl Gossett**
**Dentistry, PA**                                       (See above for address)
*a South Carolina professional*                         *ATTORNEY TO BE NOTICED*
*association*

**Plaintiff**

**David C Suh**                                         represented by **Ronald Pendl Gossett**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Christine Nguyen, D.D.S., P.A.**                      represented by **Ronald Pendl Gossett**
*a Florida professional association*                    (See above for address)
                                                        *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Travis B Bartschi**                                   represented by **Ronald Pendl Gossett**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul M. Hertz DMD LLC**
*a New York limited liability company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ATL Smiles, LLC**
*a Georgia limited liability company*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Margaret Ames**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Putt**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Serena Tham**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Atul M Patel**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ziyad Maali**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ira D. Koeppel, PC**
*a New York professional corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry Strauss**

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathan W. Tilman DDS, PC**
*a Rhode Island professional corporation*

**Plaintiff**

**Sajini Shetty**

**Plaintiff**

**Wanda Arden**

**Plaintiff**

**Gray and Smith Family Dental, PC**
*an Idaho professional corporation*

**Plaintiff**

**Fred R. Shanks OD, LLC**
*a Tennessee limited liability company*

**Plaintiff**

**Kevin P. Ryan DDS, PC**
*an Illinois professional corporation*

**Plaintiff**

**Lewis Family Dentistry, LLC**
*a Georgia limited liability company*

**Plaintiff**

**Steven A Firshein**


V.

**Defendant**

**Brican America, Inc.**
*a Florida corporation*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Ronald Pendl Gossett**
(See above for address)
*ATTORNEY TO BE NOTICED*

represented by **Alan Samuel Fine**
Alan S. Fine, P.A.
255 Alhambra Circle
Suite 850
Coral Gables, FL 33134
305-424-2400
Fax: 305-424-2401

Email: afine@fine-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brican America, LLC**
*a Florida limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brican Financial Services, LLC**
*a Florida limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jean Francois Vincens**
*a/k/a Jeff Vincens*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jacques Lemacon**

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Salvatore M DeCanio, Jr.**

represented by **Jeff Tomberg**
Jeff Tomberg, J.D., P.A.
626 SE 4th Street
PO Box 1426
Boynton Beach, FL 33425
561-737-1345
Fax: 734-8971
Email: piatty@yahoo.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JJR Investments, LLC**
*a Florida limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lifestyle of Vision, Inc.**
*a Florida corporation*

represented by **Jeff Tomberg**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viso Lasik Medspas, LLC**
*a Florida limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viso Lasik Medspas of Charlotte,
LLC**
*a North Carolina limited liability
company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Viso Lasik Medspas of San Antonio,
LLC**
*a Texas limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NCMIC Finance Corporation**
*doing business as Professional
Solutions Financial Services, an Iowa
corporation authorized to do business
in Florida*

represented by **Catherine Magdalena Rodriguez**
Levey Filler Rodriguez Kelso & De
Bianchi LLP
1688 Meridian Avenue
Suite 902
Miami Beach, FL 33139
305-672-5007
Fax: 305-672-4070
Email: cmrodriguez@leveyfiller.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/16/2010 | 1 | COMPLAINT against all defendants Filing fee $ 350.00 receipt number 113C-2717582, filed by Raymond Goodman et al (Attachments: # 1 Exhibit 1, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Civil Cover Sheet, # 9 Summon(s) Brican America Inc., # 10 Summon(s) Brican America LLC, # 11 Summon(s) Brican Financial Services, LLC, # 12 Summon(s) DeCanio, # 13 Summon(s) JJR, # 14 Summon(s) Lemacon, # 15 Summon(s) Lifestyle, # 16 Summon(s) NCMIC, # 17 Summon(s) Vincens, # 18 Summon(s) VLM Charlotte, # 19 Summon(s) VLM San Antonio, # 20 Summon(s) VLM)(Gossett, Ronald) Modified on 3/16/2010 (jc). (Entered: 03/16/2010) |
| 03/16/2010 | 2 | Clerks Notice of Judge Assignment on Electronic Case to Judge Patricia A. Seitz (jc) (Entered: 03/16/2010) |
| 03/16/2010 | 3 | Summons Issued as to Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, Salvatore M DeCanio, Jr., JJR Investments, LLC, |

| | | |
|---|---|---|
| | | Jacques Lemacon, Lifestyle of Vision, Inc., NCMIC Finance Corporation, Jean Francois Vincens, Viso Lasik Medspas of Charlotte, LLC, Viso Lasik Medspas of San Antonio, LLC, Viso Lasik Medspas, LLC. (jc) (Entered: 03/16/2010) |
| 03/19/2010 | 4 | First AMENDED COMPLAINT, filed by Raymond Goodman, OD, PA, Mountain Lakes Dental Associates, PA, Jennifer Goldman, Stone Creek Dental, PC, J.M. Arrue DMD LLC, Stephen R Kepley, Troy R. Lindh DMD PA, Eye-Deal Family Eye Care, Inc., Alan M Rapoport, Dwight W Barnes, Stuart A Curry, Kalmar Family Dentistry, LLP, George C. Weeks DDS PA, Troy R Lindh, Geoffrey S. Wozar, DMD, PC, Gordon Bell, Eyexam Associates, PA, John H Mason, Jeff E. Donnelly, Amy Thu Tran, Dr. Chandra R. Williams DMD, LLC, Peter Epstein DMD PA, John C. Sieweke DDS PC, Arthur B. Silver DDS PC, Adam B Bryan, Michael S Burstein, Stanely D. Halpern, DDS, PC, David S Lee, Justin Chang, PC, Raymond Goodman, David Archibald, Elizabeth Lewis, Jeffrey S Thaller, Amarilis Jacobo, Benjamin Gamm, Kenneth A. Korpan DDS, PC, Kristy L Tart-Bryan, Peter Epstein, Webster Cosmetic Dental Ltd., Kelly L Kalmar, Gary Lederman, Eric Smith, Christopher Young, J M Arrue, Henderson Mill Dental Care, PC, Casey S Butterfield, Peter K Eng, Andrew Pratt, Peter M. Blauzvern DDS PC, George C Weeks, John C Sieweke, Mark Margolies, Barbara K. Webster, Brian G DePetris, Chadds Ford Dental Associates, Inc., Paul Taylor DMD, Inc., David S. Lee, DDS, Inc., Carolina Family Vision, OD, PA, Brian A. McMurtry, DDS, PA, David Alemar DMD, PC, Steven J Luccarelli, John M. Highsmith, DDS, PA, Christopher Young DMD PA, Charles H Estelle, Stanley D Halpern, Steven B Oken, Cary Family Eye Care, OD, PA, Eric S Smith, Robert R Thousand, Lumberton Optometric Associates, PLLC, Charles E Scholler, Marc B Nelson, Michael E. and Maria Domingoes, PA, Todd J Feddock, Visual Perceptions Eyecare, LLC, Geoffrey A Banga, Christine Nguyen, Han Hong, Dentistry at Vinings, PC, Peter D Maro, Daniel Casel, Bruce Corbin, Sid Morse, Paul M Hertz, Larry J Moray, Deogsoo Roh, Farid Hanachi DDS PA, J Randall Glass, Richard E Sorkin, Ginger Coley, Joseph R. Kenneally, DMD, PA, Jason D Lewis, Ben Schultz, Daniel Mirkin, Nathan J Bonilla-Warford, David C. Suh DDS, Inc., Nathan W Tilman, Visual Perceptions Vernon, LLC, Delmar Gray, Brodedale Dental, PA, Robert Lustbader, David R Lach, Luc E Kanicky, The Corbin Family Dental Arts, LLP, Jeremy R Bayer, Eric Barney, Premier Dentistry, Inc., Richard Bruce, Raymond C. Goodman, OD, PA, Beth Snyder, BW Vision Care, PA, Asheville Vision Associates OD PA, Richard Bruce, PC, Lucy S Lee, Michael W Domingoes, Adnan Qayyum DDS LLC, All About Smiles, Inc., Leonard F Tau, Rodeffer, Garner & Minor Orthodontics, LC, Debra Glassman, Texarkan Vision Group, PLLC, Richard Pyun, Fred R Shanks, J Philip Wiygul, Richard Corbin, Ira D Koeppel, Peter D. Maro, Jr., DMD MS, PC, Lisa P Howard, Steven A. Firshein DMD, Inc., Stephen M Montaquila, Eric S. Smith, DDS, PC, Raymond Lawrence, North Shore Dental Arts, LLP, Joseph F Alvarez, Larry J. Moray DDS MS PA, Barry I Cohen, Laura Vizzari, Raymond K Martin, Gregory S Liss, Raymond K. Martin DDS MAGD, PC, Michael J Barbieri, Gregg Fink DMD, Inc., John T Kalange, Sajini Shetty DMD Dental Offices, PC, Mirkins Vision Care, PC, Robert R. Thousand, III, PA, Samir K. Hanna & Associates, PA, Gregory W Kalmar, Signature Smiles, PC, Coley & Coley Family Eyecare, Inc., David Alemar-Vincentry, Jason D. Lewis DDS |

| | | |
|---|---|---|
| | | PA, Kevin P Ryan, Benjamin W Dreksler, Handschumacher Enterprises, OD, PA, Joseph R Kenneally, Farid Hanachi, Kevin Wendell, Tod Garner, Anthony LaTempa DMD LLC, David R. Lach, D.D.S., M.S., P.A, Value Vision of Tampa Bay, Inc., Robert Aube, Randall B Smith, John T Uetsuki, Catherine M Ferentin, Steven Glassman, Z. Maali Dental, Inc., Ian Sobler, R Marc Carozza, Lisa P. Howard, DDS, PC, Atul M. Patel, BDS, Inc., Charles Fitzpatrick, George Prattas, Richard E. Sorkin OD, PA, Unique Dental Center, PC, Gregg Fink, Anthony LaTempa, Nelson Eye Associates, PC, Jeffrey Handschumacher, Samir K Hanna, David Goldberg, Raymond C Goodman, Treva Diane Lee, Lisa P. Howard, DDS, LLC, Adnan Qayyum, Lucy S. Lee OD, PLLC, Cedar Bluff Family & Cosmetic Dentistry, PA, David C Suh, Christine Nguyen, D.D.S., P.A., Travis B Bartschi, Paul M. Hertz DMD LLC, ATL Smiles, LLC, Margaret Ames, Michael Putt, Serena Tham, Atul M Patel, Ziyad Maali, Ira D. Koeppel, PC, Jerry Strauss, Nathan W. Tilman DDS, PC, Sajini Shetty, Wanda Arden, Gray and Smith Family Dental, PC, Fred R. Shanks OD, LLC, Kevin P. Ryan DDS, PC, Lewis Family Dentistry, LLC, Steven A Firshein. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Gossett, Ronald) (Entered: 03/19/2010) |
| 03/30/2010 | 5 | SUMMONS (Affidavit) Returned Executed by Raymond Goodman, OD, PA, Joseph R Kenneally, Margaret Ames, Mountain Lakes Dental Associates, PA, Handschumacher Enterprises, OD, PA, Jennifer Goldman, Stone Creek Dental, PC, J.M. Arrue DMD LLC, Stephen R Kepley, Charles E Scholler, Premier Dentistry, Inc., Troy R. Lindh DMD PA, Debra Glassman, Samir K. Hanna & Associates, PA, Eye-Deal Family Eye Care, Inc., Marc B Nelson, Eric Barney, Asheville Vision Associates OD PA, Cedar Bluff Family & Cosmetic Dentistry, PA, Han Hong, Alan M Rapoport, Value Vision of Tampa Bay, Inc., Dwight W Barnes, Stuart A Curry, Randall B Smith, Joseph F Alvarez, David C Suh, Atul M Patel, John T Uetsuki, Robert R Thousand, Lisa P Howard, Kevin P Ryan, Kalmar Family Dentistry, LLP, George C. Weeks DDS PA, Richard E Sorkin, Jason D Lewis, Texarkan Vision Group, PLLC, Barry I Cohen, Ginger Coley, Troy R Lindh, Fred R. Shanks OD, LLC, Geoffrey S. Wozar, DMD, PC, David C. Suh DDS, Inc., Kevin P. Ryan DDS, PC, Gordon Bell, Tod Garner, Michael Putt, David Alemar-Vincentry, Robert R. Thousand, III, PA, Eyexam Associates, PA, Lucy S Lee, Unique Dental Center, PC, John H Mason, Michael E. and Maria Domingoes, PA, Larry J. Moray DDS MS PA, BW Vision Care, PA, Lisa P. Howard, DDS, LLC, Amy Thu Tran, Jeff E. Donnelly, Steven A Firshein, Gray and Smith Family Dental, PC, Travis B Bartschi, Benjamin W Dreksler, Farid Hanachi, Anthony LaTempa DMD LLC, Peter D. Maro, Jr., DMD MS, PC, Jason D. Lewis DDS PA, Lisa P. Howard, DDS, PC, Michael W Domingoes, Dr. Chandra R. Williams DMD, LLC, Robert Aube, Deogsoo Roh, Coley & Coley Family Eyecare, Inc., Peter Epstein DMD PA, John C. Sieweke DDS PC, North Shore Dental Arts, LLP, Paul M Hertz, David R Lach, Daniel Casel, Raymond C Goodman, Sajini Shetty DMD Dental Offices, PC, Arthur B. Silver DDS PC, Z. Maali Dental, Inc., Lumberton Optometric Associates, PLLC, Adnan Qayyum DDS LLC, Richard E. Sorkin OD, PA, All About Smiles, Inc., Stephen M Montaquila, Adam B Bryan, George Prattas, Michael S Burstein, Nathan J Bonilla-Warford, Kevin Wendell, Stanely D. Halpern, DDS, PC, Ian Sobler, David S |

| | | Lee, Justin Chang, PC, J Randall Glass, Adnan Qayyum, Raymond Goodman, David Archibald, Elizabeth Lewis, Jeffrey S Thaller, The Corbin Family Dental Arts, LLP, Amarilis Jacobo, Farid Hanachi DDS PA, Peter D Maro, David Goldberg, Lewis Family Dentistry, LLC, Leonard F Tau, Catherine M Ferentin, Gregory S Liss, R Marc Carozza, Benjamin Gamm, Raymond K. Martin DDS MAGD, PC, Steven A. Firshein DMD, Inc., Nelson Eye Associates, PC, Joseph R. Kenneally, DMD, PA, Jeffrey Handschumacher, Kenneth A. Korpan DDS, PC, Sajini Shetty, Ziyad Maali, Larry J Moray, Luc E Kanicky, Daniel Mirkin, Richard Pyun, Raymond K Martin, David R. Lach, D.D.S., M.S., P.A, Todd J Feddock, Kristy L Tart-Bryan, Jerry Strauss, Peter Epstein, Robert Lustbader, Webster Cosmetic Dental Ltd., Kelly L Kalmar, Eric Smith, Ira D. Koeppel, PC, Gary Lederman, Christopher Young, Christine Nguyen, J M Arrue, Lucy S. Lee OD, PLLC, Casey S Butterfield, Jeremy R Bayer, Henderson Mill Dental Care, PC, ATL Smiles, LLC, Peter K Eng, Laura Vizzari, Andrew Pratt, Raymond C. Goodman, OD, PA, Charles Fitzpatrick, Mirkins Vision Care, PC, Gregory W Kalmar, Peter M. Blauzvern DDS PC, Steven Glassman, Anthony LaTempa, George C Weeks, John C Sieweke, Paul M. Hertz DMD LLC, Mark Margolies, Barbara K. Webster, Raymond Lawrence, Gregg Fink DMD, Inc., Samir K Hanna, John T Kalange, Nathan W. Tilman DDS, PC, Brian G DePetris, Visual Perceptions Vernon, LLC, Dentistry at Vinings, PC, Ira D Koeppel, Eric S Smith, Gregg Fink, Chadds Ford Dental Associates, Inc., Delmar Gray, Treva Diane Lee, Beth Snyder, Richard Bruce, PC, J Philip Wiygul, Ben Schultz, Paul Taylor DMD, Inc., Eric S. Smith, DDS, PC, David S. Lee, DDS, Inc., Richard Corbin, Atul M. Patel, BDS, Inc., Brodedale Dental, PA, Carolina Family Vision, OD, PA, Christine Nguyen, D.D.S., P.A., Brian A. McMurtry, DDS, PA, Rodeffer, Garner & Minor Orthodontics, LC, Richard Bruce, Michael J Barbieri, David Alemar DMD, PC, Sid Morse, John M. Highsmith, DDS, PA, Steven J Luccarelli, Nathan W Tilman, Bruce Corbin, Charles H Estelle, Christopher Young DMD PA, Wanda Arden, Stanley D Halpern, Steven B Oken, Signature Smiles, PC, Fred R Shanks, Cary Family Eye Care, OD, PA, Visual Perceptions Eyecare, LLC, Serena Tham, Geoffrey A Banga. Jean Francois Vincens served on 3/24/2010, answer due 4/14/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/30/2010 | 6 | SUMMONS (Affidavit) Returned Executed by Peter M. Blauzvern DDS PC. Jacques Lemacon served on 3/24/2010, answer due 4/14/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/30/2010 | 7 | SUMMONS (Affidavit) Returned Executed by Peter M. Blauzvern DDS PC. JJR Investments, LLC served on 3/24/2010, answer due 4/14/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/30/2010 | 8 | SUMMONS (Affidavit) Returned Executed by Peter M. Blauzvern DDS PC. Brican Financial Services, LLC served on 3/24/2010, answer due 4/14/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/30/2010 | 9 | SUMMONS (Affidavit) Returned Executed by Peter M. Blauzvern DDS PC. Brican America, Inc. served on 3/24/2010, answer due 4/14/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/30/2010 | 10 | SUMMONS (Affidavit) Returned Executed by Peter M. Blauzvern DDS PC. |

| | | |
|---|---|---|
| | | Viso Lasik Medspas, LLC served on 3/23/2010, answer due 4/13/2010. (Gossett, Ronald) (Entered: 03/30/2010) |
| 03/31/2010 | 11 | Order Requiring Joint Scheduling Report -Joint Scheduling Report due by 6/1/2010. Signed by Judge Patricia A. Seitz on 3/31/2010. (tb) (Entered: 03/31/2010) |
| 05/05/2010 | 12 | MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,,, by NCMIC Finance Corporation. Responses due by 5/24/2010 (Attachments: # 1 Exhibit, # 2 Affidavit)(Rodriguez, Catherine) (Entered: 05/05/2010) |
| 05/05/2010 | 13 | MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, *References to Optical Technologies Litigation in First Amended Complaint and Memorandum of Law* by Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, JJR Investments, LLC, Jacques Lemacon, Jean Francois Vincens, Viso Lasik Medspas of Charlotte, LLC, Viso Lasik Medspas of San Antonio, LLC, Viso Lasik Medspas, LLC. Responses due by 5/24/2010 (Fine, Alan) (Entered: 05/05/2010) |
| 05/05/2010 | 14 | MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,,, *and Incorporated Memorandum of Law* by Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, Viso Lasik Medspas, LLC. Responses due by 5/24/2010 (Fine, Alan) (Entered: 05/05/2010) |
| 05/05/2010 | 15 | MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,,, *and Incorporated Memorandum of Law* by JJR Investments, LLC, Jacques Lemacon, Jean Francois Vincens, Viso Lasik Medspas of Charlotte, LLC, Viso Lasik Medspas of San Antonio, LLC. Responses due by 5/24/2010 (Fine, Alan) (Entered: 05/05/2010) |
| 05/05/2010 | 16 | MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, *Demand for Jury Trial and Incorporated Memorandum of Law* by Brican America, Inc., Brican America, LLC, Brican Financial Services, LLC, JJR Investments, LLC, Jacques Lemacon, Jean Francois Vincens, Viso Lasik Medspas of Charlotte, LLC, Viso Lasik Medspas of San Antonio, LLC, Viso Lasik Medspas, LLC. Responses due by 5/24/2010 (Fine, Alan) (Entered: 05/05/2010) |
| 05/17/2010 | 17 | MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,, 1 Complaint,, by Salvatore M DeCanio, Jr., Lifestyle of Vision, Inc.. Responses due by 6/3/2010 (Tomberg, Jeff) (Entered: 05/17/2010) |
| 05/24/2010 | 18 | Unopposed MOTION for Leave to File Excess Pages by Peter M. Blauzvern DDS PC. (Gossett, Ronald) Modified on 5/26/2010 (ls). (Entered: 05/24/2010) |
| 05/24/2010 | 19 | Unopposed MOTION for Extension of Time to File Response/Reply as to 14 MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,,, *and Incorporated Memorandum of Law*, 13 MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, *References to Optical Technologies Litigation in First Amended Complaint and Memorandum of Law* MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, *References to Optical Technologies Litigation in First Amended Complaint and Memorandum of Law*, 16 MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, *Demand for Jury Trial and Incorporated Memorandum of Law* MOTION to Strike 4 Amended Complaint,,,,,,,,,,,,,,,,, |

| | | |
|---|---|---|
| | | *Demand for Jury Trial and Incorporated Memorandum of Law*, 15 MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,,, *and Incorporated Memorandum of Law* MOTION to Dismiss 4 Amended Complaint,,,,,,,,,,,,,,,, *and Incorporated Memorandum of Law filed by all plaintiffs and* by Peter M. Blauzvern DDS PC. (Attachments: # 1 Text of Proposed Order)(Gossett, Ronald) (Entered: 05/24/2010) |
| 05/25/2010 | 20 | ORDER granting 19 Unopposed Motion for Extension of Time to File Response/Reply re 16 MOTION to Strike 4 Amended Complaint, *Demand for Jury Trial and Incorporated Memorandum of Law* MOTION to Strike 4 Amended Complaint, *Demand for Jury Trial and Incorporated Memorandum of Law*, 14 MOTION to Dismiss 4 Amended Complaint, *and Incorporated Memorandum of Law*, 13 MOTION to Strike 4 Amended Complaint, *References to Optical Technologies Litigation in First Amended Complaint and Memorandum of Law* MOTION to Strike 4 Amended Complaint, *References to Optical Technologies Litigation in First Amended Complaint and Memorandum of Law*, 15 MOTION to Dismiss 4 Amended Complaint, *and Incorporated Memorandum of Law* MOTION to Dismiss 4 Amended Complaint, *and Incorporated Memorandum of Law*; Responses due by 6/11/2010. Signed by Judge Marcia G. Cooke on 5/25/2010. (ls) (Entered: 05/26/2010) |
| 05/26/2010 | 21 | Clerks Notice to Filer re 18 Unopposed MOTION for Leave to File *Memorandum of Law exceeding 20 pages by all Plaintiffs and*. **Filer Selected the Wrong Motion Relief(s)**; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs. (ls) (Entered: 05/26/2010) |
| 06/01/2010 | 22 | Unopposed MOTION for Extension of Time to File *Joint Scheduling Report to June 4, 2010,* by Peter M. Blauzvern DDS PC. (Attachments: # 1 Text of Proposed Order granting unopposed motion)(Gossett, Ronald) (Entered: 06/01/2010) |
| 06/02/2010 | 23 | Order Granting 22 Plaintiffs' Unopposed Motion for Extension of Time to File Joint Scheduling Report ( -Joint Scheduling Report due by 6/4/2010). Signed by Judge Marcia G. Cooke for Judge Patricia A. Seitz on 6/2/2010. (jcy) (Entered: 06/03/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/03/2010 09:58:20 | | |
| PACER Login: | dc0439 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:10-cv-20782-PAS |
| Billable Pages: | 30 | Cost: | 2.40 |

# EXHIBIT "E"

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI -DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
(COMPLEX BUSINESS LITIGATION SECTION)

CASE NO.: 10- 14399CA 40

STEVEN WIGDOR O.D., P.A., a
Florida corporation, et al.,

       Plaintiffs,

v.

                                **CLASS REPRESENTATION**

NCMIC FINANCE CORPORATION
d/b/a PROFESSIONAL SOLUTIONS
FINANCIAL SERVICES, an Iowa
Corporation, et al.,

       Defendants.
_____/

## SUPPLEMENTED[1] AMENDED COMPLAINT

Plaintiffs/Putative Class Representatives, STEVEN WIGDOR O.D., P.A., a Florida corporation ("Wigdor, O.D., P.A."); STEVEN WIGDOR ("Dr. Wigdor"); RADZWILL OPTOMETRIC ASSOCIATES, CHARTERED, a Florida corporation ("Radzwill Optometric"); ERIC M. RADZWILL ("Dr. Radzwill"); CORAL SPRINGS EYE CENTER, CHARTERED ("Eye Center"); STEVEN R. KOGANOVSKY ("Dr. Koganovsky"); BEVILLE DENTAL CARE ("Beville Dental"); ADRIANA PORTER ("Dr. Porter"); EYE HEALTH & VISION CENTER, P.A., a Florida corporation ("Eye Health"); DAVID RUBIN ("Dr. Rubin"); IVAN ROSENTHAL ("Dr. Rosenthal"); ROBERT M. EASTON, JR., O.D., P.A., a Florida corporation ("Easton, O.D., P.A."); ROBERT EASTON ("Dr. Easton"); VISION ARTS EYECARE

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

CENTER ("Vision Arts"); EDWARD WALKER ("Dr. Walker"); ALL EYES OPTICAL, INC., a Florida corporation ("All Eyes"); VITO GUARIO ("Dr. Guario"); MARCIANO FAMILY OPTOMETRIC, P.A., a Florida corporation ("Marciano Optometric"); BRANDEE MARCIANO ("Dr. Marciano"); KAUFMAN EYECARE CENTER ("Kaufman Eyecare"); SANDFORD KAUFMAN ("Dr. Kaufman"); THE HOUR GLASS, INC., a Florida corporation ("Hour Glass"); JAMES STEPHENS ("Dr. Stephens"); MITCHELL A. JOSEPHS, D.D.S., P.A., a Florida corporation ("Josephs, D.D.S., P.A."); MITCHELL JOSEPHS ("Dr. Josephs"); SANDRA BARKER ("Dr. Barker"); NEW VIEW OPTOMETRIC CENTER ("New View"); MELVIN KASANOFF ("Dr. Kasanoff"); JAY GELMAN ("Dr. Gelman"); PALM BEACH EYES OF BOYNTON BEACH ("Palm Beach Eyes"); GREG PIENTKA ("Dr. Pientka"); BETHANY BRENNER ("Dr. Brenner"); PALM VISION CENTER, INC., a Florida corporation ("Palm Vision"); STEVEN ANHALT ("Dr. Anhalt"); BARRERA OPTICAL, INC., a Texas corporation ("Barrera Optical"); MARIO BARRERA ("Dr. Barrera"); LORI J. BENDE, O.D., PROFESSIONAL OPTOMETRIC CORP., a California corporation ("Bende Professional Corp."); LORI BENDE ("Dr. Bende") DANIEL DEL CASTILLO, D.M.D., P.A., a Florida corporation (Del Castillo, P.A.); DANIEL DEL CASTILLO (Dr. Del Castillo); KENNETH GALLINGER ("Dr. Gallinger"); OAKWOOD DENTAL ARTS, LLC, a New York limited liability company ("Oakwood Dental"); EMANUEL GRAZIANO ("Dr. Graziano"); ALAN GROSSMAN ("Dr. Grossman"); TAD KOSANOVICH ("Dr. Kosanovich"); RAGSDALE & MARTIN OPTICAL, INC., a Texas corporation ("Ragsdale & Martin"); MICHAEL MARTIN ("Dr. Martin"); FAMILY VISION CENTER, P.A., a Florida corporation ("Family Vision"); LORI MAZZA ("Dr. Mazza"); ADVANCED DENTAL CENTER OF SUMMERVILLE, PA, a

---

[1] The supplementation is limited to the addition of Behdad Omrani, ¶¶ 145 and 221(z).

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

South Carolina corporation ("Advanced Dental Center"); JAMES MUSCOTT ("Dr. Muscott");

PETER SCERBO DMD, P.A., a Florida corporation ("Scerbo DMD, P.A."); PETER SCERBO

("Dr. Scerbo"); RAYMOND E. SCHWARTZ, P.A., a Florida corporation ("Schwartz, P.A.");

RAYMOND E. SCHWARTZ ("Dr. Schwartz"); E. WAYNE SIMMONS, D.M.D.

PROSTHODONTIST, P.C., a Texas corporation ("Simmons D.M.D., P.C."); E. WAYNE

SIMMONS ("Dr. Simmons"); BARRY SIMON (Dr. Simon"); DR. RONALD N. SMITH,

OPTOMETRIST, INC., a Texas corporation ("Ronald Smith, Inc."); RONALD SMITH ("Dr.

Smith"); TERRY VAN DER HEYDEN ("Dr. Van Der Heyden"); ADVANTAGE FAMILY

VISION CENTER ("Advantage Vision"); CHARLES PORCH ("Dr. Porch"); FRED

BUETTNER ("Dr. Buettner"); MICHAEL L. GRACE, O.D., P.A., a Texas corporation ("Grace,

O.D., P.A."); 20/20 VISION CLINIC, LLP, a Texas limited liability partnership ("20/20

Vision"); MICHAEL GRACE ("Dr. Grace"); BLAISDELL DENTAL CENTER, P.A., an Idaho

corporation ("Blaisdell Dental");   JOHN BLAISDELL ("Dr. Blaisdell"); JAMES L.

CARAZOLA, D.M.D., P.A., a Florida corporation ("Carazola, D.M.D., P.A.); JAMES

CARAZOLA ("Dr. Carazola");   CHRISTOPHER S. CARROLL, D.D.S., P.C., a Wisconsin

corporation ("Carroll, D.D.S., P.C.); CHRISTOPHER CARROLL ("Dr. Carroll"); TRYPHOSE

CHARLES, D.M.D. ("Dr. Charles"); M. COWAN & ASSOCIATES, D.D.S., P.A. ("M. Cowan

& Associates"); MICHAEL J. FERNANDEZ, D.M.D., P.A., a Florida corporation ("Fernandez,

D.M.D., P.A.); MICHAEL FERNANDEZ ("Dr. Fernandez"); CEDARHURST DENTAL

OFFICE ("Cedarhurst Dental"); HOWARD GOLDSCHEIN ("Dr. Goldschein"); GRAYHILLS,

MOHIP DENTAL & ASSOCIATES OF WELLINGTON ("Grayhills Mohip Dental");

LAURENCE GRAYHILLS ("Dr. Grayhills"); SPEX IN THE CITY, LLC, a Washington limited

liability company ("Spex in the City"); MARK HAMILTON ("Dr. Hamilton"); ALAN R.

Wigdor, et al. v. NCMIC Finance Corporation, et al.     &ast;    Case No. 10-14399 CA 40

HEAP, D.M.D., P.A., a Florida corporation ("Heap, D.M.D., P.A."); ALAN HEAP ("Dr. Heap"); EMERALD WEST FAMILY DENTISTRY, PLLC, an Idaho limited liability company ("Emerald West"); CHAD HESS ("Dr. Hess"); RICHARD M. KERNAGIS, D.M.D, P.A., a Florida corporation ("Kernagis, D.M.D., P.A."); RICHARD KERNAGIS ("Dr. Kernagis"); EAST LYME FAMILY & COSMETIC DENTISTRY ("East Lyme Family"); JOSEPH PALUMBO ("Dr. Palumbo"); LAKESIDE FAMILY DENTISTRY, P.L., a Florida limited liability company ("Lakeside Family Dentistry"); CHRISTOPHER SEPPI ("Dr. Seppi"); JOEL E. VACCAREZZA, DDS, P.A., a Florida corporation ("Vaccarezza, DDS, P.A."); JOEL VACCAREZZA ("Dr. Vaccarezza"); EYAD SHEHADEH, D.D.S., P.A., a Florida corporation ("Shehadeh, D.D.S., P.A."); EYAD SHEHADEH ("Dr. Shehadeh"); FREEDMAN & HAAS, P.A., a Florida corporation ("Freedman & Haas"); SHARON HAAS ("Dr,. Haas"); EDWARD B. BUSCH, D.M.D., P.A., a Florida corporation ("Busch, D.M.D., P.A."); EDWARD BUSCH ('Dr. Busch"); KEITH A. COLWELL, D.D.S., P.C., an Iowa corporation ("Colwell, D.D.S., P.C."); KEITH COLWELL ("Dr. Colwell"); JAY GELMAN ("Dr. Gelman"); BEAUTIFUL SMILES DENTAL CARE ("Beautiful Smiles"); ANTHONY GULDE ("Dr. Gulde"); PHILIP K. HAIMAN & ASSOCIATES, P.A. n/k/a SUNRISE EYE CARE, INC., a Florida corporation ("Sunrise Eye Care"); PHILIP HAIMAN ("Dr. Haiman"); ROLAND PARK VISION SERVICES ("Roland Park Vision Services"); BRUCE HYATT ("Dr. Hyatt"); NEELOFAR KHAN ("Dr. Khan"); OBROCHTA CENTER FOR DENTAL HEALTH STEPHEN P. OBROCHTA D.D.S. P.A., a Florida corporation ("Obrochta Center"); STEPHEN OBROCHTA ("Dr. Obrochta"); WESLEY B. SMITH, D.D.S., P.A., a North Carolina corporation ("Smith, D.D.S., P.A."); WESLEY SMITH ("Dr. Smith"); JEFFREY TWEEDY ("Dr. Tweedy"); ANTONIO BARCIAS ("Dr. Barcia"); EYES ON THE BAY, P.A., a Florida corporation ("Eyes

on the Bay"); NEIL ELLIOT ("Dr. Elliot"); RODRICK KEENER ("Dr. Keener"); PREMIER
DENTAL ("Premier Dental"); ALIGN ORTHODONTICS ("Align Orthodontics"); SANJEEV
SHARMA ("Dr. Sharma"); ELLIOTT STUPP ("Dr. Stupp"); FAMILY DENTAL CARE
("Family Dental Care"); CHANBO SIM ("Dr. Sim"); WADE G. WINKER, D.D.S., P.A., a
Florida corporation ("Winker, D.D.S., P.A."); WADE WINKER ("Dr. Winker");
COUNTRYSIDE DENTAL ASSOCIATES, INC., a Florida corporation ("Countryside Dental");
MICHAEL ANCONA ("Dr. Ancona"); DR. MATOS'S GROWING SMILES, P.A., a New
Jersey corporation ("Growing Smiles"); MANUEL GONZALEZ ("Dr. Gonzalez"); THOMAS
JACKA ("Dr. Jacka"); ALFRED JOHNSON ("Dr. Johnson"); KENNETH A. MOGELL,
D.M.D., P.A., a Florida corporation ("Mogell, D.M.D., P.A."); KENNETH MOGELL ("Dr.
Mogell"); JOHN D. SHERER, D.M.D., P.A., a Florida corporation ("Sherer, D.M.D., P.A.");
JOHN SHERER ("Dr. Sherer"); KATY PERIODONTICS MANAGEMENT, INC., a Texas
corporation ("Katy Periodontics"); TIMOTHY HALE ("Dr. Hale"); STEPHEN ALLISON ("Dr.
Allison"); FALLS COSMETIC DENTAL CENTER ("Falls Dental"); SAMUEL CHANDY
("Dr. Chandy"); BEHDAD OMRANI ("Dr. Omrani")(collectively referred to as "Plaintiffs"
and/or "Putative Class Representatives"), sue the Defendants, NCMIC FINANCE
CORPORATION, an Iowa corporation, d/b/a PROFESSIONAL SOLUTIONS FINANCIAL
SERVICES ("PSFS"); PSFS 3 CORPORATION, an Iowa Corporation ("PSFS 3"); BRICAN
AMERICA, INC., a Florida corporation ("BAI"), BRICAN AMERICA, LLC, a Florida
corporation ("BAL") (BAI and BAL sometimes being collectively referred to as "Brican"); and
BRICAN FINANCIAL SERVICES, L.L.C., a Florida limited liability company ("BFS") and
allege:

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

## The Parties

1.      Wigdor, O.D., P.A. is Florida corporation registered to do and doing business in Aventura, Florida.

2.      Dr. Wigdor is an optometric physician practicing through Wigdor, O.D., P.A. and is a resident of North Miami Beach, Florida.

3.      Radzwill Optometric is Florida corporation registered to do and doing business in Broward County in the State of Florida.

4.      Dr. Radzwill is an optometric physician practicing through Radzwill Optometric and is a resident of Broward County in the State of Florida.

5.      Eye Center is Florida corporation registered to do and doing business in Broward County in the State of Florida.

6.      Dr. Koganovsky is an optometric physician practicing through Eye Center and is a resident of Broward County in the State of Florida.

7.      Beville Dental is a fictitious name registered in the State of Florida.

8.      Dr. Porter is dentist practicing through Beville Dental in South Daytona, Florida.

9.      Eye Health is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Venice, Florida.

10.     Dr. Rubin is an optometric physician practicing through Eye Health and is a resident of Venice, Florida.

11.     Dr. Rosenthal is an optometric physician practicing and residing in Boca Raton, Florida.

12.     Easton, O.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Oakland Park, Florida.

13.     Dr. Easton is an optometric physician practicing through Easton, O.D., P.A. and residing in Oakland Park, Florida.

14.     Vision Arts is a registered fictitious name used by Dr. Walker in Tallahassee, Florida.

15.     Dr. Walker is an optometric physician practicing through Vision Arts and residing in Tallahassee, Florida.

16.     All Eyes is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Davie, Florida.

17.     Dr. Guario is an optometric physician practicing through All Eyes and residing in Davie, Florida.

18.     Marciano Optometric is a duly organized and existing corporation in the State of Florida maintaining its principal offices in West Palm Beach, Florida.

19.     Dr. Marciano is an optometric physician practicing through All Eyes and residing in West Palm Beach, Florida.

20.     Kaufman Eyecare is a registered fictitious name used by Dr. Kaufman in Zephyrhills, Florida.

21.     Dr. Kaufman is an optometric physician practicing through Kaufman Eyecare and residing in Zephyrhills, Florida.

22.     Hour Glass is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Tallahassee, Florida.

23.     Dr. Stephens is an optometric physician practicing through Hour Glass and is a resident of Tallahassee, Florida.

24.     Josephs, D.D.S., P.A. is a duly organized and existing corporation in the State of

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

Florida maintaining its principal offices in Palm Beach, Florida.

      25.    Dr. Josephs is a dentist practicing through Josephs, D.D.S., P.A. and is a resident of West Palm Beach, Florida.

      26.    Dr. Barker is an optometric physician practicing and residing in Winter Park, Florida.

      27.    New View is a registered fictitious name used by Dr. Kasanoff in La Mesa, California.

      28.    Dr. Kasanoff is an optometric physician practicing through New View and residing in San Diego, California.

      29.    Dr. Gelman is a dentist practicing and residing in Jupiter, Florida.

      30.    Palm Beach Eyes is a registered fictitious name used by Dr. Pientka in Boynton Beach, Florida.

      31.    Dr. Pientka is an optometric physician practicing through Palm Beach Eyes and residing in Lantana, Florida.

      32.    Dr. Brenner is a dentist practicing and residing in Burlington, Connecticut.

      33.    Palm Vision is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Cooper City, Florida.

      34.    Dr. Anhalt is an optometric physician and is a resident of Davie, Florida.

      35.    Barrera Optical is a duly organized and existing corporation in the State of Texas maintaining its principal offices in Laredo, Texas.

      36.    Dr. Barrera is an optometric physician and is a resident of Laredo, Texas.

      37.    Bende Professional Corp. is a duly organized and existing corporation in the State of California maintaining its principal offices in San Diego, California.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

38.     Dr. Bende is an optometric physician and is a resident of San Diego, California.

39.     Del Castillo, P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Miami Beach, Florida.

40.     Dr. Del Castillo is a dentist practicing through Del Castillo, P.A. and is a resident of North Miami Beach, Florida.

41.     Dr. Gallinger is an optometric physician practicing and residing in San Antonio, Texas.

42.     Oakwood Dental is a duly organized and existing limited liability company in the State of New York maintaining its principal offices in Staten Island, New York.

43.     Dr. Graziano is a dentist practicing through Graziano Dental and is a resident of Staten Island, New York.

44.     Dr. Grossman is an optometric physician practicing and residing in North Miami, Florida.

45.     Dr. Kosanovich is an optometric physician practicing and residing in Englewood, Florida.

46.     Ragsdale & Martin is a duly organized and existing corporation in the State of Texas maintaining its principal offices in Tyler, Texas.

47.     Dr. Martin is an optometric physician and is a resident of Tyler, Texas.

48.     Family Vision is a duly organized and existing corporation in the State of Florida maintaining its principal offices in West Palm Beach, Florida.

49.     Dr. Mazza is an optometric physician practicing through Family Vision and is a resident of West Palm Beach, Florida.

50.     Advanced Dental Center is a duly organized and existing corporation in the State

Wigdor, et al. v. NCMIC Finance Corporation, et al.                           Case No. 10-14399 CA 40

of South Carolina maintaining its principal offices in Summerville, South Carolina.

51.    Dr. Muscott is a dentist practicing through Advanced Dental Center and is a resident of Summerville, South Carolina.

52.    Scerbo DMD, P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Ft. Lauderdale, Florida.

53.    Dr. Scerbo is a dentist practicing through Scerbo DMD, P.A. and is a resident of Sunny Isles Beach, Florida.

54.    Schwartz, P.A. is Florida corporation registered to do and doing business in Lake Worth, Florida.

55.    Dr. Schwartz is an optometric physician practicing through Schwartz, P.A. and is a resident of West Palm Beach, Florida.

56.    Simmons D.M.D., P.C. is a duly organized and existing corporation in the State of Texas maintaining its principal offices in San Antonio, Texas.

57.    Dr. Simmons is a dentist and a resident of San Antonio, Texas.

58.    Dr. Simon is an optometric physician practicing and residing in Parkland, Florida.

59.    Ronald Smith, Inc. is a duly organized and existing corporation in the State of Texas maintaining its principal offices in Tyler, Texas.

60.    Dr. Smith is an optometric physician and a resident of Tyler, Texas.

61.    Dr. Van Der Heyden is an optometric physician practicing and residing in Naples, Florida.

62.    Advantage Vision is a registered fictitious name used by Dr. Porch in Pensacola, Florida.

63.    Dr. Porch is an optometric physician practicing through Advantage Vision and

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

residing in Pensacola, Florida.

64.    Dr. Buettner is a dentist practicing in Lindsay, California and residing in Porterville, California.

65.    Grace, O.D., P.A., is a duly organized and existing corporation in the State of Texas maintaining its principal offices in Grand Prairie, Texas.

66.    20/20 Vision is a duly organized and existing limited liability partnership in the State of Texas maintaining its principal offices in Grapevine, Texas.

67.    Dr. Grace is an optometric physician operating through Grace, O.D., P.A. and 20/20 Vision and is a resident of Grand Prairie, Texas.

68.    Blaisdell Dental is a duly organized and existing corporation in the State of Idaho maintaining its principal offices in Caldwell, Idaho.

69.    Dr. Blaisdell is an optometric physician practicing through Blaisdell Dental and is a resident of Caldwell, Idaho.

70.    Carazola, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Clearwater, Florida.

71.    Dr. Carazola is a dentist practicing through Carazola, D.M.D., P.A. and is a resident of Clearwater, Florida.

72.    Carroll, D.D.S., P.C. is a duly organized and existing corporation in the State of Wisconsin maintaining its principal offices in Spooner, Wisconsin.

73.    Dr. Carroll is a dentist practicing through Carroll, D.D.S., P.C. and is a resident of Spooner, Wisconsin.

74.    Dr. Charles is a dentist practicing and residing in Fairfield, Connecticut.

75.    M. Cowan & Associates is a duly organized and existing corporation in the State

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

of Florida maintaining its principal offices in Pembroke Pines, Florida.

76.     Fernandez, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Seminole, Florida.

77.     Dr. Fernandez is a dentist practicing through Fernandez, D.M.D., P.A. and is a resident of Seminole, Florida.

78.     Cedarhurst Dental is a fictitious name used by Dr. Goldschein in Cedarhurst, New York.

79.     Dr. Goldschein is a dentist practicing through Cedarhurst Dental and residing in Cedarhurst, New York.

80.     Grayhills Mohip Dental is a registered fictitious name used by Dr. Grayhills in Wellington, Florida.

81.     Dr. Grayhills is a dentist practicing through Grayhills Mohip Dental and residing in Jupiter, Florida.

82.     Spex in the City is a duly organized and existing limited liability company in the State of Washington maintaining its principal offices in Seattle, Washington.

83.     Dr. Hamilton is an optometric physician practicing through Spex in the City and is a resident of Bellevur, Washington.

84.     Heap, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Orlando, Florida.

85.     Dr. Heap is a dentist practicing through Heap, D.M.D., P.A. and is a resident of Kissimmee, Florida.

86.     Emerald West is a duly organized and existing limited liability company in the State of Idaho maintaining its principal offices in Boise, Idaho.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

87.     Dr. Hess is a dentist practicing through Emerald West and is a resident of Boise, Idaho.

88.     Kernagis, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Tampa, Florida.

89.     Dr. Kernagis is a dentist practicing through Kernagis, D.M.D., P.A. and is a resident of Tampa, Florida.

90.     East Lyme Family is a fictitious name used by Dr. Palumbo in East Lyme, Connecticut.

91.     Dr. Palumbo is a dentist practicing through East Lyme Family and residing in Old Saybrook, Connecticut.

92.     Lakeside Family Dentistry is a duly organized and existing limited liability company in the State of Florida maintaining its principal offices in Windermere, Florida.

93.     Dr. Seppi is a dentist practicing through Lakeside Family Dentistry and residing in Windermere, Florida.

94.     Vaccarezza, DDS, P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Miami Shores, Florida.

95.     Dr. Vaccarezza is a dentist practicing through Vaccarezza, DDS, P.A. and is a resident of Miami Beach, Florida.

96.     Shehadeh, D.D.S., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Plantation, Florida.

97.     Dr. Shehadeh is a dentist practicing through Shehadeh, D.D.S., P.A. and is a resident of Sunrise, Florida.

98.     Freedman & Haas is a duly organized and existing corporation in the State of

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

Florida maintaining its principal offices in West Palm Beach, Florida.

99.     Dr. Haas is a dentist practicing through Freedman & Haas and is a resident of North Palm Beach, Florida.

100.    Busch, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Seminole, Florida.

101.    Dr. Busch is a dentist practicing through, Busch, D.M.D., P.A. and is a resident of Largo, Florida.

102.    Colwell, D.D.S., P.C. is a duly organized and existing corporation in the State of Iowa maintaining its principal offices in Des Moines, Iowa.

103.    Dr. Colwell is a dentist practicing through Colwell, D.D.S., P.A. and is a resident of Des Moines, Iowa.

104.    Dr. Gelman is a dentist practicing and residing in Jupiter, Florida.

105.    Beautiful Smiles is a fictitious name used by Dr. Gulde in Mount Dora, Florida.

106.    Dr. Gulde is a dentist practicing through Beautiful Smiles in Mount Dora and residing in Apopka, Florida.

107.    Sunrise Eye Care is Florida corporation registered to do and doing business in Sunrise, Florida.

108.    Dr. Haiman is an optometric physician practicing through Sunrise Eye Care and resides in Parkland, Florida.

109.    Roland Park Vision Services is a fictitious name used by Dr. Hyatt in Balto, Maryland.

110.    Dr. Hyatt is an optometric physician practicing through Roland Park Vision Services and residing in Balto, Maryland.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

111.    Dr. Khan is a dentist practicing and residing in Sacramento, California.

112.    Obrochta Center is Florida corporation registered to do and doing business in St. Petersburg, Florida.

113.    Dr. Obrochta is a dentist practicing through Obrochta Center and resides in Gulfport, Florida.

114.    Smith, D.D.S., P.A. is a duly organized and existing corporation in the State of North Carolina maintaining its principal offices in Durham, North Carolina.

115.    Dr. Smith is a dentist practicing through Smith, D.D.S., P.A. and is a resident of North Carolina.

116.    Dr. Tweedy is an optometric physician practicing and residing in Tipton, Indiana.

117.    Dr. Barcia is a dentist practicing and residing in Miami, Florida.

118.    Eyes on the Bay is a Florida corporation registered to do and doing business in Boca Raton, Florida.

119.    Dr. Elliot is a dentist practicing through Eyes on the Bay and resides in Boca Raton, Florida.

120.    Dr. Keener is an optometric physician practicing and residing in Walnut Creek, California.

121.    Premier Dental is a fictitious name registered in the State of Washington.

122.    Dr. Sharma is dentist practicing through Premier Dental in Camas, Washington.

123.    Align Orthodontics is a fictitious name registered in the State of Washington.

124.    Dr. Sharma is dentist practicing through Align Orthodontics in Camas, Washington.

125.    Dr. Stupp is an optometric physician practicing and residing in Sarasota, Florida.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

126.    Family Dental Care is a fictitious name used by Dr. Sim in Merrillville, Indiana.

127.    Dr. Sim is a dentist practicing through Family Dental Care and residing in Chesterton, Indiana.

128.    Winker, D.D.S., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Eustis, Florida.

129.    Dr. Winker is a dentist practicing through Winker, D.D.S., P.A. and is a resident of Eustis, Florida.

130.    Countryside Dental is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Cooper City, Florida.

131.    Dr. Ancona is a dentist practicing through Countryside Dental and residing in Davie, Florida.

132.    Growing Smiles is a duly organized and existing corporation in the State of New Jersey maintaining its principal offices in Elizabeth, New Jersey.

133.    Dr. Gonzalez is a dentist practicing through Growing Smiles and is a resident of Elizabeth, New Jersey.

134.    Dr. Jacka is dentist practicing in Federal Way, Washington.

135.    Dr. Johnson is dentist practicing in York, South Carolina.

136.    Mogell, D.M.D., P.A. is a duly organized and existing corporation in the State of Florida maintaining its principal offices in Boca Raton, Florida.

137.    Dr. Mogell is a dentist practicing through Mogell, D.M.D., P.A. and is a resident of Boca Raton, Florida.

138.    Sherer, D.M.D., P.A. is a duly organized and existing corporation in the State of South Carolina maintaining its principal offices in Chester, South Carolina.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

139.   Dr. Sherer is a dentist practicing through Sherer, D.M.D., P.A. and is a resident of Chester, South Carolina.

140.   Katy Periodontics is a duly organized and existing corporation in the State of Texas maintaining its principal offices in Katy, Texas.

141.   Dr. Hale is a dentist practicing through Katy Periodontics and is a resident of Katy, Texas.

142.   Dr. Allison is an optometric physician practicing in Palm City, Florida and residing in Stuart, Florida.

143.   Falls Dental is a fictitious name registered in the State of Florida.

144.   Dr. Chandy is dentist practicing through Falls Dental in Pembroke Pines, Florida.

145.   Dr. Omrani is a dentist practicing in Hawthorne, California.

146.   PSFS is a duly organized and existing corporation in the State of Iowa doing business under a fictitious name.

147.   PSFS 3 is a duly organized and existing corporation in the State of Iowa.

148.   BAI is a duly organized and existing corporation in the State of Florida, with its principal place of business in Miami, Florida.

149.   BAL is a duly organized and existing limited liability corporation in the State of Florida, with its principal place of business in Miami, Florida.

150.   BFS is a duly organized and existing limited liability company in the State of Florida with its principal place of business in Miami, Florida.

151.   BAI, BAL, and BFS are separate legal entities that are operated under one umbrella of ownership and management. For purposes of their day-to-day operation, BAI, BAL, and BFS are alter egos of each other and are factually and legally indistinguishable.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

## Jurisdiction and Venue

152.    This Court has jurisdiction of this class action in that the aggregation of the claims of the Plaintiffs and the Class Members exceeds $15,000, exclusive of costs, interest, and attorney's fees.

153.    Additionally, this Court has jurisdiction of this action pursuant to Section 86.011, Florida Statutes.

154.    PSFS is subject to the jurisdiction of this Court in that it conducts and engages in a business venture in the State of Florida as well as being engaged in substantial and not isolated activity within the State of Florida, all within the definition and meaning of § 48.193, Florida Statutes.

155.    PSFS 3 is subject to the jurisdiction of this Court in that it is the owner and holder of certain Agreements assigned to it by PSFS.  PSFS 3 conducts and engages in a business venture in the State of Florida as well as being engaged in substantial and not isolated activity within the State of Florida, all within the definition and meaning of § 48.193, Florida Statutes.

156.    BAI, BAL, and BFS are all Florida business entities maintaining their principal offices in the State of Florida.

157.    Venue is proper in Miami-Dade County, Florida in that several of the Defendants maintain their principal offices there and the acts of omission and commission giving rise to the claims of the Plaintiffs and the Class Members arose there.

## Common Allegations

158.    Brican markets and sells specialized computerized presentation displays designed for physicians' offices (hereinafter the "Equipment").

159.    BAI was the business entity that initially marketed and sold the Equipment to the

Wigdor, et al. v. NCMIC Finance Corporation, et al.                                    Case No. 10-14399 CA 40

Plaintiffs and the Class Members.

160.    At a certain point in time, BAL took over the marketing and sales of the Equipment to the Class Members and BAI became the seller of the Equipment. Agents, servants, and employees of PSFS played an elemental role in converting the transaction to one directly between BAI and the Class Members, with BAL as the vendor and PSFS as the assignee of the Agreements.

161.    Brican's sales pitch to each Class Member was the same. It consisted of proposing that the Class Member enter into an installment sale agreement (hereinafter the "Agreement") with PSFS or BAI.

162.    The Agreement was an installment sales contract, but was referred to and described by Brican as a lease. Exemplars of the Agreements utilized by PSFS or BAI are attached to this Amended Complaint as exhibits for the multiple scenarios detailed hereinafter.

163.    The Agreements made directly to PSFS were misleading and deceptive to the customer because Brican intentionally placed its name and logo prominently and conspicuously at the very top of the document while PSFS's name, as the actual lessor, was buried in the small print in the document.

164.    An elemental part of the Agreement transaction between PSFS or Brican and the Class Member was for Brican to enter into an associated advertising or marketing agreement (the "Advertising Agreement" or "Marketing Agreement") either immediately prior to or simultaneously with the execution of the Agreement.

165.    Under the terms and provisions of the Marketing Agreement, Brican agreed to pay the Class Members monthly marketing fees, coextensive with the term of the Agreement, in an amount that almost completely offset the payments due under the Agreement. The related

nature of the Agreement and the Marketing Agreement assured the Class Members that they would receive the benefit of the use of the Equipment with complete confidence in making the payments due under the Agreement.

166.    The parties to each transaction treated and considered the Agreement and the Advertising or Marketing Agreement to be related and part of a single, unified transaction.

167.    Most significantly to the Class Member, the Marketing Agreement specifically provided that if Brican ceased making its marketing payment, the Class Member could either cancel the Agreement and/or Brican would buy back, reassign, or repurchase the Agreement.

168.    The cancellation provision of some of the Advertising or Marketing Agreements was antithetical to the provision of the Agreements prohibiting cancellation.  The conflict between these opposing provisions in related documents in the unified transaction creates doubt and uncertainty as to the enforceability of these provisions.  This is further reinforced by the language in some of the Advertising Agreements that provided specifically for cancellation of "related" agreements.

169.    Using the "related documents" as a sales technique allowed Brican to make their sales pitch to the Class Members by characterizing the Equipment purchase as virtually free of charge because the payments received under the Marketing Agreement would offset the payments due under the Agreement. Also, the Agreement enabled Brican to convert a stream of future monthly payments into immediate cash by having the Agreement executed in favor of PSFS and packaging the transaction to the customer as appearing to be one integrated and related transaction.

170.    Brican used the monies obtained from the sale of the Equipment to pay for the Equipment itself, sales commissions, marketing fees due and payable under existing advertising

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

or marketing agreements, overhead and the cost of doing business, and to open and operate spas in various cities.   As the marketing fees Brican was obligated to pay to the Class Members increased, Brican had to create and develop an ever-increasing number of new customers to keep its scheme afloat.

171.   Brican never established any reserves from the monies received from PSFS in order to meet its obligations to the Class Members under the Marketing Agreements.

172.   The Agreements entered into by Brican for sale of the Equipment to the Class Members was nothing more than a vehicle by which Brican was able to generate large sums of "cash up front" while doling out monies over a protracted period of time to pay the advertising fees to the Class Members. This followed the classic paradigm for a Ponzi scheme. Necessarily, the scheme was destined to eventually collapse under its own weight when Brican could no longer attract new customers to generate sufficient amounts of cash to pay the ever increasing marketing fees it was obligated to pay to the Class Members.

173.   Initially, Brican and PSFS were parties to a General Vendor Agreement under which PSFS was the sole funding source for the financing of the Agreements entered into by the Class Members.

174.   Agents and employees of PSFS had actual knowledge of Brican's use of the Marketing Agreements with the Class Members as a means to offset the payments due under the Agreements.   PSFS fully recognized that the Class Members believed that their respective financial obligations to PSFS that would be met by receipt of Brican's payments to them under the Marketing Agreement. Barring receipt of those payments, the Class Members believed they had an unqualified and unconditional right to cancel the Agreement or Brican would assume, repurchase, or transfer the Agreement.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                     Case No. 10-14399 CA 40

175.    PSFS also knew, or should have known, that Brican, by deliberately taking a loss on each Agreement in order to generate immediate cash, never intended to fully honor and perform the Marketing Agreements with the Class Members or, even if it intended to do so, could never mathematically or financially pay the marketing fees to the Class Members, and, thus, was engaged in unfair, deceitful, deceptive, and fraudulent activities.

176.    Incredibly, PSFS valued the Equipment sold to the Class Members at approximately $3,500 even though the Class Members paid approximately $29,000 for the Equipment.

177.    Consequently, PSFS paid Brican more than $25,000 in excess of the value of the Equipment in exchange for a stream of payments under the Agreements with the Class Members without regard to the initial cost or liquidation value of the Equipment. More incredibly, once installed, the Equipment's value instantly depreciated and, if liquidated by forced sale, would make no significant reduction in the indebtedness due PSFS.

### Wigdor, O.D., P.A./Dr. Wigdor
### (Facts Common To The "PSFS" Class Members)

178.    On or about June 23, 2006, Dr. Wigdor was approached by a salesperson working for Brican. Dr. Wigdor was solicited to place Equipment, consisting of a 17" LCD, digital camera, computer "optolibrary and Brican software" with remote mouse, and a 42" Plasma TV in his waiting area as an advertising device. The Equipment was designed to display advertising and educational messages to patients in the offices of medical professionals including optometrists, chiropractors, and dentists.

179.    Dr. Wigdor was told that the Equipment cost $22,089.00, but was being offered on a Agreement basis of 60 payments in the amount of $489.00 per month with a $1.00 "buy-out" at the conclusion of the Agreement, for a total cost of $29,341.00, exclusive of taxes.

180.    As part of the sales presentation, Dr. Wigdor was told that Brican would simultaneously enter into a written marketing agreement with Dr. Wigdor and pay him $483.33 per month in marketing fees in exchange for displaying advertisements on Dr. Wigdor's Equipment. Brican also agreed that if it ceased making its marketing payments to Dr. Wigdor, at his request, Brican would either cancel or buy back the Agreement.

181.    On or about June 23, 2006, Dr. Wigdor executed a Purchase Order for the acquisition of a Equipment. A true and correct copy of the Purchase Order is attached hereto, marked Exhibit "A" and made a part hereof.

182.    At the same time and as part of the same transaction, Dr. Wigdor executed an Advertising Agreement associated with the Purchase Order. A true and correct copy of the Advertising Agreement associated with the Purchase Order is attached hereto, marked Exhibit "B" and made a part hereof.

183.    At the same time and as part of the same transaction, Dr. Wigdor executed an Agreement associated with the Purchase Order. A true and correct copy of the Agreement associated with the Purchase Order is attached hereto, marked Exhibit "C" and made a part hereof.

184.    On or about June 23, 2006, Dr. Wigdor executed a Purchase Order for the acquisition of additional Equipment. A true and correct copy of the Purchase Order is attached hereto, marked Exhibit "D" and made a part hereof.

185.    At the same time and as part of the same transaction, Dr. Wigdor executed an Advertising Agreement associated with the Purchase Order. A true and correct copy of the Advertising Agreement associated with the Purchase Order is attached hereto, marked Exhibit "E" and made a part hereof.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                              Case No. 10-14399 CA 40

186.    At the same time and as part of the same transaction, Dr. Wigdor executed a Agreement associated with the Purchase Order. A true and correct copy of the Agreement associated with the Purchase Order is attached hereto, marked Exhibit "F" and made a part hereof.

187.    Both of the Purchase Orders were presented on Brican letterhead. Both of the Advertising Agreements were presented on Brican letterhead. Both of the Agreements, while presented on Brican letterhead, incorporated obligations to PSFS and not Brican.

188.    Neither of the Agreements executed by Dr. Wigdor has been assigned as of the commencement of this action.

189.    On or about January, 2010, Brican ceased making its payments to Dr. Wigdor under the Advertising Agreements.

190.    On or about February 7, 2010, Dr. Wigdor wrote to Brican and demanded that it cancel or buy-back the Agreements pursuant to the express terms and provisions of the Advertising Agreements. A true and correct copy of Dr. Wigdor's demand to Brican is attached hereto, marked Exhibit "G" and made a part hereof.

191.    On or about February 11, 2010, Brican responded to Dr. Wigdor's demand by refusing to cancel or buy-back the Agreements. A true and correct copy of Brican's written refusal is attached hereto, marked Exhibit "H" and made a part hereof.

192.    Brican has failed and refused and continues to fail and refuse to cancel or buy-back the Agreements or make its payments under the Advertising Agreements.

193.    PSFS has likewise refused to cancel Dr. Wigdor's Agreements pursuant to the express terms and provisions of the related agreements.

194.    A similar, if not identical, factual scenario occurred with additional Plaintiffs,

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

particularly:

      a.      Palm Vision/Dr. Anhalt;

      b.      Barrera Optical/Dr. Barrera;

      c.      Dr. Barker;

      d.      Dr. Brenner;

      e.      Del Castillo, P.A./Dr. Del Castillo

      f.      Dr. Gallinger;

      g.      Graziano Dental/Dr.Graziano;

      h.      Dr. Grossman;

      i.      All Eyes/Dr. Guario;

      j.      Dr. Kosanovich;

      k.      Marciano Optometric/Dr. Marciano;

      l.      Ragsdale & Martin/Dr. Martin;

      m.      Family Vision/Dr. Mazza;

      n.      Advanced Dental Center/Dr. Muscott;

      o.      Palm Beach Eyes/Dr. Pientka;

      p.      Eye Health/Dr. Rubin;

      q.      Scerbo, DMD, P.A./Dr. Scerbo;

      r.      Simmons D.M.D., P.C./Dr. Simmons;

      s.      Dr. Simon;

      t.      Ronald Smith, Inc./Dr. Smith;

      u.      Hour Glass/Dr. Stephens;

      v.      Dr. Van Der Heyden;

    w.     Advantage Vision/Dr. Porch;

    x.     Dr. Buettner;

    y.     Colwell, D.D.S., P.C./Dr. Colwell;

    z.     Dr. Gelman;

    aa.    Beautiful Smiles/Dr. Gulde;

    bb.    Sunrise Eye Care/Dr. Haiman;

    cc.    Roland Park Vision Services/Dr. Hyatt;

    dd.    Dr. Khan;

    ee.    Obrochta Center/Dr. Obrochta;

    ff.    Dr. Rosenthal;

    gg.    Dr. Stupp;

    hh.    Winker, D.D.S., P.A./Dr. Winker;

    ii.    Sherer, D.M.D., P.A./Dr. Sherer;

    jj.    Dr. Allison;

    kk.    Smith, D.D.S., P.A./Dr. Smith;

    ll.    Dr. Tweedy

True and correct copies of the documents for the preceding Plaintiffs, required under Rule 1.130,

Fla.R.Civ.P., will be provided to any party served with a copy of this Amended Complaint.

### Eye Center/Dr. Koganovsky
### (Facts Common To The "PSFS 3" Class)

195.    On or about November 6, 2006, Dr. Koganovsky was approached by a

salesperson working for Brican. Dr. Koganovsky was solicited to place Equipment consisting of

a 17" LCD, digital camera, computer "optolibrary and Brican software", 42" Plasma TV, and

remote mouse in his waiting area as an advertising device. The Equipment was designed to

Wigdor, et al. v. NCMIC Finance Corporation, et al.                                    Case No. 10-14399 CA 40

display advertising and educational messages to patients in the offices of medical professionals including optometrists, chiropractors, and dentists.

196.    Dr. Koganovsky was told that the Equipment cost $22,089.00, but was being offered on an Agreement basis for 60 payments of $489.00 with a $1.00 "buy-out" at the conclusion of the Agreement, for a total cost of $29,341.00, exclusive of taxes.

197.    As part of the sales presentation, Dr. Koganovsky was told that Brican would simultaneously enter into a written marketing agreement with Dr. Koganovsky and pay him $483.33 per month in marketing fees in exchange for displaying advertisements on Dr. Koganovsky's Equipment. Brican also agreed that if it ceased making its marketing payments to Dr. Koganovsky, at his request, Brican would either cancel or buy back the Agreement.

198.    On or about November 6, 2006, Dr. Koganovsky executed a Purchase Order for the acquisition of the Equipment. A true and correct copy of the Purchase Order is attached hereto, marked Exhibit "I" and made a part hereof.

199.    At the same time and as part of the same transaction, Dr. Koganovsky executed an Advertising Agreement associated with the Purchase Order. A true and correct copy of the Advertising Agreement and/or Addendum associated with the Purchase Order is attached hereto, marked Exhibit "J" and made a part hereof.

200.    At the same time and as part of the same transaction, Dr. Koganovsky executed an Agreement associated with the Purchase Order. A true and correct copy of the Agreement associated with the Purchase Order is attached hereto, marked Exhibit "K" and made a part hereof.

201.    The Purchase Order was presented on Brican letterhead.    The Advertising Agreement was presented on Brican letterhead. The Agreement, while presented on Brican

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

letterhead, incorporated obligations to PSFS and not Brican.

    202.    The Agreement executed by Dr. Koganovsky was assigned to PSFS 3 subsequent to the commencement of this action. PSFS 3 was organized by PSFS strictly for the purpose of accomplishing a perfunctory assignment of the Agreement in order to invoke the forum selection clause therein and fraudulently assert jurisdiction in Iowa.

    203.    PSFS 3 is an alter ego of PSFS. It has no separate and independent purpose or existence other than a repository for PSFS's Agreements and, upon information and belief, paid no consideration for transfer of the Agreements from PSFS.

    204.    On or about January, 2010, Brican ceased making its payments to Dr. Koganovsky under the Advertising Agreement.

    205.    On March 2, 2010, Dr. Koganovsky wrote to Brican and demanded that it cancel or buy-back the Agreement pursuant to the express terms and provisions of the Advertising Agreement. A true and correct copy of Dr. Koganovsky's demand to Brican is attached hereto, marked Exhibit "L" and made a part hereof.

    206.    Brican has failed and refused and continues to fail and refuse to cancel or buy-back the Agreement.

    207.    PSFS has likewise refused to cancel Dr. Koganovsky's Agreement pursuant to the express terms and provisions of the related agreements.

    208.    A similar, if not identical factual scenario occurred with additional Plaintiffs, particularly:

        a.    Easton, O.D., P.A./Dr. Easton;

        b.    Grace, O.D., P.A./20/20 Vision Clinic/Dr. Grace;

        c.    Kaufman Eyecare/Dr. Kaufman;

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

        d.      Radzwill Optometric/Dr. Radzwill;

        e.      Vision Arts/Dr. Walker;

        f.      Busch, D.M.D., P.A./Dr. Busch;

        g.      Josephs, D.D.S., P.A./Dr. Josephs;

        h.      Eyes on the Bay/Dr. Elliot;

        i.      Dr. Keener;

        j.      Katy Periodontics/Dr. Hale;

        k.      Falls Dental/Dr. Chandy;

        l.      Schwartz, P.A./Dr. Schwartz

True and correct copies of the documents for the preceding Plaintiffs, required under Rule 1.130, Fla.R.Civ.P., will be provided to any party served with a copy of this Amended Complaint.

### Beville Dental Care/Dr. Porter
### (Facts Common To The "BAI/PSFS" Class)

209.    On or about February 19, 2009, Dr. Porter was approached by a salesperson working for Brican. Dr. Porter was solicited to place Equipment consisting of a 17" LCD, digital camera, computer "optolibrary and Brican software", 42" Plasma TV, and remote mouse in her waiting area as an advertising device. The Equipment was designed to display advertising and educational messages to patients in the offices of medical professionals including optometrists, chiropractors, and dentists.

210.    Dr. Porter was told that the Equipment cost $22,089.00, but was being offered an Agreement basis for 60 payments of $508.00 with a $1.00 "buy-out" at the conclusion of the Agreement.

211.    As part of the sales presentation, Dr. Porter was told that Brican would simultaneously enter into a written marketing agreement with Dr. Porter and pay her $483.33 per

month in marketing fees in exchange for displaying advertisements on Dr. Porter's Equipment. Brican also agreed that if it ceased making its marketing payments to Dr. Porter, at her request, Brican would either cancel or buy back the Agreement.

212.    On or about February 19, 2006, Dr. Porter executed a Purchase Order for the acquisition of the Equipment. A true and correct copy of the Purchase Order is attached hereto, marked Exhibit "M" and made a part hereof.

213.    At the same time and as part of the same transaction, Dr. Porter executed an Advertising Agreement associated with the Purchase Order. A true and correct copy of the Advertising Agreement associated with the Purchase Order is attached hereto, marked Exhibit "N" and made a part hereof.

214.    At the same time and as part of the same transaction, Dr. Porter executed an Agreement associated with the Purchase Order. A true and correct copy of the Agreement associated with the Purchase Order is attached hereto, marked Exhibit "O" and made a part hereof.

215.    The Purchase Order, Marketing Agreement, and Agreement were all presented on Brican America, Inc. letterhead, although Brican America LLC is specifically delineated as the vendor of the Equipment.

216.    The Agreement executed by Dr. Porter was assigned to PSFS.

217.    On or about January, 2010, Brican ceased making its payments to Dr. Porter under the Advertising Agreement.

218.    On February 22, 2010, Dr. Porter wrote to Brican and demanded that it buy-back the Agreement pursuant to the express terms and provisions of the Advertising Agreement. A true and correct copy of Dr. Porter's demand to Brican is attached hereto, marked Exhibit "P"

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

and made a part hereof.

219.    Brican responded to Dr. Porter's demand by refusing to buy-back the Agreement.
A true and correct copy of Brican's written refusal is attached hereto, marked Exhibit "Q" and
made a part hereof.

220.    Brican has failed and refused and continues to fail and refuse to buy-back the
Agreement or make its payments under the Advertising Agreement.

221.    A similar, if not identical factual scenario occurred with additional Plaintiffs,
particularly:

      a.     Bende Professional Corp./Dr. Bende;

      b.     Blaisdell Dental/Dr. Blaisdell;

      c.     Carazola, D.M.D., P.A./Dr. Carazola;

      d.     Carroll, D.D.S., P.C./Dr. Carroll;

      e.     Dr. Charles;

      f.     M. Cowan & Associates;

      g.     Fernandez, D.M.D., P.A./Dr. Fernandez;

      h.     Cedarhurst Dental/Dr. Goldschein;

      i.     Grayhills Mohip Dental/Dr. Grayhills;

      j.     Spex in the City/Dr. Hamilton;

      k.     Heap, D.M.D., P.A./Dr. Heap;

      l.     Emerald West/Dr. Hess;

      m.     New View/Dr. Kasanoff;

      n.     Kernagis, D.M.D., P.A./Dr. Kernagis;

      o.     East Lyme Family/Dr. Palumbo;

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

        p.     Lakeside Family Dentistry/Dr. Seppi;

        q.     Vaccarezza, DDS, P.A./Dr. Vaccarezza;

        r.     Dr. Barcia;

        s.     Premier Dental/Dr. Sharma;

        t.     Family Dental Care/Dr. Sim;

        u.     Countryside Dental/Dr. Ancona;

        v.     Growing Smiles/Dr. Gonzalez;

        w.     Dr. Jacka;

        x.     Dr. Johnson;

        y.     Mogell, D.M.D., P.A./Dr. Mogell;

        z.     Dr. Omrani

True and correct copies of the documents for the preceding Plaintiffs, required under Rule 1.130, Fla.R.Civ.P., will be provided to any party served with a copy of this Amended Complaint.

## Shehadeh, D.D.S., P.A./Dr. Shehadeh
### (Facts Common To The "BAI/BFS" Class)

222.    On or about February 13, 2009, Dr. Shehadeh was approached by a salesperson working for Brican. Dr. Shehadeh was solicited to place Equipment consisting of a 17" LCD, digital camera, computer "optolibrary and Brican software", 42" Plasma TV, and remote mouse in him waiting area as an advertising device. The Equipment was designed to display advertising and educational messages to patients in the offices of medical professionals including optometrists, chiropractors, and dentists.

223.    Dr. Shehadeh was told that the Equipment cost $22,089.00, but was being offered an Agreement basis for 60 payments of $508.00 with a $1.00 "buy-out" at the conclusion of the Agreement.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                                    Case No. 10-14399 CA 40

224.    As part of the sales presentation, Dr. Shehadeh was told that Brican would simultaneously enter into a written marketing agreement with Dr. Shehadeh and pay him $483.33 per month in marketing fees in exchange for displaying advertisements on Dr. Shehadeh's Equipment. Brican also agreed that if it ceased making its marketing payments to Dr. Shehadeh it would cancel or repurchase the Agreement.

225.    On or about February 13, 2009, Dr. Shehadeh executed Purchase Order for the acquisition of the Equipment. A true and correct copy of the Purchase Order is attached hereto, marked Exhibit "R" and made a part hereof.

226.    At the same time and as part of the same transaction, Dr. Shehadeh executed an Advertising Agreement associated with the Purchase Order. A true and correct copy of the Advertising Agreement associated with the Purchase Order is attached hereto, marked Exhibit "S" and made a part hereof.

227.    At the same time and as part of the same transaction, Dr. Shehadeh executed an Agreement associated with the Purchase Order. A true and correct copy of the Agreement associated with the Purchase Order is attached hereto, marked Exhibit "T" and made a part hereof.

228.    The Purchase Order, Marketing Agreement, and Agreement were all presented on Brican America, Inc. letterhead, although Brican America LLC is specifically delineated as the vendor of the Equipment.

229.    The Agreement executed by Dr. Shehadeh was assigned to BFS.

230.    On or about January, 2010, Brican ceased making its payments to Dr. Shehadeh under the Advertising Agreement.

231.    In February of 2010, Dr. Shehadeh wrote to Brican and demanded that it cancel or

buy-back the Agreement pursuant to the express terms and provisions of the Advertising Agreement. A true and correct copy of Dr. Shehadeh's demand to Brican is attached hereto, marked Exhibit "U" and made a part hereof.

232.   Brican has failed and refused and continues to fail and refuse to buy-back the Agreement or make its payments under the Advertising Agreement.

233.   A similar, if not identical factual scenario occurred with additional Plaintiffs, particularly:

        a.   Freedman & Haas/Dr. Haas;

        b.   Align Orthodontics/Dr. Sharma

True and correct copies of the documents for the preceding Plaintiffs, required under Rule 1.130, Fla.R.Civ.P., will be provided to any party served with a copy of this Amended Complaint.

234.   The Plaintiffs/Putative Class Representatives have performed all conditions precedent to the commencement and maintenance of this action or such conditions have been waived or excused.

## Class Representation Allegations

### Rule 1.220 Designation

235.   The Plaintiffs seek certification of the following Classes, or such Classes based thereon, as permitted under Rule 1.220, Fla.R.Civ.P.

### Class Definitions

The definition of the "PSFS Class" to be certified is:

        All natural persons and business entities that entered into a Agreement with PSFS and an Advertising or Marketing Agreement with Brican.

The definition of the "PSFS 3 Class" to be certified is:

Wigdor, et al. v. NCMIC Finance Corporation, et al.                                    Case No. 10-14399 CA 40

> All natural persons and business entities that entered into a
> Agreement with PSFS that was subsequently assigned to PSFS 3
> and an Advertising or Marketing Agreement with Brican.

The definition of the "BAI/PSFS Class" to be certified is:

> All natural persons and business entities that entered into a
> Agreement with BAL that was subsequently assigned to PSFS and
> an Advertising or Marketing Agreement with Brican.

The definition of the "BAI/BFS Class" to be certified is:

> All natural persons and business entities that entered into a
> Agreement with BAL that was subsequently assigned to BFS and
> an Advertising or Marketing Agreement with Brican.

The persons and business entities named in the above-described Classes are collectively referred

to hereinafter as the "Class Members".

### Numerosity

236.    The Class Members are so numerous that separate joinder of each member is

impracticable. In support of this allegation, Plaintiffs rely on the written representations made by

PSFS in pleadings filed in this U.S District Court for the Southern District of Florida, Case No.

09-21192 styled NCMIC FINANCE CORPORATION, d/b/a PROFESSIONAL SOLUTIONS

FINANCIAL SERVICES, an Iowa corporation vs. BRICAN AMERICA, INC., a Florida

corporation. The representations contained in those pleadings assert that PSFS financed at least

1,672 Agreements for customers of Brican.

237.    Brican entered into Advertising or Marketing Agreements with all of the persons

and business entities referred to in the immediately preceding paragraph.

238.    Any officers, directors or any person related to, affiliated with, or employed by

Brican, PSFS, and PSFS 3 are excluded from membership in the Class.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

## Commonality

239.     There are numerous questions of law and fact that are common to the claims of the Putative Class Representatives and the Class Members. Among these common questions of law and fact are the following:

a.     Whether the Class Members entered into a Agreement with PSFS;

b.     Whether the Class Members entered into a Agreement with BAI;

c.     Whether the Class Members entered into an Advertising Agreement or Marketing Agreement in association with their Agreements;

d.     Whether the Agreements entered into between the Class Members and PSFS or BAI contain essentially uniform provisions that are the operative basis for this action;

e.     Whether the Class Members' Agreements were assigned to PSFS;

f.     Whether the Class Members' Agreements were assigned to PSFS 3;

g.     Whether the Class Members' Agreements were assigned to BFS;

h.     Whether PSFS knew of the existence of the Advertising or Marketing Agreements;

i.     Whether PSFS should have known of the Advertising or Marketing Agreements;

j.     Whether PSFS played a role in the conversion of the marketing of the Equipment from BAI to BAL;

k.     Whether PSFS 3 is an assignee of any of the Agreements from PSFS for value;

l.     Whether PSFS 3 is merely a vehicle to invoke the provisions of the forum

selection clause of the Agreements;

m.   Whether the Agreements and Advertising or Marketing Agreements are a single, related transaction;

n.   Whether BAI and BAL are current on their payments to the Class Members under the Advertising and Marketing Agreements;

o.   Whether the Class Members properly cancelled their Agreements for failure to be paid under the Advertising and Marketing Agreements;

p.   Whether Brican has cancelled, repurchased, assumed, or transferred the Agreements as provided in the Advertising or Marketing Agreements;

q.   Whether PSFS has cancelled the Agreements it entered into with the Class Members;

r.   Whether PSFS 3 has cancelled the Agreements with the Class Members that were assigned to it;

s.   Whether the Class Members are obligated under their Agreements with PSFS;

t.   Whether Brican committed unfair or deceptive acts in their transactions with the Class Members;

u.   Whether PSFS committed unfair or deceptive trade practices in its transactions with the Class Members;

v.   Whether the Class Members suffered damage from the unfair or deceptive practices of Brican and/or PSFS; and

w.   Whether the Class Members are entitled to the statutory remedies available under FDUTPA.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

## Typicality

240.    The Putative Class Representatives' claims are typical of the claims of the Class Members in that each of the Class Members signed at least one Purchase Order and Agreement through BAL or BAI as vendor with either BAL or PSFS as the lessor of the Equipment and simultaneously entered into an Advertising or Marketing Agreement with Brican.  With the exception of the variables pertaining to the name of the lessee and the lessee's address, the transactions are more identical than typical, without any material difference.  Further, the act giving rise to the claim of each Plaintiff and Putative Class Member, i.e., the failure of Brican to make the payments due under the Advertising or Marketing Agreements, is both identical and typical of the basis for which each Plaintiff and Putative Class Member seeks termination of their obligations or the transfer, assumption, or repurchase by Brican.

241.    The Class Members all were parties to the same type of transaction, among the same vendors and lessors, resulting in their victimization through the artifice of unfair and deceptive trade practices.

242.    Upon information and belief, there has never been a prior lawsuit certified for class treatment in Florida or the United States for the Class Members.

## Adequacy of Representation

243.    The Putative Class Representatives are adequate representatives of the Class and will fairly and adequately protect the interests of the respective Class Members.  Each Putative Class Representative is a licensed physician.

244.    Each of the Putative Class Representatives are knowledgeable about the underlying facts and, while not attorneys, are generally familiar with the basis for their individual claims and the legal remedies sought both on their behalf and on behalf of the Class they seek to

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

represent in this action.

245.    The Putative Class Representatives are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in complex litigation, mass and class action litigation,  to represent them.  There is no hostility of interest between the Putative Class Representatives and any Class Member.

246.    The Putative Class Representatives anticipate no difficulty in the management of this litigation as a class action.  To prosecute this case, the Putative Class Representatives have chosen Charlip Law Group, LC and David H. Charlip, Esq.  Charlip Law Group has significant experience, not only in complex litigation and class action litigation, but also mass claims prosecuted both State and Federal courts in Florida, Massachusetts, Maine, New Hampshire, New York and other states across the country.  The Putative Class Representatives have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

## Rule 23(b)(1) and (2)

247.    The Putative Class Representatives and the Class Members are all parties to Agreements for the purchase of Equipment from either PSFS or BAL and have Advertising or Marketing Agreements with Brican.

248.    Each of the Putative Class Representatives, on behalf of the Class he or she seeks to represent, asserts that their obligations under their respective Agreement is obviated and cancelled by virtue of the identical omission, i.e., the failure of Brican to meet its obligations under the Advertising or Marketing Agreement.

249.    As such, the prosecution of separate claims by individual Class Members would create a risk of either inconsistent or varying adjudications concerning individual members of the

Wigdor, et al. v. NCMIC Finance Corporation, et al.                               Case No. 10-14399 CA 40

class which would establish incompatible standards of conduct for one or more of the Defendants.

250.    Alternatively, the Defendants have acted or refused to act on grounds that are generally applicable to all members of the Classes, thereby making the declaratory and injunctive relief sought in this action appropriate to the Classes as a whole.

251.    This action is properly maintained as a class action inasmuch as the basic core of operative fact arises from a similar, if not identical, underlying factual scenario.

252.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy by avoiding a multiplicity of identical suits creating a drain of a time and judicial resources of the Clerk and the Courts.

253.    Any defenses asserted by Defendants will necessarily be similar, if not identical, as to the Putative Class Representatives and the Class Members. It would be impractical to assert and adjudicate these claims and defenses in separate litigation.

## Count One
### Declaratory Relief – Chapter 86, Florida Statutes

254.    The Plaintiffs/Putative Class Representatives adopt and reallege paragraphs 1 through 253, inclusive, as though fully set forth herein.

255.    This is an action for declaratory relief pursuant to §86.011, *et seq.*, Florida Statutes ("Declaratory Judgments").

256.    The Plaintiffs and the Class Members are in doubt with respect to their rights, status and legal relations as affected by their Agreements and Marketing Agreements. As such, this Court has the power to construe the construction and validity of those documents pursuant to §86.021, Florida Statutes.

257.    As parties to both a Agreement and either an Advertising Agreement or Marketing

Wigdor, et al. v. NCMIC Finance Corporation, et al.                                Case No. 10-14399 CA 40

Agreement with uniform, but conflicting, cancellation and/or buy-out provisions, the breach of the Advertising or Marketing Agreement gives rise to certain rights which are in dispute. The determination of those rights within the context of the entire transaction constitutes an ascertainable state of facts of a present controversy.

258.    There is a bona fide, actual, present, practical need for a judicial determination of the construction and validity of the Agreements and Advertising or Marketing Agreements by virtue of the fact that PSFS and PSFS 3 have sought judicial enforcement of the Agreements by fraudulent invocation of jurisdiction in another state.

259.    The Plaintiffs and the Class Members are persons or entities who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter of this litigation both in fact and in law.

260.    Each of the Agreements in question contains a provision that would permit the lessor, PSFS, PSFS 3, or BAI the right to recover attorney's fees in the event of "any dispute related to this Agreement or the Equipment."

261.    The Plaintiffs/Putative Class Representatives, individually and in their representative capacity, have retained undersigned counsel to represent them in this action and have agreed to pay said counsel a reasonable fee for the legal services provided.

262.    The Defendants are responsible for the Plaintiffs/Putative Class Representatives attorney's fees, in their individual and representative capacity, pursuant to Section 57.105(7), Florida Statutes.

WHEREFORE, Plaintiffs/Putative Class Representatives, for themselves and the Class Members they seek to represent, demand a judicial decree determining:

> (a)    the cancellation provisions of the Advertising or Marketing Agreements with respect to the obligations of the Plaintiffs and the Class Members under the

Wigdor, et al. v. NCMIC Finance Corporation, et al.                     Case No. 10-14399 CA 40

                    Agreement are valid and enforceable;

        (b)    any Agreement associated with an Advertising or Marketing Agreement
               where the payments are delinquent or otherwise in default is terminated and
               null and void;

        (c)    the disposition of any Equipment in the possession or control of the Plaintiffs
               or Class Members;

        (d)    pursuant to Section 86.061, Florida Statutes, after motion, judgment for all
               unearned payments made by any Plaintiff and Class Member to PSFS, PSFS
               3 or BAI;

        (e)    costs and attorney's fees related to the prosecution of this action; and

        (f)    such other and further relief as this Court may deem equitable.

## Count Two
### Deceptive and Unfair Trade Practices Act - Violation of §§501.201, *et seq.*

        263.   The Plaintiffs/Putative Class Representatives adopt and reallege paragraphs 1

through 253, inclusive, as though fully set forth herein.

        264.   This is an action for declaratory and injunctive relief under Section 501.201, *et seq.*,

Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

        265.   Section 501.203(7), Florida Statutes defines "Consumer" as:

               an individual; child, by and through its parent or legal guardian;
               business; firm; association; joint venture; partnership; estate; trust;
               business trust; syndicate; fiduciary; corporation; any commercial
               entity, however denominated; or any other group or combination.

The Putative Class Representatives and the Class Members are "Consumers" within the meaning

of Section 501.203(7), Florida Statutes.

        266.   Section 501.203(8), Florida Statutes defines "Trade or commerce" as:

               the advertising, soliciting, providing, offering, or distributing,
               whether by sale, rental, or otherwise, of any good or service, or any
               property, whether tangible or intangible, or any other article,
               commodity, or thing of value, wherever situated. "Trade or
               commerce" shall include the conduct of any trade or commerce,

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

however denominated, including any nonprofit or not-for-profit person or activity.

267.    PSFS and BAI sold the Equipment to the Plaintiffs/Putative Class Representatives and Class Members in a transaction that was directly related to and associated with the Advertising or Marketing Agreement of BAI and/or BAL. The conduct and business of Brican and PSFS with respect to the Putative Class Representatives and the Class is "Trade or Commerce" within the meaning of §501.203(8), Florida Statutes.

268.    Section 501.204(1) provides that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The conduct of PSFS, PSFS 3, BAI, BAL, and BFS, as described herein and above, as to the Putative Class Representatives and the Class Members constitute a calculated, ongoing and repeated course of unfair, unconscionable and deceptive acts and practices in the conduct of trade or commerce that violates Section 501.204, Florida Statutes.

269.    The unfair, unconscionable and deceptive acts and practices of PSFS, PSFS 3, BAI, BAL, and BFS are violative of the provisions of FDUTPA. As such, the Plaintiffs/Putative Class Representatives and the Class Members are entitled to both declaratory and injunctive relief pursuant to Section 501.211(1), Florida Statutes.

270.    The Plaintiffs/Putative Class Representatives, individually and in their representative capacity, have retained undersigned counsel to represent them in this action and have agreed to pay said counsel a reasonable fee for the legal services provided.

271.    The Defendants are responsible for the Plaintiffs/Putative Class Representatives attorney's fees, in their individual and representative capacity, pursuant to Section 501.2105, Florida Statutes.

WHEREFORE, Plaintiffs/Putative Class Representatives, for themselves and the Class

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

Members they seek to represent, demand:

      (a)     a finding by this Court that the conduct of the Defendants constitutes a violation of Section 501.204, Florida Statutes;

      (b)     a finding by this Court that any Agreement associated with an Advertising or Marketing Agreement where the payments are delinquent or otherwise in default is terminated and null and void;

      (c)     after notice and hearing or trial, appropriate temporary and permanent injunctive relief prohibiting the enforcement of the Agreements against the Plaintiffs/Putative Class Representatives and the Class Members;

      (d)     costs and attorney's fees related to the prosecution of this action; and

      (e)     such other and further relief as this Court deems appropriate under FDUTPA.

### Class Relief Sought

For class relief, the Putative Class Representatives request that, after completion of class discovery and hearing on a motion for class certification, this Court enter an order:

    (a)     certifying this action as a class action under Rule 1.220, Fla.R.Civ.P.;

    (b)     designating the Putative Class Representatives as the Class Representatives;

    (c)     appointing Charlip Law Group, LC as class counsel;

    (d)     awarding the relief sought in this Class Representation Complaint;

    (e)     making an award of attorney's fees to class counsel in accordance with prevailing factors and considerations for determination of class counsel fees;

    (f)     making an incentive award to the Putative Class Representatives as Class Representatives; and

    (g)     any and all further relief this Court deems just and proper.

Wigdor, et al. v. NCMIC Finance Corporation, et al.                    Case No. 10-14399 CA 40

Dated this _____ day of May, 2010.

_____
David H. Charlip
Florida Bar No.: 329932
dcharlip@charliplawgroup.com
Charlip Law Group, LLC
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
Attorneys for Plaintiffs

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Amended Complaint has been

furnished by U.S. Mail, Postage Prepaid and/or facsimile transmission to Catherine M. Rodriguez,

Esq., Levey, Filler, Rodriguez, Kelso & De Bianchi, LLP, Attorneys for Defendant PSFS, 1688

Meridian Avenue, Suite 902, Miami Beach, Florida 33139 (Facsimile 305.672.0470) and Alan S.

Fine, Esq., Fine & Licitra, LLP, Attorneys for Defendant Brican, 255 Alhambra Circle, Suite 850,

Coral Gables, Florida 33134 (Facsimile 305.424.2401) this _____ day of May, 2010.

_____
David H. Charlip

EXHIBIT "A"

# BRICAN

5301 Blue Lagoon Drive Suite 520
Miami, Florida 33126 USA
Phone 786.388.6995 Fax.:786.388.1489
Toll free: 866.588.6995

No. 10051
DATE: 7/23/06

Dr. Alison E. Wigdor

11177 Biscayne Blvd
Aventura, FL 33160

SAME

**APPOINTMENT** ☑ **REFERRAL** ☐ **SEMINAR** ☐ **OTHER** ☐

**OPTOMETRIST** ☐ **LICENSE** ☐ **VETERINARIAN** ☐ **OTHER** ☐

**PACKAGE** ☐ STANDARD   ☐ PREMIUM   ☑ CUSTOMIZED

| QTY | MONITORS | WALL MOUNTS | | | TABLE STAND | SPEAKER | TUNER |
|---|---|---|---|---|---|---|---|
| | | FLAT | TILT (optional) | ARTICULATED (optional) | | (optional) | (optional) |
| 1 | 17" | ☑ | ☐ | ☐ | Standard | N/A | N/A |
| | 19" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| | 26" LCD TV | ☐ | ☐ | ☐ | Standard | Standard | Standard |
| | PLASMA | | | | | | |
| 1 | 42" | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| | 50" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBOARD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☑

DIGITAL CAMERA + SOFTWARE ☑   SOFTWARE, CATALOG, CD, USER'S GUIDE ☑

REMOTE MOUSE ☑

| | | |
|---|---|---|
| | PACKAGE COSTS: | $ 22,089.00 |
| OPTIONAL EXTENDED WARRANTY  ☐ 1 YEAR  ☑ 2 YEARS  ☐ 3 YEARS  ☑ 4 YEARS | | $ |
| SHIPPING & HANDLING  ☑ PREMIUM $295  ☐ STANDARD 225  ☐ OTHER | | $ 295.00 |
| REMARKS: | | |
| Cable Lengths 80' to Plasma   70' to LCD | TOTAL: | 22,384.00 |
| | DEPOSIT: | 295.00 |
| All amounts are subject to applicable sales taxes. Sales Taxes will be invoiced separately | BALANCE | 22,089.00 |

☐ CHECK # _____   ☐ VISA ☐ MASTERCARD ☐ AMERICAN EXPRESS # _____ Exp. ___

LEASE _____ For months for 60   Monthly Starting Months 4   122 Buy Out ___

## PURCHASE ORDER

### 1. PAYMENT

A) Buyer agrees to pay the entire net amount of each invoice issued by Seller pursuant to the terms of each such invoice without offset or deduction.

B) On any invoice not paid by maturity, Buyer shall pay interest at the annual percentage rate of 18% (or such lower rate as may be the maximum allowable by law), together with Seller's costs of collection (including reasonable Attorney's fees).

C) Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Buyer may be applied by Seller against any obligation owing by Buyer to Seller under this or any other contract, regardless of any statement appearing on or referring to such check, without discharging Buyer's liability for any additional amounts owing by Buyer to Seller; and the acceptance by Seller of such check shall not constitute a waiver of Seller's right to pursue the collection of any remaining balance.

### 2. DELIVERIES / TITLE / WARRANTY

A) Delivery of the Products to a carrier shall constitute delivery to Buyer; and risk of loss shall there upon pass to Buyer; however, title shall remain in Seller until Buyer makes payment in full under the contract. Delivery route shall be at the end election of Seller unless specifically designated by Buyer.

B) The computer components of the Seller's system are guaranteed against any defect for one year (parts and labor) from the shipping date.
The video equipment and their accessories are covered by their original manufacturing warranty.

C) Applicable equipment warranties take effect on delivery of equipment or fifteen days after shipment date, whichever is sooner. Client responsible for system installation. Once system is shipped there are no refunds. Changes to order after shipment are subject to a $50.00 service fee, plus costs of changes. We reserve the right to substitute hardware, without notice, that is of similar quality and value to operate the software.

D) The Product Warranty does not include improper operation, nor any damage caused from service, maintenance, modifications, or tampering by anyone other than the Seller's authorized representative.

### 3) GENERAL

A) This contract may not be assigned, modified or cancelled without Seller's prior written consent, and any attempt to assign, modify or cancel without such consent shall be absolutely void.

B) No delay or omission to exercise any right, power or remedy accruing to Seller upon breach or default by Buyer under this contract shall impair any such right, power or remedy of Seller, or shall be construed as a waiver of any such breach or default. All waivers must be in writing.

C) In the event any of the provisions hereof shall, for any reason, be held void or unenforceable, the remaining provisions shall remain in full force and effect.

D) This contract shall be governed by and construed according to the laws of the State of Florida.

EXHIBIT "B"



## ADVERTISING AGREEMENT

This agreement ("Agreement") confirms the terms between Brican America Inc (Brican) and _STEVEN E. WIGDOR, OD_ (the "Client") with respect to the purchase of

advertising space on the *Brican Information Center* described on purchase order # _10051_.

The terms of the Agreement between the parties are as follows:

1. **Purchase of Advertising:** Brican shall purchase from the Client $ _5800⁰⁰_ worth of advertising space for each year that this agreement remains in effect. The purchase of Advertising space hereunder may be made by Brican or any other entity in which Brican owns shares of voting stock.

2. **Term:** This Agreement shall become effective 90 days after delivery of the *Brican Information Center* to the client. This Agreement shall automatically renew for four additional one year terms, unless terminated by the Client upon written notice to Brican.

3. **Payments:** All applicable payments issued by Brican to the Client in accordance with paragraph 1. will be paid on a quarterly basis according to the following schedule:

   January 1st / April 1st / July 1st / October 1st

4. **Content of Advertising:** (Mark one option)

   ☑ The Client reserves the right to refuse any advertisement from companies that produce or provide tobacco, alcohol, gambling or pornographic products or services. **Brican reserves the exclusive right to run any advertisements regarding Laser Vision Correction, Refractive Surgery and Laser Centers practising these procedures.**

   ☐ The Client has the right to refuse any laser related Advertising under the condition that Brican be allowed to advertise other products sold within the Client's practice. Any income derived from advertising sold by Brican will be retained by Brican

5. **Advertising space:** The Client agrees to allow Brican to display one advertising spot every ten (10) animations or messages, displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by the Client and Brican together. **The client is not under any obligation to refer or direct his patients to the advertised Laser Centers.**

6. **Cancellation:** If Brican fails to honor its financial commitment pursuant to this agreement, then all related agreements can be cancelled by the Client, AND Brican will, on CLIENT'S DEMAND, buy back the lease Agreement

7. **Governing Law:** This Agreement shall be construed and enforced in accordance with the laws of the state of Florida.

BRICAN AMERICA INC

_[signature]_

DATE _6/23/06_

CLIENT

_[signature]_

DATE _6/23/06_

EXHIBIT "C"



5004614.

**Equipment Lease Application and Agreement**

| Lessor | Address | City | State | Zip Code | Phone |
|---|---|---|---|---|---|
| Professional Solutions Financial Services · | 14001 University Ave. | Clive | Iowa | 50325 | (877) 770-7244 |

| Legal Name of Lessee (Please Print) | | Applicant Name (Please Print) | See section 14 for Application terms and conditions |
|---|---|---|---|
| STEVEN E. WIGDOR, OD   PA | | STEVEN E. WIGDOR  OD | |

| PRACTICE Address | City | State | Zip Code | County |
|---|---|---|---|---|
| 3650 N. Federal Hwy | Lighthouse Point | FL | 33064 | Broward |

| HOME Address | City | State | Zip Code | County |
|---|---|---|---|---|
| 222X NE 192 st | N. MIAMI BCH | F L | 33180 | DADE |

| PRACTICE Phone No. | PRACTICE Fax No. | HOME Phone No. | Professional License Number | Year Licensed |
|---|---|---|---|---|
| 954 9436210 | 954 9435148 | 305-9320831 | 1791 | 1982 |

| Social Security No. | E-Mail Address | Specialty |
|---|---|---|
| 262213222 | EYECARESTEVE @ CS.COM | OPTOMETRY |

## TERMS AND CONDITIONS - PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "you" and "your" in this Agreement, we mean you, the customer, who is the Lessee indicated above. When we use the words "we," "us," and "our" in this Agreement, we mean the Lessor, Professional Solutions Financial Services. By signing this Agreement (i) You acknowledge that you have read and understand the terms and conditions on the front and back of this agreement, (ii) You agree that this Agreement is a fixed term financing agreement that you cannot terminate or cancel (however you may pre-pay your obligation in full at any time), you have an unconditional obligation to make all payments due under this agreement, and you cannot withhold, set off or reduce such payments for any reason, even for lack of performance or defects in the equipment.

### Equipment Description:

| Quantity | Description of Financed Equipment | Make & Model, Serial Number |
|---|---|---|
| | Complete Optometry of Brican Software | |
| 17" | LCB 8 Digital Camera | |
| 42" | Plasma & Remote Mouse | |

### Payment Terms:

| Term (Number of payments including Advance Payment) | Monthly Payment (plus tax) | Advance Payment (plus tax) | 90 Day Deferral | End of Term Options: |
|---|---|---|---|---|
| ☐ 36 Months ☐ 48 Months ☑ 60 Months | $ 400°° | $ 0 | ☑ Yes ☐ No | ☑ $1.00 ☐ _____ |

**1. LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Professional Solutions Financial Services, to buy the Equipment and then lease it to You. This Lease Agreement (this Lease) will begin on the date the Equipment is delivered to You (or any later date We designate). We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR UNCONDITIONAL ACCEPTANCE OF THE EQUIPMENT AND YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize us to increase or decrease your payment by not more than fifteen percent (15%) to reflect changes in the final price of the equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle and interest will be charged at the highest rate allowed by law.

**2. NO WARRANTY:** We are leasing the Equipment to You AS IS. We do not manufacture the Equipment and are not related to the Vendor. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. You hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

**3. EQUIPMENT USE AND REPAIR:** You agree the Equipment will be used for business purposes only. You are responsible for keeping the Equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

**4. END OF TERM:** According to the selection in the End of Term Options section above, if this lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this lease is a Fair Market Value (FMV) lease, you must notify us of your intentions to either return

or purchase the equipment prior to lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from Us "WHERE IS, AS IS."

**5. OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (the "Software", We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statement(s) to show our interest in the Equipment.

**6. SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option if any, for the Equipment, You understand that we do not own the software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

[SL], Initial

*Equipment Lease Agreement – Page 2*

**7. LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain insurance for You and add an insurance fee to the payment amounts due from You.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the Other option of the End of Term Options section of this lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at the rate 6% per annum. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment If We do not choose to repossess the Equipment, You will also pay to Us our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney's fees, We incur in any dispute related to this Lease or

the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer this Lease and our rights in the Equipment. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original for all purposes. You authorize us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION.** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. IF THIS IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR

RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE. EACH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY.

**14. CREDIT APPLICATION AND INFORMATION.** YOU AUTHORIZE US OR ANY OF OUR AFFILIATES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Professional Solutions Financial Services, 14001 University Ave., Des Moines, IA 50325 within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

| This Lease is non-cancelable. | This lease is not binding until we sign below. | |
|---|---|---|
| Lessee: (as stated above) | Lessor: Professional Solutions Financial Services | 07/10/06 |
| X _(Signature)_ Date: 6-23-06 | By: _(Signature)_ Date | |
| Print Name, Title: DR STEVEN WIGDOR | Its: | |

**UNCONDITIONAL GUARANTY**

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Agreement. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. In the event of default, the undersigned will immediately pay all sums due under the terms of this Agreement without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trail waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including attorney's fees, incurred by Lessor related to this guaranty. This guarantee is joint and several.

| X _____, Individually | X _____, Individually |
|---|---|
| Name: STEVEN WIGDOR | Name: ___ |
| Address: 3650 N FEDERAL L+P FT. 33064 | Address: ___ |

EXHIBIT "D"

# BRICAN

6001 Club Lagoon Drive Suite 320
Miami, Florida 33126 USA
Phone 786.388.6998 Fax 786.388.1489
Toll free: 866.688.6998

NO. 10053
DATE

| QTY | MONITORS | WALL MOUNTS | | | TABLE STAND | SPEAKER | TUNER |
|-----|----------|-------------|---|---|-------------|---------|-------|
| | | FLAT | TILT (optional) | ARTICULATED (optional) | | (optional) | (optional) |
| 1 | 17" | ☐ | ☑ | ☐ | Standard | N/A | N/A |
| | 19" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| | 26" LCD-TV | ☐ | ☐ | ☐ | Standard | Standard | Standard |
| | PLASMA | | | | | | |
| 1 | 42" | ☑ | ☑ | ☐ | ☐ | ☐ | ☐ |
| | 50" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBOARD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☑

DIGITAL CAMERA + SOFTWARE ☑   SOFTWARE CATALOG, CD, USER'S GUIDE ☑

REMOTE MOUSE ☐

| | | |
|---|---|---|
| PACKAGE COSTS | $ | 22009 |
| OPTIONAL EXTENDED WARRANTY ☐ 1 YEAR ☐ 2 YEARS ☐ 3 YEARS ☑ 4 YEARS | $ Five Year Warranty | |
| SHIPPING & HANDLING ☑ PREMIUM $298 ☐ STANDARD $288 ☐ OTHER_____ | $ | 298 |
| REMARKS: Tilt Mount for Plasma | | 80 |
| S+H plus 50% for Tilt mount | TOTAL | 2384 |
| | DEPOSIT | -345 |
| All amounts are subject to applicable sales taxes. Sales Taxes will be invoiced separately. | BALANCE | 2039 |

EXHIBIT "E"



# ADVERTISING AGREEMENT

This agreement ("Agreement") confirms the terms between Brican America Inc (Brican) and
____Dr. Steven S. Wigdor_____ (the "Client") with respect to the purchase of

advertising space on the *Brican Information Center* described on purchase order # _10053_____.

The terms of the Agreement between the parties are as follows:

1.  **Purchase of Advertising:** Brican shall purchase from the Client $ ___$100°°___ worth of
    advertising space for each year that this agreement remains in effect. The purchase of Advertising space
    hereunder may be made by Brican or any other entity in which Brican owns shares of voting stock.

2.  **Term:** This Agreement shall become effective 90 days after delivery of the *Brican Information Center*
    to the client.  This Agreement shall automatically renew for four additional one year terms, unless
    terminated by the Client upon written notice to Brican.

3.  **Payments:** All applicable payments issued by Brican to the Client in accordance with paragraph 1. will
    be paid on a quarterly basis according to the following schedule:

    <p align="center">January 1st / April 1st / July 1st / October 1st</p>

4.  **Content of Advertising:** (Mark one option)
    ☑ The Client reserves the right to refuse any advertisement from companies that produce or provide
    tobacco, alcohol, gambling or pornographic products or services. **Brican reserves the exclusive right
    to run any advertisements regarding Laser Vision Correction, Refractive Surgery and Laser
    Centers practising these procedures.**

    ☐ The Client has the right to refuse any laser related Advertising  under the condition  that Brican be
    allowed   to advertise other products sold within the Client's practice. Any income derived from
    advertising sold by Brican will be retained by Brican

5.  **Advertising space:** The Client agrees to allow Brican to display one advertising spot every ten (10)
    animations or messages, displayed by the Client. Brican advertising space will not exceed one tenth
    (1/10) of the space occupied by the Client and Brican together. **The client is not under any obligation
    to refer or direct his patients to the advertised  Laser Centers.**

6.  **Cancellation:**  If Brican fails to honor its financial commitment pursuant to this agreement, then all
    related agreements can be cancelled by the Client, and Brican will, on clients demand,
    buy back the lease Agreement.
7.  **Governing Law:** This Agreement shall be construed and enforced in accordance with the laws of the
    state of Florida.


BRICAN AMERICA INC                                      CLIENT


DATE  6/13/06                                      DATE 6/13/06

# EXHIBIT "F"



**BRICAN**

*Equipment Lease Application and Agreement*

| Lessor | Address | City | State | Zip Code | Phone |
|---|---|---|---|---|---|
| Professional Solutions Financial Services | 14001 University Ave. | Clive | Iowa | 50325 | (877) 770-7244 |

| Legal Name of Lessee - (Please Print) | Applicant Name (Please Print) | See section 14 for Application terms and conditions |
|---|---|---|
| STEVEN LIWDOR OD PA | STEVEN LIWDOR O.D. | |

| PRACTICE Address | City | State | Zip Code | County |
|---|---|---|---|---|
| 18117 BISCAYNE BLVD | AVENTURA | FL | 33160 | DADE |

| HOME Address | City | State | Zip Code | County |
|---|---|---|---|---|
| 2225 NE 192 st | N MIAMI BCH | FL | 33180 | DADE |

| PRACTICE Phone No. | PRACTICE Fax No. | HOME Phone No. | Professional License Number | Year Licensed |
|---|---|---|---|---|
| 305-921 0225 | 305 - 931 0238 | 305- 932 0831 | 1791 | 1982 |

| Social Security No. | E Mail Address | Specialty |
|---|---|---|
| 262 21 -3222 | EYECAREBMAIL@LS.COM | OPTOMETRY |

## TERMS AND CONDITIONS - PLEASE READ CAREFULLY BEFORE SIGNING

**To Our Customer:** When we use the words "you" and "your" in this Agreement, we mean you, the customer, who is the Lessee indicated above. When we use the words "we," "us," and "our" in this Agreement, we mean the Lessor, Professional Solutions Financial Services. By signing this Agreement: (i) You acknowledge that you have read and understand the terms and conditions on the front and back of this agreement, (ii) You agree that this Agreement is a fixed term financing agreement that you cannot terminate or cancel (however you may pre-pay your obligation in full at any time), you have an unconditional obligation to make all payments due under this agreement, and you cannot withhold, set off or reduce such payments for any reason, even for lack of performance or defects in the equipment.

**Equipment Description:**

| Quantity | Description of Financed Equipment | Make & Model, Serial Number |
|---|---|---|
| 1 | Computer Opto Library & Brican Software | |
| 1 | 17" LCD & Digital Camera | |
| 1/2 | Harma & Remote Mouse | |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Monthly Payment (plus tax) | Advance Payment (plus tax) | 90 Day deferral | End of Term Options: |
|---|---|---|---|---|
| ☐ 36 Months ☐ 48 Months ☑ 60 Months | $ 489 00 | $ ∅ | ☑Yes ☐No | ☑$1.00 ☐____ |

**1. LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Professional Solutions Financial Services, to buy the Equipment and then lease it to You. This Lease Agreement (this Lease) will begin on the date the Equipment is delivered to You (or any later date We designate). We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR UNCONDITIONAL ACCEPTANCE OF THE EQUIPMENT AND YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize us to increase or decrease your payment by not more than fifteen percent (15%) to reflect changes in the final price of the equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle and interest will be charged at the highest rate allowed by law.

**2. NO WARRANTY:** We are leasing the Equipment to You AS IS. We do not manufacture the Equipment and are not related to the Vendor. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

**3. EQUIPMENT USE AND REPAIR:** You agree the Equipment will be used for business purposes only. You are responsible for keeping the Equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

**4. END OF TERM:** According to the selection in the End of Term Options section above, If this lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this lease is a Fair Market Value (FMV) lease, you must notify us of your intentions to either return

or purchase the equipment prior to lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from Us "WHERE IS, AS IS."

**5. OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease the "Software", We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statement(s) to show our interest in the Equipment.

**6. SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option if any, for the Equipment, You understand that we do not own the software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

_S.W_ Initial

*Equipment Lease Agreement – Page 2*

**7. LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain insurance for You and add an insurance fee to the payment amounts due from You.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the Other option of the End of Term Options section of this lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at the rate 6% per annum. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment, You will also pay to Us our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney's fees, We incur in any dispute related to this Lease or

the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer this Lease and our rights in the Equipment. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original for all purposes. You authorize us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION.** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. IF THIS IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR

RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE. EACH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY.

**14. CREDIT APPLICATION AND INFORMATION.** YOU AUTHORIZE US OR ANY OF OUR AFFILIATES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Professional Solutions Financial Services, 14001 University Ave., Des Moines, IA 50325 within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

---

This Lease is non-cancelable.
Lessee: (as stated above)

X ___Halgib OD___   Date: 6-25-06
(Signature)

Print Name, Title: STEVEN E. Wigdor

This lease is not binding until we sign below.
Lessor: Professional Solutions Financial Services

By: _____   Date 07/10/06
(Signature)

Its: _____

---

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Agreement. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. In the event of default, the undersigned will immediately pay all sums due under the terms of this Agreement without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trail waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including attorney's fees, incurred by Lessor related to this guaranty. This guarantee is joint and several.

X ___Halgil OD___ , Individually

Name: STEVEN WIGDOR

Address: 18117 BISCAYNE BLVD

X _____ , Individually

Name: ___

Address: ___

EXHIBIT "G"

SENDER: COMPLETE THIS SECTION

I Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
I Print your name and address on the reverse
  so that we can return the card to you.
I Attach this card to the back of the mailpiece,
  or on the front if space permits.

Article Addressed to:

Brican America
Mr. Jeff Vincens
5301 Blue Lagoon.
suite 520
Miami, FL 33126

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
   Tullopolin                          2 8 10

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

           0102 6  BB4

                                     ederal Highway
                                     oint, Florida 33064
                                     943-6210
                                     54-943-5148

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

Article Number              7006 0100 0005 7446 8666
(Transfer from service label)

Form 3811, February 2004     Domestic Return Receipt        102595-02-M-1540

Brican America
Mr. Jeff Vincens
5301 Blue Lagoon Drive, Suite 520
Miami, FL 33126

Dear Mr. Vincens;

   With regard to our conversation, and as per my advertising agreement dated 06/23/06 with Brican America, paragraph 6, I respectfully request that Brican America buy back my lease agreements at this time.   At the time of purchase I certainly had alternatives to the Exhibeo System, but my decision to accept the system was based solely on the Advertising Agreement you and your company offered.  Since advertising payments are now over thirty (30) days past due, I have no other alternative than to request that my agreement be enforced per the terms. This is not a system that I can financially afford without the advertising monies as promised.  I also cannot afford to have my credit affected by non-payment of the lease.  Under the circumstances, please act on this request within ten (10) days of receipt of this notice.  If there are any questions regarding the amount of monies due, please contact me as soon as possible.

   Thank you in advance for your cooperation in this matter.

                              Sincerely,


                              Steven Wigdor, O.D.

EXHIBIT "H"



February 11, 2010

Dear Client:

We are in receipt of your request for Brican America, LLC to assume the lease you signed with your Lessor. We understand your frustration in regards to Viso Lasik Medspas ("Viso") not being able to meet its obligations and we appreciate your expressed concern regarding your continued obligations under the lease agreement you signed (the "Lease").

Brican America has been affected by the eroding economic condition of the country, similar to many small businesses. As a result, we find ourselves in a challenged financial position that does not allow us to fulfill your request. However, we are actively working to find solutions that will assist us in meeting our remaining commitments to our clients. We want to assure you that we are currently working on alternatives that will be designed to allow us to fulfill Viso's obligations under your marketing agreement.

Regarding your Lease, please be aware that the marketing agreement that you have with Viso is a separate and distinct agreement, and that the Lease you executed with your Lessor is a binding, non-cancellable agreement. To that end, while we continue to work diligently on these new programs, we encourage you to continue to make your lease payments under the Lease.

5301 Blue Lagoon Drive, Suite 520 |Miami, Florida 33126 |P: 786-388-6995 • F: 786-388-1489

● Page 2

February 11, 2010

We are asking for your patience as we continue to pursue income-generating alternatives for all of our clients and their practices.

If you would like to discuss this matter further, please contact our office.

Kindest regards,



BRICAN AMERICA, LLC

EXHIBIT "I"

BRICAN

8301 Blue Lagoon Drive Suite 620
Miami, Florida 33126 USA
Phone 786.388.8895 Fax:786.388.1489
Toll free: 888.588.6995

PURCHASE ORDER

No. 12518
DATE: 11/6/06

SOLD TO:

Steven R. Koganovsky, OD
101 North State Rd. 7 Suite 103
Margate, FL 33063
TEL.: 954-972-6934 FAX.: 954-972-6946

SHIP TO:

SAME

E-MAIL: drk2020@aol.com

☑ APPOINTMENT ☐ REFERRAL ☐ SEMINAR ☐ OTHER

☑ OPTOMETRIST ☐ DENTIST ☐ VETERINARIAN ☐ OTHER

SALES CONSULTANT

PACKAGE: ☑ STANDARD ☐ DVD ☐ OTHER

| QTY. | MONITORS | WALL MOUNTS FLAT | WALL MOUNTS TILT (optional) | WALL MOUNTS ARTICULATED (optional) | TABLE STAND | SPEAKER (optional) | TUNER (optional) |
|---|---|---|---|---|---|---|---|
| 1 | 17" | ☐ | ☐ | ☑ | Standard | N/A | N/A |
| | 10" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| | 27" LCD TV | ☐ | ☐ | ☐ | Standard | Standard | Standard |
| | PLASMA | | | | | | |
| 1 | 42" | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | 50" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBORAD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☑

DIGITAL CAMERA + SOFTWARE ☑ SOFTWARE, CATALOG, CD, USER'S GUIDE ☑

REMOTE MOUSE ☑

| | |
|---|---|
| TAX ID # PACKAGE COSTS: | $ 22,089.00 |
| WARRANTY ☐ 1 YEAR ☐ 2 YEARS ☐ 3 YEARS ☐ 4 YEARS ☑ 5 YEARS | $ Included |
| SHIPPING & HANDLING ☑ STANDARD 325$ ☐ OTHER | $ 325.00 |
| REMARKS: Articulating Mount - LCD | 60.00 |
| Cable Lengths: 65' to Plasma / ' to LCD | TOTAL: 22,474.00 |
| S&H 4 Mount Pd Via Ck# 3667 | DEPOSIT: 385.00 |
| All amounts are subject to applicable sales taxes. Sales Taxes will be invoiced separately | TOTAL 22,089.00 |

TERMS: ☐ CHECK # ☐ VISA ☐ MASTERCARD ☐ AMERICAN EXPRESS #: EXP.

☑ LEASE $ 489.00 Per month for 60 Months, Starting Month 4/02 buy out
*Applicable taxes

CUSTOMER SIGNATURE
Kim Li ... LLC

EXHIBIT "J"

BRICAN

8301 Blue Lagoon Drive Suite 620
Miami, Florida 33126 USA
Phone 786.369.6995 Fax.:786.388.1489
Toll free: 866.568.6995

No. 12518
DATE: 11/6/06

Steven R. Koganovsky, OD
101 North State Rd. 7 - Suite 108
Margate, FL 33063
TEL.: 954-972-6934 FAX: 954-972-6946

SAME

E-MAIL: drk2020@aol.com

☑ APPOINTMENT ☐ REFERRAL ☐ SEMINAR ☐ OTHER

☑ OPTOMETRIST ☐ DENTIST ☐ VETERINARIAN ☐ OTHER

PACKAGE: ☑ STANDARD ☐ DVD ☐ OTHER

| QTY. | MONITORS | WALL MOUNTS: FLAT | TILT (optional) | ARTICULATED (optional) | TABLE STAND | SPEAKER (optional) | TUNER (optional) |
|---|---|---|---|---|---|---|---|
| 1 | 17" | ☐ | ☐ | ☑ | Standard | N/A | N/A |
| | 10" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| | 27" LCD TV | ☐ | ☐ | ☐ | Standard | Standard | Standard |
| | PLASMA | | | | | | |
| 1 | 42" | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | 60" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBORAD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☑

DIGITAL CAMERA + SOFTWARE ☑ SOFTWARE, CATALOG, CD, USER'S GUIDE ☑

REMOTE MOUSE ☑

| | | |
|---|---|---|
| TAX ID # | PACKAGE COSTS: | $ 22,089.00 |
| WARRANTY ☐ 1 YEAR ☐ 2 YEARS ☐ 3 YEARS ☐ 4 YEARS ☑ 5 YEARS | | $ Included |
| SHIPPING & HANDLING ☑ STANDARD 325$ ☐ OTHER | | $ 325.00 |
| REMARKS: Articulated Mount - LCD | | 60.00 |
| Cable lengths: 65' to Plasma, ' to LCD | TOTAL: | 22,474.00 |
| 50 % Mount Paid Via Check 2667 | DEPOSIT: | 385.00 |
| All amounts are subject to applicable sales taxes. Sales Taxes will be invoiced separately | | 22,089.00 |

TERMS: ☐ CHECK # ☐ VISA ☐ MASTERCARD ☐ AMERICAN EXPRESS # EXP.

☑ LEASE $ 489.00 Per month for 60 Months, Starting Month # 4. $1.00 buy out

*Applicable taxes

Vim Vision LLC

## TERMS AND CONDITIONS

### 1.   PAYMENT

A)   Buyer agrees to pay the entire net amount of each invoice issued by Seller pursuant to the terms of each such invoice without offset or deduction.

B)   On any invoice not paid by maturity, Buyer shall pay interest at the annual percentage rate of 18% (or such lower rate as may be the maximum allowable by law), together with Seller's costs of collection (including reasonable Attorney's fees).

C)   Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Buyer may be applied by Seller against any obligation owing by Buyer to Seller under this or any other contract, regardless of any statement appearing on or referring to such check, without diminishing Buyer's liability for any additional amounts owing by Buyer to Seller; and the acceptance by Seller of such check shall not constitute a waiver of Seller's right to pursue the collection of any remaining balance.

### 2.   DELIVERIES / TITLE / WARRANTY

A)   Delivery of the Products to a carrier shall constitute delivery to Buyer, and risk of loss shall there upon pass to Buyer; however, title shall remain in Seller until Buyer makes payment in full under the contract. Delivery route shall be at the end election of Seller unless specifically designated by Buyer.

B)   Applicable equipment warranties take effect on delivery of equipment or system fifteen days after shipment date, whichever is sooner. Client responsible for system installation. Once system is shipped there are no refunds. Charges to order after shipment are subject to a $50.00 service fee, plus costs of changes. We reserve the right to substitute hardware, without notice, that is of similar quality and value to operate the software.

C)   The Product Warranty does not include improper operation, nor any damage caused from service, maintenance, modifications, or tampering by anyone other than the Seller's authorized representative.

### 3.   ADVERTISING AGREEMENT

A)   Purchase of Advertising: Brican America Inc. shall purchase from the Client $_____ worth of advertising space for each year that this agreement remains in effect. The purchase of Advertising space hereunder may be made by Brican or any other entity in which Brican owns shares of voting stock.

B)   Term: This Agreement shall become effective 90 days after delivery of the *Brican Information Center* to the client. This Agreement shall automatically renew for four additional one year terms, unless terminated by the Client upon written notice to Brican.

C)   Payments: All applicable payments issued by Brican to the Client in accordance with paragraph 1. will be paid on a quarterly basis according to the following schedule:

January-1st / April 1st / July 1st / October 1st

D)   Content of Advertising: (Mark one option)
The Client reserves the right to refuse any advertisement from companies that produce or provide tobacco, alcohol, gambling or pornographic products or services. Brican reserves the exclusive right to run any advertisements including posters and printed materials regarding Laser Vision Correction, Refractive Surgery and Laser Centers practising these procedures.
The Client has the right to refuse any laser related Advertising under the condition that Brican be allowed to advertise other Products sold within the Client's practice. Any income derived from advertising sold by Brican will be retained by Brican

E)   Advertising space: The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed one tenth (1/10) of the space occupied by the Client and Brican together. The client is not under any obligation to refer or direct his patients to the advertised Laser Centers.

F)   Cancellation: If Brican fails to honor its financial commitment pursuant to this agreement, then all related agreements can be cancelled and Brican will buy back the related lease agreement.

### 4.   GENERAL

A)   This contract may not be assigned, modified or cancelled without Seller's prior written consent, and any attempt to assign, modify or cancel without such consent shall be absolutely void.

B)   No delay or omission to exercise any right, power or remedy accruing to Seller upon breach or default by Buyer under this contract shall impair any such right, power or remedy of Seller, or shall be construed as a waiver of any such breach or default. All waivers must be in writing.

C)   In the event any of the provisions hereof shall, for any reason, be held void or unenforceable, the remaining provisions shall remain in full force and effect.

D)   This contract shall be governed by and construed according to the laws of the State of Florida.



# ADVERTISING AGREEMENT ADDENDUM

The following agreement shall be made part of the Purchase Order # __1254__ and be taken into consideration when and if clarification and /or interpretations are needed regarding the following:

### 3/A. Purchase of Advertising:
Brican America Inc is obligated to buy Advertising Space from the Client as long as the Client is current regarding payments to the leasing institution financing the Brican Information Center.

### 3/B. Term:
This paragraph means that the Client will become eligible for the payment schedule described in paragraph (C) 90 days after delivery.
This does not mean the quarterly payments start after 90 days.

### 3/C. Payments:
* Reference to Paragraph 1 should be read as "Paragraph 3A".
* Examples of payment schedules

**PAYMENT EXAMPLE 1**

Purchase Order signed May 23rd, 2006

Equipment delivered June 10th, 2006

Client is eligible September 10th, 2006

First payment is due October 1st, 2006 for $322. Calculated as follows - ($5800 per year div by 4 payments = $1450 per payment div by 90 days = $16.11 per day x 20 days = $322.)

Next payment January 1st, 2007 for $1450 ($5800 div by 4 = $1450.)

Last payment October 1st, 2011 for $1128 ($1450 - $ 322)

**PAYMENT EXAMPLE 2**

Purchase Order signed June 23rd, 2006

Equipment delivered July 10th, 2006

Client is eligible October 10th, 2006

First payment is due January 1st, 2007 for $1289 Calculated as follows - ($5800 per year div by 4 payments = $1450 per payment div by 90 days = 16.11 per day x 80 days = $1289

Next payment April 1st, 2007 for $ 1450 ($5800 div by 4 = $1450.)

Last payment January 1st, 2012 for $161 ($1450 - 1289)

Brican America LLC

Client

This addendum is to be attached to the corresponding purchase order when submitted.

5301 Blue Lagoon Drive, Suite 520, Miami, Florida, 33126

EXHIBIT "K"



**BRICAN**

## Equipment Lease Application and Agreement

| Lessor Professional Solutions Financial Services | Address 14001 University Ave. | City Clive | State Iowa | Zip Code 50325 | Phone (877) 770-7244 |
|---|---|---|---|---|---|

| Legal Name of Lessee (Corporation, etc.) | Applicant Name (Please Print)   See section 14 for Application terms and conditions |
|---|---|

Legal Name of Lessee: ROYAL EYE CENTER, CORPORATION   DR STEVEN KOGANOVSKY

| PRACTICE Address D1 N. State Rd.7 Ste 103 | City MARGATE | State FL | Zip Code 33063 | County Broward |
| HOME Address 3066 NE 49th St. | City Light | State FL | Zip Code 33062 | County Broward |

| PRACTICE Phone No. 954972 6934 | PRACTICE Fax No. 95497 6946 | HOME Phone No. 954 579-2066 | Professional License Number DPE 1231 | Year Licensed 1995 |
| Social Security No. 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 | E Mail address DEK 2020 @ Aol. com | | | Specialty Optometry |

## TERMS AND CONDITIONS - PLEASE READ CAREFULLY BEFORE SIGNING

**To Our Customer:** When we use the words "you" and "your" in this Agreement, we mean you, the customer, who is the Lessee indicated above. When we use the words "we," "us," and "our" in this Agreement, we mean the Lessor, Professional Solutions Financial Services. By signing this Agreement: (i) You acknowledge that you have read and understand the terms and conditions on the front and back of this agreement, (ii) You agree that this Agreement is a fixed term financing agreement that you cannot terminate or cancel (however you may pre-pay your obligation in full at any time), you have an unconditional obligation to make all payments due under this agreement, and you cannot withhold, set off or reduce such payments for any reason, even for lack of performance or defects in the equipment.

## Equipment Description:

| Quantity | Description of Financed Equipment | Make & Model, Serial Number |
|---|---|---|
| | Application Computer w/ CPU & Library of Brican Software | |
| 42" | Plasma w/ Remote Advice | |
| 17" | CD w/ Digital Camera | |

## Payment Terms:

| Term (Number of payments including Advance Payment) ☐ 36 Months ☐ 48 Months ☒ 60 Months | Monthly Payment (plus tax) $ 449.40 | Advance Payment (plus tax) $ ∅ | 90 Day deferral ☒ Yes ☐ No | End of Term Options: ☒ $1.00 ☐ |
|---|---|---|---|---|

**1. LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Professional Solutions Financial Services, to buy the Equipment and then lease it to You. This Lease Agreement (this Lease) will begin on the date the Equipment is delivered to You (or any later date We designate). We may charge You a reasonable fee to cover documentation and investigation costs, This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR UNCONDITIONAL ACCEPTANCE OF THE EQUIPMENT AND YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize us to increase or decrease your payment by not more than fifteen percent (15%) to reflect changes in the final price of the equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle and interest will be charged at the highest rate allowed by law.

**2. NO WARRANTY:** We are leasing the Equipment to You AS IS. We do not manufacture the Equipment and are not related to the Vendor. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

**3. EQUIPMENT USE AND REPAIR:** You agree the Equipment will be used for business purposes only. You are responsible for keeping the Equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

**4. END OF TERM:** According to the selection in the End of Term Options section above, if this lease is a $1.00 out, or there is a dollar amount listed in the "Offer" section, You agree to pay that amount at Lease termination. If this lease is a Fair Market Value (FMV) lease, you must notify us of your intentions to either return

or purchase the equipment prior to lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from Us "WHERE IS, AS IS."

**5. OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (the "Software", We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statement(s) to show our interest in the Equipment.

**6. SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option if any, for the Equipment, You understand that we do not own the software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.



**Equipment Lease Agreement – Page 2**

**7. LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain insurance for You and add an insurance fee to the payment amounts due from You.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the Other option at the End of Term Options section of this lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at the rate 5% per annum. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment, You will also pay to Us our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney's fees, We incur in any dispute related to this Lease or

the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer this Lease and our rights in the Equipment. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original for all purposes. You authorize us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION.** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. IF THIS IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR

RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE. EACH PARTY WAIVES ANY RIGHT TO A TRIAL BY JURY.

**14. CREDIT APPLICATION AND INFORMATION.** YOU AUTHORIZE US OR ANY OF OUR AFFILIATES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Professional Solutions Financial Services, 14001 University Ave., Des Moines, IA 50325 within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement.

---

| This Lease is non-cancelable. Lessee (as stated above) | This lease is not binding until we sign below. Lessor: Professional Solutions Financial Services |
|---|---|
| X _____ Date: 11/6/07 | By: _____ Date _____ |
| (Signature) | (Signature) |
| Print Name, Title: Steven Koganovsky   President | Its: _____ |

---

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Agreement. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. In the event of default, the undersigned will immediately pay all sums due under the terms of this Agreement without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trail waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including attorney's fees, incurred by Lessor related to this guaranty. This guarantee is joint and several.

| | |
|---|---|
| X _____ , individually | X _____ , individually |
| Name: Steven Koganovsky | Name: |
| Address: 2066 NE 154 St. Ft. Lauderdale Fl. 33308 | Address: |

# EXHIBIT "L"

Dr. Steven R. Koganovsky
Optometric Physician
101 N. State Road 7
Suite 103
Margate, Florida 33063
954-972-6934

March 2, 2010

To Whom it May Concern;

Please be advised that Dr. Steven R. Koganovsky/ Coral Springs Eye Center

Chartered is henceforth canceling the advertising agreement and the associated

Equipment Lease Agreement.  It is duly noted that Brican is in breech of its

contract/purchase order agreement as per paragraph 3 by failing to make the

required quarterly/annual payments as stipulated in the agreement.  Brican is now

obligated to buy back the related equipment lease as stated in paragraph 6 of the

said agreement.

As a result of Brican's breech of contract and representation of such, Dr. Steven R.

Koganovsky/Coral Springs Eye Center Chartered will no longer make any further

Lease payments as stipulated in the agreement.  Dr. Steven R. Koganovsky/Coral

Springs Eye Center Chartered hereby demands full repayment of the

aforementioned buy back as stipulated in the agreement by Brican within seven

days of receipt of this letter.

Sincerely,

Dr. Steven R. Koganovsky
Optometric Physician
101 N. State Road 7
Suite 103
Margate, Florida 33063
954-972-6934

Professional Solutions/NCMIC Leasing  Acct# 5005251 1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PROFESSIONAL Solutions
14001 University Ave.
Clive, IA 50325-8258

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

MAR 0 8 2010

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BP ICAN
5301 Blue Lagoon Drive
Miami, FL 33126

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
   (Transfer from service label)

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

# EXHIBIT "M"

MAR-4-2010 03:02P FROM:BEVILLE DENTAL CARE 4073869000 TO:19549212191 P.10/14

# B R I C A N

5301 Blue Lagoon Drive Suite 520
Miami, Florida 33126 USA
Phone 786.388.6995 Fax:786.388.1489
Toll free: 866.588.6995

No. **24109**

DATE: 2/7/09

Beville Dental Care
Adriana C. Porter, DMD
911 Beville Road, Suite 1
South Daytona, FL 32119

TEL: 386-761-2213   FAX: (407) 386-7200   E-MAIL Bevilledental@yahoo.com

☐ APPOINTMENT ☒ REFERRAL Dr. Pike   ☐ EVENT   ☐ OTHER

☐ OPTICAL   ☒ DENTAL, ☐ GENERAL PRACTITIONER   ☐ OTHER

Nht Shiltes

| PACKAGE: | ☒ STANDARD | | ☐ DVD | | | ☐ OTHER | |
|---|---|---|---|---|---|---|---|
| **QTY** | **MONITORS** | **WALL MOUNTS** | | | **TABLE STAND** | **SPEAKER** (optional) | **TUNER** (optional) |
| | | **FLAT** | **TILT** (optional) | **ARTICULATED** (optional) | | | |
| | 19" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| 1 | 20" | ☒ | ☐ | ☐ | Standard | N/A | N/A |
| 2 | 2 | ☐ | ☐ | ☒ | Standard | Standard | Standard |
| | **PLASMA** | | | | | | |
| | 42" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| | 50" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBOARD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☒

DIGITAL CAMERA + SOFTWARE ☒   SOFTWARE, LIBRARY CD, REMOTE MOUSE ☒

☒ FIVE YEARS UNLIMITED CUSTOM MESSAGES AND YEARLY UPDATES

| | | |
|---|---|---|
| TAX ID # 52-4422295 | PACKAGE COSTS: | $ N/C |
| 5 YEARS WARRANTY ☒ | | $ |
| SHIPPING ☒ STANDARD $350 ☐ OTHER | | $ 350 |
| REMARKS: | | |
| ... of cable 20" LCD | | |
| ... of cable 20" LCD | TOTAL: 350 | |
| ... of cable 20" LCD | | |
| | DEPOSIT: | |

All amounts are subject to applicable sales taxes.

TERMS: ☒ CHECK # 2037   ☐ VISA ☐ MASTERCARD ☐ AMERICAN EXPRESS # _____ EXP _____

☒ LEASE $ 38 Per month for 22 Months, Starting Month# 1 4/00 buy Out

*Applicable taxes

Representative signature: _____   Client signature: _____

MAR-4-2010  03:02P FROM:BEVILLE DENTAL CARE  4073869000        TO:19549212191        P.11/14

*Back side to "purchase order"*

## TERMS AND CONDITIONS

**1.**  **CUSTOMIZED SHOWS**

**A.**  Definition: A "show" is a succession of flash animated slides mixing text and images designed to educate customer's patients or to promote a particular product or service. A "customized show" is produced at the customer's request only if it concerns a product, service or educational issue not covered in out extensive existing library. Each customized show covers a single educational topic, product or service. For example, there could be one show about the customer's practice and a separate show about a specific product sold at the customer's practice not featured in our library. These are notcombined into one show, but instead they will be listed in the library as separate items for the customer to choose and arrange in any particular order desired.

**B.**  Time Duration: The duration of a customized show should be between 15 seconds and two minutes long.

**C.**  Text Limitation: In general, the number of words should equal the number of seconds that the customized show lasts, and must not exceed 120 words.

**D.**  Content: In order to avoid unnecessary revisions, all proposed content should be submitted to us in the following digital format:

   1.  Document: Microsoft Word
   2.  Pictures: JPEG, BMP (supplied on disk)
   3.  Videos: AVI, MPEG, MOV and DVD (supplied on disk). All videos submitted must be limited to a maximum of one minute long and no video may include sound.

**E.**  Revisions: Subsequent request to revise a customized show once it has been initially completed will be honored at Brican's discretion on a first-come, first-served basis.

**F.**  Online Catalog Access: User Name: Brican Password: Lagoon

**2.**  **DELIVERIES / TITLE / WARRANTY**

**A.**  Delivery of the Products to a carrier shall constitute delivery to Buyer, and risk of loss and shipping expenses shall thereupon pass to Buyer, however, title shall remain in Seller until Buyer makes payment in full under the contract. Delivery route shall be at the election of Seller unless otherwise agreed to by Seller in writing.

**B.**  Client is responsible for system installation. Once system is shipped there are no refunds. Changes to order after shipment are subject to a $50.00 service fee, plus costs of changes. We reserve the right to substitute hardware, without notice, that is of similar quality and value to operate the software.

**C.**  Any applicable product warranty does not include improper operation, nor any damage caused from service, maintenance, modifications, or tempering by anyone other than the Seller's authorized representative.

**D.**  Any applicable product warranty does not cover the first 24 hours following delivery. Since we rely on our Supplier's warranty for this initial period of time and in order to officially protect your investment and activate your warranty, make certain the staff member who accepts delivery checks the physical and working condition of all hardware components within that first 24 hour period. Any damage must be reported during that time, otherwise you may be charged for equipment replacement. Please Note: Keep your original boxes for 15 days before discarding, should a claim need to be placed, as the shipping company will request to examine the shipping boxes.

Read Paragraph D completely. If you have any questions please ask your Brican representative.

**3.**  **GENERAL**

**A.**  This contract may not be assigned, modified or cancelled without Seller's prior written consent, and any attempt to assign, modify or cancel without such consent shall be absolutely void.

**B.**  In the event any of the provisions hereof shall, for any reason, be held void or unenforceable, the remaining provisions shall remain in full force and effect.

This contract shall be governed by and construed according to the laws of the State of Florida. Jurisdiction and Venue shall be in Miami-Dade County, Florida

EXHIBIT "N"

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order # 24109

A)   Appointment/Complimentary cards: VISO LASIK MEDSPAS will provide the Client, on demand, with unlimited "Complimentary MedSpa" gift cards ($55 value), allowing the client to book an appointment and to reward patients for their faithfulness.

B)   Network: The Client will automatically belong to the Viso network and will be listed as such on the local VISO LASIK MEDSPAS website. Every patient coming to the VISO LASIK MEDSPAS will be directed to a member of the network if he/she has the need for a specialist in the area.

C)   Preferred rates: As part of this agreement, the Client and any employees of the Client will be eligible for a 50% discount on LASIK surgery. The Client, employees and relatives are also eligible for the Passport program. They will receive a 50% discount on all Medspa treatments up to the time they recoup the cost of LASIK procedure.

D)   Purchase of Advertising: Brican America LLC (Brican), on behalf of VISO LASIK MEDSPAS LLC. Shall purchase advertising space from the Client in accordance with the terms of this Agreement for each year that this Agreement remains in effect. The purchase of the advertising space hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)   Advertising Space: The Client agrees to allow Brican to insert advertising spots within the animations or messages chosen and displayed by the Client. Brican advertising space will not exceed ___1/10___ of the space occupied by the Client and will consist of 15 seconds animations after each sequence of 4 client's animations.

F)   The Client agrees to allow Brican to insert a marketing URL into the home page of their website as well as a banner.

G)   Content of Advertising:

Brican reserves the exclusive right, even if a local VISO LASIK MEDSPAS center is not open yet, to run any advertisements or placing of posters and printed materials regarding Laser Vision Correction and Refractive Surgery.

Brican reserves the exclusive right to advertise other products sold within the Client's practice. Any income derived from advertising sold by will be devided equally between the Client and Brican.

H)   Advertising Fees: Brican agrees to pay Client a minimum of $ 800 per year for advertising space, for each year this Agreement remains in effect. Within thirty (30) days following the end of each year of the term of this Agreement, Brican will review the value of the advertising space provided by Client, taking into account potential customer volume at Client's facility and actual business generated from LASIK patients from such advertisements except for those receiving co-management fees from VISO LASIK MEDSPAS. Brican will adjust the annual advertising payment, on an annual basis, retroactive to the beginning of the then current year of the term, based upon Brican's determination of the fair market value of advertising space at Client's facility but the annual value will never be less than the minimum amount specified above.

I)   Timing of Payments: Client will become eligible for the payment schedule described below 90 days after delivery of the Exhibeo Concept. This does not mean the quarterly payments begin after 90 days. All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid on a quarterly basis according to the following schedule: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

J)   Term: This Agreement shall be effective for a period of two years following delivery of the Exhibeo Concept, and shall automatically be renewed for three (3) additional, consecutive one year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client. Same termination may apply if the Client does not display advertising to his patients constantly during normal business hours.

K)   Cancellation: If VISO LASIK MEDSPAS faile to honor its commitment relating to the advertising fees and if the Client requests it, Brican will repurchase the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN                              VISO LASIK MEDSPAS    wellington          Client

Signature M de Cluis fils                                        (signature)

WHITE: To Company                                              YELLOW: To Client

EXHIBIT "O"

MAR-4-2010  03:03P FROM:BEVILLE DENTAL CARE  4073869000              TO:19549212191      P.12/14
Fax                        2/24/2010 2:51:08 PM  PAGE  2/00  Fax Server

## Equipment Lease Application and Agreement    Number: 05114

**Number:** 5009103-1

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| B R I C A N | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (305)555-6045 Fax (786)388-1489 | 5009103-1 |

### BUSINESS INFORMATION

Lessee: Beville Dental Care
Legal Name of Business: Adriana C. Porter, D.M.D
Address: 911 Beville Road Ste. 1
City/State/Zip: South Daytona, FL 32119
Phone: (386)761-2213 Fax: (407)386-9000
E Mail: Bcvilledental@yahoo.com
Specialty: General
Years Licensed: 2003  License Number: DN16432
Do you own your business? Y  How long have you owned your business? 2 Yrs
Vendor: Brican America L.L.C.

### PERSONAL INFORMATION

Applicant Name: Adriana C. Porter
Address: 9 Circle Oaks Tr
City/State/Zip: Ormond Beach FL 32174
Phone: (386)615-0188 Fax: ( )
Social Security: 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
Do you have a checking account? Y
Do you have a savings account?
Do you own your home? A  How long have you owned your home?

**TERMS AND CONDITIONS – PLEASE READ CAREFULLY BEFORE SIGNING**

To Our Customer: When we use the words "We" and "Your" in this Lease Agreement (Lease), we mean You, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth on Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | Equipment Make, Model and Serial Number |
|---|---|
| 1 | Exhibeo System |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3  Monthly Payments of $ 0  plus tax, then | $ 95.00 | $ 0 | ☒ $1.00 ☐ Other ___ |
| 60  Monthly Payments of $ 50 8 plus tax | | | ☐ Rental ☐ FMV |

1. LEASE AGREEMENT AND TERM: You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc. to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a "late charge" equal to (i) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. NO WARRANTY: We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. EQUIPMENT USE AND REPAIR: You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. END OF TERM: According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions in either return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

5. OWNERSHIP, TITLE AND UCC'S: Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. SOFTWARE: We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. LOSS AND INSURANCE: You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

APR 2 7 2009

SCANNED

## Equipment Lease Agreement – Page 2

Number: _____

insurance for You and add an insurance fee to the payment amounts due from You. Lease hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and/or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

**8. TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

**9. DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone unpaid. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement the withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

**10. ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

**11. WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the rights under this Lease to cancel this Lease or reject the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from exercising our rights.

**12. MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

**13. GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

**14. CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right in a written statement of the reasons for the denial. To obtain the statement, please contact: Credit Operations, Belzan America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

**15. NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (As Named above) | This Lease is not binding until We sign below. Lessor: Belzan America Inc. |
|---|---|
| By: _____ Date 2/19/08 | By: _____ Date _____ |
| (Signature) | (Signature) |
| OWNER | |
| (Title) | |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____ , Individually | X _____ , Individually |
|---|---|

NFG ELAA – 09 2008

# EXHIBIT "P"

February 22, 2010

Brican America, LLC
5301 Blue Lagoon Dr., Suite 520
Miami, FL 33126

Account Manager:

I am writing this letter to inform you that VISO LASIK MEDSPAS has failed to honor its commitment relating to the advertising fees.

I was advised that Viso Lasik Medspas is no longer able to advertise within your network. Therefore, I am CANCELLING my marketing agreement and requesting Brican to repurchase my lease agreement in regard to the Exhibeo Concept. Please refer to section (K) in the Marketing Agreement.

I am not interested in learning about earning rebates as a member of your intended network program. Also, I am not interested in being included in new advertising campaigns that are intended to roll out in the future.

Please call my office at 386-761-2273 to set up repurchasing arrangements.

Sincerely,

Adriana C. Porter, DMD

EXHIBIT "Q"



March 3, 2010

Dear Client:

We are in receipt of your request for Brican America, LLC to assume the lease you signed with your Lessor. We understand your frustration in regards to Viso Lasik Medspas ("Viso") not being able to meet its obligations and we appreciate your expressed concern regarding your continued obligations under the lease agreement you signed (the "Lease"). .

Brican America has been affected by the eroding economic condition of the country, similar to many small businesses. As a result, we find ourselves in a challenged financial position that does not allow us to fulfill your request. However, we are actively working to find solutions that will assist us in meeting our remaining commitments to our clients. We want to assure you that we are currently working on alternatives that will be designed to allow us to fulfill Viso's obligations under your marketing agreement.

Regarding your Lease, please be aware that the marketing agreement that you have with Viso is a separate and distinct agreement, and that the Lease you executed with your Lessor is a binding, non-cancellable agreement. To that end, while we continue to work diligently on these new programs, we encourage you to continue to make your lease payments under the Lease.

5301 Blue Lagoon Drive, Suite 520 |Miami, Florida 33126 |P: 786-388-6995 ▪ F: 786-388-1489

MAR-8-2010   01:28P FROM:BEVILLE DENTAL CARE   4073959000                    TO:19549212191          P.3/5

● Page 2                                                                March 3, 2010

We are asking for your patience as we continue to pursue income-generating alternatives for all of

our clients and their practices.


If you would like to discuss this matter further, please contact our office.


Kindest regards,
Brican America, LLC



EXHIBIT "R"

# BRICAN AMERICA LLC

5301 Blue Lagoon Drive Suite 520
Miami, Florida 33126 USA
Phone 786.388.6995 Fax:786.388.1489
Toll free: 866.588.6995

**PURCHASE ORDER:**
No. _____
DATE: _____

**SOLD TO:**

**SHIP TO:** Same

TEL: _____ FAX: _____ E-MAIL: _____

☐ APPOINTMENT ☐ REFERRAL ☐ EVENT ☐ OTHER

☐ OPTICAL ☒ DENTAL ☐ GENERAL PRACTITIONER ☐ OTHER

M. C. NAME: Jordana McSher

PACKAGE: ☑ STANDARD ☐ DVD ☐ OTHER

| QTY | MONITORS | WALL MOUNTS | | | TABLE STAND | SPEAKER | TUNER |
|---|---|---|---|---|---|---|---|
| | | FLAT | TILT (optional) | ARTICULATED (optional) | | (optional) | (optional) |
| | 19" | ☐ | ☐ | ☐ | Standard | N/A | N/A |
| | 20" | ☒ | ☐ | ☐ | Standard | N/A | N/A |
| | | ☐ | ☐ | ☐ | Standard | Standard | Standard |
| | **PLASMA** | | | | | | |
| | 42" | ☒ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | 50" | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

COMPUTER SYSTEM (INCLUDING A KEYBOARD, SPEAKERS, A MOUSE, AND WINDOWS XP LICENSE) ☒

DIGITAL CAMERA + SOFTWARE ☒ SOFTWARE, LIBRARY CD, REMOTE MOUSE ☒

☒ FIVE YEARS UNLIMITED CUSTOM MESSAGES AND YEARLY UPDATES

TAX ID # 7C · 5445441                    PACKAGE COSTS: $ _____

5 YEARS WARRANTY. ☒                      $ _____

SHIPPING ☒ STANDARD $350 ☐ OTHER _____   $ _____

REMARKS:

Cable to closing     ~ 75 Ω
cable to monitor ~ 25 Ω

# three in all new in                     DEPOSIT:

TOTAL: 950

BALANCE

All amounts are subject to applicable sales taxes.

TERMS: ☐ CHECK # _____ ☐ VISA ☐ MASTERCARD ☒ AMERICAN EXPRESS # 37107 589931 21083 EXP. _____

☒ LEASE $ _____ Per month for _____ Months, Starting Month # _____ 91.88 buy Out _____
+Applicable taxes

Representative signature: _____     Client signature: _____

# EXHIBIT "S"

# MARKETING AGREEMENT

This Marketing Agreement shall be made part of the Purchase Order #_____.

A)  **Complimentary gift certificates/Next appointment cards:** Viso Lasik Medspas will provide the Client, on demand, with unlimited Viso Renewing Facial complimentary cards ($55 value) that act simultaneously as "next appointment" reminder cards and loyalty rewards for their patients.

B)  **Network:** The Client will automatically become a member of the Viso healthcare provider network and will be listed on the local Viso Lasik Medspas website. Viso Lask Medspas patients seeking healthcare providers in their area will be directed to this network of preferred specialists.

C)  **Preferred rates:** As part of this agreement, the Client and their employees will be eligible for a 50% discount on all LASIK surgery. The Client, employees and relatives are also eligible for the Viso Passport program. which offers a 50% discount on all Medspa treatments up to the point when the cost of the prior LASIK procedure is recouped-essentially making LASIK a no cost procedure.

D)  **Purchase of Advertising:** Brican America LLC (Brican), on behalf of Viso Lasik Medspas LLC, will purchase advertising time on the Client's Exhibeo Concept, in accordance with the terms of this Agreement, for each year that this Agreement is in effect. The purchase of the advertising time hereunder may be made by Brican or any other entity in which Brican is related by ownership.

E)  **Advertising Space:** The Client agrees to allow Brican to insert advertising spots on the Exhibeo Concept within the loop of flash movie and still messages chosen and displayed by the Client. Brican advertising will not exceed ___1/10___ of the screen time occupied by the Client and will consist of 15 second animations after each sequence of 4 client-chosen flash movies or videos.

F)  The Client agrees to allow Brican to insert a Viso URL link into the home page of their website as well as a banner display advertisement.

G)  **Content of Advertising:**

☒ Brican reserves the exclusive right, even if a local Viso Lasik Medspas center is not yet open, to run any advertisements and place posters and printed materials regarding Laser Vision Correction and Refractive Surgery.

☐ Brican reserves the exclusive right to advertise other products sold within the Client's practice on the Exhibeo Concept. Any income derived from advertising time sold by Brican will be divided equally between the Client and Brican.

H)  **Advertising Fees:** Brican agrees to pay Client a minimum of $ 5,800 per year for advertising time, for each year this Agreement is in effect. Brican will conduct an annual review of the efficacy and value of the advertising time on the Client's Exhibeo Concept and may adjust the annual advertising payment upward-except for those receiving co-management fees from Viso Lasik Medspas-if it is determined that the advertising time on the Client's Exhibeo Concept warrants it. The annual amount of advertising fees paid to the client will never be less than the minimum amount specified above.

I)  **Timing of Payments:** Client will become eligible for the payment schedule described below 90 days after delivery of the Exhibeo Concept. This does not mean the quarterly payments begin after 90 days. All applicable payments issued by Brican to the Client, in accordance with Paragraph D, will be paid quarterly: January 1st / April 1st / July 1st / October 1st. The first and last payments will be prorated.

J)  **Term:** This Agreement shall be effective for a period of one year following delivery of the Exhibeo Concept, and will automatically be renewed for four (4) additional, consecutive one-year terms, unless terminated by the Client upon written notice to Brican. Brican may terminate this Agreement upon written notice to the Client if the Client is in default with respect to lease payments to the institution which is financing the Exhibeo Concept for the Client. Brican may also terminate this Agreement if the Client does not regularly display the agreed to advertising to their patients in the practice during normal business hours or does not distribute the appointment/complimentary cards to his/her patients.

K)  **Cancellation:** If Viso Lasik Medspas fails to honor its commitment relating to the advertising fees, and if the Client requests it, Brican will repurchase the Client's lease agreement in regard to the Exhibeo Concept.

BRICAN
AMERICA LLC

VISO LASIK MEDSPAS

Salvatore M de Cann fro

Client

WHITE: To Company

YELLOW: To Client

# EXHIBIT "T"

## Equipment Lease Application and Agreement

**Number:** _____

| Lessor | Address | City | State | Zip Code | Phone | E-mail |
|---|---|---|---|---|---|---|
| **BRICAN** AMERICA INC. | 5301 Blue Lagoon Dr. Suite 520 | Miami | FL | 33126 | (786)388-6995 Fax (788)388-1489 | |

| BUSINESS INFORMATION | PERSONAL INFORMATION |
|---|---|
| **Lessee** | |
| Legal Name of Business: Eyad Shehadeh DDS PA | Applicant Name: Eyad Shehadeh |
| Address: 973 N. Nob Hill Rd | Address: 1428 NW 129th Way |
| City/State/Zip: Plantation FL 33324 | City/State/Zip: Sunrise, FL 33323 |
| Phone: (954) 425 1717 Fax: (954) 435-1716 | Phone: (954) 475 1717 Fax: (954) 475-1716 |
| E Mail: eycdo_5@yahou.com | Social Security: 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 |
| Specialty: General | Do you have a checking account? Yes |
| Years Licensed: 5yrs  License Number: DN 17833 | Do you have a savings account? Yes |
| Do you own your business? √  How long have you owned your business? 2mo | Do you own your home? Yes How long have you owned your home? 5 years |
| Vendor: Brican America L.L.C. | |

### TERMS AND CONDITIONS – PLEASE READ CAREFULLY BEFORE SIGNING

To Our Customer: When we use the words "You" and "Your" in this Lease Agreement (Lease), we mean you, the customer, who is the Lessee indicated above. When we use the words "We," "Us," and "Our" in this Lease, we mean the Lessor, Brican America Inc. By signing this Lease: (i) You acknowledge that You have read and understand the terms and conditions in this Lease, (ii) You agree that this Lease is a fixed term financing Lease that You cannot terminate or cancel, You have an unconditional obligation to make all payments due under this Lease, and You cannot withhold, set-off or reduce such payments for any reason, even for defects or failures in the Equipment, (iii) You agree to use the Equipment only for business purposes and not for personal, family or household use, (iv) You warrant that the person signing the Lease for You has the authority to do so and to grant the Power of Attorney set forth in Section 5 of this Lease, (v) If You have any questions regarding this Equipment Lease, please contact Us at the address, telephone or e-mail information at the top of this Lease.

**Equipment Description:**

| Quantity | | Equipment Make, Model and Serial Number |
|---|---|---|
| | Exhibeo System | |

**Payment Terms:**

| Term (Number of payments including Advance Payment) | Documentation/Filing Fee | Advance Payment | End of Term Options: |
|---|---|---|---|
| 3  Monthly Payments of $ ___ plus tax, then  60  Monthly Payments of $ 508 plus tax | $ 95.00 | $ 0 | ☑ $1.00 ☐ Other ___ ☐ Rental ☐ FMV |

1. **LEASE AGREEMENT AND FEES:** You (the Lessee specified above) want to acquire the above Equipment from the Vendor. You want Us, Brican America Inc. to buy the Equipment and then lease it to You. This Lease will begin on the date the Equipment is delivered to You (or any later date We designate) or on the date You authorize Us to pay the Vendor, even if You have not received the Equipment. We may charge You a reasonable fee to cover documentation and investigation costs. This Lease is NON-CANCELLABLE FOR THE ENTIRE LEASE TERM. YOU UNDERSTAND THAT WE ARE BUYING THE EQUIPMENT BASED ON YOUR PROMISE TO PAY US UNDER THE TERMS OF THE LEASE, WITHOUT SET-OFFS, EVEN IF THE EQUIPMENT DOES NOT WORK PROPERLY OR IS DAMAGED FOR ANY REASON INCLUDING REASONS THAT ARE NOT YOUR FAULT. If any amount payable to Us is not paid when due, You will pay Us a 'late charge' equal to 1) the greater of ten (10) cents for each dollar overdue or twenty-six ($26.00) dollars; or 2) the highest lawful charge, whichever is less. You authorize Us to increase or decrease Your payment by not more than fifteen percent (15%) to reflect changes in the final price of the Equipment as reflected on the final invoice. We intend to comply with all applicable laws. If it is determined that Your total payments result in an interest rate higher than allowed by applicable law, then any excess interest collected will be applied to the repayment of principle, and interest will be charged at the highest rate allowed by law.

2. **NO WARRANTY:** We are leasing the Equipment to You AS IS and with ALL FAULTS. We do not manufacture the Equipment. You selected the Equipment and the Vendor, based on Your own judgment. You may contact the Vendor for a statement of the warranties, if any, that the Vendor or manufacturer is providing. We hereby assign to You the warranties given to Us, if any. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THIS LEASE, OR THE EQUIPMENT. You agree to settle any dispute You may have regarding performance of the Equipment directly with the manufacturer or Vendor.

3. **EQUIPMENT USE AND REPAIR:** You agree the equipment will be used for business purposes only and not for personal, family or household use. You are responsible for keeping the equipment in good working order. Except for normal wear and tear, You are responsible for any damage or losses to the Equipment. We are not responsible for, and You will indemnify Us against, any claims, losses or damages, including attorney fees, related to Your use or possession of Equipment. IN NO EVENT SHALL WE BE RESPONSIBLE FOR ANY CONSEQUENTIAL OR INDIRECT DAMAGES.

4. **END OF TERM:** According to the selection in the End of Term Options section above, if this Lease is a $1.00 out, or there is a dollar amount listed in the "Other" section, You agree to pay that amount at Lease termination. If this Lease is a Rental or Fair Market Value (FMV) Lease, You must notify Us of Your intentions to return, at Your expense, or purchase the Equipment prior to Lease termination. If You fail to: 1) return the Equipment to Us in Average Saleable Condition, to a location specified by Us at the end of the Lease term (or any renewal term); or 2) timely pay the FMV purchase option; then, this Lease will automatically renew on the same terms on a monthly basis. "Average Saleable Condition" means the Equipment is immediately available for use by another lessee without the need of any repair. You also agree to reimburse Us for any repair costs. If You request a purchase option and provided You have not defaulted under the Lease, You may purchase the Equipment from us "WHERE IS, AS IS."

5. **OWNERSHIP, TITLE AND UCC'S:** Except for any software covered by this Lease (software), We are the owner of the Equipment and have a title to it. You appoint Us as attorney-in-fact to execute and file on Your behalf, and at Your cost, Uniform Commercial Code (UCC) financing statements(s) to show Our interest in the Equipment.

6. **SOFTWARE:** We do not have title to the Software. We are not responsible for the Software or the obligations owed by either You or the licensor under any License Agreement for the Software. If You properly exercise the purchase option, if any, for the Equipment, You understand that We do not own the Software and cannot transfer it to You. Except as provided in this paragraph, all references to the "Equipment" in this Lease includes the Software.

7. **LOSS AND INSURANCE:** You will keep the Equipment fully insured against loss and will obtain a general public liability insurance policy covering the Equipment and its use. You will name Us as loss payee and an additional insured and provide Us with evidence of insurance. If You do not, We may obtain

NFC ELAA – 09 2008

ES Init

**Equipment Lease Agreement – Page 2**                                      Number: _____

insurance for You and add an insurance fee to the payment amounts due from You. Lessee hereby assigns to Lessor, all right title and interest Lessee has to any insurance coverage and / or proceeds required to be purchased by the Lease. Lessee authorizes Lessor, at its option, to make all required claims to insurance carriers in the place of Lessee. Lessee agrees to notify any insurance carrier of this Lease provision and provide a copy of this notice to Lessor as part of the terms and condition of this Lease. In the event of denial of insurance coverage for any reason by any insurer, Lessee is still unconditionally obligated to make all lease payments.

8. **TAXES:** You agree that You will pay when due all taxes relating to this Lease and the Equipment. If this Lease includes a $1.00 purchase option, or there is an amount listed in the "Other" option of the "End of Term Options" section of this Lease, You agree to file any required personal property tax returns.

9. **DEFAULT:** The events described in this paragraph shall constitute a default on the part of the Lessee, however, We reserve the absolute right to declare this Lease to be in default and the Lease is not in default until We declare that a default has occurred and gone uncured. We also reserve the absolute right to declare that a default has been cured. Notice of default and the cure of a default, if any, will be sent by Lessor to Lessee. If You do not pay any sum by its due date, or You breach any other term of this Lease or any other agreement with Us, then You will be in default of this Lease. If You default, We may require that You pay 1) all past due amounts under this Lease, and 2) all future amounts owed for the unexpired term, discounted at a rate equal to the discount rate of the Federal Reserve Bank of Kansas City as of the date of this lease. If You default or make late payment We may require that payments under this Lease be made by preauthorized payment from Your checking account. You agree that You will complete any necessary documentation to implement this withdrawals. Upon default, We may choose to repossess the Equipment. If We do not choose to repossess the Equipment You will also pay to Us Our booked residual value for the Equipment. We can also use any and all remedies available to Us under the UCC or any other law. You agree to pay all the costs and expenses, including attorney fees We incur in any dispute related to this lease or the Equipment. You also agree to pay interest on all past due amounts, from the due date until paid, at the lower of one and one-half percent (1.5%) per month or the highest lawful rate.

10. **ASSIGNMENT:** You have no right to sell, transfer, assign or sublease the Equipment or this Lease. We may sell, assign or transfer the Lease and Our rights in the Equipment without notice to You or consent by You. You agree that if We sell, assign or transfer this Lease, the new owner will not be subject to any claim, defense or set-off that You assert against Us or any other party.

11. **WAIVER OF ARTICLE 2A RIGHTS:** You agree that this Lease is a "finance lease" as the term is defined in Article 2A of the UCC. You hereby agree to waive any and all rights and remedies granted to You by Section 2A-401, Section 2A-402, Sections 2A-508 through 2A-522 of the UCC, including the right to reject or revoke acceptance of the Equipment. You agree that any delay or failure to enforce Our rights under this Lease does not prevent Us from enforcing any rights at a later time.

12. **MISCELLANEOUS:** You agree that this Lease is the entire agreement between You and Us regarding the lease of the Equipment and supersedes any purchase order or agreement You issue. Any change must be in writing and signed by each party. You agree that a facsimile copy of this Lease bearing authorized signatures may be treated as an original and will be admissible as evidence of the Lease between You and Us. You authorize Us to insert or correct missing or incorrect information on the Lease.

13. **GOVERNING LAW, CONSENT TO JURISDICTION AND VENUE OF LITIGATION AND WAIVER OF JURY RIGHTS:** You agree this Lease is to be performed in Dade County, Florida and this Lease will be governed by the laws of the State of Florida. You consent to personal jurisdiction and venue in the State or Federal Court located in Miami, Dade County, Florida. You agree that You will not sue Us for any claim more than one year after the event on which You base Your claim. You and We expressly waive any rights to trial by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Lessor's willingness to enter into this Lease. If this Lease is assigned by Lessor, You consent to personal jurisdiction and venue in the State or Federal Court located where the Assignee's Corporate Headquarters is located. This is known as a floating forum selection clause and You agree that this is done knowingly and voluntarily and is an essential term to Assignee's willingness to take an assignment of this Lease. You specifically agree to waive any right to transfer venue and that agreement is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease. All parties expressly waive any rights to trail by jury on any and all claims related to this Lease. You agree that this jury waiver is knowing and voluntary and is an essential term to Assignee's willingness to take an assignment of this Lease.

14. **CREDIT APPLICATION AND INFORMATION:** YOU AUTHORIZE US, ANY OF OUR AFFILIATES OR ASSIGNEES TO OBTAIN CREDIT BUREAU REPORTS, BANK AND TRADE REFERENCES, AND MAKE OTHER CREDIT INQUIRIES THAT WE DETERMINE ARE APPROPRIATE ON THE PERSON(S) SIGNING BELOW. WE RESERVE THE RIGHT TO SUBMIT THIS APPLICATION TO INCLUDE ALL INFORMATION OBTAINED FOR CREDIT APPROVAL, WITHOUT NOTICE TO ANY OTHER POTENTIAL LESSOR FOR CONSIDERATION OF APPROVAL OF CREDIT. YOU HEREBY REPRESENT THAT ALL INFORMATION PROVIDED BY YOU IS TRUE, CORRECT AND COMPLETE, AND WE WILL USE THAT INFORMATION TO MAKE A CREDIT DECISION. YOU AGREE TO GIVE US FINANCIAL STATEMENTS AND COPIES OF TAX RETURNS UPON OUR REQUEST. A photo static and/or facsimile copy of this authorization shall be valid as the original. If Your application for business credit is denied, You have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact: Credit Operations, Brican America Inc., 5301 Blue Lagoon Drive, Miami, Florida 33126 within 60 days from the date You are notified of Our decision. We will send You a written statement of reasons for the denial within 30 days of receiving Your request for the statement.

15. **NO AGENT:** YOU AGREE THAT THE VENDOR, MANUFACTURER, SALES PERSON, EMPLOYEE OR AGENT OF THE VENDOR OR MANUFACTURER IS NOT OUR AGENT AND HAS NO AUTHORITY TO SPEAK FOR US OR TO BIND US IN ANY MANNER. IT IS FURTHER UNDERSTOOD THAT WE ARE NOT THEIR AGENT.

| By signing below You agree to all terms and conditions contained in this Lease. Lessee: (as stated above) | This Lease is not binding until We sign below. Lessor: Brican America Inc. |
|---|---|
| By: _____ (Signature)  Owner  (Title)     Date 4-13-09 | By: _____ (Signature)     Date _____ |

## UNCONDITIONAL GUARANTY

The undersigned unconditionally guarantees that the Lessee will timely perform all obligations under this Lease. The undersigned also waives any notification if the Lessee is in default and consents to any extensions or modifications granted to the Lessee. The undersigned waives all suretyship defenses. In the event of default, the undersigned will immediately pay all sums due under the terms of this Lease without requiring Lessor to proceed against Lessee, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law, and jury trial waiver as stated in the "Governing Law, Consent to Jurisdiction and Venue of Litigation" paragraph above and agrees to pay all costs and expenses, including reasonable attorney fees, incurred by Lessor related to this guaranty. This guaranty is joint and several.

| X _____ , Individually | X _____ , Individually |
|---|---|

NFC ELAA – 09 2008

EXHIBIT "U"

 BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP
Attorneys & Counselors at Law

5355 Town Center Road  Suite 900  Boca Raton, FL  33486
561.241.0414  Toll-Free 800.682.2825  Fax 561.241.9766  www.bdblaw.com

Akron
Boca Raton
Canton
Cleveland

Jeffrey D. Weinstock, Esq.
Direct Tel: (561) 999-3093
Direct Fax: (561) 393-0137
E-Mail: jweinstock@bdblaw.com

February 25, 2010

*Via US Mail, Facsimile (786-388-1489)
and email (yharrellesq@yahoo.com)*

Brican Financial Services, L.L.C.
5301 Blue Lagoon Drive, Suite 520
Miami, FL 33126
Attn: President

Re: *Equipment Lease and Marketing Agreement*

This firm represents Eyad Shehadeh D.D.S., PA (the "PA"). We have been provided with a copy of an Equipment Lease Application and Agreement and the Purchase Order accompanying the Equipment Lease (the "Equipment Lease") between the PA and Brican America LLC ("Brican America"), a Marketing Agreement (the "Marketing Agreement") between the PA, Brican America and Viso Lasik Medspas ("Viso"), correspondence between the PA and Brican America, and a letter from Brican Financial Services, L.L.C. ("Brican Financial") to the PA dated July 23, 2009 informing the PA that the Equipment Lease had been transferred from Brican America to Brican Financial.

Subsequent to the receipt of the July 23, 2009 letter, Brican America notified the PA that Viso would no longer honor its commitments under the Marketing Agreement. Section K of the Marketing Agreement, unconditionally obligates Brican America to repurchase the PA's obligations under the Equipment Lease upon the request of the PA. Upon receipt of Brican America's notification to the PA that Viso failed to honor its commitments under the Marketing Agreement, the PA notified Brican America by letter dated February 15, 2010 of its request for Brican America to repurchase the PA's Equipment Lease pursuant to section K of the Marketing Agreement.

Since the PA properly requested and notified Brican America of the PA's request that Brican America repurchase PA's Equipment Lease, Brican is unconditionally obligated for all future lease payments and Brican Financial should look directly to Brican America for any future payments under the Equipment Lease.

Notwithstanding anything to the contrary contained in this letter, the PA reserves all of its rights and remedies under the Equipment Lease, the Marketing Agreement and at law and equity.

Buckingham, Doolittle & Burroughs, LLP

Jeffrey Weinstock
«BOCA:226112_v1/70593-0001»

# EXHIBIT "F"

AMS

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:10-cv-21608-UU

| | |
|---|---|
| Wigdor OD PA et al v. NCMIC Finance Corporation | Date Filed: 05/18/2010 |
| Assigned to: Judge Ursula Ungaro | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Andrea M. Simonton | Nature of Suit: 890 Other Statutory |
| Cause: 28:1441 Notice of Removal-Declaratory Judgment | Actions |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Steven Wigdor O.D., P.A.**
*a Florida Corporation*

represented by **David H. Charlip**
Charlip Law Group
1930 Harrison Street
Suite 208
Hollywood, FL 33020
954-921-2131
Fax: 921-2191
Email: dcharlip@charliplawgroup.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Radzwill Optometric Associates, Chartered**
*a florida Corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric M Radzwill OD**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Coral Springs eye Center, Chartered**
*a florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven R Koganovsky, O.D.**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Beville Dental Care**
*a corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Adriana Porter**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eye Health & Vision Center, P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Rubin**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ivan Rosenthal**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Easton**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vision Arts Eyecare Center**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Edward Walker**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**All Eyes Optical, Inc.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Vito Guario**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marciano Family Optometric, P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandee Marciano**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kaufman Eyecare Center**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sandford Kaufman**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Stephens**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mitchell A. Josephs, D.D.S., P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mitchell Josephs**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sandra Barker**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**New View Optometric Center**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Melvin Kasanoff**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jay Gelman**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Palm Beach Eyes of Boynton Beach**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Greg Pientka**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bethany Brenner**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Palm Vision Center, Inc.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Anhalt**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barrera Optical, Inc.**
*a Texas corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mario Barrera**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lori J. Bende, O.D., Professional
Optometric Corp.**
*a California corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lori Bende**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Daniel Del Castillo, D.M.D., P.A.**
*a Florida corporation*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Daniel Del Castillo**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Kenneth Gallinger**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Oakwood Dental Arts, LLC**
*a New York Limited Liability
Corporation*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Emanuel Graziano**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Alan Grossman**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Tad Kosanovich**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Ragsdale & Martin Optical, Inc.**
*a Texas corporation*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Michael Martin**
*individually*

represented by    **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Family Vision Center, P.A.**
*a Florida corporation*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lori Mazza**
*individually*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Advanced Dental Center of Summerville, PA**
*a South Carolina corporation*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Muscott**
*individually*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Scerbo DMD, P.A.**
*a Florida corporation*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Peter Scerbo**
*individually*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond E. Schwartz, P.A.**
*a Florida corporation*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond E Schwartz**
*individually*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**E. Wayne Simmons, D.M.D. Prosthodontist, P.C.**
*a Texas corporation*

represented by   **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

E. Wayne Simmons
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barry Simon**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dr. Ronald N. Smith, Optometrist, Inc.**
*a Texas corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Smith**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Terry Van Der Heyden**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Advantage Family Vision Center**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Porch**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fred Buettner**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael L. Grace, O.D., P.A.**
*a Texas corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**20/20 Vision Clinic, LLP**
*a Texas limited liability partnership*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Grace**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Blaisdell Dental Center, P.A.**
*an Idaho corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James L. Carazola, D.M.D., P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Carazola**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher S. Carroll, D.D.S., P.C.**
*a Wisconsin corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Carroll**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tryphose Charles, DMD**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**M. Cowan & Associates, D.D.S., P.A.**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael J. Fernandez, D.M.D., P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Fernandez**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cedarhurst Dental Office**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Howard Goldschein**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Grayhills, Mohip Dental & Associates of Wellington**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laurence Grayhills**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Spex in the City, LLC**
*a Washington limited liability company*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Hamilton**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alan R. Heap, D.M.D., P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alan Heap**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emerald West Family Dentistry, PLLC**
*an Idaho limited liability company*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Hess**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard M. Kernagis, D.M.D., P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Kernagis**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**East Lyme Family & Cosmetic
Dentistry**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Palumbo**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lakeside Family Dentistry, P.L.**
*a Florida Limited Liability company*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joel E. Vaccarezza, DDS, P.A.**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joel Vaccarezza**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eyad Shehadeh**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eyad Shehadeh, DDS, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Freedman & Haas, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Sharon Haas**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Edward B. Busch, DMD, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Edward Busch**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Keith A. Colwell, DDS, PC**
*an Iowa corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Keith Colwell**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Jay Gelman**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Beautiful Smiles Dental Care**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Anthony Gulde**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Philip K. Haiman & Associates, P.A.**
*a Florida Corporation*
*other*
Sunrise Eye Care, Inc.

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Philip Haiman**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Roland Park Vision Services**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bruce Hyatt**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Neelofar Khan**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Obrochta Center for Dental Health**
**Stephen P. Obrochta DDS, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephen Obrochta**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wesley B. Smith, DDS, PA**
*a North Carolina corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wesley Smith**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrey Tweedy**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Antonio Barcias**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eyes On The Bay, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Neil Elliot**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Premier Dental**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Align Orthodontics**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sanjeev Sharma**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elliott Stupp**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Family Dental Care**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chanbo Sim**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wade G. Winker, DDS, PA**                    represented by   **David H. Charlip**
*a Florida corporation*                                          (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wade Winker**                                represented by   **David H. Charlip**
*individually*                                                   (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Countryside Dental Associates, Inc.**        represented by   **David H. Charlip**
*a Florida corporation*                                          (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Ancona**                             represented by   **David H. Charlip**
*individually*                                                   (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dr. Matos's Growing Smiles, PA**             represented by   **David H. Charlip**
*a New Jersey corporation*                                       (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Manuel Gonzalez**                            represented by   **David H. Charlip**
*individually*                                                   (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas Jacka**                               represented by   **David H. Charlip**
*individually*                                                   (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alfred Johnson**                             represented by   **David H. Charlip**
*individually*                                                   (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth A. Mogell, DMD, PA**                 represented by   **David H. Charlip**
*a Florida corporation*                                          (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth Mogell**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**John D. Sherer, DMD, PA**
*a Florida corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**John Sherer**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Katy Periodontics Management, Inc.**
*a Texas corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Timothy Hale**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Stephen Allison**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Falls Cosmetic Dental Center**
*corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Samuel Chandy**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Behdad Omrani**
*individually*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Steven Wigdor**
*O.D.*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert M. Easton Jr. O.D., P.A.**
*a Florida Corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**The Hour Glass, Inc.**
*a Florida Corporation*

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Blaisdell**

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Seppi**

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rodrick Keener**

represented by **David H. Charlip**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**NCMIC Finance Corporation**
*doing business as*
Professional Solutions Financial Services

**Defendant**

**Brican America Inc.**
*a florida corporation*

represented by **Alan Samuel Fine**
Alan S. Fine, P.A.
255 Alhambra Circle
Suite 850
Coral Gables, FL 33134
305-424-2400
Fax: 305-424-2401
Email: afine@fine-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brican America, LLC**
*a Florida corporation*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**PSFS 3 corporation**
*an Iowa corporation*

represented by **Catherine Magdalena Rodriguez**
Levey Filler Rodriguez Kelso & De
Bianchi LLP
1688 Meridian Avenue
Suite 902
Miami Beach, FL 33139
305-672-5007
Fax: 305-672-4070
Email: cmrodriguez@leveyfiller.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brican Financial Services, LLC**
*a Floida limited liability company*

represented by **Alan Samuel Fine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**NCMIC and PSFS 3**

represented by **Catherine Magdalena Rodriguez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/18/2010 | 1 | NOTICE OF REMOVAL Filing fee $ 350.00 receipt number 113C-2874055, filed by PSFS 3 corporation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Rodriguez, Catherine) (Entered: 05/18/2010) |
| 05/18/2010 | 2 | Judge Assignment RE: Electronic Complaint to Judge Ursula Ungaro and Magistrate Judge Andrea M. Simonton (mg) (Entered: 05/18/2010) |
| 05/18/2010 | 3 | Notice of Pendency of Other Action by PSFS 3 corporation (Rodriguez, Catherine) (Entered: 05/18/2010) |
| 05/18/2010 | 8 | MOTION to Dismiss State Court Complaint 1 Notice of Removal, by PSFS 3 Corporation. Responses due by 6/4/2010 (bb) (Entered: 05/26/2010) |
| 05/18/2010 | 9 | MOTION to Dismiss State Court Complaint 1 Notice of Removal, by PSFS 3 Corporation. Responses due by 6/4/2010 (bb) (Entered: 05/26/2010) |
| 05/19/2010 | 4 | ORDER TO SHOW CAUSE. Removing Defendant SHALL show cause on or before 5/24/2010.. Signed by Judge Ursula Ungaro on 5/19/10. (cse) (Entered: 05/19/2010) |

| 05/19/2010 | 5 | Unopposed MOTION for Extension of Time to File Response/Reply as to 1 Notice of Removal, by PSFS 3 corporation. (Attachments: # 1 Text of Proposed Order) (Rodriguez, Catherine) (Entered: 05/19/2010) |
| 05/20/2010 | 6 | ORDER granting 5 Motion for Extension of Time to File Response/Reply Responses due by 5/31/2010. Signed by Judge Ursula Ungaro on 5/20/2010. (tb) (Entered: 05/21/2010) |
| 05/23/2010 | 7 | NOTICE by PSFS 3 corporation re 4 Order to Show Cause *Amended Removal Petition* (Rodriguez, Catherine) (Entered: 05/23/2010) |
| 05/28/2010 | 10 | Defendant's MOTION to Dismiss 1 Notice of Removal, *Plaintiff's Supplemental Amended Complaint Exhibit B to Notice of Removal* by NCMIC and PSFS 3. Responses due by 6/14/2010 (Rodriguez, Catherine) (Entered: 05/28/2010) |
| 06/01/2010 | 11 | Defendant's MOTION to Dismiss 1 Notice of Removal, by Brican America Inc., Brican America, LLC. Responses due by 6/18/2010 (Fine, Alan) (Entered: 06/01/2010) |
| 06/01/2010 | 12 | Defendant's MOTION to Dismiss 1 Notice of Removal, by Brican Financial Services, LLC. Responses due by 6/18/2010 (Fine, Alan) (Entered: 06/01/2010) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/03/2010 11:25:34 | | |
| **PACER Login:** | no0675 | **Client Code:** | Wigdor |
| **Description:** | Docket Report | **Search Criteria:** | 1:10-cv-21608-UU |
| **Billable Pages:** | 20 | **Cost:** | 1.60 |

# EXHIBIT "G"

McKENNA McILWAIN LLP
96 Park Street
Montclair, New Jersey 07042
T 973-509-0050
F 973-509-3580
Attorneys for Plaintiff: Dr. Frank DeRienzo

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. FRANK DeRIENZO,<br><br>*Plaintiff*<br><br>vs.<br><br>BRICAN AMERICA, LLC. and PROFESSIONAL<br>SOLUTIONS FINANCIAL SERVICES,<br><br>*Defendants*. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

Plaintiff, Dr. Frank DeRienzo, for its Complaint against Defendants, Brican America, LLC. and

Professional Solutions Financial Services alleges and avers as follows:

### NATURE OF CASE

1. This complaint seeks to redress the fraudulent and malicious conduct of Defendants which has

   misappropriated hundreds of thousands of dollars from Plaintiff and others similarly situated.

   Defendants have systematically misappropriated money from Plaintiffs through leasehold

   payments on leases that are null and void by express terms of written documents. By this

   lawsuit, Plaintiff intends to establish that Defendants have engaged in pattern of misconduct for

   which it should be subject to compensatory damages in excess of $1,000,000, punitive damages

   to the maximum extent authorized by law, and injunctive relief, including, but not limited to, a

   preliminary and permanent injunction.

1

## JURISDICTION AND VENUE

2.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d) because at least one member

    of the putative class is a citizen of a State other than the citizenship of Defendants, there are

    more than 100 class members, and the damages suffered and sought to be recovered herein

    total, in the aggregate, in excess of $1,000,000 exclusive of interest and costs.

3.  At all times material, Defendants have had purposeful and continuous, systematic contacts in or

    affecting the State of New Jersey.

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because Defendants, at all times

    material, have had continuous and systematic contacts in this District by actively doing business

    and perpetuating the business practice scheme that is the subject of this cause in New Jersey.

## CLASS ACTION ALLEGATIONS

5.   Plaintiff brings this action on his own behalf and as a Class Action pursuant to Rules 23(b)(2) and

    23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed "Class" or

    "Class Members":

    > **Class A:** All individuals who have entered into contract with Defendants
    > and have therefore been damaged as a result of Defendants breach of
    > contract .

    Excluded from the Class are Defendants, subsidiaries and affiliates, their directors and officers

    and members of their immediate families.

6.  Numerosity: The members of the Class are so numerous and geographically diverse that joinder

    of all of them is impracticable.  While the exact number and identities of members of the Class

    are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery,

    Plaintiff believes and avers that there are thousands of Class Members.

2

7.  Commonality:  Plaintiff and Class Members' claims drive from a common core of salient facts, and share many of the same legal claims.  There are questions of fact or law common to members of the Class, which predominate over any questions affecting any individual members.

8.  Typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff' claims arise from the same course of conduct by Defendants toward himself and members of the Class.

9.  Adequacy: Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff have retained competent counsel experienced In litigation of this nature.

10. Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact predominate over issues that are individual to members of the Class.  The proposed Class is sufficiently cohesive to warrant class and representative treatment.  Upon information and belief, Defendants has the technology and records to provide Plaintiff a plausible class-wide method for proving their case.  Certification under Rule 23(b)(3) is also appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action.  Given the small damage amounts per Class Member, the expense of litigating each Class Member's claim individually would be so cost prohibitive as to deny Class Members a viable remedy.  Plaintiff envisioned no unusual difficulty in the management of this action as a class action.

11. Plaintiffs also bring this action under Rule 23(b)(2) because Defendant have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive relief, Defendants will continue to operate without authorization.  Defendants uniform conduct

3

towards Plaintiff and other members of the Class makes certification under Rule 23(b)(2) appropriate.

<div align="center">**THE PARTIES**</div>

12. Plaintiff is an individual who conducts business at Newport Vision Center, 123 River Drive, Jersey City, New Jersey 07310.

13. Plaintiff is a member of the Class defined herein.  Plaintiff and the Class he seeks to represent are consumers who have been damaged by Defendants actions.  Class members reside in and are citizens of states other than those in which Defendants are located.

14. Defendant Brican America, LLC is a limited liability company with a principle place of business located at 5301 Blue Lagoon Drive, Suite 520, Miami, Florida, 33126.

15. Defendant Professional Solutions Financial Services is a business located at 14001 University Avenue, Clive, Iowa 50325.

<div align="center">**FIRST CLAIM FOR RELIEF**
**Breach of Contract Against All Defendants**</div>

16. Plaintiff re-alleges and incorporates by reference the allegations set forth in the prior paragraphs of this Complaint as though fully and completely set forth herein.

17. On or about April 2008, Plaintiff, and others similarly situated, entered into a written lease agreement with Defendant, Brican to lease certain equipment.

18. The written lease included an advertising agreement that stated, "Defendant Brican shall purchase from [Plaintiff's and others similarly situated], advertising space for each year that the lease agreement remains in effect. "

19. The Advertising Agreement contained the following provision:

> F) Cancellation: If the advertised Viso Lasik Medspas fails to honor its financial commitment pursuant to this agreement, then all related agreements can be cancelled and Brican will buy back the related lease agreement.

<div align="center">4</div>

20. Defendants agreed, either expressly or impliedly, to properly provide marketing assistance relative to Plaintiff's Brican lease.

21. Defendants breached its obligation to purchase advertising space required under the written agreement.

22. Plaintiff incurred charges under the written lease agreements that should not have been incurred as a result of Defendants breach of the advertising space purchase requirement under the written agreements.

23. As a direct and proximate result, Plaintiff, and others similarly situated, has been damaged.

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the proposed Classes;

b.  For an order declaring the Defendants violated the Consumer Protection Acts as defined above, and that its course of conduct constituted unjust enrichment;

c.  Entering judgment in favor of Plaintiff and the Classes against Defendants;

d.  Awarding Plaintiff and the members of the Class redress including damages, full restitution and/or disgorgement of all revenues where allowable, earnings, profits, compensation and benefits which might have been obtained by Defendants as a result of its unlawful course of conduct, acts or practices;

e.  Awarding Plaintiff and Class attorney's fees and costs; and,

f.  Granting further relief as the Court deems just.

## SECOND CLAIM FOR RELIEF
### Consumer Fraud Act Against All Defendants

24. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the prior paragraphs of this Complaint as though fully and completely set forth herein.

25. Defendants used an unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation by breaching the contract with the Plaintiff or those similarly situated.

26. Defendants knowingly concealed, suppressed, or omitted the material fact in their failure to withhold the advertising agreement.

27. Defendants violated the Consumer Fraud Act, *N.J.S.A. 56:8-1 et seq.*

28. Defendants violated the Consumer Protection Leasing Act, *N.J.S.A. 56:12-60 et seq.* in their failure to adhere to the advertising agreement.

29. Defendants violated the rental, and advertisement of merchandise before and subsequent to the rental and advertisement including lending and insurance sales practices and therefor eis liable to the consumer for attorney's fees and costs.

30. Plaintiffs suffered an ascertainable loss of moneys or property as a result of the unlawful consumer fraud therefore Plaintiffs should be awarded for Defendants actions.

**WHEREFORE,** Plaintiff prays for judgment against Defendants and each of them as follows:

      a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the proposed Classes;

      b. For an order declaring the Defendants violated the Consumer Protection Acts as defined above, and that its course of conduct constituted unjust enrichment;

      c. Entering judgment in favor of Plaintiff and the Classes against Defendants;

      d. Awarding Plaintiff and the members of the Class redress including damages, full restitution and/or disgorgement of all revenues where allowable, earnings, profits, compensation and benefits which might have been obtained by Defendants as a result of its unlawful course of conduct, acts or practices;

      e. Awarding Plaintiff and Class attorney's fees and costs; and,

      f. Granting further relief as the Court deems just.

6

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment

31. Plaintiff hereby incorporates by reference the allegations contained in the prior paragraphs as if fully set forth herein.

32. Defendants have received the benefit of their actions damaging Plaintiff by way of withholding payment or without giving reasonable compensation to Plaintiff.

33. Defendants allowed Plaintiff and those similarly situated to be damaged in return while Defendants profited from the actions.

34. Defendants have retained the benefits without payment and have been unjustly enriched.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment and relief as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the proposed Classes;

b. For an order declaring the Defendants violated the Consumer Protection Acts as defined above, and that its course of conduct constituted unjust enrichment;

c. Entering judgment in favor of Plaintiff and the Classes against Defendants;

d. Awarding Plaintiff and the members of the Class redress including damages, full restitution and/or disgorgement of all revenues where allowable, earnings, profits, compensation and benefits which might have been obtained by Defendants as a result of its unlawful course of conduct, acts or practices;

e. Awarding Plaintiff and Class attorney's fees and costs; and,

f. Granting further relief as the Court deems just.

7

**Fourth Claim for Relief**
**Declaring Action**

35. Plaintiff re-alleges and incorporates by reference all the allegations set forth in the prior

    paragraphs of this Complaint as though fully and completely set forth herein

36. Plaintiff seeks a declaration that pursuant to paragraph F of the Advertising Agreement that the

    Equipment Lease is null and void.

McKenna McIlwain, LLP
Attorneys for Plaintiff

*Keith A. McKenna/s*

Keith A. McKenna

Dated:  March 4, 2010

**DEMAND FOR JURY TRIAL**

The undersigned hereby demands a trial by jury as to all claims so triable.

McKenna McIlwain, LLP
Attorneys for Plaintiff

*Keith A. McKenna/s*

Keith A. McKenna

Dated:  March 4, 2010

8

EXHIBIT "H"

| 05/28/2010 | 6 | AFFIDAVIT of Service for Summons and Complaint served on Brican America, LLC on 5/11/10, filed by FRANK DERIENZO. (MCKENNA, KEITH) (Entered: 05/28/2010) |
| 05/28/2010 | 7 | AFFIDAVIT of Service for Summons and Complaint served on Professional Solutions Financial Services on 5/11/10, filed by FRANK DERIENZO. (MCKENNA, KEITH) (Entered: 05/28/2010) |
| 06/01/2010 | | Update Answer Due Deadline as to defts. until 6/1/10. (DD, ) (Entered: 06/01/2010) |

<table>
<tr><td colspan="4" align="center"><strong>PACER Service Center</strong></td></tr>
<tr><td colspan="4" align="center"><strong>Transaction Receipt</strong></td></tr>
<tr><td colspan="4" align="center">06/03/2010 09:15:54</td></tr>
<tr><td><strong>PACER Login:</strong></td><td>dc0439</td><td><strong>Client Code:</strong></td><td></td></tr>
<tr><td><strong>Description:</strong></td><td>Docket Report</td><td><strong>Search Criteria:</strong></td><td>2:10-cv-01173-SDW -MCA Start date: 1/1/1970 End date: 6/3/2010</td></tr>
<tr><td><strong>Billable Pages:</strong></td><td>1</td><td><strong>Cost:</strong></td><td>0.08</td></tr>
</table>